**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATES OF THE UNITED STATES, EX REL PATRICK DONOHUE<br><br>                    Plaintiffs,<br><br>-AGAINST-<br><br>RICHARD CARRANZA, ET AL.<br><br>                    Defendants | CIVIL ACTION NO.: 20-CV-5396 (GHW)<br><br><br>                    Civil Action |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LOUDOUN COUNTY PUBLIC SCHOOL DISTRICT AND SCOTT A. ZIEGLER'S MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(B)(1), (2) AND (6)**

---

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Loudoun County Public
School District and Scott A. Ziegler
112 West 34th Street, 17th Floor
New York, NY  10120
212-947-1999
harrison@methwerb.com
Our File No. 91300 ELH

On the Brief:  Eric L. Harrison

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-v

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       POINT ONE

       THIS COURT HAS NO PERSONAL JURISDICTION
       OVER ANY DEFENDANT SITUATED OUTSIDE THE
       STATE OF NEW YORK. . . . . . . . . . . . . . . . . . . . . . . . . . 13

       POINT TWO

       TRANSFERRING THE CLAIMS AGAINST THE MOVING
       DEFENDANTS TO THE EASTERN DISTRICT OF VIRGINIA
       WOULD NOT SERVE THE INTEREST OF JUSTICE BECAUSE
       THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH
       RELIEF CAN BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 20, 21

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
902 F.2d 194 (2d Cir. 1990) ................................................................ 14

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*,
458 U.S. 176 (1982) ................................................................... 25, 26, 27

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006) ................................................. 16, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................ 15

*Carlisle Area Sch. Dist. v. Scott P.*,
62 F.3d 520 (3d Cir.1995) ................................................................... 26

*Daimler AG v. Bauman*,
571 U.S. 117, 122 (2014) .................................................................... 17

*Dunn v. Downingtown Area Sch. Dist.*,
904 F.3d 248 (3d Cir. 2018) ............................................................... 27

*Endrew F. v. Douglas Cty. Sch. Dist.*,
580 U.S. ___, 137 S. Ct. 988 (2017) ..................................... 25, 26, 27, 28

*Fuhrmann v. E. Hanover Bd. of Educ.*,
993 F.2d 1031 (3d Cir. 1993) ............................................................. 26

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005) ............................................................... 18-19

*J.R. ex rel. S.R. v. Bd. of Educ.*,
345 F. Supp. 2d 386 (S.D.N.Y. 2004) ................................................. 26

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998) ............................................................... 14

*Knight v. Dist. of Columbia*,
877 F.2d 1025 (D.C. Cir. 1989) .......................................................... 28

*Lunceford v. Dist. of Columbia Bd. of Educ.*,
745 F.2d 1577 (D.C. Cir. 1984) .......................................................... 28-29

*McKenzie v. Smith,*
  771 F.2d 1527 (D.C. Cir. 1985) ............................................................. 28

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996) ................................................................. 14

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
  763 F.2d 55 (2d Cir. 1985) ................................................................. 15

*Peterson v. Regina,*
  935 F. Supp. 2d 628 (S.D.N.Y. 2013) ...................................................... 18

*Polk v. Central Susquehanna Intermediate Unit 16,*
  853 F.2d 171 (3d Cir. 1988) ............................................................... 27

*Reyes v. N.Y.C. Dep't of Educ.,*
  760 F.3d 211 (2d Cir. 2014) .............................................................. 27

*Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,*
  172 F.3d 238 (3d Cir. 1999) .............................................................. 27

*Robinson v. Overseas Military Sales Corp.,*
  21 F.3d 502 (2d Cir. 1994) ............................................................... 15

*Tamam v. Fransabank Sal,*
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ...................................................... 14

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
  785 F. Supp. 2d 303 (S.D.N.Y. 2011) ...................................................... 22

*United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,*
  8 F. Supp. 3d 339 (S.D.N.Y. 2014) ............................................ 17-18, 20, 22, 23

*United States ex rel. Kester v. Novartis Pharm. Corp.,*
  23 F. Supp. 3d 242 (S.D.N.Y. 2014) ....................................................... 22

*United States ex rel. Ladas v. Exelis, Inc.,*
  824 F.3d 16 (2d Cir. 2016) ............................................................... 29

*United States ex rel. Mikes v. Straus,*
  274 F.3d 687 (2d Cir. 2001) .............................................................. 21

*United States ex rel. Taylor v. Gabelli,*
  345 F. Supp. 2d 313 (S.D.N.Y. 2004) ...................................................... 21

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer,*
  976 F. Supp. 207 (S.D.N.Y. 1997) ........................................................ 17

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,*
  110 F.3d 861 (2d Cir. 1997) .............................................................. 17

*Waldman v. Palestinian Liberation Organization*,
    835 F.3d 317 (2d Cir. 2016) ........................................................... 13, 14, 15


**Federal Statutes**

20 U.S.C. § 1401 ........................................................................... 25

20 U.S.C. § 1412 ........................................................................... 25

20 U.S.C. § 1414 ........................................................................... 26

28 U.S.C. § 1331 ............................................................................. 3

28 U.S.C. § 1345 ............................................................................. 4

28 U.S.C. § 3730 ............................................................................. 3

28 U.S.C. § 1367 ......................................................................... 3, 4

28 U.S.C. § 1391 ........................................................................... 18

28 U.S.C. § 1406 ........................................................................... 20

31 U.S.C. § 3730 ........................................................................... 12

31 U.S.C. § 3732 ........................................................... 3-4, 4, 5, 13, 17

31 U.S.C. § 3729 ............................................... 7, 8, 11, 21, 22, 23, 29

31 U.S.C. § 3729-3733 ..................................................................... 5

Medicare Catastrophic Coverage Act of 1988 § 411 ............................... 23, 24

Social Security Act, § 1903 ............................................................. 24


**Federal Regulations**

42 C.F.R. § 413.60 ........................................................................... 5

42 C.F.R. § 413.64 ..................................................................... 5, 6, 7


**State Laws**

Cal. Gov. Code §12650-12656 et seq. ................................................... 12

CT. Gen. Stat. §4-275 et seq. ........................................................... 11

Mass. General Laws Ch. 12, §5 ......................................................... 11

N.Y. Admin. Code §§ 7-801 through 7-810 .......................................... 11

New York Claims Act, §187-194 ....................................................... 11

NY Penal Code §175.05 ................................................................... 11

NY Penal Code §176 et seq. ............................................................. 11

NY Penal Code §177 ....................................................................... 11

NY Soc. Services Law §366 et seq. ................................................................ 11

Tex. Hum. Res. Code §36.002 et seq. ............................................................. 12

VA. Code Ann. §8.01-216.3 et seq. ................................................................ 11

**Rules**
Federal Rule of Civil Procedure 12 ...................................... 1, 2, 3, 12, 20, 21, 30

Federal Rule of Civil Procedure 4 ................................................................ 13, 15

Federal Rule of Civil Procedure 9 ............................................................ 20, 29, 30

Federal Rule of Civil Procedure 20 ................................................................. 17

N.Y. C.P.L.R. §301 ..................................................................................... 15

N.Y. C.P.L.R. §302 ..................................................................................... 16

## PRELIMINARY STATEMENT

This is a qui tam action filed by Patrick Donohue, Esq. on behalf of the United States of America and individual States, along with the District of Columbia, against the former Chancellor of New York City Richard Carranza, the current Chancellor of New York City Meisha Porter, the New York City Department of Education, the Niagara Falls Public School District, the Buffalo Public School, the Massachusetts Department of Education, the Somerville Public School District, the Stamford Public School District, the Chicago Public School District, the "Loudoun County Public School District," the Camden City Public School District, the Los Angeles Unified School District, the San Diego Unified School District, the Wake County Public School District, the Austin Independent Public School District, and the superintendents serving in each of the defendant school districts.  The Loudoun County Public School District is operated by the Loudoun County School Board, which hereby moves for dismissal of the Second Amended Complaint for failure to state a claim.

The Complaint alleges that the defendants submitted false claims for Medicaid reimbursement with knowledge that they had violated the Individuals with Disabilities Education Act (the "IDEA") in the wake of pandemic-related school building closures by depriving their students of a free, appropriate public education.

The Complaint articulates insufficient facts to establish personal jurisdiction over any defendant domiciled outside of New York.  An indulgent reading of the facts asserted in the 85-page Complaint fails to support a finding of personal jurisdiction over any non-domiciliary defendant.

1

While the absence of personal jurisdiction typically will support a transfer or dismissal without prejudice to the assertion of the claims before a tribunal that has jurisdiction – which in this case would be the Eastern District of Virginia – this Court should dismiss with prejudice the claims against the Loudoun County School Board and its Superintendent because none of the allegations in the Complaint states a cognizable claim under the False Claims Act.

For these reasons, Defendants Loudoun County School Board (improperly pled as the Loudoun County Public School District) and Scott A. Ziegler request that the Court dismiss with prejudice the claims against them for lack of personal jurisdiction, improper venue, and failure to state a claim.

## FACTUAL BACKGROUND

**The Parties**

1.    Plaintiff-Relator Patrick Donohue initiated this *qui tam* action and filed the instant Second Amended Complaint on behalf of the United States of America and the individual States, as well as the District of Columbia, against Defendants.  (See Doc. No. 19, "Preliminary Statement and Nature of this Action")

2.    Plaintiff-Relator alleges that he has direct and independent knowledge of "disabled children in NYC and other named School Districts receiv[ing] Medicaid reimbursements, payments, and otherwise for related service sessions that were not provided in a manner and environment that is consistent with the students' physical and medical needs and did not adhere to the relevant Medicaid and IDEA billing requirements."  (Id. at ¶ 19)

3.    Defendant Loudoun County Public School District operates within the jurisdiction of Loudoun County, Virginia.  (Id. at ¶ 45)

4.    Defendant Scott A. Ziegler serves as the current Superintendent of Loudoun County Public School District and was responsible for the oversight and management of the schools within its District during the 2019-2020 school year and the subsequent years.  (Id. at ¶ 46)

**Plaintiff-Relator's Jurisdiction and Venue Claims**

5.    Plaintiff-Relator asserts that this Court has subject matter jurisdiction based on their claims "pursuant to 28 U.S.C. §3730(a) (False Claims Act), 28 U.S.C. §1331 (Federal question), 28 U.S.C. § 1367 (Supplemental jurisdiction), 31 U.S.C. §3732

3

(False claims jurisdiction), and 28 U.S.C. §1345 (United States as plaintiff)."  (<u>Id.</u> at ¶ 110)

6.   Moreover, Plaintiff-Relator asserts that "[t]o the extent, if any, that this case involves questions relating to special education rights, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367."  (<u>Id.</u> at ¶ 69)

7.   Plaintiff-Relator asserts that "venue is properly placed within the Southern District of New York because at least one of the Defendants resides or transacts business in the Southern District, specifically, Defendant Richard Carranza ("Chancellor Carranza"), in his official capacity as former Chancellor of the New York City Department of Education, Defendant Meisha Porter, in her official capacity as current Chancellor of the New York City Department of Education; and Defendant New York City Department of Education ("NYC DOE"), maintain business offices in New York County."  (<u>Id.</u> at ¶ 70)

8.   Plaintiffs assert that pursuant to 31 U.S.C. §3732, "this Court appropriately has jurisdiction over all Defendants, as the named New York Defendants (collectively) operate and conduct business within this Court's jurisdiction."  (<u>Id.</u> at ¶¶ 71-72)

**Plaintiff-Relator's Substantive Claims**

9.   Plaintiff-Relator alleges that "Defendants conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws."  (<u>Id.</u> at ¶ 1)

10.     Plaintiff-Relator also alleges that "Defendants fraudulently billed for these [remote] 'sessions' through Medicaid at their regular, full rates" and used IDEA funding for "non-related services" even though "students were unable to meaningfully participate in these remote sessions."  (<u>Id.</u> at ¶ 2)

11.     Plaintiff-Relator contends that "Defendants have violated the federal False Claims Act, 31 U.S.C. § 3729-3733 ("FCA") as well as the corresponding state false claim statutes" because they "obtained the benefit of virtually unfettered Medicaid reimbursements for these related service sessions."  (<u>Id.</u> at ¶ 3)

12.     According to Plaintiff-Relator, Defendants "received interim payments based on fixed estimates of their actual costs in accordance with 42 C.F.R. § 413.60(a), (c); §413.64(a), (f)."  (<u>Id.</u> at ¶ 60)

13.     He further alleges that Defendants "submitted cost reports of their actual expenditures in accordance with C.F.R. §413.60(b), §413.64(f) and that a final adjustment is made to settle the difference between the interim payments and a provider's actual purported costs.  C.F.R. §413.64(f)(2)"  (<u>Id.</u> at ¶ 61)

14.     He alleges that the "claims were submitted on behalf of [s]pecial [e]ducation students by the Defendants for related services that were not offered in-person as defined by relevant case law, including related service sessions that were not offered [] at all to students with disabilities, as described in their respective IEPs." (<u>Id.</u> at ¶ 62)

15.     He alleges that "Defendants do not possess adequate or detailed records to substantiate the Medicaid claims made on behalf of students with disabilities for the 2019-2020 and 2020-2021 school years."  (<u>Id.</u> at ¶ 65)

16.     He claims that "Defendants [] knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each [s]tudent's last-agreed-upon IEP, which required in-person services."  (Id. at ¶ 66)

17.     He alleges that "some of these sessions were not offered to students with disabilities."  (Ibid.)

18.     He believes "Defendants obtained [] consent from some parents on behalf of students with disabilities in order to obtain reimbursement for said services or alternatively, submitted said claims without consent."  (Id. at ¶ 67)

19.     He alleges that "Defendants did not change the rate at which related services were billed when offered by alternative means (i.e. telehealth, phone, etc.), and were billed at the same rate as in-person services at the full rate, while conferring no meaningful benefit to students with disabilities, as required by law."  (Id. at ¶ 68)

20.     He further alleges that "Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE."  (Id. at ¶ 72)

21.     He contends that "Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical,

educational, related, and otherwise) that were established fraudulently."  (<u>Id.</u> at ¶

73)

22.    He claims Defendants engaged in a "multi-faceted campaign of fraud against the

government" and "collected hundreds of millions of dollars, if not billions of

dollars, . . . causing direct injury to students with disabilities that had an IEP in

place for the 2019-2020 and 2020-2021 school years, in addition to the general

taxpayers."  (<u>Id.</u> at ¶ 74)

23.    He alleges that "Defendants [] submitted additional applications for IDEA funding

to the federal government with false assurances that Defendants were offering

FAPE to students with disabilities for school years 2019-2020, 2020-2021, and

2021-2022."  (<u>Id.</u> at ¶ 75)

**<u>Plaintiff-Relator's Claims against Defendants Loudoun County Public School
District and Scott A. Ziegler</u>**

24.    Plaintiff-Relator also alleges that Defendants Scott Ziegler and Loudoun County

School District perpetuated a fraud upon the State and federal governments when

they:

    a.  Knowingly presented, or caused to be presented, false or fraudulent claims
for payment or approval;

    b.  Knowingly made, used, or caused to be made or used, a false record or
statement material to a false or fraudulent claim;

    c.  Knowingly made, used, or caused to be made or used, a false record or
statement material to an obligation to pay or transmit money or property to
the Government, or knowingly concealed or knowingly and improperly
avoided or decreased an obligation to pay or transmit money or property to
the Government; and

    d.  Conspired to commit the above acts, all in violation of 31 U.S.C. §
3729(a)(1)(A), (B), (C) & (G).

(<u>Id.</u> at ¶ 192)

25.   He asserts that Defendants Scott Ziegler and Loudoun County School District violated VA Code Ann. §8.01-216.3, et seq.  (<u>Id.</u> at ¶ 193)

26.   He claims that Defendant Loudoun County School District failed to provide certain services and made a "false submission of reimbursement claims to Medicaid and fraudulent projection of students being [provided] services properly remotely."  (<u>Id.</u> at ¶ 194)

27.   He points to the IEP of T.A. as an example of Defendant's alleged conduct.  (<u>Id.</u> at ¶ 195)

28.   T.A.'s IEP indicates that the "school division does not have an obligation to make up missed services on days that the school division does not offer instruction due to pandemics, health emergencies, inclement weather, and other such reasons."  (<u>Id.</u> at ¶ 196)

29.   T.A.'s parents consented to release the student's information and bill Medicaid for services.  (<u>Id.</u> at ¶ 197)

30.   Plaintiff-Relator alleges that the District "did not reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures."  (<u>Id.</u> at ¶ 199)

31.   He further alleges that Defendants Scott Ziegler and Loudoun County School District billed for services that were recommended to be in person as opposed to remote.  (<u>Id.</u> at ¶ 200)  He contends that, therefore, any billing for remote services is inappropriate, violates "Medicaid billing restrictions," and is unlawful.  (<u>Ibid.</u>)

32.     He contends that Defendants Scott Ziegler and Loudoun County School District
        "failed to provide the students within its jurisdiction a FAPE by formulating IEPs
        with recommended related services to be offered to students with disabilities at
        physical site locations . . . and subsequently fail[ed] to provide the recommended
        related services as written."  (Id. at ¶ 202)

33.     He alleges that Defendants Scott Ziegler and Loudoun County School District
        "benefitted from their unlawful acts by collecting Medicaid reimbursement
        payments for services that were not offered in accordance with the IEP as written"
        and "remained complicit in the scheme to defraud."  (Id. at ¶¶ 203-04)

**Plaintiff-Relator's "False Certification Fraud" Claim**

34.     Plaintiff-Relator alleges that Defendants "knowingly made, used, or caused to be
        made and used, and presented, or caused to be presented, false and fraudulent
        claims for payment or approval in connect with the submission of claim for school-
        based services for students with disabilities."  (Id. at ¶ 281)

35.     According to Plaintiff-Relator, Defendants submitted "false claims" when its
        representatives made fraudulent representations that the IEPs they created were
        knowingly not in compliance with [the] IDEA and they could not implement these
        IEPs, thereby denying the students a FAPE.  (Id. at ¶¶ 270, 286, 291)  He alleges
        that Defendants also made fraudulent misrepresentations "when their service
        providers knowingly misrepresented that they were providing related services" in
        accordance with the IDEA and Medicaid regulations.  (Ibid.)

9

36.   Plaintiff-Relator asserts that these claims were "legally false" and Defendants knew they were in violation of federal regulations at the time they were submitted.  (Id. at ¶ 271)

37.   He believes "the federal and state government disbursed the money for said fraudulent claims because [] Defendants certified that they had complied with the relevant federal regulations."  (Id. at ¶ 271)

38.   Plaintiff-Relator asserts "Defendants individually conspired to commit a violation" of 31 § U.S.C. 3729(a)(1)(A), (B), and (G) and "Defendants have each committed at least one overt act in furtherance of their conspiracy."  (Id. at ¶¶ 296-97)

**Plaintiff-Relator's "Implied Certification Fraud" Claim**

39.   Plaintiff-Relator asserts that even where Defendants' representatives did not sign a form certifying compliance, Defendants violated the FCA because the very act of submitting the claim implies they affirmed that it was in compliance with the regulations.  (Id. at ¶ 273)

40.   Plaintiff-Relator alleges "Defendants who did not keep close track of log-ins and attendance data would be liable since school officials implicitly certified that they would keep their data current when they made the claim for public funds."  (Id. at ¶ 274)

41.   Plaintiff-Relator asserts Defendants are liable for "Worthless Services Fraud" because "the limited services they may have provided was so subpar as to be completely worthless."  (Id. at ¶ 276)

**Relief Sought by Plaintiff-Relator**

42.     The Complaint asserts the following causes of action:

    a.  Count One:  Violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(A) ("Presenting False Claims for Payment")

    b.  Count Two:  Violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(B) ("Use of False Statements")

    c.  Count Three:  Violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(G) ("Use of False Statements")

    d.  Count Four:  Violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(C) ("Conspiracy to Commit a Violation of the False Claims Act")

    e.  Count Five: Violation of the New York Claims Act, NYS Article 13 §187-194 (Amended 2018)

    f.  Count Six: Violation of the New York Claims Act, Administrative Code §§ 7-801 through 7-810

    g.  Count Seven:  Violation of New York Social Services Law, NY Soc. Services Law §366 et seq.

    h.  Count Eight:  Violation of New York Penal Law, NY Penal Code §175.05 (False Written Statements)

    i.  Count Nine:  Violation of New York Penal Law, NY Penal Code §176 et seq. (Insurance Fraud)

    j.  Count Ten:  Violation of New York Penal Law, NY Penal Code §177 (Health Care Fraud)

    k.  Count Eleven:  Violation of Massachusetts General Laws, Mass. General Laws Ch. 12, §5(B) et seq.

    l.  Count Twelve:  Violation of Connecticut General Laws, CT. Gen. Stat. §4-275 et seq.

    m.  Count Thirteen:  Violation of Illinois State Law(s), 740 ILCS §175 et seq.

    n.  Count Fourteen:  Violation of Virginia State Law(s), VA. Code Ann. §8.01-216.3 et seq.

11

      o.   Count Fifteen:  Violation of New Jersey State Law(s), N.J.S.A. §2A:32C-1 – 32C-18

      p.   Count Sixteen:  Violation of Texas State Law(s), Tex. Hum. Res. Code §36.002 et seq.

      q.   Count Seventeen:  Violation of California State Law(s), Cal. Gov. Code §12650-12656 et seq.

43.    Plaintiff-Relator requests the following relief:

      a.   An award of treble the United States' damages, in an amount to be determined at trial, and a statutory penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants;

      b.   An award of the relator's share pursuant to 31 U.S.C. §3730(d)(1) or (2);

      c.   An award of costs and attorney's fees pursuant to 31 U.S.C. §3730(d); and

      d.   Any other relief this Court deems just and proper.

44.    Defendants Loudoun County Public School District and Scott A. Ziegler hereby move for dismissal under Federal Rules of Civil Procedure 12(b)(1), (2) and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted.

**ARGUMENT**

**POINT ONE**

**THIS COURT HAS NO PERSONAL JURISDICTION OVER ANY DEFENDANT SITUATED OUTSIDE THE STATE OF NEW YORK**

Suing a slew of school districts across the country in the Southern District of New York is wholly improper, as the claims brought against each of them are similar but unrelated, demonstrating the impropriety of joinder and this Court's exercise of personal jurisdiction over any of the non-domiciliary Defendants.

"To exercise personal jurisdiction lawfully, three requirements must be met. 'First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles.'" Waldman v. Palestinian Liberation Organization, 835 F.3d 317, 327 (2d Cir. 2016) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012)).

The FCA authorizes nationwide service of process. See 31 U.S.C. § 3732(a) ("Any action . . . may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons . . . shall be issued by the appropriate district court and served at any place within or outside the United States."). Under Federal Rule of Civil Procedure 4(k)(1)(C), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by federal statute."

13

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . the minimum contacts inquiry and the reasonableness inquiry." Waldman, 835 F.3d at 331 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) and Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002)). "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction" and "the reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." Ibid. (citations omitted).

Plaintiff-Relator bears the burden of showing that this Court has personal jurisdiction over the Defendants. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted). In order to meet this burden, pleadings cannot rely on only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998). A court should assume the truth of all well-pleaded factual allegations that establish personal jurisdiction. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). However, it should "not draw 'argumentative inferences' in the plaintiff's favor."

Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (citation omitted).

Specific jurisdiction is available when defendant "has purposefully directed his activities at residents of the forum, and [] the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). General jurisdiction, in contrast, permits a court to adjudicate any cause of action against a defendant "when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive "as to render [it] essentially at home in the forum State."'" Waldman, 835 F.3d at 331 (quoting Daimler AG v. Bauman, 571 U.S. 117, 122 (2014)). An indulgent reading of the facts asserted in the Complaint establishes neither specific nor general jurisdiction over any of the non-domiciliary Defendants.

A federal court may exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Fed.R.Civ.P. 4(e). N.Y. C.P.L.R. §301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." In other words, "[a] non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985). In determining whether a defendant has engaged in "a continuous and systematic course of doing business in New York," courts have considered the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees in the state. Ibid.

N.Y. C.P.L.R. §302(a) authorizes long-arm jurisdiction over an out-of-state domiciliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. §302(a). "Thus, jurisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) *the cause of action arises out of the subject matter of the transacted business.*" Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006)(emphasis added).

The Complaint is devoid of any factual allegations sufficient to establish personal jurisdiction over any defendant situated outside New York. The section of the Complaint captioned "JURISDICTION AND VENUE" consists of five paragraphs that purport to invoke subject matter jurisdiction over the Plaintiffs' claims, but the Complaint makes no mention of personal jurisdiction. The "PARTIES" section of the Complaint states that Defendant Loudoun County Public School District operates within the jurisdiction of Loudoun County, Virginia." (See Complaint, ¶ 45) It also states that Defendant Scott A. Ziegler serves as the Superintendent of Defendant Loudoun County Public School District and was responsible for the oversight and management of the schools within the District

16

since the 2019-2020 school year.  (Id. at ¶ 46)  The alleged facts fall far short of the "constant and pervasive" contacts justifying the exercise of general jurisdiction.  Daimler, 571 U.S. at 122.  The contacts are insufficient to establish due process support for specific jurisdiction as well.  Plaintiff's own allegations highlight the fact that moving Defendants operate solely within Loudoun County, Virginia.

Although the False Claims Act provides that if one defendant can be "found" in a jurisdiction, venue is proper for all other defendants in the same action who are involved in the same false claims, see 31 U.S.C. § 3732, this does not mean that defendants accused of similar *but unrelated* conduct may be sued in the same district.  31 U.S.C. § 3732(a) does not permit the joinder in one case of multiple defendants involved in multiple, distinct and independent actions in a district where only one or two defendants are found.  Rather, 31 U.S.C. § 3732(a) governs only venue – not jurisdiction.  United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861, 865 (2d Cir. 1997); United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, 976 F. Supp. 207, 210 (S.D.N.Y. 1997).

Under Federal Rule of Civil Procedure 20(a)(2), joinder of multiple defendants is proper only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Relators must satisfy both requirements.  See United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist., 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014) (concluding that joinder

was improper where there were no allegations suggesting that the defendants could be held jointly or severally liable or that the relators' claims based on each defendants' submission of its own Medicaid bills constituted the same transaction, occurrence or series of occurrences) (citing <u>Deskovic v. City of Peekskill</u>, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)).

Here, the Complaint is wholly devoid of any factual allegations, which if proven true, would suggest that Defendants can be held jointly or severally liable for any allegedly false claim made by any other Defendant.  Further, Plaintiff-Relator's claims based on violations of the FCA and Virginia State law do not arise out of the "same transaction, occurrence, or series of transactions or occurrences."  He simply alleges that each Defendant submitted its own Medicaid bills for remote services provided to its own students.  Joinder is improper where, as here, "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way."  <u>Peterson v. Regina</u>, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013).  Therefore, Plaintiff-Relator is not entitled to joinder and his claims against each Defendant, including moving Defendants, must be severed.

Additionally, Plaintiff-Relator cannot establish that the Southern District of New York is the proper venue for any of the Defendants outside of the State of New York. According to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a district "in which a substantial part of the events or omissions giving rise to  the claim occurred."  A "substantial part" means that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in

18

original).  In the instant case, any allegedly fraudulent acts committed by the moving Defendants occurred in Loudoun County, Virginia.  Since all events giving rise to Plaintiff-Relator's claims against the moving Defendants occurred outside of the Southern District of New York, venue is inappropriate in this district.

As neither the Complaint nor any competent extraneous evidence establishes personal jurisdiction or venue, the Court should dismiss the Complaint against the moving defendants and all defendants who are not situated within the State of New York.

**POINT TWO**

**TRANSFERRING THE CLAIMS AGAINST THE MOVING
DEFENDANTS TO THE EASTERN DISTRICT OF
VIRGINIA WOULD NOT SERVE THE INTEREST OF
JUSTICE BECAUSE THE COMPLAINT FAILS TO STATE
A CLAIM ON WHICH RELIEF CAN BE GRANTED**

Once this Court severs the claims against each Defendant and holds that venue in the Southern District of New York is improper, it must determine whether transferring the claims to the Eastern District of Virginia would serve the "interest of justice." See 28 U.S.C. § 1406(a).  See also United States ex rel. Doe, 8 F. Supp. 3d at 345.  Since Plaintiff-Relator fails to state a claim upon which relief may be granted, the Court should not transfer the claims brought against the moving Defendants to the Eastern District of Virginia, but rather should dismiss them for failure to state a claim.

In ruling on a Rule 12(b)(6) motion, the Supreme Court has provided the following guidance:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).  When a plaintiff alleges fraud, those allegations must meet the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

20

A pleading that offers only "labels and conclusions" contains "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a <u>Rule</u> 12(b)(6) motion since it does not allow the court to reasonably infer the defendant is liable for the alleged misconduct.   <u>Ashcroft</u>, 556 U.S. at 678 (alteration in original) (citations omitted). Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth.  <u>Id.</u> at 678-79.

To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(A), a plaintiff must allege facts showing that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."  <u>United States ex rel. Mikes v. Straus</u>, 274 F.3d 687, 695 (2d Cir. 2001).

To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(B), a plaintiff must allege that the defendant "(1) created, used, or caused to be used, a record or statement; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government."  <u>United States ex rel. Taylor v. Gabelli</u>, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004).

To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(G), a plaintiff must allege that the defendant "(1) made a false statement or created and used a false record, (2) with knowledge of its falsity, (3) for the purpose of decreasing, concealing, or avoiding an obligation to pay the Government."  <u>Ibid.</u>

Finally, to state a claim based on violation of 31 U.S.C. § 3729(a)(1)(C), a plaintiff must allege "(1) an unlawful agreement by the defendant to violate the FCA, and (2) at least one overt act performed in furtherance of that agreement." <u>United States ex rel. Kester v. Novartis Pharm. Corp.</u>, 23 F. Supp. 3d 242, 268 (S.D.N.Y. 2014).  Thus, for each claim, Plaintiff-Relator must allege that Defendants made a false claim or statement to the government and that the Defendants knew that it was false.

"A claim is 'false or fraudulent' if it 'is aimed at extracting money the government otherwise would not have paid.'" <u>United States ex rel. Colucci v. Beth Israel Med. Ctr.</u>, 785 F. Supp. 2d 303, 310 (S.D.N.Y. 2011) (quoting <u>Mikes</u>, 274 F.3d at 696).  Plaintiff-Relator alleges that the moving Defendants submitted "legally false" claims.  (<u>See</u> Complaint, ¶ 271)  "A claim is 'legally false' if it rests on a false representation of compliance with an applicable federal statute, regulation, or contractual term." <u>United States ex rel. Doe</u>, 8 F. Supp. 3d at 346 (citing <u>Mikes</u>, 274 F.3d at 696).  The representation can be made under either an express or implied certification. <u>Ibid.</u>  An expressly false claim "falsely certifies compliance with a particular statute, regulation or contractual term," whereas "[a]n implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." <u>Ibid.</u>  Plaintiff-Relator alleges that Defendants made an expressly false claim and an implied false certification claim.  (<u>See</u> Complaint, ¶¶ 271, 273)

In addition to alleging that the defendant made a false claim or statement to the government, a plaintiff must establish that the defendant "acted 'knowingly' in presenting or causing to present a false claim for payment, or making or using a false record, or to

avoid an obligation to pay." <u>States ex rel. Doe</u>, 8 F. Supp. 3d at 346.  <u>See</u> 31 U.S.C. §
3729(a)(1)(A), (a)(1)(B)), & (a)(1)(G).  The FCA defines "knowing" and "knowingly" to
"mean that a person, with respect to information—(i) has actual knowledge of the
information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or
(iii) acts in reckless disregard of the truth or falsity of the information."  <u>Id.</u> § 3729(b)(1).

Here, Plaintiff-Relator simply recites the elements required to state a claim under
31 U.S.C. § 3729(a)(1)(A), (B) and (G) without providing any factual allegations, which if
proven true, suggest that Defendants made a false claim or statement to the government
and that they knew it was false.  For example, he alleges that the moving Defendants
"engaged in fraudulent conduct by extracting from the State and Federal Governments,
hundreds of millions of dollars in payments when they . . . knowingly presented, or caused
to be presented, false or fraudulent claims for payment or approval; knowingly made, used,
or caused to be made or used, a false record or statement material to a false or fraudulent
claim; knowingly made, used, or caused to be made or used, a false record or statement
material to an obligation to pay or transmit money or property to the Government, or
knowingly concealed or knowingly and improperly avoided or decreased an obligation to
pay or transmit money or property to the Government; and conspired to commit the above
acts, all in violation of 31 U.S.C. §3729(a)(1)(A), (B), (C) and (G).  (<u>See</u> Complaint, ¶ 192)
He does nothing more than repeat language used in the statute itself.

The Second Amended Complaint contends that the moving Defendants violated
Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 because they
"billed for services that were ***recommended*** to be in person as opposed to remote" but
failed to offer those services in person.  (<u>See</u> Complaint, ¶¶ 200-03-emphasis added)

Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 simply amends Section 1903 of the Social Security Act by adding the following subsection:

> (c) Nothing in this title shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a handicapped child because such services are included in the child's individualized education program established pursuant to part B of the Education of the Handicapped Act or furnished to a handicapped infant or toddler because such services are included in the child's individualized family service plan adopted pursuant to part H of such Act.

This provision does not speak to billing procedures to be used for services that were recommended to take place in person as opposed to remotely. Thus, Plaintiff-Relator fails to make any factual allegations suggesting the moving Defendants made any false claims by collecting Medicaid reimbursement payments for services that were not offered in person. In fact, the IEP Plaintiff-Relator relies on as an example – to which the parents allegedly consented - expressly indicates that the services could be designated for in person or a remote location, based on the school division's ability. (See Complaint, ¶ 196)

To the extent Plaintiff-Relator claims that the moving Defendants made fraudulent claims based on their failure "to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently failing to provide the recommended related services as written," he fails to provide factual allegations, which if proven true, would suggest that by providing services remotely to any child residing within

24

its boundaries, any school district denied any student in its jurisdiction a FAPE, and in turn, thereby made false claims for Medicaid reimbursement.[1]

The IDEA provides States with federal funds to assist in educating children with disabilities. In exchange for the funds, the State pledges to provide a handicapped student with a FAPE, which consists of special education and related services. 20 U.S.C. §1412(a)(1).  Special education is instruction designed to meet the *unique* needs of a child with a disability, while related services are the support services required to assist a child to benefit from the instruction. 20 U.S.C. §1401.

While Congress did not define "appropriate public education," the U.S. Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide a meaningful educational benefit to the **individual child**." Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 192 (1982) (emphasis added).   This requirement is satisfied if the child's IEP sets out an educational program that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  See Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist., 580 U.S. ___, 137 S. Ct. 988, 999 (2017).

The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. Rowley, at 207; Douglas, at 999.  The Act contemplates that this fact-intensive exercise

---

[1] Indeed, the law firm founded by Plaintiff-Relator Donohue, "Brain Injury Rights Group," has filed a separate lawsuit in the Western District of Virginia, captioned Bills v. Virginia Department of Education et al., Civ. Action No. 6:21-00051 (NKM), seeking a determination that the Loudoun County School Board and its Superintendent violated the IDEA by depriving all of its classified students, including lead plaintiff T.A., of an appropriate public education. (ECF Document No. 1)

will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians.  <u>Rowley</u>, 458 U.S. at 208-209; <u>Douglas</u>, 137 S. Ct. at 999. <u>See</u> <u>J.R. ex rel. S.R. v. Bd. of Educ.</u>, 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004); <u>Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.</u>, 993 F.2d 1031, 1040 (3d Cir. 1993) ("[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date.")

Because an IEP "is judged prospectively[,] . . . any lack of progress under a particular IEP, assuming *arguendo* that there was no progress, does not render that IEP inappropriate." <u>Carlisle Area Sch. Dist. v. Scott P.</u>, 62 F.3d 520, 530 (3d Cir.1995).  "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."  <u>Douglas</u>, 137 S. Ct. at 1001.

The student's IEP, a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, lays out the special education and related services that are **tailored to the unique needs of that specific student**.  <u>Douglas</u> 137 S. Ct. at 994. For instance, the IEP must contain a "statement of the child's present levels of academic achievement and functional performance," and a description of "how the child's disability affects the child's involvement and progress in the general education curriculum," along with "measurable annual goals, including academic and functional goals," and a "description of how the child's progress toward meeting those goals" will be measured.  20 U.S.C. §1414(d)(1)(A)(i)(I)-(III).  The special education and related services laid out in the IEP must be designed for the child to "advance appropriately toward attaining the annual goals" and, to the extent possible, "be involved in and make progress in the general education curriculum."  <u>Id.</u> at §§1414(d)(1)(A)(i)(IV).

The Act does not require school districts to maximize a student's potential, or provide educational opportunities substantially equal to the opportunities afforded children without disabilities, but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. Rowley, 458 U.S. at 197-201; Douglas, 137 S. Ct. at 1001. The Third Circuit has interpreted this "basic floor" to be an education which offers the student an opportunity for meaningful learning, taking into account the child's potential. Reyes v. N.Y.C. Dep't of Educ., 760 F.3d 211, 221 (2d Cir. 2014); Ridgewood Bd. of Educ. v. N.E. ex rel. ME., 172 F.3d 238, 247 (3d Cir. 1999); Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 185 (3d Cir. 1988) (providing that a satisfactory IEP requires "conferring of a "meaningful benefit," and must be gauged in relation to the child's potential). In other words, "the educational program "'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'" K.D. by & through Dunn v. Downingtown Area Sch. Dist., 904 F.3d 248, 254 (3d Cir. 2018). It must likely produce progress, rather than regression or trivial educational benefit. Ibid.

The Second Circuit's interpretation of the Supreme Court's decision in Rowley was validated by the U.S. Supreme Court in Endrew F, which acknowledged that "the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." Rowley, 458 U.S. at 202. For that reason, the Supreme Court in Douglas refrained from elaborating what 'appropriate progress will look like from case to case, except to say that it must be more than de minimis. Douglas, 137 S. Ct. at 1001. Instead, it recognized the expertise and

27

exercise of judgment held by school authorities in determining what "appropriate" progress resembles.  Ibid.

In the instant case, there are no allegations set forth in the Complaint which, if true, would support a finding that any of the students residing within Loudoun County Public School District suffered a substantive educational deprivation as a result of remote instruction and services such that they were denied a FAPE.  Nowhere does the Complaint describe a single IEP benefit that a single child residing within the District did not receive on account of remote instruction and services.   Even when read indulgently, the Complaint does not assert any facts sufficient to support a finding that any of the students residing within Loudoun County Public School District failed to receive a FAPE on account of receiving special education services remotely, such that it would render the District's Medicaid reimbursement claims based on the rendering of those remote services fraudulent.

Nor does the Complaint allege facts sufficient to support a determination that any of the students residing within the District was denied educational services comparable to those set forth in their IEPs following the closure of school buildings in the wake of the COVID-19 pandemic.  This is what the IDEA requires when the precise program described in the IEP becomes unavailable.  Knight v. Dist. of Columbia, 877 F.2d 1025, 1029 (D.C. Cir. 1989); McKenzie v. Smith, 771 F.2d 1527, 1533 (D.C. Cir. 1985).  See also Lunceford v. Dist. of Columbia Bd. of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984)(a parent moving for a stay-put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement.") (Bd. of Educ. of Cmty High Sch. Dist. No.

28

218, 103 F.3d at 548 (although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP."); Tilton v. Jefferson Cty. Bd. of Educ., 705 F.2d 800, 804 (6th Cir. 1983), cert. denied, 465 U.S. 1006 (1984) (transfer from one school to another school with comparable program is not a change in educational placement); Spilsbury v. Dist. of Columbia, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004) (explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs' and that the term "cannot be read to only indicate which physical school building a child attends").

The broad and conclusory allegations contained in the Complaint are simply insufficient to give rise to a plausible inference that the moving Defendants knowingly submitted false claims for Medicaid reimbursement and/or IDEA funding to the federal government based on special education services provided remotely.

Finally, as to Plaintiff-Relator's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), his Complaint is entirely devoid of any allegations that the moving Defendants entered into an unlawful agreement.  See United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 27 (2d Cir. 2016) (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government").  As such, his claim fails to satisfy the Rule 9(b)'s particularity standard. Plaintiff's conspiracy claim also fails because Plaintiff has failed to adequately allege underlying violations of the FCA under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

## **CONCLUSION**

While the Complaint should be dismissed on jurisdictional grounds, it should not be transferred to the Eastern District of Virginia because application of <u>Rule</u> 12(b)(6) and the particularity standard of <u>Rule</u> 9(b) require dismissal of the Complaint for failure to state a cognizable claim.  The Loudoun County School Board and Scott A. Ziegler therefore request that this Court dismiss with prejudice all claims against them.


**METHFESSEL & WERBEL, ESQS.**
Attorneys for Loudoun County Public
School District and Scott A. Ziegler


By:_____
Eric L. Harrison ID 033381993


DATED:        NEW YORK, NEW YORK
December 27, 2021

30