UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
United States of America and States of the United States,
ex rel. Patrick Donohue,

Plaintiffs,

-against- **1:20–CV–5396 (GHW)**

**RICHARD CARRANZA**, in his official capacity as the former Chancellor of New York City Department of Education, *et al*

Defendants.
--------------------------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO DEFENDANT(s) LOUDOUN COUNTY PUBLIC SCHOOLS AND SCOTT A. ZIEGLER'S MOTION TO DISMISS**

Respectfully Submitted,

/s/ Patrick B. Donohue
**PATRICK B. DONOHUE, ESQ.**
*RELATOR*
55W 116th Street—Suite 159
New York, New York 10026
Patrick@pabilaw.com

**CASES**

Aerotel, Ltd. v. Sprint Corp., 100 F. Supp.2d 189 (S.D.N.Y. 2000) ........ 12

Arista Records, LLC. v. Doe, 604 F.3d 110 (2d Cir. 2010) ........ 15

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........ 4

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........ 4

Capitol Records, LLC v. VideoEgg, Inc. 611 F.Supp.2d 349 (S.D.N.Y. 2009) ........ 11

Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549 (S.D.N.Y. 2000) ........ 11

Columbus McKinnon Corp. v. SST Casting, Inc., No. 08-cv-167, 2009 U.S. Dist. LEXIS 47609, 2009 WL 1563922, at *6 (W.D.N.Y. 2009) ........ 11

In re Manville Forest Prods., 896 F.2d 1384, 1391 (2d Cir. 1990) ........ 12

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694 ........ 7

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) ........ 7

Joseph F. o/b/ minor Endrew F. v. Douglas Cty. Sch. Dist., 137 S. Ct. 988 (2017) ........ 12

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL ("Licci I") 673 F.3d 50 (2d Cir. 2012) ........ 8

Mooney v. Americare, Inc., No. 06-cv-1806, 2013 WL 1346022, at *3 (E.D.N.Y. 2013) ........ 15

N.Y. Marine & Gen. Ins. v. Lafarge N. Am., Inc., 599 F.3d 102 (2d Cir. 2010) ........ 11

Sch. Comm. Of Burlington v. Dep't of Educ., 471 U.S. 359 (1985) ........ 13

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100 (2d Cir. 2006) ........ 11

U.S. ex rel Bilotta v. Noartis Pharm. Corp., 50 F. Supp. 3d 497 (S.D.N.Y. 2014) ........ 14

U.S. ex rel. Polanski v. Pfizer, Inc., No. 04-cv-0704; 2009 U.S. Dist. LEXIS 43428; 2009 WL 1456582, at *4 (E.D.N.Y. 2009) ........ 14

United States er rel. Ladas v. Exelis, Inc., 824 F.3d 16 (2d. 2016) ........ 14

United States ex rel. Lee v. N. Adult Day Heath Care Ctr., 205 F.Supp.3d 276 (2016) ........ 14

United States ex rel. Lindenthal v. General Dynamics Corp., 61 F.3d 1402 (9th Cir. 1995) ........ 5

United States ex rel. Mikes v. Straus, 274 F.3d 687 (2d Cir. 2001) ........ 2

United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861 (2d Cir. 1997) ........ 5, 6, 7

United States v. Bank of N.Y. Mellon, 941 F.Supp.2d 438 (S.D.N.Y. 2013) ........ 14

United States v. Morton, 467 U.S. 822 (1984) ........ 7

United States v. Wells Fargo Bank, N.A., 972 F.Supp.2d 593 (S.D.N.Y. 2013) ........ 14

Waldman v. Palestinian Liberation Organization, 835 F.3d 317 (2d Cir. 2016) ........ 8

Wexner v. First Manhattan Co., 902 F.2d 169 (2d Cir. 1990) ........ 15

**STATUTES**

20 U.S.C.S. §1400, et seq ........................................................ 1
28 U.S.C. § 1331 ........................................................ 5
28 U.S.C. § 1391 ........................................................ 6
28 U.S.C. §1404(a) ........................................................ 11
31 U.S.C. §3729(a)(1)(C) ........................................................ 13
31 U.S.C. §3729-3733, et seq ........................................................ 2
31 U.S.C.S. §3732 ........................................................ 6
42 U.S.C. §1396(b)(c) ........................................................ 1
Rule 12(b)(6) ........................................................ 4
Va. Code Ann. §8.01-216.3 ........................................................ 2

# TABLE OF CONTENTS

*INTRODUCTION* .......... *1*

*LEGAL STANDARD* .......... *4*

*POINT I* .......... *5*

*THIS COURT HAS PROPER JURISDICTION OVER ALL NAMED DEFENDANTS* .......... *5*

Subject Matter Jurisdiction .......... 5

Personal Jurisdiction .......... 7

The Colorado River Doctrine .......... 10

*POINT II* .......... *11*

*SHOULD THIS COURT FIND THAT JURISDICTION IS IMPROPER, TRANSFER OF THIS CASE—WITH REGARD TO THE MOVANT DEFENDANTS—WOULD BE IMPROPER* .......... *11*

*POINT III* .......... *12*

*DEFENDANTS UNNECESSARILY COMPLICATE PLAINTIFF RELATOR'S CLAIMS* .......... *12*

*POINT IV* .......... *13*

*CLAIMS UNDER 31 U.S.C. §3729(a)(1)(C)* .......... *13*

*CONCLUSION* .......... *15*

# INTRODUCTION

Plaintiff Relator Donohue respectfully submits the foregoing in opposition to Defendants' LOUDOUN COUNTY PUBLIC SCHOOLS and SCOTT A. ZIEGLER's Motion to Dismiss pursuant to Rule 12(b)(1), (2), and (6), for lack of subject-matter jurisdiction, personal jurisdiction, and failure to state a claim upon which relief can be granted, respectively.

The claims within the Complaint are predicated on the submission of false Medicaid claims and the application for IDEA Part B funds. Each year, Defendants submitted an application for IDEA Part B funds, in which they assured the federal government that they were providing, and will continue to provide, a FAPE to those students with disabilities under the the Individuals with Disabilities Act ("IDEA", 20 U.S.C.S. §1400, *et seq.*). Under the IDEA, School Districts are entitled to submit claims to Medicaid for those students with disabilities who require a "medical" component to their education (*i.e.,* nurses, behavioral paraprofessionals, Physical Therapy, Occupational Therapy, Vision Therapy, Hearing Therapy, Speech-Language Therapy, etc.)(hereinafter referred to as "related services," collectively).[1] These services can be billed on a "Fee-for-Service" basis, a School-Based Administrative Claiming (SBAC) quarterly basis, or a Cost-Reconciliation (or Cost-Settlement) basis. In order to be compensated, a claim must be submitted that the service was rendered in accordance with the subject student's IEP. 42 U.S.C. §1396(b)(c), Section 1903(c) (which allows Medicaid to pay for coverable Medicaid services for children ***that are included in an IEP or Individualized Family Service Plan (IFSP) under the IDEA***.)[2] (emphasis added).

---

[1] *See* https://www.macpac.gov/wp-content/uploads/2018/04/Medicaid-in-Schools.pdf

[2] Medicaid Billing Guidelines can be found here: https://www.cms.gov/research-statistics-data-and-systems/computer-data-and-systems/medicaidbudgetexpendsystem/downloads/schoolhealthsvcs.pdf

Beginning in March 2020, Defendant Loudoun County Public Schools closed the doors of their schools and transitioned to a remote online learning platform. During remote learning, Plaintiff Relator learned that Defendants herein were submitting Medicaid claims for services rendered remotely (contrary to the terms of the students' IEPs, as no "remote" IEPs were formulated by the district), and for services that did not occur or otherwise conferred no meaningful benefit to the student, as required by Medicaid.

Relator Donohue initiated this action alleging *inter alia* that above-named Defendants violated the federal False Claims Act ("FCA") (31 U.S.C. §3729-3733, *et seq.*), as well as corresponding state false claim statutes, including VA. CODE ANN. §8.01-216.3 *et seq.* In an action under the FCA, there are three (3) theories of liability:

> (1) a factually false theory, under which a claim for payment is made to the government seeking payment for services that were never actually provided or for which the description of the goods or services provided is incorrect; (2) an express false legal certification theory, where a claim for payment of federal funds falsely certifies compliance with a statute or regulation that must be complied with before payment can be made; and (3) an implied false legal certification theory, where, although the claim for payment does not certify compliance with a statute or regulation on its face, compliance is a prerequisite to payment under the express statutory or regulatory terms.
>
> *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 696-700 (2d Cir. 2001).

Plaintiff Relator alleged that Defendants LOUDOUN COUNTY PUBLIC SCHOOLS and SCOTT A. ZIEGLER committed acts violating the FCA and its related state statutes, as Defendants billed Medicaid for services rendered inappropriately and directly contrary to the terms of many, if not all, students' IEPs. *See*, Complaint ¶194. Specifically, Plaintiff Relator used the example the IEP of T.A., a student with multiple disabilities in attendance at Loudoun County Public Schools to illustrate one example of how Defendants defrauded Medicaid and the federal government by knowingly submitting claims for services that were not rendered in accordance with then-current IEPs. *See* **COMPLAINT EXHIBIT 16**.

T.A. is a twenty-one (21) year old young man diagnosed with Multiple Disabilities (Autism, Intellectual Disability, and other Health Impairment). *Id.*, p. 5. His IEP notes that his "adaptive skills were found to be in the extremely low range, broad areas of adaptive skills include the following: communication; independent skills; personal care skills; and employment skills. . . At the time of evaluation, [T.A.] was an emerging communicator who uses one to two-word verbal approximation, gestures, and point, occasionally paired with visual representation or parent provided a device to communicate his wants and needs." *Id.* T.A. represents one of the many students with disabilities within Defendant's school districts that require a combination of services; in the example of T.A., he receives a Speech-Language consult once a week for ten (10) minutes; Speech-Language therapy four times a week for fifteen (15) minutes; and an Occupational Therapy consult once a week for fifteen (15) minutes. *See*, **COMPLAINT EXHIBIT 16**, p. 13. The last page of T.A.'s IEP indicates that his parents consented to Defendants submitting claims to Medicaid for those services rendered to T.A. at school. Given the constraints of the COVID-19 pandemic, Defendants attempted to offer services to those students with disabilities via telehealth or otherwise outside of a classroom.

Per the Center for Medicare & Medicaid Services (CMS) Guidelines:

> "States are not required to submit a state plan amendment (SPA) to pay for services delivered via telehealth if payments for services furnished via telehealth are made in the same manner as when the service is furnished in a face-to-face setting. States may submit a coverage SPA to describe services delivered via telehealth. A state would need an approved state plan payment methodology (and thus, need to submit a SPA) to establish rates or payment methodologies for telehealth services that differ from those applicable for the same service furnished in a face-to-face setting."[3]

Plaintiff Relator alleges that Defendants LOUDOUN COUNTY PUBLIC SCHOOLS and SCOTT A. ZIEGLER, in his official capacity as Superintendent, failed to adjust the rates at which

[3] https://www.medicaid.gov/medicaid/benefits/downloads/medicaid-chip-telehealth-toolkit.pdf

Medicaid was billed for services such related services, and billed for sessions in which the student was not in attendance. Again, following the example of T.A., his IEP highlights:

> "[T.A.] has participated in Distance Learning with the assistance of his parents. He will wave to the class when he is prompted and utter single words to say hello, yes/no responses, and colors. He is not able to stay for the entire class. He will close the computer and rejoin later in the block or later in the day. [T.A.] starts class in one area (kitchen, bedroom, family) and eventually gets up and walks around. He is often not in front of the computer."

*Id.* at p. 6.

Plaintiff Relator alleges that Defendants LOUDOUN COUNTY PUBLIC SCHOOLS and SCOTT A. ZIEGLER, in his official capacity as Superintendent, submitted and/or authorized to be submitted, fraudulent Medicaid claims that implicitly required the service to be offered in accordance with the IEP in order to be properly reimbursed. During the COVID-19 pandemic, Medicaid did not offer a waiver for this requirement.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of the complaint, they must be supported factual allegation." *Id.* at 679.

**POINT I**

**THIS COURT HAS PROPER JURISDICTION OVER ALL NAMED DEFENDANTS**

***Subject Matter Jurisdiction***

As a general matter in the federal judicial system, the concepts of subject matter jurisdiction, personal jurisdiction, and venue address different concerns limiting the authority of a court to entertain a given case. *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 862 (2d Cir. 1997). Generally, subject matter jurisdiction is concerned with the kinds of cases the federal district courts are empowered to decide. *See, e.g., United States v. Morton*, 467 U.S. 822, 828 (1984) ("Subject-matter jurisdiction defines the court's authority to hear a given type of case . . . ).

Title 28, § 1331 gives the district courts subject matter jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition, the district courts are given subject matter jurisdiction, "except as otherwise provided by Act of Congress," of all "civil actions, suits or proceedings commenced by the United States." *Id.* § 1345. Under either § 1331 or § 1345, the district court had subject matter jurisdiction of the federal claims asserted in the present action. *Thistlethwaite*, 110 F.3d at 868 (2d Cir. 1997). *See, e.g., United States ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1405 (9th Cir. 1995) (noting that "the district court had federal question jurisdiction under 28 U.S.C. § 1331" for an action under the FCA), *cert. denied,* 134 L. Ed. 2d 472, 116 S. Ct. 1319 (1996).

The subject matter jurisdiction provisions of Title 28 having broadest application are those granting the district courts power to entertain cases based on federal questions, *see* 28 U.S.C. § 1331, and to entertain cases between citizens of diverse states, *see Id.* § 1332. Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Section 1332 provides

generally that "the district courts shall have original jurisdiction" of civil actions where the amount in controversy exceeds a certain sum and the parties are not citizens of the same state. *Id.* § 1332. These provisions specify that the district courts have "jurisdiction" to decide the types of cases specified therein.

In contrast, the general federal venue provisions set out in 28 U.S.C. § 1391 specify the principal types of cases over which the district courts have subject matter jurisdiction: the "judicial district[s]" in which an "action . . . may . . . be brought." *Id.* §§ 1391 (a), (b), (e), (f).

Subsection (b), for example, provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b).

The venue provisions do not confer or deny jurisdiction; they assume that the court in question has subject matter jurisdiction, and they simply limit the locations in which the action may be brought. Plaintiff Relator brings his claims under False Claims Act, including but not limited to 31 U.S.C.S. §3732. Case precedent in this jurisdiction is clear; §3732(a) "does not address subject matter jurisdiction," and only governs personal jurisdiction and venue. *Thistlethwaite*, *supra* at 863.

Section 3730, referred to in § 3732(a), deals principally with the rights of private persons to sue on behalf of themselves and on behalf of the government to recover for false claims for payment presented to employees of the government or the armed forces. *Id.* at 865.

As held by the Court in *Thistlethwaite*:

> "the first sentence of § 3732(a), by its terms, limits the districts in which an FCA claim "may be brought" and is concerned principally with the location in which an action under § 3730 may be commenced. Unlike Title 28's general jurisdictional provisions and the jurisdictional provision in § 27 of the Securities Exchange Act, discussed in Part II.A. above, the first sentence of § 3732(a) does not mention "jurisdiction." Rather, like 28 U.S.C. § 1391, § 12 of the Clayton Act, and the bulk of § 27 of the Securities Exchange Act, the first sentence of § 3732(a) is a provision of the kind that typically governs only venue." *Id.*

Thus §3732(a) was meant to operate as a long-arm statute, which governs personal jurisdiction, and not subject matter jurisdiction. *Thistlethwaite,* at 868.

In general, substantive federal statutes need not specify the district courts' subject matter jurisdiction to entertain a claim thereunder, for such jurisdiction is conferred by § 1331's generic provision for jurisdiction over claims under the "laws . . . of the United States."

As set forth herein, this Court has proper personal jurisdiction and venue for the instant action.

***Personal Jurisdiction***

Personal jurisdiction is principally concerns with the relationship of a given defendant to the particular geographic area in which a case is brought. *Thistlethwaite*, *supra* at 864. *See also*, *United States v. Morton*, 467 U.S. 822, 828 (1984). Limitations on personal jurisdiction "protect the individual interest that is implicated when a nonresident defendant is haled into a distant and possible inconvenient forum." *Morton*, at 828; *see also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-703, and n. 10 (1982).

Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction; the minimum contacts inquiry and the reasonableness inquiry. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945). "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction and the

reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *Waldman v. Palestinian Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016).

Even in the "absence of the systematic presence needed for "doing business" jurisdiction, a plaintiff may properly assert specific jurisdiction based on its "transacting business" in New York—*i.e.*, where a defendant, itself "or through an agent . . . transacts any business within the state, so long as the plaintiff's 'cause of action arise[s] from' that transact[ion].'" *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*"Licci I"*) 673 F.3d 50, 60 (2d Cir. 2012).

Contrary to Defendants' claims, Loudoun County Virginia does extensive business with New York State, and more specifically, in New York City. Loudoun County uses The Depository Trust Company ("DTC"), a New York Corporation bound by New York State banking laws, located at 55 Water Street, 1SL, New York, New York 10041as custodian of its bonds, securities, and otherwise. The Depository Trust Company currently holds the bonds and securities of Defendant LOUDOUN COUNTY PUBLIC SCHOOLS.[4] DTC's nominee, Cede & Co, another New York City company, presumably oversees and manages Defendants' security investments. DTC also held the bonds and securities for Loudoun County in 2020.[5] Plaintiff Relator has knowledge that Defendants do not list a separate line item in public financial reports, and therefore likely includes Medicaid reimbursement under "Federal Revenue", if not revenue of the General Fund. Plaintiff Relator alleges in good faith that the payments made as a direct result of Defendants' fraudulent conduct are, in whole or in part, held at DTC in the form of securities.

---

[4] A copy of the agreement can be found at:
https://loudoun.granicus.com/MetaViewer.php?view_id=77&clip_id=6304&meta_id=177562

[5] https://loudoun.granicus.com/MetaViewer.php?view_id=77&event_id=2765&meta_id=181801

Plaintiff Relator has no knowledge that DTC knew of the source of the funds and thus did not name them as a party to the instant action.

Additionally, Defendants engaged Moody's Investors Services, Inc., Standard and Poor (S&P), and Fitch Credit Rating Services in order to affirm their bond ratings. All three companies have offices in New York City. Moody's Investor Services, Inc. has a principal place of business located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007. Fitch Credit Rating Services has a principal place of business located at 33 Whitehall Street, New York, New York 10004. S&P Global has a principal place of business located at 55 Water Street, New York, New York, 10041.

Defendants LCPS and Zeigler also utilize PMA Companies, located at 222 Bloomingdale Road, White Plains, New York 10605 as the administrator for the workers' compensation self-insurance fund.

Thus, Defendants have had and continue to maintain significant contacts with the State of New York, making it an appropriate venue. "[T]hese New York contacts are not incidental. The entire structure of the Transaction was purposeful and necessarily involved New York-based connections, including the use of New York's capital markets, legal and banking systems, and laws." *Matter of Renren Inc. Derivative Litig. v. XXX,* 2020 N.Y. Slip Op. 50588(U) (New York County Supreme Court).

As set forth more fully in Point II, Defendants have failed to provide adequate reasoning for this matter's transfer, with regard to the moving Defendants herein, to the Eastern District of Virginia would be appropriate. At this time, Defendants have not had to physically appear before the Court, and with the surge of the Omicron variant, in-person appearances are less likely. Few witnesses, if any, would be called for testimony. Defendants also fail to cite any necessity for

convenience that would warrant a transfer of this case. The case before this Court is primarily based on paperwork, or lack thereof. However, further discovery is necessary to ascertain the finer details (*i.e.* amounts, number of students affected, etc.) of Defendants' fraud.

**The *Colorado River* Doctrine**

Although transfer to a concurrent jurisdiction may be proper, the Supreme Court set forth that in exceptional circumstances, a district court could dismiss an action if "considerations of wise judicial administration" warranted it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "Emphasizing the 'virtually unflagging obligation' of the district courts to exercise the jurisdiction given them, the Court enumerated three facts for a federal court to consider in assessing the appropriateness of dismissal where concurrent jurisdiction exists: (1) the inconvenience of federal forum; (2) the desirability of avoiding piecemeal litigation; and (3) the order in which jurisdiction was obtained by the concurrent forums." *W.J. Nolan & Co. v. Midway Fed. Credit Union*, 913 F. Supp. 806 (S.D.N.Y. 1996), citing *Colorado River,* 424 U.S. at 818. The Southern District has addressed Loudoun County in its courtroom before. In *W.J. Nolan & Co. v. Midway Fed. Credit Union*, the Court held: "In this case, the inconvenience of the forum is a relative matter. Petitioners are located in New York; respondent is not. ***Therefore the Southern District of New York is no more inconvenient for respondent than Loudoun County Virginia is for petitioner*.**" 913 F. Supp. 806, 807 (1996) (emphasis added). Although Plaintiff Relator maintains that jurisdiction before this Court is appropriate, he acknowledges the concurrent federal jurisdiction of the Eastern District of Virginia. However, as opined by Judge Motley, the Eastern District of Virginia is no more convenient for Plaintiff Relator.

## POINT II

## SHOULD THIS COURT FIND THAT JURISDICTION IS IMPROPER, TRANSFER OF THIS CASE—WITH REGARD TO THE MOVANT DEFENDANTS—WOULD BE IMPROPER

A court is permitted to transfer a case to any other district where venue is proper, "for the convenience of the parties and witnesses [and] in the interest of justice." *See* 28 U.S.C. §1404(a). When considering a motion to change venue, a court must consider: (1) whether the proposed district is one where the action might have been brought; and (2) whether the transfer promotes convenience and justice." *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006). The burden lies with the moving party, and it is well established that "a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors [defendant's] choice." *Columbus McKinnon Corp. v. SST Casting, Inc.,* No. 08-cv-167, 2009 U.S. Dist. LEXIS 47609, 2009 WL 1563922, at *6 (W.D.N.Y. 2009), citing *Capitol Records, LLC v. VideoEgg, Inc.* 611 F.Supp.2d 349 (S.D.N.Y. 2009).

Whether the transfer promotes convenience is based on the following seven factors set forth by the Second Circuit: "(1) the plaintiffs' choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 112 (2d Cir. 2010). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000).

Here, Plaintiff Relator makes claims with regard to Medicaid claims and IDEA Part B funds made by Defendants in violation of the FCA and corresponding State statute. There will

likely be few witnesses, if any, to be called; any claims submitted that do not align with provider logs or students' IEPs would be considered fraudulent. Thus, this case is based primarily in documentation, or lack thereof. Defendants should be able to easily produce records; if they are unable to do so, they could request same from Medicaid and forward to Plaintiff Relator. Defendants have not yet been called to physically appear before the Court, and in light of the increasing cases of COVID-19 cases (Omicron variant), it remains unclear if the Parties will have to physically appear. Ultimately, the decision whether to transfer venue is at the discretion of the court. *See In re Manville Forest Prods.,* 896 F.2d 1384, 1391 (2d Cir. 1990). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," *Aerotel, Ltd. v. Sprint Corp.,* 100 F. Supp.2d 189, 197 (S.D.N.Y. 2000).

As set forth herein, Plaintiff Relator maintains that this Court has competent jurisdiction over the instant matter.

## POINT III
## DEFENDANTS UNNECESSARILY COMPLICATE PLAINTIFF RELATOR'S CLAIMS

Defendants make confusing arguments that imply the Court's need to determine whether remote learning was appropriate for students with disabilities. While remote learning is an *aspect* of Plaintiff Relator's claim, that aspect comes into play when determining if Defendants' reimbursement claims were appropriate under the Medicaid guidelines in place during remote learning.

Defendants recite the law appropriately; a Student's IEP is a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, and serves to lay out the special education and related services that are tailored to the unique needs of that specific student." *Joseph F. o/b/ minor Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 994 (2017). Defendants seemingly make the argument that because its district offered its students a FAPE during the time

period in question, then *de facto* each Medicaid reimbursement claim was proper. This is a bold assertion, yet unavailing.

Plaintiff Relator's claims stem from ***Medicaid reimbursements*** for services provided in accordance with each Students' IEPs. Thus, the inquiry could be resolved by examination of the reimbursement claims made, the provider logs (which would substantiate the service session provided), implemented remote service plans/IEPs, and the Medicaid billing guidelines for school-based services that in place during the remote-learning period. As long as the guidelines were adhered to, Defendants need not worry.

Defendants also pose complicated arguments about whether or not remote learning had an impact on the school districts' ability to offer the students with disabilities a FAPE during the time period in question. As set forth in *Sch. Comm. Of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985), the District has the burden of showing that it provided a FAPE, and thus leaves sufficient questions of fact to be explored, making a motion to dismiss inappropriate in the instant matter. The FAPE requirement is the crux of Plaintiff Relator's claims with regard to the IDEA Part B applications, as Defendants assured the government that a FAPE was being offered to all students with disabilities in accordance with their IEPs. *See* **COMPLAINT EXHIBIT 1**.

**POINT IV**

**CLAIMS UNDER 31 U.S.C. §3729(a)(1)(C)**

Defendants contend that Plaintiff Relator's claims under 31 U.S.C. §3729(a)(1)(C) are without merit and fail to satisfy Rule 9(b)'s standard. As set forth above, Defendants misunderstand Plaintiff Relator's claims—Defendants herein failed to adhere to the Medicaid guidelines in place during the "remote learning" period. Each reimbursement submitted is an implicit agreement that the party submitting for reimbursement has adhered to the Medicaid billing requirements. Thus, Defendants seemingly fail to grasp that "the agreement" is representative of

the submitted reimbursement claims, which Defendants submitted with the understanding that the Medicaid billing requirements applied to such submission.

Pleadings subject to Rule 9(b) must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *United States er rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 20 (2d. 2016). "Ultimately, whether a complaint satisfies Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Wells Fargo Bank, N.A.,* 972 F.Supp.2d 593, 616 (S.D.N.Y. 2013). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud. *U.S. ex rel. Polanski v. Pfizer, Inc.*, No. 04-cv-0704; 2009 U.S. Dist. LEXIS 43428; 2009 WL 1456582, at *4 (E.D.N.Y. 2009). "Nevertheless, in cases where the alleged fraudulent scheme is extensive and involves numerous transactions that occurred over a period of time, courts in this Circuit have held that it is impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct." *United States ex rel. Lee v. N. Adult Day Heath Care Ctr.,* 205 F.Supp.3d 276, 285 (2016), citing *U.S. ex rel Bilotta v. Noartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014). When alleging a fraudulent scheme that is complex and far-reaching, a Relator need only allege "representative samples" of fraudulent conduct to satisfy Rule 9(b). *See United States v. Bank of N.Y. Mellon,* 941 F.Supp.2d 438, 481-482 (S.D.N.Y. 2013).

The pleading standard under Rule 9(b) may be relaxed where "(1) the facts are peculiarly within the possession and control of the defendant; or (2) where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC. v. Doe*, 604

F.3d 110, 120 (2d Cir. 2010); *see also, U.S. ex rel. Mooney v. Americare, Inc.,* No. 06-cv-1806, 2013 WL 1346022, at *3 (E.D.N.Y. 2013) ("The Second Circuit applies a relaxed pleading standard when a plaintiff is not in a position to know specific facts until after discovery and 'when the facts are peculiarly within the opposing party's knowledge.", citing *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990)).

Here, Plaintiff Relator sufficiently alleges that Defendants herein knowingly submitted fraudulent IDEA Part B applications, as well as Medicaid reimbursement claims for related services that were not offered in accordance with students' IEPs, nor the Medicaid billing requirements during the "series of occurrences" as occurring during remote-learning. Following the example of T.A., T.A. was not issued a "remote" IEP; the last agreed-upon IEP indicates that his related services of Speech-Language Therapy and Occupational Therapy would be offered at "LCPS" or Loudoun County Public Schools. However, T.A. was offered telehealth as an alternative, and Defendants herein submitted reimbursement for same from Medicaid, failing to adhere to the requisite billing requirements.

Plaintiff Relator maintains that this Court has sufficient jurisdiction (both subject-matter and personal) in this matter, and that the pleadings before the Court satisfy the Rule 9(b) standard.

## CONCLUSION

Plaintiffs submits the foregoing and respectfully requests that this Court deny Defendants LOUDOUN COUNTY PUBLIC SCHOOLS and SCOTT A. ZIEGLER's Motion to Dismiss.

Respectfully Submitted,

/s/ Patrick B. Donohue

**PATRICK B. DONOHUE, ESQ.,** *RELATOR*
55W 116th Street—Suite 159
New York, New York 10026

Patrick@pabilaw.com