UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
════════════════════════════════════

United States of America and States of the United
States, ex rel. Patrick Donohue

       Plaintiffs,

                              Civil Action No.: 20-cv-5396(GWH)

   -vs-

RICHARD CARRANZA, in his official capacity as
the former Chancellor of New York City Department of
Education,
MEISHA PORTER, in her official capacity as the current
Chancellor of the New York City Department of Education,
NEW YORK CITY DEPARTMENT OF EDUCATION,
NIAGARA FALLS PUBLIC SCHOOL DISTRICT,
MAKR LAURRIE, in his official capacity as Superintendent,
BUFFALO PUBLIC SCHOOL DISTRICT,
KRINER CASH, in his official capacity as Superintendent,
MASSACHUSSETTS DEPARTMENT OF EDUCATION,
SOMERIVILLE PUBLIC SCHOOL DISTRICT,
MARY SKIPPER, in her official capacity as Superintendent,
as Superintendent,
JEFFREY C. RILEY, in his official capacity as Superintendent,
STAMFORD PUBLIC SCHOOL DISTRICT,
DR. TAMU LUCERO, in her official capacity as Superintendent,
LOUDON COUNTY PUBLIC SCHOOL DISTRICT,
SCOTT A. ZIEGLER, in his official capacity as Superintendent,
CAMDEN CITY PUBLIC SCHOOL DISTRICT,
KATRINA McCOMBS, in her official capacity as Superintendent,
LOS ANGELES UNIFIED SCHOOL DSITRICT,
AUSTIN BEUTNER, in her official capacity as Superintendent,
SAN DIEGO UNIFIED SCHOOL DISTRICT,
DR. LAMONT A. JACKSON, in his official capacity  as Superintendent,
and CINDY MARTEN, in her official capacity as former Superintendent,
WAKE COUNTY PUBLIC SCHOOL DISTRICT,

       Defendants.
════════════════════════════════════

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BUFFALO PUBLIC SCHOOL DISTRICT and KRINER CASH'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), (3), AND (6)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..6

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT I

THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)
BECAUSE IT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE
GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...........................12

POINT II

THIS MATTER SHOULD BE DISMISSED FOR IMPROPER VENUE AS
TRANSFER DOES NOT SERVE THE INTEREST OF JUSTICE. . . ...........21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................. 13

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,*
458 U.S. 176 (1982) ................................................ 17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................ 13

*Carlisle Area Sch. Dist. v. Scott P.,*
62 F.3d 520 (3d Cir.1995) ......................................... 18

*Dunn v. Downingtown Area Sch. Dist.,*
904 F.3d 248 (3d Cir. 2018) ....................................... 19

*Endrew F. v. Douglas Cty. Sch. Dist.,*
580 U.S. ___, 137 S. Ct. 988 (2017) ...........................17, 19

*Fuhrmann v. E. Hanover Bd. of Educ.,*
993 F.2d 1031 (3d Cir. 1993) ...................................... 17

*Gulf Ins. Co. v. Glasbrenner,*
417 F.3d 353 (2d Cir. 2005) ....................................... 23

*J.R. ex rel. S.R. v. Bd. of Educ.,*
345 F. Supp. 2d 386 (S.D.N.Y. 2004) .............................. 17

*Knight v. Dist. of Columbia,*
877 F.2d 1025 (D.C. Cir. 1989) .................................... 20

*Lunceford v. Dist. of Columbia Bd. of Educ.,*
745 F.2d 1577 (D.C. Cir. 1984) .................................... 20

*McKenzie v. Smith,*
771 F.2d 1527 (D.C. Cir. 1985) .................................... 20

*Peterson v. Regina,*
935 F. Supp. 2d 628 (S.D.N.Y. 2013) .............................. 22

*Polk v. Central Susquehanna Intermediate Unit 16,*
853 F.2d 171 (3d Cir. 1988) ....................................... 18

*Reyes v. N.Y.C. Dep't of Educ.*,
760 F.3d 211 (2d Cir. 2014) ...................................................................... 18

*Ridgewood Bd. of Educ. v. N.E. ex rel. ME.*,
172 F.3d 238 (3d Cir. 1999) ...................................................................... 18

*United States ex rel. Colucci v. Beth Israel Med. Ctr.*,
785 F. Supp. 2d 303 (S.D.N.Y. 2011) ...................................................... 13

*United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*,
8 F. Supp. 3d 339 (S.D.N.Y. 2014) .......................................................... 21

*United States ex rel. Kester v. Novartis Pharm. Corp.*,
23 F. Supp. 3d 242 (S.D.N.Y. 2014) ........................................................ 13

*United States ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) ........................................................................ 20

*United States ex rel. Mikes v. Straus*,
274 F.3d 687 (2d Cir. 2001) ...................................................................... 13

*United States ex rel. Taylor v. Gabelli*,
345 F. Supp. 2d 313 (S.D.N.Y. 2004) ...................................................... 13

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*,
976 F. Supp. 207 (S.D.N.Y. 1997) ........................................................... 21

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*,
110 F.3d 861 (2d Cir. 1997) ...................................................................... 21

**Federal Statutes**
20 U.S.C. § 1401 ........................................................................................ 16
20 U.S.C. § 1412 ........................................................................................ 16
20 U.S.C. § 1414 ........................................................................................ 18
28 U.S.C. § 1331 .......................................................................................... 7
28 U.S.C. § 1345 .......................................................................................... 7
28 U.S.C. § 3730 .......................................................................................... 7
28 U.S.C. § 1367 .......................................................................................... 7
28 U.S.C. § 1391 ........................................................................................ 22
28 U.S.C. § 1406 ........................................................................................ 21
31 U.S.C. § 3732 .................................................................................... 8, 21
31 U.S.C. § 3729 .......................................... 6, 8, 9, 11, 13, 14, 15, 20
31 U.S.C. § 3729-3733 ................................................................................ 8
Medicare Catastrophic Coverage Act of 1988 § 411 ................................ 15
Social Security Act, § 1903 ....................................................................... 15

4

**Federal Regulations**

42 C.F.R. § 413.60 ........................................................................................... 8
42 C.F.R. § 413.64 ........................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 4 ........................................................... 7, 9
Federal Rule of Civil Procedure 9 ......................................................... 13, 20
Federal Rule of Civil Procedure 12 ....................................................... 12, 13
Federal Rule of Civil Procedure 20 ........................................................... 21

## PRELIMINARY STATEMENT

This is a qui tam action filed by Patrick Donohue, Esq. on behalf of the United States of America and individual States, along with the District of Columbia, against many of the largest school districts in the United States and their superintendents, including the improperly named "Buffalo Public School District" ("BPSD") and former Superintendent Kriner Cash ("Dr. Kash")(hereinafter collectively referred to as the "Buffalo Defendants").

The Second Amended Complaint ("Complaint") alleges that the named defendants submitted false claims for Medicaid reimbursement with knowledge that they had violated the Individuals with Disabilities Education Act (the "IDEA") in the wake of pandemic-related school building closures by depriving their students of a free, appropriate public education.

This Court should dismiss the claims against the Buffalo Defendants because none of the allegations in the Second Amended Complaint states a cognizable claim under the False Claims Act. Specifically, Plaintiff-Relator's allegations fall far short of F.R.C.P.'s Rule 9(b)'s particularity standard, as they resort to simply reciting the elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A),(B) and (G) without providing any factual allegations, which if proven true, could support a finding that Buffalo Defendants knowingly made a false claim or statement to the government. Because it is the submission of a false claim that gives rise to liability under the FCA, Rule 9(b) requires that the details of claims and their submission must be pleaded with particularity and may not "rest on 'speculation and conclusory allegations.'" See *U.S. ex rel. Gelbman v. City of New York*, 790 Fed.Appx. 244, 247-249 (2d Cir. 2019), quoting *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d. 71, 86 (2d Cir. 2017).

For these reasons, the Buffalo Defendants request that the Court dismiss with prejudice the claims against them for failure to state a claim upon which relief may be granted.

## FACTUAL BACKGROUND

Plaintiff-Relator Patrick Donohue initiated this *qui tam* action and filed the Complaint the named defendants. (*See*, Dkt. 19, "Preliminary Statement and Nature of this Action"). Plaintiff- Relator alleges that he has direct and independent knowledge of "disabled children in NYC and other named School Districts receiv[ing] Medicaid reimbursements, payments, and otherwise for related service sessions that were not provided in a manner and environment that is consistent with the students' physical and medical needs and did not adhere to the relevant Medicaid and IDEA billing requirements." (*Id.* at ¶ 19).

Defendant Buffalo Public School District operates within the jurisdiction of Buffalo, New York. (*Id.* at ¶ 32) Defendant Kriner Cash serves as the Superintendent of Defendant Buffalo Public School District and is responsible for the oversight and management of the schools within the District. (*Id.* at ¶¶ 33, 34) The Complaint asserts that this Court has subject matter jurisdiction based on their claims "pursuant to 28 U.S.C. §3730(a) (False Claims Act), 28 U.S.C. §1331 (Federal question), 28 U.S.C. § 1367 (Supplemental jurisdiction), 31 U.S.C. §37 (False claims jurisdiction), and 28 U.S.C. §1345 (United States as plaintiff)." (*Id.* at ¶ 68) Moreover, Plaintiff-Relator asserts that "[t]o the extent, if any, that this case involves questions relating to special education rights, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367." (*Id.* at ¶ 69) It also asserts that "venue is properly placed within this District because at least one of the named defendants resides or transacts business in the District, specifically, Defendant Richard Carranza ("Chancellor Carranza"), in his official capacity as former Chancellor of the New York City Department of Education, Defendant Meisha Porter, in her official capacity as current Chancellor of the New York City Department of Education; and Defendant New York City Department of Education ("NYC

DOE"), maintain business offices in New York County." (collectively "New York Defendants")(*Id.* at ¶ 70). Plaintiffs assert that pursuant to 31 U.S.C. §3732, "this Court appropriately has jurisdiction over all named defendants, as the named New York Defendants operate and conduct business within this Court's jurisdiction." (*Id.* at ¶¶ 71-72)

Plaintiff-Relator alleges that "Defendants conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws." (*Id.* at ¶ 1) Plaintiff-Relator also alleges that "Defendants fraudulently billed for these [remote] 'sessions' through Medicaid at their regular, full rates" and used IDEA funding for "non-related services" even though "students were unable to meaningfully participate in these remote sessions." (*Id.* at ¶ 2)

Plaintiff-Relator contends that "Defendants have violated the federal False Claims Act, 31 U.S.C. § 3729-3733 ("FCA") as well as the corresponding state false claim statutes" because they "obtained the benefit of virtually unfettered Medicaid reimbursements for these related service sessions." (*Id.* at ¶ 3) According to Plaintiff-Relator, Defendants "received interim payments based on fixed estimates of their actual costs in accordance with 42 C.F.R. § 413.60(a), (c); §413.64(a), (f)." (*Id.* at ¶ 60)

He claims that "Defendants [] knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each [s]tudent's last-agreed-upon IEP, which required in-person services." (*Id.* at ¶ 66) He alleges that "some of these sessions were not offered to students with disabilities." (*Id.*)

The Complaint further alleges that "Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE." (*Id.* at ¶ 72) He contends that "Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently." (*Id.* at ¶ 73)

Plaintiff-Relator also alleges that Buffalo Defendants perpetuated a fraud upon the State and federal governments when they:

**a.** Knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval;

**b.** Knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;

**c.** Knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and

**d.** Conspired to commit the above acts, all in violation of 31 U.S.C. § 3729(a)(1)(A), (B), (C) & (G). (Id. at ¶ 112)

The Complaint states that the Buffalo Defendants violated New York False Claims Act; N.Y. State Fin. Law §§188-194 et seq; Social Services Law §145 et seq.; Social Services Law §366 et seq.; Penal Law §175; Penal Law 176; Penal Law §177, et seq. and that the Buffalo Defendant failed to provide certain services (*Id.* at ¶¶ 113, 120-124).

The Realtor points to the redacted IEP of G.M., and the alleged conduct of a company known as Autism Services, Inc. as an example of the alleged conduct of the Buffalo Defendants. (*Id.* at ¶ 114). G.M.'s IEP, from a meeting on February 14, 2020, in the midst of the pandemic, does not denote the setting in which G.M. is to receive his services and only notes that he shall receive services "within the school environment." (*Id.* at ¶ 236). Plaintiff-Relator alleges that the District "did not reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures." (*Id.* at ¶ 247).

He further alleges that Buffalo Defendants billed for services that were recommended to be in person as opposed to remote. (*Id.* at ¶¶ 119-120). He contends that, therefore, any billing for remote services is inappropriate, violates "Medicaid billing restrictions," and is unlawful. (*Id.*) He contends that Buffalo Defendants "failed to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently fail[ed] to provide the recommended related services as written." (*Id.* at ¶ 122). He alleges that Buffalo Defendants "benefitted from their unlawful acts by collecting Medicaid reimbursement payments for services that were not offered in accordance with the IEP as written" and "remained complicit in the scheme to defraud." (*Id.* at ¶¶ 123-124).

Plaintiff-Relator alleges that named defendants "knowingly made, used, or caused to be made and used, and presented, or caused to be presented, false and fraudulent claims for payment or approval in connect with the submission of claim for school-based services for students with disabilities." (*Id.* at ¶ 281) According to Plaintiff-Relator, named defendants submitted "false claims" when its representatives made fraudulent representations that the IEPs they created were knowingly not in compliance with [the] IDEA and they could not implement these IEPs, thereby

denying the students a FAPE. (*Id.* at ¶¶ 270, 286, 291) He alleges that named defendants also made fraudulent misrepresentations "when their service providers knowingly misrepresented that they were providing related services" in accordance with the IDEA and Medicaid regulations. (*Id.*) Plaintiff asserts that these claims were "legally false" and named defendants knew they were in violation of federal regulations at the time they were submitted. (*Id.* at ¶ 271). He believes "the federal and state government disbursed the money for said fraudulent claims because [] Defendants certified that they had complied with the relevant federal regulations." (*Id.* at ¶ 271).

Plaintiff-Relator asserts "Defendants individually conspired to commit a violation" of 31§ U.S.C. 3729(a)(1)(A), (B), and (G) and "Defendants have each committed at least one overt act in furtherance of their conspiracy." (*Id.* at ¶¶ 296-97). Plaintiff-Relator asserts that even where named defendants' representatives did not sign a form certifying compliance, named defendants violated the FCA because the very act of submitting the claim implies they affirmed that it was in compliance with the regulations. (*Id.* at ¶ 273). Plaintiff-Relator alleges "Defendants who did not keep close track of log-ins and attendance data would be liable since school officials implicitly certified that they would keep their data current when they made the claim for public funds." (*Id.* at ¶ 274) Plaintiff-Relator asserts named defendants are liable for "Worthless Services Fraud" because "the limited services they may have provided was so subpar as to be completely worthless." (*Id.* at ¶ 276)

The Second Amended Complaint asserts causes of action against the Buffalo Defendants for violations of the False Claims Action, specifically 31 U.S.C. § 3729(a)(1)(A), (B), (C), and (G). The Buffalo Defendants hereby move for dismissal under Federal Rules of Civil Procedure 12(b)(2),(3), and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted.

# ARGUMENT

## POINT I

### THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Because the Plaintiff-Realtor fails to state a claim upon which relief may be granted, the Court should dismiss them for failure to state a claim. In ruling on a Rule 12(b)(6) motion, the Supreme Court has provided the following guidance: To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

When a plaintiff alleges fraud, those allegations must meet the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A pleading that offers only "labels and conclusions" contains "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678 (alteration in original)(citations omitted). Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth. *Id.* at 678-79.

For a claim predicated on a violation of 31 U.S.C. § 3729(a)(1)(A), a plaintiff must allege facts showing that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001). A claim predicated on a violation of § 3729(a)(1)(B) requires a plaintiff to allege that the defendant "(1) created, used, or caused to be used, a record or statement; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government." *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004). A claim predicated on a violation of § 3729(a)(1)(G) requires a plaintiff to allege that the defendant "(1) made a false statement or created and used a false record, (2) with knowledge of its falsity, (3) for the purpose of decreasing, concealing, or avoiding an obligation to pay the Government." *Id.* Finally, to state a claim based on violation of § 3729(a)(1)(C), a plaintiff must allege "(1) an unlawful agreement by the defendant to violate the FCA, and (2) at least one overt act performed in furtherance of that agreement." *United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 268 (S.D.N.Y. 2014). Thus, for each claim, Plaintiff-Relator must allege the Buffalo Defendants made a knowingly false claim or statement to the government.

"A claim is 'false or fraudulent' if it 'is aimed at extracting money the government otherwise would not have paid.'" *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310 (S.D.N.Y. 2011) (quoting *Mikes*, 274 F.3d at 696). Plaintiff-Relator alleges that the Buffalo Defendants submitted "legally false" claims. (See Dkt. 19, ¶ 271) "A claim is 'legally false' if it rests on a false representation of compliance with an applicable federal statute, regulation, or contractual term." *United States ex rel. Doe*, 8 F. Supp.

3d at 346 (citing *Mikes*, 274 F.3d at 696). The representation can be made under either an express or implied certification. *Id.* An expressly false claim "falsely certifies compliance with a particular statute, regulation or contractual term," whereas "[a]n implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id.* Plaintiff-Relator alleges Buffalo Defendants made an expressly false claim and an implied false certification claim. (See Dkt. 19, ¶¶ 271, 273)

In addition to alleging that a defendant made a false claim or statement to the government, a plaintiff must establish that the defendant "acted 'knowingly' in presenting or causing to present a false claim for payment, or making or using a false record, or to avoid an obligation to pay." *States ex rel. Doe*, 8 F. Supp. 3d at 346. See 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B)), & (a)(1)(G). The FCA defines "knowing" and "knowingly" to "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1).

Here, Plaintiff-Relator merely recites the elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A), (B) and (G) without providing any factual allegations, which if proven true, suggest that Buffalo Defendants made a false claim or statement to the government and that they knew it was false. For example, he alleges that the Buffalo Defendants "engaged in fraudulent conduct by extracting from the State and Federal Governments, hundreds of millions of dollars in payments when they . . . knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;

knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and conspired to commit the above acts, all in violation of 31 U.S.C. §3729(a)(1)(A), (B), (C) and (G)." (See Dkt. 19, ¶ 112) He does nothing more than repeat language used in the statute itself.

The Complaint contends that the Buffalo Defendants violated Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 because they "billed for services that were ***recommended*** to be in person as opposed to remote" but failed to offer those services in person. (See Dkt. 19, ¶¶ 120-122)(emphasis added) Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 simply amends Section 1903 of the Social Security Act by adding the following subsection: (c) Nothing in this title shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a)  for  medical assistance for covered services furnished to a handicapped child because such services are included in the child's individualized education program established pursuant to part B of the Education of the Handicapped Act or furnished to a handicapped infant or toddler because such services are included in the child's individualized family service plan adopted pursuant to part H of such Act.

This provision does not speak to billing procedures to be used for services that were recommended to take place in person as opposed to remotely. Thus, Plaintiff-Relator fails to make any factual allegations suggesting the Buffalo Defendants made any false claims by collecting Medicaid reimbursement payments for services that were not offered in person.

To the extent Plaintiff-Relator claims that the Buffalo Defendants made fraudulent claims based on their failure "to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently failing to provide the recommended related services as written," he fails to provide factual allegations, which if proven true, would suggest that by providing services remotely to any child residing within its boundaries, any school district denied any student in its jurisdiction a FAPE, and in turn, thereby made false claims for Medicaid reimbursement. The IDEA provides States with federal funds to assist in educating children with disabilities. In exchange for the funds, the State pledges to provide a handicapped student with a FAPE, which consists of special education and related services. 20 U.S.C. § 1412(a)(1). Special education is instruction designed to meet the *unique* needs of a child with a disability, while related services are the support services required to assist a child to benefit from the instruction. 20 U.S.C. § 1401.

While Congress did not define "appropriate public education," the U.S. Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide a meaningful educational benefit to the **individual child.**" *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982) (emphasis added). This requirement is satisfied if the child's IEP sets out an educational program that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *See Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist.,* 137 S. Ct. 988, 999 (2017).

The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. *Rowley*, at 207; *Douglas*, at 999. The Act contemplates that this fact-intensive exercise will be

16

informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. *Rowley*, 458 U.S. at 208-209; *Douglas*, 137 S. Ct. at 999. *See J.R. ex rel. S.R. v. Bd. of Educ.*, 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004); *Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir. 1993) ("[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date."). Because an IEP "is judged prospectively[,] . . . any lack of progress under a particular IEP, assuming *arguendo* that there was no progress, does not render that IEP inappropriate." *Carlisle Area Sch. Dist. v. Scott P.,* 62 F.3d 520, 530 (3d Cir.1995). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Douglas*, 137 S. Ct. at 1001.

The student's IEP, a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, lays out the special education and related services that are **tailored to the unique needs of that specific student.** *Douglas* 137 S. Ct. at 994. For instance, the IEP must contain a "statement of the child's present levels of academic achievement and functional performance," and a description of "how the child's disability affects the child's involvement and progress in the general education curriculum," along with "measurable annual goals, including academic and functional goals," and a "description of how the child's progress toward meeting those goals" will be measured. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III). The special education and related services laid out in the IEP must be designed for the child to "advance appropriately toward attaining the annual goals" and, to the extent possible, "be involved in and make progress in the general education curriculum." *Id.* at §§1414(d)(1)(A)(i)(IV).

The Act does not require school districts to maximize a student's potential, or provide educational opportunities substantially equal to the opportunities afforded children without disabilities, but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. *Rowley*, 458 U.S. at 197- 201; *Douglas*, 137 S. Ct. at 1001. The Third Circuit has interpreted this "basic floor" to be an education which offers the student an opportunity for meaningful learning, taking into account the child's potential. *Reyes v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 221 (2d Cir. 2014); *Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,* 172 F.3d 238, 247 (3d Cir. 1999); *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 185 (3d Cir. 1988) (providing that a satisfactory IEP requires "conferring of a "meaningful benefit," and must be gauged in relation to the child's potential). In other words, "the educational program "'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'" *K.D. by & through Dunn v. Downingtown Area Sch. Dist.,* 904 F.3d 248, 254 (3d Cir. 2018). It must likely produce progress, rather than regression or trivial educational benefit. *Id.*

The Second Circuit's interpretation of the Supreme Court's decision in <u>Rowley</u> was validated by the U.S. Supreme Court in <u>Endrew F</u>, which acknowledged that "the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." *Rowley*, 458 U.S. at 202. For that reason, the Supreme Court in <u>Douglas</u> refrained from elaborating what 'appropriate progress will look like from case to case, except to say that it must be more than de minimis. *Douglas*, 137 S. Ct. at 1001. Instead, it recognized the expertise and exercise of judgment held by school authorities in determining what "appropriate" progress resembles. *Id.*

In the instant case, there are no allegations set forth in the Complaint which, if true, would support a finding that any of the students residing within the district suffered a substantive educational deprivation as a result of remote instruction and services such that they were denied a FAPE. Nowhere does the Complaint describe a single IEP benefit that a single child residing within the district did not receive on account of remote instruction and services. The Complaint does not assert any facts sufficient to support a finding that any of the students residing within the district failed to receive a FAPE on account of receiving special education services remotely, such that it would render the district's Medicaid reimbursement claims based on the rendering of those remote services fraudulent.

Nor does the Complaint allege facts sufficient to support a determination that any of the students residing within the district were denied educational services comparable to those set forth in their IEPs following the closure of school buildings in the wake of the COVID-19 pandemic. This is what the IDEA requires when the precise program described in the IEP becomes unavailable. *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985). *See also Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)(a parent moving for a stay-put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement.") (*Bd. of Educ. of Cmty High Sch. Dist. No.* 218, 103 F.3d at 548 (although the IDEA does not define the term "then current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP."); *Tilton v. Jefferson Cty. Bd. of Educ.*, 705 F.2d 800, 804 (6th Cir. 1983), cert. denied, 465 U.S. 1006 (1984)(transfer from one school to another school with comparable

program is not a change in educational placement); *Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004)(explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs' and that the term "cannot be read to only indicate which physical school building a child attends"). The broad and conclusory allegations contained in the Complaint are simply insufficient to give rise to a plausible inference that the Buffalo Defendants knowingly submitted false claims for Medicaid reimbursement and/or IDEA funding to the federal government based on special education services provided remotely.

Finally, Plaintiff-Relator's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) is devoid of any allegations that the Buffalo Defendants entered into an unlawful agreement. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government"). As such, his claim fails to satisfy the Rule 9(b)'s particularity standard. The conspiracy claim also fails because Plaintiff-Realtor has failed to adequately allege underlying violations of the FCA under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

## POINT II

## THIS MATTER SHOULD BE DISMISSED FOR IMPROPER VENUE AS TRANSFER DOES NOT SERVE THE INTEREST OF JUSTICE

This case should also be dismissed because it is an improper venue. While improper venue can be a basis to transfer a case, that is not be the case here because transferring the case would not serve the "interest of justice." *See* 28 U.S.C. § 1406(a). *See also United States ex rel. Doe*, 8 F. Supp. 3d at 345.

Although the False Claims Act provides that if one defendant can be "found" in a jurisdiction, venue is proper for all other defendants in the same action who are involved in the same false claims, *see* 31 U.S.C. § 3732, this does not mean that defendants accused of similar but unrelated conduct may be sued in the same district. 31 U.S.C. § 3732(a) does not permit the joinder in one case of multiple defendants involved in multiple, distinct and independent actions in a district where only one or two defendants are found. Rather, 31 U.S.C. § 3732(a) governs only venue – not jurisdiction. *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 865 (2d Cir. 1997); *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997).

Under Federal Rule of Civil Procedure 20(a)(2), joinder of multiple defendants is proper only if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Relators must satisfy both requirements. See *United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014) (concluding that joinder was **improper** where there were no allegations suggesting that the defendants could be held jointly or severally liable or that the relators' claims based on each defendants' submission of

its own Medicaid bills constituted the same transaction, occurrence or series of occurrences) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)).

Here, the Complaint is wholly devoid of any factual allegations, which if proven true, would suggest that Buffalo Defendants can be held jointly or severally liable for any allegedly false claim made by any other named defendant. Further, Plaintiff-Relator's claims based on violations of the FCA do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." He simply alleges that each named defendant submitted its own Medicaid bills for remote services provided to its own students. Joinder is improper where, as here, "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013). Therefore, Plaintiff-Relator is not entitled to joinder and his claims against the Buffalo Defendants must be dismissed.

Additionally, Plaintiff-Relator cannot establish that this District is the proper venue for any of the defendants outside of New York City. According to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." A "substantial part" means that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). In the instant case, any of the purported allegations against the Buffalo Defendants would have occurred in Erie County, therefore venue is inappropriate in the Southern District of New York. As neither the Complaint nor any competent extraneous evidence establishes a cause of action or proper venue, the Court should dismiss the Complaint against Buffalo Defendants.

## <u>CONCLUSION</u>

The Second Amended Complaint should be dismissed on the grounds that it fails to state a claim pursuant to Rule 12(b)(6) and Rule 9(b). Additionally, for these reasons, the case should not be transferred to the Western District of New York. The Buffalo Defendants therefore request that this Court dismiss with prejudice all claims against them.

Respectfully Submitted,

Dated:  April 29, 2022
      Buffalo, New York

**NATHANIEL KUZMA, ESQ.**
General Counsel
*Attorney for the Buffalo Defendants*


*/s/ Robert E. Quinn*
By: Robert E. Quinn
Assistant Legal Counsel
65 Niagara Square, 713 City Hall
Buffalo, New York 14202
Tel.: (716) 816-3102