```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #20cv5396
 UNITED STATES OF AMERICA and       :
 STATE OF NEW YORK ex rel. PATRICK
 DONOHUE,                           :

                 Plaintiffs,        :

  - against -                       :

 RICHARD CARRANZA, et al.,          : New York, New York
                                      April 27, 2022
                 Defendants.        :

-----------------------------------: TELEPHONE CONFERENCE

               PROCEEDINGS BEFORE
          THE HONORABLE STEWART AARON,
          UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          BRAIN INJURY RIGHTS GROUP
                        BY:  RORY BELLANTONI, ESQ.
                             ASHLEIGH ROUSSEAU, ESQ.
                        300 East 95th Street, Suite 130
                        New York, New York 10128


For Defendant City of   KATTEN
New York School District, BY:  JOSEPH WILLEY, ESQ.
L.A. County School           ALESSANDRA DENIS, ESQ.
District, and Chicago   50 Rockefeller Plaza
School District:        New York, New York 10020-1605

                        NEW YORK CITY LAW DEPARTMENT
                        BY:  STEPHEN KITZINGER, ESQ.
                        100 Church Street
                        New York, New York 10007


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street, #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>APPEARANCES CONTINUED:</u>

For Defendant Stamford          BERCHEM MOSES
School District:                BY:  RYAN DRISCOLL, ESQ.
                                75 Broad Street
                                Milford, Connecticut 06460


For Defendant Wade County:      WOOD, SMITH, HENNING & BERMAN
                                BY:  JOHN DARMINIO, ESQ.
                                5 Waller Avenue, Suite 200
                                White Plains, New York 10601


For Defendant San Diego         ORBACH HUFF SUAREZ & HENDERSON
Unified School District,        BY:  ENRIQUE VASSALLO, ESQ.
Lamont Jackson, and                  WHITNEY ANTRIM, ESQ.
Cindy Marten:                   1901 Avenue of the Stars
                                Suite 575
                                Los Angeles, California 90067

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1

```
1                                              4
2              THE COURT:  This is Magistrate Judge Aaron.
3   This is the matter United States ex rel. Donohue against
4   Carranza, 20cv5396.  This line is being recorded.
5   Because we have a large number of counsel on the line,
6   I'm going to go down in the order of the caption to take
7   appearances.  First of all, who do we have on the line on
8   behalf of the plaintiff?
9              MR. RORY BELLANTONI:  Good afternoon, Your
10  Honor, for plaintiffs, Rory Bellantoni, Brain Injury
11  Rights Group.
12             MS. ASHLEY RUSSO:  And, Your Honor, Ashley Russo
13  from the Brain Injury Rights Group is on the line as
14  well.
15             THE COURT:  All right, who do I have on behalf
16  of Buffalo Public School District, if anyone?
17             (no response)
18             THE COURT:  Okay, who do I have on behalf of,
19  well, actually I already heard, before we started the
20  recording, but why doesn't counsel from Katten Muchin
21  enter his appearance please.
22             MR. JOSEPH WILLEY:  Okay, this is Joseph Willey
23  from Katten on behalf of the City of New York School
24  District defendants.  And I believe I have also Steve
25  Kitzinger from the New York City Law Department.  Are you
```

```
 1                                                5
 2  on, Steve?
 3           MR. STEPHEN KITZINGER:  I am, good afternoon,
 4  Your Honor, Stephen Kitzinger at New York City Law
 5  Department for the New York City Department of Education
 6  defendants.
 7           THE COURT:  And, Mr. Willey, I note
 8  (indiscernible) also identified for the record the other
 9  parties you represent please.
10           MR. WILLEY:  Yes, Your Honor, we also represent
11  the L.A. County, Los Angeles County School District
12  defendants and the Chicago Public School District
13  defendants.  I also have on the line from my firm
14  Alessandra Denis.
15           THE COURT:  All right –
16           MS. ALESSANDRA DENIS:  Good afternoon --
17           THE COURT:  Yes, good afternoon.
18           MS. DENIS:  Good afternoon, Your Honor.
19           THE COURT:  Good afternoon.  And who do I have
20  on behalf of the Stamford Public School District?
21           MR. RYAN DRISCOLL:  Good afternoon, Your Honor,
22  Ryan Driscoll from Berchem Moses in Milford, Connecticut.
23           THE COURT:  Okay.  And who do I have on behalf
24  of Wainscoll County.
25           MR. JOHN DARMINIO:  Good afternoon, Your Honor,
```

6

1

2    John Darminio, Wood Smith Henning & Berman for the Wade

3    County defendants.

4           THE COURT:   Okay, and although I'm not sure

5    anyone as yet appeared as counsel of record on behalf of

6    the San Diego Unified School District, is anyone on on

7    their behalf?

8           MR. ENRIQUE VASSALLO:  Yes, Your Honor --

9           MS. WHITNEY ANTRIM:  Yes, Your Honor.

10          MR. VASSALLO:  It's Enrique Vassallo from Orbach

11   Huff Suarez & Henderson.  We represent the San Diego

12   Unified School District as well as Lamont Jackson and

13   Cindy Marten, defendants.

14          MS. ANTRIM:  And Whitney Antrim also from Orbach

15   Huff & Henderson with the same.

16          THE COURT:  Okay, and have you entered notices

17   of appearance yet?

18          MS. ANTRIM:  We have not.

19          MR. VASSALLO:  I do – we have not, Your Honor.

20   I just submitted my application pro hac vice which was

21   just granted, and we will do that immediately after this

22   call.

23          THE COURT:  Okay.  And I take it we still don't

24   have anyone who's joined us from the Buffalo Public

25   Schools.  I'm just going to ask my law clerk.  Could you

7

1

2    just step out and lop a call into this person?  I know

3    that we're not technically discussing a matter before

4    them, but since they're counsel of record, why don't we

5    try to get them on the line.  Okay?

6          All right, so the way I wanted to start out was

7    to make some observations generally, and then I do want

8    to hear from the parties and, you know, I'll do it in the

9    order that I received the letters.  So I'll hear from Mr.

10   Willey first, then I'll hear from the other defense

11   counsel, then, of course, I'll hear from plaintiffs'

12   counsel.

13         So what the law is with respect to my

14   consideration of the merits in making a recommendation to

15   Judge Woods is that unless the court has personal

16   jurisdiction over defendants, generally speaking, a court

17   doesn't rule on the merits of the case.  And that's, as

18   you may be aware, a case out of the United States Supreme

19   Court called *Sinochem International against Malaysia*

20   *International Shipping*, 549 U.S. 422, decided in 2007.

21   There is an exception where there are defendants who can

22   test personal jurisdiction but others do not, and it's

23   kind of a practical one, right, where if one must

24   inevitably resolve the merits, it can be done not only

25   for one but for others.

1                                                                    8

2            The fly in the ointment here, it seems to me, is

3    that there not only are claims under federal rule but

4    there also are claims asserted under state law with

5    respect to the parties who submitted letters.  So, by way

6    of example, California statute, and what I understand to

7    be a unique issue at the California perhaps, regarding

8    the issue of whether or not California school districts

9    are considered arms of the state.

10           So I have reluctance, I guess would be the word

11   that I'll use, to rule on the merits with respect to

12   defendants over whom the Court lacks personal

13   jurisdiction if there are unique legal claims as to those

14   defendants because those claims perhaps should be

15   determined by a court that has jurisdiction and by a

16   venue where a venue is proper.  So, for example, in the

17   case of California defendants, in California.

18           Another observation I'd like to make is that the

19   briefing so far, there's a motion that was already made

20   by the Wade County defendants.  Everyone is focusing on

21   the context that exists with the State of New York, and I

22   alluded to this in footnote 4 of my prior opinion which,

23   as we know, dealt with yet a different set of defendants,

24   what I refer to as the Loudon County defendants, and that

25   is whether in circumstances where there's a federal

statute that provides for nationwide service of process,
whether or not the proper analysis is under the
Fourteenth Amendment of contacts with the State of New
York or under the Fifth Amendment looking at contacts
with the United State writ large.  And as I was preparing
for this call, I reminded myself that there's a case out
there that I don't believe I cited in my footnote, but
it's a case by Judge Castel – let me see if I can find it
here.

I'm not exactly sure what I did with the case by
Judge Castel, but it's also in footnote 4, and it arises
in the context of the false claims act where he found --
admittedly in that case it was a case involving a
defendant out of the United Kingdom, but I think the
analysis – oh, here it is.  Apologies.  *United States ex*
*rel. Tzak,* T-Z-A-K, *against Christian Aid*, 2021 W.L.
2354985, and he cites a case called *Marriosh*, which is
one that I cite in footnote 4 of my prior opinion.  And
I'll just read like an excerpt, "When a civil case arises
under federal law and a federal statute authorizes
nationwide service of process, the relevant contacts for
determining personal jurisdictions or contacts with the
United States as a whole."  And that's what satisfies the
Fifth Amendment's due process inquiry.

10

So obviously if one looks at personal jurisdiction from the perspective of contacts with the United States, any school district located anywhere in the United States theoretically there's personal jurisdiction over it if that's the right analysis.

Having said all of that, I am happy to have the defendants brief whatever issues they want to brief.  In other words, if Katten on behalf of its clients wishes to seek to convince me that, notwithstanding the lack of personal jurisdiction if that's their position, that there is no personal jurisdiction, and notwithstanding the lack of venue, I should make recommendations to Judge Woods regarding the merits, make that argument.  And given that I'm doing a report and recommendation as opposed to ruling on the motion myself, as I did because the parties consented to it in the prior one, it may be that I feel I have to deal with all of the issues that are put before me.  But I am concerned about, as I said, the fact that there may be unique state law issues that are more appropriately determined by a district court sitting in a state whose law is being applied.

So with that, I'll turn the floor over to you, Mr. Willey, to make whatever remarks you wish to make, and then as I mentioned, I'll go around the horn.

1

2          MR. WILLEY:  Okay, great.  Thank you, Your

3   Honor.  So when we requested this conference, I know this

4   conference is not required by your rules, but we

5   requested it because we believe that a conference with

6   the parties and the Court might obviate the need for a

7   motion to dismiss or at least to narrow the issues.  It

8   seemed that there was some relevant agency, federal and

9   state agency guidance applying the applicable Medicaid

10  and IDEA laws and regulations that had not been reflected

11  in the complaint and perhaps that overlooked that we

12  thought were right on point and that should be considered

13  here early on.

14          So the core allegations in the Relator's second

15  amended complaint are that essentially that school

16  districts submitted Medicaid claims and received IDEA

17  funding for related health services furnished to school

18  children remotely during the COVID pandemic when schools

19  were closed.  That's one of the allegations, that they

20  were not allowed to bill and receive funding for remote

21  services.

22          Secondly, the second core allegation is that if

23  there were to be remote services during school closures,

24  the individual education plans or programs, the IEP's,

25  that the documents required by the IDEA to specify the

1

2  related health services each child is to receive, that

3  those IEP's needed to be amended to reflect that the

4  services were being provided remotely rather than in

5  person.

6          And the third core allegation is that the school

7  districts, if they billed Medicaid for services provided

8  remotely, they should have done so at lower rates than

9  the Medicaid rates that the state Medicaid agencies have

10 established for in-person services.

11         So we believe that these allegations that are in

12 the complaint are not viable, and they should not be

13 pursued because the relevant federal and state agencies

14 that administer these programs, the Medicaid program and

15 the IDEA, have issued clear guidance to schools that

16 schools may provide the services remotely during school

17 closures as a result of the pandemic.  And that the

18 students IEP's did not need to be amended to reflect the

19 services would be provided remotely and that the schools

20 should bill Medicaid at the regular Medicaid rates for

21 these services.

22         So each of the core allegations in the complaint

23 have been addressed by the agencies and they have

24 permitted the school districts to provide the services in

25 the way that they are alleged to have provided these

13

services in the complaint.  In other words, the very

conduct that the complaint alleges is unlawful is, in

fact, fully consistent with the Medicaid and IDEA

requirements.  So the claims at issue cannot possibly be

said to be false when furnished and billed exactly as the

program required.

So there are other bases for dismissal as noted

in my April 12 letter, you know, at least as to the

California school districts, as you alluded to, Your

Honor, there is Ninth Circuit authority that school

districts are arms of the state and are not subject to

suit under the Federal False Claims Act.  So it seems to

us that the allegations in the complaint as to the

Federal False Claims Act should be withdrawn.

There is also case law in the Ninth Circuit that

the school districts in California are not subject to

suit under the state false claims act, the California

False Claims Act.  And there's, you know, as in New York,

in New York the state false claims act statute on its

face provides that school districts in New York are not

subject to suit under the state false claims act.

So I understand Your Honor's observations about

the state false claims acts in the various states.  Those

statutes – I guess at this point I will just make an

14

additional observation that the state false claims acts

are by and large I think patterned on and designed to,

are designed to mirror the federal false claims act, and

there are certain reasons why state legislatures have

enacted state false claims acts to essentially mirror the

federal false claims act.  I don't believe that the

complaint makes allegations that are unique to the

various state false claims acts.  It may be that relator

alleges that the same conduct would violate both the

federal and state false claims acts, but I think that's

because the statutes are essentially the same in that

regard.  So there are not specific allegations that the

conduct alleged violates one or the other.

Whether we will argue to Your Honor that to make

a recommendation to Judge Woods that you decide the case

on the merits as to Los Angeles and Chicago school

districts, I don't think we're there yet where we've made

that decision.  But at the very least we would submit

that Your Honor should consider the approach taken by the

district court in the *Taconic Hills* case which I know

Your Honor cited in your decision as to the Loudon,

Virginia defendants, which is to decline to transfer the

case in the interests of justice if you determine the

venue is not proper.  There the district court found that

15

1

2 the allegations against the school districts outside of

3 the Southern District of New York were almost identical

4 to the allegations against the New York City Department

5 of Education.  And so in the interests of justice, Judge

6 Crotty decided to not transfer the case to those other

7 districts even though venue may have been proper in those

8 other districts.

9          THE COURT:   That was upstate counties, upstate

10 districts, am I right, am I remembering that case

11 correctly?

12          MR. WILLEY:   That's correct, Your Honor.

13          THE COURT:   Right, not other states.

14          MR. WILLEY:   That's correct.  So that is a

15 summary of the highlights of the complaint and of our

16 reactions to the complaint that we anticipate being

17 included in a motion to dismiss.  You know, there are

18 some other issues, but I believe those are the core

19 issues.  And as I said, we thought it may be helpful to

20 bring this to the attention of the Court and to the other

21 parties so that we can decide whether there are claims

22 that might be narrowed or whether the motion might be

23 obviated altogether.

24          We cited some of that agency guidance in my

25 letter of April 12.  There's more.  But the guidance was

16

1

2   issued by the U.S. Department of Education, the Federal

3   Centers for Medicare and Medicaid Services which govern

4   at the federal level the Medicaid program, and then we

5   cited at least for our clients the guidance issued by the

6   New York State Medicaid agency and state education agency

7   as well as guidance from California and Illinois.

8          THE COURT:   All right, so let me ask

9   plaintiffs' counsel – before I turn to other defense

10  counsel, let me ask plaintiffs' counsel, having heard

11  what you heard, are you willing to narrow any of the

12  claims in the case?

13         MR. BELLANTONI:   Well, let me – if I may just

14  address that, Judge, (indiscernible).  The one claim that

15  can be narrowed, I'm not sure how, I think it is clear,

16  based on what counsel shared with me – I did not realize

17  this until he shared the cases with me that in the State

18  of California, it's pretty clear cut that school

19  districts are not considered persons or the person of a

20  qui tam action, and the district courts use in an

21  Eleventh Amendment analysis to decide whether or not the

22  school districts are arms of the state.  The one issue I

23  have, the one place I'm hung up is under the IDEA school

24  districts that accept federal funds waive their Eleventh

25  Amendment protection.

What I have not yet figured out, Your Honor, and I apologize for my inability to do it, is whether or not the analysis by the district courts is using the Eleventh Amendment as an example to determine whether or not the school districts are persons or literally applying the Eleventh Amendment, literally saying because the Eleventh Amendment grants the school districts immunity as arms of the state, then they can't be sued.  If that's the case, then they don't have immunity under the IDEA.  Medicaid I have not found an answer to that question yet, whether or not the state accept federal funds, if they waive the same protection.  But if the courts were using the Eleventh Amendment by way of analysis, then the IDEA may not give the school districts the protection counsel claims they are.

So the question then is if we agree to brief that singular issue to Your Honor, depending on the ruling, we may have to brief (indiscernible) subsequently.  So I don't know if that narrows the issues or perhaps created some more work for the Court.  Then if this argument were included in a general motion to dismiss, if that makes any sense, Judge.

THE COURT:  Okay, so with respect to the main event, for lack of a better term, the federal statutory

18

claims, you're not persuaded by the argument made and

you're not, and I think Mr. Willey used the words

withdraw the claims, that that's not something you're

inclined to do.

MR. BELLANTONI:   I would say, Judge, I'm at 85

percent.  I have not yet discussed with Mr. Willey the

exception to the IDEA.  If he convinces me the way he

convinced me in the first instance that the school

districts are not arms of the state, that the Eleventh

Amendment exemption or the IDEA is inapplicable with

respect to this analysis, I don't think I have any choice

but to withdraw the claims.

As I said, my only reservation at this point is

not a matter of whether I'm willing to or not, I'm just

not convinced that the protection that the school

districts have under the Eleventh Amendment applies where

the statute said they expressly waive that protection

under the IDEA.  I mean this would just preclude bringing

the claim in the first instance.  Obviously, there are

the other issues that were addressed, you know, for

instance, the online learning.  Yet there's federal

guidance that says students can be taught online.  But

what was left out, as I'm looking at the question and

answer guidance from the Department of Education, it's

1

2  March 12 of 2020, online remote learning can be included

3  in a child's IEP if the IEP is created through the normal

4  process, including with consent of the parents.

5       The problem here is not simply the online

6  learning that was done unilaterally, and our position is

7  it was done unilaterally.  There's a change in the way

8  the program was being administered, the educational

9  program, that constitutes a change of place and required

10  the very consent that the federal guidance that counsel

11  refers to, that he referenced in the first instance, and

12  that is, again, may an IEP team consider this his

13  learning plan in a child's IEP as a contingency plan, it

14  (indiscernible).  And the answer to that is yes, IEP

15  teams may do so, but if an IEP team meets with the

16  parents, parental participation is a component of the

17  IDEA, and the guidance goes on to say that creating this

18  plan ahead of time gives service providers and the

19  parents an opportunity to reach an agreement as to what

20  circumstances would trigger.

21       So I don't know that there's any agreement on

22  that issue, but as I said, the first issue, if Your Honor

23  feels it does narrow the issues and make it easier, I

24  have no issue, no problem, Judge, with briefing this

25  issue whether or not the school districts are arms of the

1                                                              20

2   state and whether or not the Eleventh Amendment analysis

3   is actually an analysis that gives the districts

4   protection under the Eleventh Amendment or that the

5   courts are using that by way of example to illustrate

6   they're not persons.  I think, Your Honor, I don't know

7   that this is something that California courts, that's

8   unique to them.

9            I would say early on in New York I think the

10  Second Circuit was of the same opinion.  Today, they're

11  not.  They do a case-by-case analysis to determine

12  whether school districts are arms of the state. Whether

13  or not a high school or elementary school or even a

14  community college, there's a case out of Westchester,

15  Westchester Community College, because of the unique

16  circumstances was found not to be an arm of the state.

17  There's two different tests the Circuit uses.  One is a

18  the two-part test and one is a six-part test.

19           But clearly, again, I would have to concede in

20  the first instance the case law says that the school

21  districts are not arms of the state.  The only question

22  then becomes whether or not the exemption under the IDEA

23  makes them fair game for a (indiscernible) suit or not.

24  If briefing that singular issue is narrowly the issue, I

25  have no problem briefing that first to the Court, and if

1
2  Your Honor decides that they are arms of the state
3  notwithstanding the Eleventh Amendment protection, that
4  is what it is, and the other arguments need not be
5  briefed.
6          But, again, if Your Honor finds that the school
7  districts are not deserving of amendment protection, that
8  leaves counsel in the position of having to bring another
9  motion, and I don't know if that narrows the issues or
10 makes them more complicated, Judge.
11         THE COURT:   Yeah, so from my perspective, we
12 are not having multiple briefing on multiple levels.
13 We're going to do the whole shooting match.  So, Mr.
14 Willey, I'll give you a chance to respond.  It sounds
15 like plaintiffs' counsel, subject to that one California
16 exception, declines to withdraw his claims.  So you're
17 going to file a motion, right?
18         MR. WILLEY:   Yes.  I mean I would – I know Mr.
19 Bellantoni addressed one of the three core allegations in
20 the complaint that I discussed which ha to do with
21 whether IEP's need to be amended, and I understand he
22 said that the parents have to participate and, that the
23 parents have to participate when an IEP is amended.  And
24 I think what the agency guidance was that they do not
25 need to be amended, and, therefore, they do not need to

                                                              22

involve parental consent to remote learning when schools

are closed.

          So there were two other core allegations which

is just one where services can be billed to Medicaid when

services are provided remotely at all, and then at the

rates, what rates.  There were numerous allegations

throughout the complaint that somehow the school

districts were to bill at special rates or lower rates.

And even though they didn't cite any state establishment

of rates other than regular rates, Mr. Bellantoni didn't

address that in his comments.  I didn't know whether that

was, he just hadn't gotten to it or whether that was

purposeful.

          THE COURT:  You know, I'm not sure what purpose

it serves, but, Mr. Bellantoni, feel free to respond to

those points, since you're going to have to --

          (interposing)

          MR. BELLANTONI:  Your Honor --

          THE COURT:  -- a motion to --

          MR. BELLANTONI:  I'll - I'll defer to Ms.

Rousseau on this issue, Judge.  The issue is more than

just services, whether they can be billed at a lesser

rate.  The issue is whether or not services that were

claimed and been provided, for instance, physical

1

2  therapy, even if the authority exists in the way counsel

3  suggested exists that needs to be billed at a lesser

4  rate, part of the false claims act is you're not

5  providing the service you claim you're providing.  You

6  can call physical therapy physical therapy, but if you're

7  not putting hands on a child and delivering a physical

8  therapy session, then I'm not sure why you're billing for

9  physical therapy or occupational therapy if it's being

10 delivered in a different manner.

11       If counsel is representing there were new

12 sections created in Medicaid, for instance, online, so-

13 called physical therapy billed at a lesser rate, that

14 might be a different story.  But what I've seen so far is

15 that the complaint also contains allegations that these

16 services, although claimed to have been provide, simply

17 weren't because they simply can't be.  And I'll let Ms.

18 Rousseau address that further.

19       MS. ROUSSEAU:   Sure.  To echo Mr. Bellantoni's

20 point, I believe in the complaint one of the

21 illustrations and probably one of the best is that there

22 was a 15-year-old non-verbal autistic child or young man

23 rather who was receiving speech therapy over the phone,

24 and now if he's autistic non-verbal, he doesn't

25 communicate, you know, speaking; he uses an assistive

1                                                      24

2   communication device.  So those discrepancies that we're

3   talking about, if that makes sense, if the illustration

4   gives it, you know, more depth.

5            MR. WILLEY:   Yeah, I understand that, and I

6   don't want to – I don't think we should just be arguing

7   the merits of individual cases.  I just want to make the

8   broader point that I think the point of this conference

9   is so that we understand each other's position.  If the

10  service is on the IEP, identified in the IEP, it is

11  billable to Medicaid if it's provided.  Whether the

12  service meets the IDEA, you know, whether all the

13  services that the child receives meets the IDEA

14  requirement that there's a free and appropriate public

15  education, that's not a requirement for Medicaid billing.

16  For Medicaid billing the requirement is that the service

17  be on the IEP and that the service be provided.  And the

18  agencies have said those services can be provided in

19  person, or during school closures as a result of the

20  pandemic, they can be provided remotely.  And so if those

21  services on the IEP are furnished remotely or in person,

22  they're billable to Medicaid.

23            Whether you might believe that they would be

24  better provided in person even though the schools are

25  closed or whether they should be in person, it doesn't,

that's not really the requirement here, the Medicaid
requirement.

So I would, you know, I would ask that you
consider the Medicaid requirements for billing for
related health services.  Those requirements do not
incorporate the overall requirement in the IDEA that all
the services a student receives must be, must satisfy the
free and appropriate public education requirement.
That's an IDEA requirement.

MS. ROUSSEAU:  And with all due respect to the
Court, I'll just address this briefly because I don't
want to argue at this conference.  I think that there's
a, there might be a disconnect a little bit between what
I'm saying and what you're saying.  I understand what
you're saying, Mr. Willey, but the other aspect of this,
and I heard you mention a bunch of different Medicaid
guidelines, how it came down from the federal, it goes to
the state.  The federal guidelines during the COVID
closures were that if a provider was going to offer
services to a student with special education under the
IDEA, they must offer it in a way that they should see
that child or it should imitate or mirror an in-person
visit.

So I know that I gave you a specific example,

26

 1

 2  but it's children like that, children who were non-verbal

 3  getting speech over the phone, who were blind getting,

 4  you know, inappropriate services, it's those situations

 5  that we're talking about.  So, you know, in those

 6  respects we're saying that billing for, you know, a

 7  service that was not rendered face to face or mirrored an

 8  in-person visit was inappropriate and ran afoul of the

 9  federal Medicaid guidelines.  I hope that that clears

10  that up.

11          MR. WILLEY:   Which federal Medicaid guidelines

12  does that run afoul of?

13          MS. ROUSSEAU:   I could find it for you --

14          MR. WILLEY:   I'm not putting, I'm not trying to

15  put you on the spot, I just, Ms. Rousseau, I just really,

16  I'm having a hard time understanding, you know, you are

17  saying that the services have to meet some requirements

18  that I believe emanate from the IDEA overall whether a

19  student is receiving a free and appropriate public

20  education, but the Medicaid requirements are really just

21  in the service, speech therapy or whatever it is, on the

22  IEP and was that service provided.  And, you know,

23  whether you think it was provided in the best way

24  possible, those are the requirements.

25          MS. ROUSSEAU:   I think, respectfully, Mr.

27

1

2   Willey, we're just at a disagreement.  So I think, you

3   know, perhaps Judge Aaron, and I don't, I know you don't

4   want to do extra briefing, so I'm not sure if I should

5   continue.  I don't want to waste the Court's time or

6   anyone else's time that's on the line.  I know that

7   there's another attorney that also wanted to speak.

8           THE COURT:   Yeah, there's two or three others.

9   But, look, you'll receive the memorandum filed on behalf

10  of the defendants or memoranda.  I believe there's

11  already a schedule in place.  And obviously if the plans

12  are without merit, you ought to consider withdrawing

13  them.  I haven't heard Mr. Willey say that he believes so

14  much in the strength of his position he's going to send

15  you a 21-day notice under Rule 11.  If he believes that

16  that's the case, that's certainly his prerogative.  And

17  if you don't withdraw it within the 21 days and he's

18  right, there are consequences that flow from that.

19          But I personally have not studied these issues

20  as carefully as the both of you have, but facially, what

21  Mr. Willey is saying makes sense.  I can't tell you

22  whether he's right or not because, as I say, I haven't

23  studied it.  But we're going to proceed to briefing.

24          Let me ask, because I said I would give an

25  opportunity for others to speak.  Let me hear from Mr.

1

2   Driscoll if there's anything you would like to add to

3   this discussion.

4            MR. DRISCOLL:   Thank you, Your Honor.  I think

5   a lot of the substantive issues that the Stamford Board

6   of Ed would intend to raise were just covered here.  I

7   think we stand in a similar position, particularly with

8   respect to the applicability of the false claims act

9   given Connecticut law on whether the boards are an entity

10  that is subject to that.  I think the remainder Attorney

11  Willey really covered, is probably what the plaintiffs

12  could expect from the Stamford Board of Education, and we

13  would echo all the arguments he made.  I don't think I

14  want to take up anyone else's time with that with, you

15  know, repeating what he's already said, but that is in

16  large part what we would be arguing as well.

17           THE COURT:   Okay, and I know we had somebody on

18  behalf of the San Diego Unified School District.  I

19  didn't know if there's anything you wish to add.

20           MS. ANTRIM:  Yes, this is Whitney –

21           MR. VASSALLO:  Your Honor --

22           MS. ANTRIM:   Oh --

23           MR. VASSALLO:   Go ahead, Whitney, go ahead.

24           MS. ANTRIM:   This is Whitney Antrim on behalf

25  of San Diego Unified as well as the individuals named as

1

2  superintendents at the time.  I have two issues I'd like

3  to add.  I certainly join all of the issues raised,

4  especially as to the California statute.  But we have two

5  issues individual, well, collectively two.  To the – and

6  from what I'm hearing, to the extent that we're talking

7  about individual students and their respective IEP's,

8  courts have been very clear that the decision around

9  whether or not a state has been provided has to be

10  decided at the administrative level.  And so to the

11  extent that these individuals have not exhausted

12  administrative remedy, I think there is yet another bar

13  to this court hearing this case at this time because

14  those remedies have not been exhausted, and federal

15  courts have been pretty clear that they don't want to be

16  in the business of assessing individual IEP's like the

17  child that Ms. Rousseau described, the autistic non-

18  verbal child receiving state services allegedly over the

19  phone.

20          And so if we're going to be getting into the

21  nitty gritty, as it were, on each and ever one of the

22  children, I think exhaustive administration remedies

23  under IDEA 1415, I think it's 3(i), has to be considered.

24  So that will be one of the additional arguments that

25  we'll be bringing.

1

2          But specific to San Diego is that the child

3  whose IEP has been brought at issue has actually settled

4  with the San Diego Unified School District and signed a

5  general release in settlement, and we believe that this

6  is proceeding in a way that the child's family has agreed

7  not to.  And understanding it's a (indiscernible), but to

8  the extent that it's based on his IEP and his situation,

9  we think that there's additional issues there.

10          THE COURT:  All right, again, I would encourage

11  the plaintiff to consider the arguments made when they

12  receive the memoranda and withdraw claims as appropriate

13  and if appropriate.

14          Was there anyone else before I hear again from

15  the plaintiffs' side, is there anyone else on the defense

16  side who I haven't heard from that would like to be

17  heard?

18          MR. KITZINGER:  Yes, Your Honor, Steve

19  Kitzinger from the New York City Law Department.

20          THE COURT:  Yes, go ahead.

21          MR. KITZINGER:  I just wanted to bring back

22  around to an issue that Mr. Willey raised but was not

23  responded to, and that is the state false claims act

24  claims where the statute, for example, the New York State

25  and New York City false claims act statutes exclusively

 1

 2  exclude the City of New York and a claim by the City as

 3  being subject to those statutes.  And I think regardless

 4  of the merits or lack of merit of the federal false

 5  claims act claims asserted against the City by relator,

 6  it really can't be challenged that he cannot bring claims

 7  successfully under the state and local false claims act

 8  statutes against the City of New York defendants at a

 9  minimum.

10          And I think even if we can't narrow the big

11  issues, maybe we can save a few pages and a little ache

12  on the narrower issues.

13          THE COURT:   Okay, plaintiffs, do you agree to

14  withdraw your claims under the state IDEA against the

15  City of New York?

16          MR. KITZINGER:   The state STN.  Sorry, Your

17  Honor.

18          MR. BELLANTONI:   Your Honor, again, I wasn't

19  involved in drafting this complaint two years ago.  When

20  I was pointed to the authority that says the state or

21  state entities in New York cannot be named in state false

22  claims act cases, that appears to be what the statute

23  says.  I don't think that precludes the federal action

24  for violating the federal false claims act although where

25  I was in my research was trying to determine if the state

32

exemption somehow applies to the federal statute.  If

courts, district courts in New York have said because the

state exempts, you know, municipalities and school

districts, the school districts are free completely and

altogether from false claim cases, I don't believe that

to be the case, Judge.  To the extent that the state

statute precludes these causes of action against school

districts like the City of New York, I would just say I

don't believe I have any choice but to withdraw that

cause of action since that is what the statute says,

Judge.

          THE COURT:  Okay, so, Mr. Kitzinger, you'll

make the arguments, and it sounds like Mr. Bellantoni

will look at them and in his opposition will say we

concede, and we agree that these claims should be

withdrawn.

          MR. BELLANTONI:  Or, Your Honor, I may even

stip those out prior to.

          THE COURT:  Okay.

          MR. BELLANTONI:  I'm not prepared to say 100

percent right now, but I don't think I need to review his

argument.  I will review that on my own before the

motion's filed, and we'll resolve that issue one way or

the other before the motion.  I don't think it would be

33

the right thing for me to do to reserve that argument for

motions if I'm convinced that they should be withdrawn.

I believe I have an obligation to do that before the

motion's filed.

THE COURT:   All right, so I'll make this

comment, and obviously since I'm not presiding, we'll

have to get this approved by Judge Woods.  But it seems

to me, since we're already on to a later iteration of the

second amended complaint, as opposed to doing a third

amended complaint and thereby mooting the prior motions,

I believe that Judge Woods would be amenable to a

stipulation agreeing to withdraw this claim or this part

of a claim, however it's worded, and to deem the second

amended complaint amended by the stip.  I can run that by

him, but if the parties are amenable to doing that, I

propose that we send a letter to me with a proposed

stipulation, and I will get Judge Woods's approval to so

order it.

MR. BELLANTONI:   That's fine with plaintiffs,

Your Honor.

THE COURT:   Okay.  Is there anyone else that

wishes to be heard on this call who hasn't been heard?

MR. WILLEY:   Your Honor, this is Joseph Willey.

If I could just add one point.  Your Honor alluded to

34

Rule 11 as a vehicle to raise some of the points we were

discussing.  I guess I'd just like to also note that the

false claims act itself includes a provision on shifting

of attorney's fees when claims are asserted

inappropriately.  And so I would suggest that we and that

the plaintiffs take that into account as well, not just

Rule 11, in deciding whether to go forward on a claim

where there's specific agency guidance that permits the

defendants to provide the services and bill for the

services the way they are alleged to have been provided

and billed in the complaint.

        THE COURT:   All right, anything else?

        MR. KITZINGER:   Your Honor, this is --

        (interposing)

        MR. KITZINGER:   I'm sorry, I lost the

connection.  I am now back.  I hope I didn't miss

anything.

        THE COURT:   Mr. Willey will fill you in on

anything you missed.  Who else wanted to speak?

        MS. ANTRIM:   This is Whitney Antrim again,

thank you, Your Honor.  A question and query about page

limits on the motion upcoming, assuming we move forward

and file it.  Will the Court entertain an oral motion now

to grant a few extra pages or would you prefer one in

```
 1                                                    35
 2   writing for our brief?
 3           THE COURT:   How many pages do you want?
 4           MS. ANTRIM:   I'd like 35 total.
 5           THE COURT:   Any objection from the plaintiffs'
 6   side?
 7           MR. BELLANTONI:   No, Your Honor.
 8           THE COURT:   All right, granted.
 9           MS. ANTRIM:   Thank you so much.
10           THE COURT:   All right --
11           MR. BELLANTONI:   Your Honor --
12           THE COURT:   You have to --
13           MR. BELLANTONI:   Would that be generally
14   applicable to all parties or would we have to apply --
15           THE COURT:   Yeah, you would get reciprocity.
16           MR. BELLANTONI:   Thank you, Judge.
17           MR. WILLEY:   Your Honor, we're, as you know, we
18   are representing three major municipals defendants --
19           (interposing)
20           MR. WILLEY:   I'm not at this time going to
21   request more than that, and I don't know whether we'll be
22   submitting one single brief or multiple briefs.  But my
23   preference I think would be to submit one with just more
24   pages.  I think that would be more efficient.  But I'm
25   not in a position to request anymore than 35 at this
```

1
2 point, so as long as that's generally applicable, that's
3 fine for now.
4          THE COURT:   Yeah, it is and hopefully the
5 plaintiff will consent if you're going to have it in a
6 single brief or three different groups to give you more
7 pages.  If plaintiff does consent, I will, as long as
8 within reason, approve it.
9          So the schedule that I have is motions by May
10 27, responses by June 27, and replies by July 29.  Are we
11 on the same page?
12          MR. BELLANTONI:   Yes, Your Honor, for the
13 plaintiffs.  Just so everybody's aware, I would never not
14 consent to a request for extra pages or anything of that
15 nature.  So if counsel wants to submit something to the
16 Court or request whatever it is now, I can't imagine a
17 circumstance where there would be reasonable objection to
18 a request like that.  So I have no problem with counsel,
19 you know, with one brief, even if it exceeds I don't know
20 how many pages, certainly less than 35 times 3, that
21 makes it easier for him and the Court, but, again, I
22 would not object and would consent to any such a request.
23          THE COURT:   All right.  Okay, anything else?
24 All right, I thank the parties, and this matter's
25 adjourned.

1                                                                          37

2              MR. WILLEY:    Thank you, Your Honor.

3              MS. ANTRIM:    Thank you.

4              THE COURT:    Bye bye.

5              (Whereupon the matter is adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

## C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of United States of America and

State of New York ex rel. Patrick Donohue versus Richard

Carranza, et al., Docket #20cv5396, was prepared using PC-

based transcription software and is a true and accurate

record of the proceedings.

Signature_____
                        *Carole Ludwig*

                Carole Ludwig

Date:  May 20, 2022