UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

United States of America and States of the United States,
ex rel. Patrick Donohue,

                        Plaintiffs,

       -against-                                **1:20–CV–5396 (GHW)**

**BUFFALO PUBLIC SCHOOL DISTRICT**, and
**KRINER CASH**, in his official capacity as Superintendent,

                        Defendants.

------------------------------------------------------------------------------x

## PLAINTIFFS' OPPOSITION TO DEFENDANTS BUFFALO PUBLIC SCHOOL DISTRICT AND KRINER CASH'S MOTION TO DISMISS

Respectfully submitted
Brain Injury Rights Group
Attorneys for Plaintiffs

By: /s/ Ashleigh C. Rousseau
Ashleigh C. Rousseau, Esq. [5801923]
Rory J. Bellantoni, Esq. [RB 2901]
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
Ashleigh@pabilaw.org
Rory@pabilaw.org

## <u>TABLE OF CONTENTS</u>

Point I: Plaintiff-Relator Has Sufficiently Pled Claims for Violations of the FCA…….…………1

Point II: Venue is Proper in this Court……………………………………………...……16

Conclusion…………………………………………………...……………………………..18

# TABLE OF AUTHORITIES

**Cases**

*Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189 (S.D.N.Y. 2000) ...............................................19

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 2007 U.S. Dist. LEXIS 43508 (S.D.N.Y. 2007)...11

*Amos v. Biogen Idec Inc.*, 28 F.Supp.3d 164 (W.D.N.Y. 2014)...............................................17

*Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549 (S.D. N.Y. 2000) .......................................18

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)...................19

*Hinds County v. Wachovia Bank N. A.*, 2010 U.S. Dist. LEXIS 43202 (S.D.N.Y. 2010) ............15

*In re Manville Forest Prods.*, 896 F.2d 1384 (2d Cir. 1990) .........................................................18

*Luce v. Edelstein*, 802 F.2d 49 (2nd Cir.1986)..............................................................................17

*N.Y. Marine & Gen. Ins. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ..........................18

*Tyman v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 212879 (S.D.N.Y. 2017) ......................................17

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F.Supp.3d 242 (S.D.N.Y. 2014) .................1, 12

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F.Supp.3d 497 (S.D.N.Y. 2014)........1

*United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017).........2, 16

*United States ex rel. Forcier v. Computer Scis. Corp.*, 2017 U.S. Dist. LEXIS 128140 (S.D.N.Y. 2017)...............................................................................................................................................12

*United States ex rel. Hussain v. CDM Smith, Inc.*, 2017 U.S. Dist. LEXIS 159538..................1, 7

*United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94 (2d Cir. 2010)................7, 13

*United States v. Wells Fargo Bank, N.A.*, 972 F.Supp.2d 593 (S.D.N.Y. 2013).............................1

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).............13

*W.J. Nolan & Co. v. Midway Fed. Credit Union*, 913 F.Supp.806 (S.D.N.Y. 1996) ..................19

**Statutes**

20 U.S.C. §1400 ................................................................................................................................4

28 U.S.C. §1404(a) .........................................................................................................................16

34 C.F.R. Part 300 ............................................................................................................................4

42 C.F.R. §413.24(c) ........................................................................................................................3

N.Y. State Fin. Law §§188-194 et seq. ............................................................................................5

New York False Claims Act ..............................................................................................................5

Penal Law §175 .................................................................................................5

Penal Law §176 .................................................................................................5

Penal Law §177 .................................................................................................5

Rule 9(b) ....................................................................................................*passim*

Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 ......................6

Social Services Law §145 et seq. .........................................................................5

Social Services Law §366 et seq. .........................................................................5

Plaintiff-Relator, Patrick Donohue ("Plaintiff-Relator"), by and through undersigned counsel, hereby files his Memorandum in Opposition to the Motion to Dismiss (the "Motion") filed by Defendants Buffalo Public School District and Kriner Cash, in his official capacity as Superintendent ("Defendants" or "Buffalo Defendants").

## POINT I

### PLAINTIFF-RELATOR HAS SUFFICIENTLY PLED CLAIMS FOR VIOLATION OF THE FCA

Defendants contend that Plaintiff-Relator did not satisfy the pleading requirements of Fed. R. Civ. P. 9(b). (Motion at 12ff). While Rule 9(b) does impose heightened pleading requirements, this Court has held: "Rule 9(b) does not impose a 'one size fits all' list of facts that must be included in every FCA complaint." *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F.Supp.3d 497, 508 (S.D. N.Y. 2014). This Court continued:

> Ultimately, whether a complaint satisfies Rule 9(b) 'depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.'

*Id.* (quoting *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F.Supp.3d 242, 258 (S.D.N.Y. 2014) (quoting *United States v. Wells Fargo Bank, N.A.*, 972 F.Supp.2d 593, 616 (S.D.N.Y. 2013)).

This Court concluded that "[t]his is a fact-specific inquiry." *Id.* (internal citation and quotation marks omitted). More specially, "the Second Circuit held that 'Rule 9(b) does not require that every qui tam complaint provide details of actual bills or invoices submitted to the government.'" *United States ex rel. Hussain v. CDM Smith, Inc.*, 2017 U.S. Dist. LEXIS 159538 at *11 (quoting *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 93 (2d Cir. 2017)). "Instead, Rule 9(b) is satisfied by 'making plausible allegations creating a strong inference that [1] specific false claims were submitted to the government and [2] that the

information that would permit further identification of those claims is peculiarly within the

opposing party's knowledge.'" *Id.* (quoting *Chorches*, 865 F.3d at 86).

In the Second Amended Complaint ("SAC"), Plaintiff-Relator alleges the following:

1.    This is an action brought to recover taxpayer dollars spent as a result of Defendants' fraudulent conduct. Specifically, above-named Defendants conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws.

2.    Due to the profound nature of their disabilities, known to both the Defendants and related providers, these students were unable to meaningfully participate in these remote "sessions," yet Defendants fraudulently billed for these "sessions" through Medicaid at their regular, full rates. Defendants herein also utilized IDEA funding for non-related services, despite failing to offer a free appropriate public education in accordance with the law.

3.    As a result, Defendants obtained the benefit of virtually unfettered Medicaid reimbursements for these related service sessions, and as a result, Defendants have violated the federal False Claims Act, 31 U.S.C. § 3729-3733, ("FCA") as well as the corresponding state false claim statutes.

60.   The Relator has first-hand knowledge that the named District(s) and entities received interim payments based on fixed estimates of their actual costs in accordance with 42 C.F.R. §413.60(a), (c); §413.64(a), (f).

61.   At the end of each fiscal year, Relator knows that providers submitted cost reports of their actual expenditures in accordance with C.F.R. §413.60(b), §413.64(f) and that a final adjustment is made to settle the difference between the interim payments and a provider's actual purported costs. C.F.R. §413.64(f)(2).

62.   Further described herein, Relator has first-hand knowledge that claims were submitted on behalf of Special Education students by the Defendants for related services that were not offered in-person as defined by relevant case law, including related service sessions that were not offered to at all to students with disabilities, as described in their respective IEPs.

63.   In accordance with 42 C.F.R. §413.24(a), the named Defendants(s) must be able to provide adequate cost data supported by financial and statistical records, which must be capable of verification by independent and qualified auditors, and must provide the cost information in accurate and sufficient

2

detail to support the payments made for services furnished to the purported students. *See* 42 C.F.R. §413.24(c), §413.20(d).

64.   Further, Defendants are to maintain adequate documentation for auditing purposes. In order to perform a comprehensive audit, the Relator alleges that the claim details must be obtained from the provider's records. 42 C.F.R. §413.24(c).

65.   The Relator has knowledge that the above-named Defendants do not possess adequate or detailed records to substantiate the Medicaid claims made on behalf of students with disabilities for the 2019-2020 and 2020-2021 school years.

66.   The Relator also has first-hand knowledge that Defendants herein knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each Student's last-agreed-upon IEP, which required in-person services. Relator also has knowledge that some of these sessions were not offered to students with disabilities, despite Defendants' assertions that students within their jurisdictions were being educated in accordance with the law. *See*, M.H. v. New York City Dep't of Educ., 685 F.3d 217, 224 (2nd Cir., 2012) ("The IEP, the results of collaborations between parents, educators, and representatives of the school district, 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and *describes the specially designed instruction and services that will enable the child to meet those objectives*.") (emphasis added).

67.   Upon information and belief, Defendants obtained a consent from some parents on behalf of students with disabilities in order to obtain reimbursement for said services or alternatively, submitted said claims without consent.

68.   Further, Relator alleges that Defendants did not change the rate at which related services were billed when offered by alternative means (i.e. telehealth, phone, etc.), and were billed at the same rate as in-person services at the full rate, while conferring no meaningful benefit to students with disabilities, as required by law.

69.   As set forth above, Defendants must produce provider detailed statements in accordance with 42 C.F.R. §413.24(c).

70.   Each of the named Defendants is eligible to receive reimbursement by the federal government for a portion of the cost of providing health-related and

related services to Medicaid eligible children pursuant to the IDEA, 20 U.S.C. §1400 et seq., 42 U.S.C. §1396b(c).

71.    The IDEA (20 U.S.C. §1400) sets forth the regulations of the United States Department of Education, which were promulgated pursuant to authority granted by the statute (34 C.F.R. Part 300), guarantees students with disabilities a free and appropriate public education ("FAPE"). The term FAPE refers to special education and related services that are designed to meet a child's unique needs and that will prepare the child for further education, employment, and independent living.

72.    Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE.

73.    Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently.

74.    As a result of Defendants' multi-faceted campaign of fraud against the government, Defendants have collected hundreds of millions of dollars, if not billions of dollars, to which they were never entitled, causing direct injury to students with disabilities that had an IEP in place for the 2019-2020 and 2020-2021 school years, in addition to the general taxpayers funding such grants and reimbursements.

75.    Additionally, while simultaneously depriving students with disabilities of a free appropriate public education ("FAPE"), Defendants herein submitted additional applications for IDEA funding to the federal government with false assurances that Defendants were offering FAPE to students with disabilities for school years 2019-2020, 2020-2021, and 2021-2022. **Exhibit 1.**

112.   Defendants KRINER CASH, in his official capacity as Superintendent of BUFFALO PUBLIC SCHOOL DISTRICT ("BPSD"), and the BUFFALO PUBLIC SCHOOL DISTRICT (collectively, "Buffalo Defendants") engaged in fraudulent conduct by extracting from the State and Federal Governments, hundreds of millions of dollars in payments when they:

a.     knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval;

4

b.      knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;

c.      knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and

d.      conspired to commit the above acts, all in violation of 31 U.S.C. § 3729(a)(1)(A),(B),(C) & (G).

113.    Moreover, in addition to violation(s) under the federal FCA, Buffalo Defendants have also violated the New York False Claims Act; N.Y. State Fin. Law §§188-194 et seq.; Social Services Law §145 et seq.; Social Services Law §366 et seq.; Penal Law §175 (False Written Statements); Penal Law §176 (Insurance Fraud); Penal Law §177 (Health Care Fraud) as described herein.

114.    To substantiate these claims, Relator presents a redacted IEP from G.M., a 17-year-old student in Buffalo diagnosed Autism, as well as a speech and language impairment. A redacted copy of G.M.'s 2020 IEP is annexed hereto as **Exhibit 9.**

115.    In addition to Special Education classes, G.M. is recommended for Adaptive Physical Education, Speech Language Therapy, Occupational Therapy, Behavioral Intervention Therapy, Augmentative Technology Services, and Adaptive Seating. *See*, **Exhibit 9**, p. 15.

116.    Defendants BPSD, by and through Defendant KRINER CASH, in his official capacity as Superintendent, employed Autism Services, Inc., to offer G.M. the related services tailored to her needs. *See* **Exhibit 9**.

117.    Relator's initial interactions with G.M.'s Parent were with regard to the insufficiency and defects of the IEP in place. In the course of G.M.'s case, Relator has first-hand knowledge that not only has G.M. received all of her services remotely, but that <u>she will continue to receive her services remotely</u>, despite reopening efforts due to insufficient staffing. Annexed hereto is a letter acknowledging the insufficient staffing. **Exhibit 10.**

118.    Albeit G.M.'s Parent is not privy to the billing practices and requirements for Medicaid billing, the Relator's expertise and experience lead to the allegations herein.

119.    Relator alleges that in order to properly bill Medicaid for related services offered remotely, the Local Education Agency (LEA) should have

5

reconvened an IEP meeting with the Student's parent(s) to recommend remote related services. Relator has first-hand knowledge that the LEA (BPSD) did _not_ reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures.

120. As set forth in Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988, billing for related services must mirror (at maximum) the services recommended in each student's IEP. However, Defendants BPSD, by and through Defendant KRINER CASH, in his official capacity as Superintendent have billed for services that were recommended to be _in person_ as opposed to remote. Thus, billing for any "remote sessions" is not only inappropriate, but runs afoul of the Medicaid and IDEA billing restrictions and is unlawful.

121. Moreover, the IDEA regulations provide that in order to utilize IDEA funds to provide an appropriate education for students with disabilities, the LEA utilizing the IDEA funds must first provide a Free Appropriate Public Education (FAPE) for the Student.

122. Defendants BPSD, by and through Defendant KRINER CASH, in his official capacity as Superintendent, have failed to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations on the LEA campus (i.e., push-in/pull out, in "classroom" or at "separate provider location," etc.) and subsequently failing to provide the recommended related services as written.

123. Thereafter, Defendants BPSD, by and through Defendant KRINER CASH, in his official capacity as Superintendent, benefitted from their unlawful acts by collecting Medicaid reimbursement payments and IDEA funds for services that were not offered in accordance with the IEPs as written.

124. Alternatively, Defendants BPSD and Defendant KRINER CASH, in his official capacity as Superintendent, remained complicit in the scheme to defraud.

301. As set forth above, New York Defendants knowingly made, used, or caused to be made and used, false records and statements material to an obligation to pay or transmit money or property to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

302. New York Defendants fraudulently obtained federal funds by and through both the IDEA and Medicaid for unlawful related services purportedly "rendered" to New York students with disabilities.

Taken together, these averments make "plausible allegations creating a strong inference that [1] specific false claims were submitted to the government and [2] that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge.'" The SAC alleges that Defendants submitted claims for related services that were not offered in person or were not offered to disabled students at all. Similarly, in *Hussain*, the relator alleged that the "'contractor bill[ed] for something it did not provide.'" 2017 U.S. Dist. LEXIS 159538 at *14 (quoting *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010), rev'd on other grounds, 563 U.S. 401 (2011)). The *Hussain* Court concluded that the plaintiff had stated a cause of action under the FCA. *Id.*

More specifically, this Court has held: "To comply with Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Kester*, 23 F.Supp.3d at 251-52 (internal citation and quotation marks omitted).

In the instant case, the SAC sets forth the "who." The SAC alleges that the fraudulent statements were made by Kriner Cash and BPSD, and specifically, BPSD by and through Kriner Cash. (SAC at ¶¶ 112, 120, 123). It specifies the "what": claims that Defendants provided services to disabled students that were either provided remotely or not at all, in contravention of the students' IEPs and relevant law. (SAC at ¶¶ 62, 66, 68, 73, 75, 120, 123). The SAC specifies the "where" and "when": statements made to Medicaid and for IDEA funding (SAC at ¶¶ 2, 65, 123, 302) during the 2019-2020 and 2020-2021 schoolyears (¶¶ 64, 74).

Relator's claims are further substantiated by the publicly available budgets published by Defendants, which clearly show fluctuations in recognized Medicaid reimbursements during the 2020-2021 fiscal year.[1] Clearly, the number of enrolled students did not change within the Defendants' school district, yet the fluctuation in recognized cash flow from Medicaid from October 2020, in which Defendants recognized $60,000 in Medicaid reimbursements, and the projected revenue of $500,000 for November 2020 and every month thereafter for the 2020-2021 SY also serves to support Relator's claims. Though Defendants may contend that the fluctuation was due to complications related to COVID-19, Defendants were obligated to continue educating students with disabilities to provide a free appropriate public education by offering those services recommended in each disabled student's Individualized Education Program ("IEP"). Thus, if Defendants had complied with those obligations, there would be no great variability in federal Medicaid reimbursements, such as July 2020 with a recognized cash flow of $540,000, August 2020 with a recognized cash flow of $229,000, September 2020 with a recognized cash flow of $60,000, October 2020 with a recognized cash flow of $61,000, and projected cash flow for the following months (Nov. 2020-June 2021) as $500,000. These figures do not only cause great concern but serve as a sufficient basis to overcome Defendants' contentions that Relator's claims are without merit.[2]

Defendant Kriner Cash, in his official capacity as Superintendent of Buffalo Public School District oversees the Budget, Accounting, Finance, and Claims Departments of his School District. Buffalo School District Policy §4310(d) specifically sets forth that the Superintendent shall:

---

[1] https://www.buffaloschools.org/site/handlers/filedownload.ashx?moduleinstanceid=97&dataid=222184&FileName =OCTOBER%202020%20FINANCIAL%20REPORTS.pdf (p. 2).
It is also worth noting that since the date of the report referenced, there have been no other published updates as to the actual recognized Medicaid reimbursements for the 2020-2021 SY.
[2] https://www.buffaloschools.org/site/handlers/filedownload.ashx?moduleinstanceid=97&dataid=222184&FileName =OCTOBER%202020%20FINANCIAL%20REPORTS.pdf (p. 2)

"Organize, administer, evaluate, and supervise the programs and personnel of all school departments, instructional and non-instructional." Thus, Relator contends that Defendant Kriner Cash, in his official capacity as Superintendent is responsible for the submission of Medicaid reimbursement claims, or otherwise oversees, directs, and supervises those employees tasked with same.

Finally, the SAC sets forth the "how," or why the statements were fraudulent: Defendants "conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws" (SAC at ¶ 1); billed for remote services at their regular, full rates despite the fact that disabled students were unable to meaningfully participate (*Id.* at ¶ 2); submitted claims "on behalf of Special Education students for related services that were not offered in-person as defined by relevant case law, including related service sessions that were not offered to at all to students with disabilities, as described in their respective IEPs" (*Id.* at ¶ 62); "knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each Student's last-agreed-upon IEP, which required in-person services" (*Id.* at ¶ 66); "did not change the rate at which related services were billed when offered by alternative means (i.e. telehealth, phone, etc.), and were billed at the same rate as in-person services at the full rate, while conferring no meaningful benefit to students with disabilities, as required by law" (*Id.* at ¶ 68); "fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not

performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently" (*Id.* at ¶ 73); "submitted additional applications for IDEA funding to the federal government with false assurances that Defendants were offering FAPE to students with disabilities for school years 2019-2020, 2020-2021, and 2021-2022" (*Id.* at ¶ 75); "did *not* reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures" (*Id.* at ¶ 119) (emphasis in original); violated the Medicaid and IDEA billing restrictions by billing "for services that were recommended to be *in person* as opposed to remote" (*Id.* at ¶ 120) (emphasis in original); "failed to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations on the LEA campus (i.e. push-in/pull out, in 'classroom' or at 'separate provider location', etc.) and subsequently failing to provide the recommended related services as written" (*Id.* at ¶ 122); "benefitted from their unlawful acts by collecting Medicaid reimbursement payments and IDEA funds for services that were not offered in accordance with the IEPs as written" (*Id.* at ¶ 123); and "fraudulently obtained federal funds by and through both the IDEA and Medicaid for unlawful related services purportedly 'rendered' to New York students with disabilities" (*Id.* at ¶ 302).

This Court has held that a plaintiff must plead with sufficient specificity "to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against him or her; (2) to protect a defendant from harm to reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of 'strike suits.'" *Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett*, 2007 U.S. Dist. LEXIS 43508 at *20 (S.D.N.Y. 2007). The allegations of the SAC meet this standard. Defendants clearly have fair notice of the claims against them: claims for Medicaid reimbursement and IDEA funds for providing related services to disabled students that were either

not provided pursuant to the requirements of the students' IEPs or were not provided at all. The specificity of the SAC's claims, which were, in part, based upon Plaintiff-Relator's first-hand knowledge, are sufficient to protect against unfounded allegations of fraud. And finally, this suit clearly is not a "strike suit."

Further, this Court has held that "district courts in the Second Circuit have concluded that '[w]here numerous false claims are involved, the plaintiff may satisfy Rule 9(b) by providing sufficient identifying information about those false claims, or by providing example false claims that enable the defendant to identify similar claims.'" *United States ex rel. Forcier v. Computer Scis. Corp.*, 2017 U.S. Dist. LEXIS 128140 at *15 (S.D.N.Y. 2017) (quoting *Kester*, 23 F.Supp.3d at 260). In the instant case, Plaintiff-Relator made allegations regarding the fraudulent claims Defendants made with respect to a specific student in the school district, G.M., as an example of the fraud alleged. (SAC at ¶¶ 114-118). As this Court held in *Forcier* and *Kester*, this example false claim is sufficient to satisfy Rule 9(b), particularly in aggregation with the other detailed allegations in the SAC, as well as the new details provided herein.

The SAC makes allegations that are both factually false and legally false. Factual falsity is "'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Forcier*, 2017 U.S. Dist. LEXIS 128140 at *16 (quoting *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001)). The SAC alleges that Defendants incorrectly described services as being provided in accordance with the students' IEPs when they were either provided remotely or not at all. (SAC at ¶¶ 62, 66, 73). The SAC has also alleged legal falsity. A defendant makes a legally false claim when it "'falsely represents that it is in compliance with a particular federal statute or regulation or an applicable contractual term.'" *Forcier*, 2017 U.S. Dist. LEXIS

128140 at *16 (quoting *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010)).

There are two types of legally false claims: express false certification and implied false certification. An express false certification "'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Id.* (quoting *Mikes*, 274 F.3d at 698). The SAC alleges express false certification. It alleges that Defendants falsely represented that they were complying with relevant law, including the IDEA. (SAC at ¶¶ 66, 75, 270).

Plaintiff-Relator also alleges implied certification fraud. (Amended Complaint at ¶¶ 272-274). As this Court has held, to assert an implied certification claim, a plaintiff must allege that:

> (1) the defendant made specific representations about goods or services, (2) the defendant failed to disclose noncompliance with a legal or contractual requirement, (3) the omission renders the representation misleading with respect to the goods or services provided, (4) the omission is material to the government's payment decision, and (5) the defendant acted knowingly.

*Hussain*, 2017 U.S. Dist. LEXIS 159538 at *19 (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016)).

In the SAC, Plaintiff-Relator alleges that Defendants made representations that they provided related services to disabled students. (SAC at ¶¶ 62, 66, 68, 73, 75, 302). Plaintiff-Relator alleges that Defendants did not disclose that they failed to comply with the requirements of the IDEA by providing the related services as specified in the students' IEPs or otherwise required by law. (SAC at ¶¶ 62, 66, 68, 73, 75, 119, 120, 122-123). Plaintiff-Relator alleges that the omission renders the representation misleading. (SAC at ¶¶ 68, 73, 119, 120, 122-123). Plaintiff-Relator alleges that the omission is material to the government's payment decision. (SAC at ¶¶ 73, 74, 112, 123, 302). Finally, Plaintiff-Relator alleges that Defendants acted knowingly. (SAC at ¶¶ 66,

72, 112).[3] Accordingly, Plaintiff-Relator has satisfied the requirements of pleading a claim for implied certification.

Defendants argue that Plaintiff-Relator has failed to allege that they failed to provide a FAPE to any student by providing related services remotely and that he has failed to allege that providing services remotely was in violation of any student's IEP. (Motion at 16-20). However, the SAC alleges that one of the conditions that must be met to qualify for Medicaid reimbursement for IDEA-related services is that "<u>The services _must_ be listed in the child's individualized education program (IEP)</u>." (SAC at ¶ 81) (emphasis in original). The SAC alleges that Defendants submitted claims for remote services that were contrary to the students' IEPs, which required in-person services. (_Id._ at ¶ 66). It alleges that Defendants failed to provide students a FAPE by creating IEPs that it knew it could not implement. (_Id._ at ¶ 72).

The SAC alleges "that in order to properly bill Medicaid for related services offered remotely, the Local Education Agency (LEA) should have reconvened an IEP meeting with the Student's parent(s) to recommend remote related services. Relator has first-hand knowledge that the LEA (BPSD) did not reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures." (_Id._ at ¶ 119). Plaintiff-Relator alleges that the Medicare Catastrophic Coverage Act of 1988 requires that "billing for related services **_must mirror_** (at maximum) the services recommended in each student's IEP. However, Defendants BPSD, by and through Defendant Kriner Cash, in his official capacity as Superintendent, have billed for services that were recommended to be in person as opposed to remote. Thus, billing for any 'remote sessions' is not only inappropriate but runs afoul of the Medicaid and IDEA billing restrictions and is unlawful." (_Id._ at ¶ 120). He alleges that Defendants "have failed to provide the

---

[3] Rule 9(b) provides that scienter "may be alleged generally."

students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations on the LEA campus (i.e. push-in/pull out, in 'classroom' or at 'separate provider location,' etc.) and subsequently failing to provide the recommended related services as written." (*Id.* at ¶ 122). As alleged in the SAC, Defendants' failure to provide related services that adhered to the students' IEPs, i.e., were provided in person, constituted a failure to provide a FAPE.

Importantly, this Court has held: "courts have relaxed the Rule 9(b) pleading requirements where much of the factual information needed to fill out a plaintiff's complaint lies within the opposing party's knowledge." *Hinds County v. Wachovia Bank N. A.*, 2010 U.S. Dist. LEXIS 43202 at *43 (S.D.N.Y. 2010). This Court held: "Insofar as Plaintiffs have not identified the who, when, and where attributable to each alleged false certification or rigged bid underlying their False Claims Act claims, Defendants are correct that Plaintiffs have not pled their claims with the particularity required by Rule 9(b)." *Id.* at *44. However, as described herein, Defendant's own Board Policy, §4310(d), specifically tasks the Superintendent with the oversight and supervision of the department(s) responsible for submitting the false claims. If allowed further discovery, Relator is confident that the parties responsible, including but not limited to Defendant Superintendent Cash, can be ascertained. Nonetheless, this Court held "that the information necessary to plead the claim at issue with the particularity required by Rule 9(b) if it exists, is likely in Defendants' possession." *Id.* Accordingly, this Court held that the complaint satisfied the pleading requirements of Rule 9(b).

Here, it is clear that the nature of the related services provided to students with IEPs (as well as the formulation of the IEPs themselves), and the application for Medicaid reimbursement and IDEA funding for those services, are well within Defendants' knowledge. In finding that the

complaint at issue had stated a claim under the FCA, this Court in *Hinds County* held that its ruling was "consistent with the spirit and purpose" of Rule 9(b), which is to "(1) ensure that defendants have sufficient notice of plaintiff's claims, (2) discourage strike suits, and (3) safeguard a defendant's reputation." *Id.* at *44. As set forth above, the SAC satisfies that standard, and ruling that the SAC satisfies the pleading requirements of Rule 9(b) would be "consistent with the spirit and purpose" of the rule.

> This Court has held:

> While Rule 9(b) requires particularity, '[i]t is not the purpose of Rule 9(b), as applied to FCA *qui tam* actions, to render the FCA toothless as to particularly clever fraudulent schemes.' *Chorches*, 865 F.3d at 86; *see also [United States ex rel.] Wood [v. Allergan, Inc.]*, 2017 U.S. Dist. LEXIS 50103, 2017 WL 1233991, at *33 [(S.D.N.Y. 2017)] ('The purpose of Rule 9(b)'s heightened standard is to ensure that defendants have sufficient notice — not to immunize them from suit at the outset.'). The rule 'demands specificity, but . . . it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility.' *Chorches*, 865 F.3d at 88.

2017 U.S. Dist. LEXIS 159378 at *45 (S.D.N.Y. 2017).

This Court held further that, "as the Second Circuit recently instructed, if a relator alleges facts supporting a strong inference that the defendant violated the FCA, but there is a dispute regarding whether Rule 9(b) has been entirely satisfied, the proper resolution may be a targeted discovery process rather than outright dismissal . . ." *Id.* at *45 (citing *Chorces*, 865 F.3d at 88 n.13). As set forth above, the SAC satisfies the "spirit and purpose" of Rule 9(b). To the extent this Court believes that the question is disputable, a targeted discovery process would be more appropriate than outright dismissal.

As a final point, Plaintiff-Relator argues that, should this Court be inclined to hold that the SAC fails to state a cause of action, it should dismiss with leave to amend the complaint. As this Court has held: "complaints dismissed under Rule 9(b) are almost always dismissed with leave to

15

amend." *Tyman v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 212879 at *20 (S.D.N.Y. 2017) (internal

quotations omitted) (quoting *Amos v. Biogen Idec Inc.*, 28 F.Supp.3d 164, 173 (W.D.N.Y. 2014)

(quoting *Luce v. Edelstein*, 802 F.2d 49, 56 (2nd Cir.1986))).

## POINT II

### VENUE IS PROPER IN THIS COURT

A court is permitted to transfer a case to any other district where the venue is proper, "for

the convenience of the parties and witnesses [and] in the interest of justice." *See* 28 U.S.C.

§1404(a). Defendants argue that this case should be dismissed rather than transferred for improper

venue. Plaintiff-Relator contends that the venue is proper in this Court, and this Court should not

transfer this case to another court.

Whether the transfer promotes convenience is based on the following seven factors set

forth by the Second Circuit: "(1) the plaintiffs' choice of forum; (2) the convenience of witnesses;

(3) the location of relevant documents and relative ease of access to sources of proof; (4) the

convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel

the attendance of unwilling witnesses; and (7) the relative means of the parties." *N.Y. Marine &*

*Gen. Ins. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). However, "[t]here is no rigid

formula for balancing these factors, and no single one of them is determinative." *Citigroup Inc. v.*

*City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000).

Here, Plaintiff-Relator makes claims with regard to Medicaid claims and IDEA Part B

funds made by Defendants in violation of the FCA and the corresponding State statute(s). There

will likely be few witnesses, if any, to be called, and any claims submitted that do not align with

provider logs or students' IEPs would be considered fraudulent. Thus, this case is based primarily

on documentation, or lack thereof. Defendants should be able to produce records easily; if they

cannot do so, they could request the same from Medicaid and forward them to Plaintiff-Relator. Defendants have not been called to appear before the Court physically. In light of the continuing uncertainty of COVID-19, it remains unclear if the Parties will have to appear physically.

Although Plaintiff-Relator maintains that jurisdiction before this Court is appropriate, he acknowledges the concurrent federal jurisdiction of the Western District of New York. However, the Western District of New York is no more convenient for Plaintiff-Relator than this Court is for Defendants. Ultimately, the decision on whether to transfer the venue is at the court's discretion. *See In re Manville Forest Prods.*, 896 F.2d 1384, 1391 (2d Cir. 1990). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000).

As noted above, Defendants seek dismissal rather than transfer. Although the transfer to a concurrent jurisdiction may be "proper" in the academic sense, the Supreme Court set forth that in exceptional circumstances, a district court could dismiss an action if "considerations of wise judicial administration" warranted it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Dismissal is not warranted here.

"Emphasizing the virtually unflagging obligation of the district courts to exercise the jurisdiction given them, the Court enumerated three facts for a federal court to consider in assessing the appropriateness of dismissal where concurrent jurisdiction exists: (1) the inconvenience of federal forum; (2) the desirability of avoiding piecemeal litigation; and (3) the order in which jurisdiction was obtained by the concurrent forums." *W.J. Nolan & Co. v. Midway Fed. Credit Union*, 913 F.Supp.806 (S.D.N.Y. 1996) (internal quotation omitted), citing *Colorado River*, 424 U.S. at 818. As stated above, the Western District of New York is no more convenient for Plaintiff-Relator than this Court is for Defendants. It is highly desirable to avoid piecemeal litigation, and

the order in which jurisdiction was obtained in the concurrent jurisdictions is not a factor in this

case. Thus, venue is proper in this Court, and this Court should not dismiss the case, nor should it

transfer the case to the Western District of New York.

## **<u>CONCLUSION</u>**

For the reasons stated above, Plaintiffs respectfully request that the Court deny the Buffalo

Defendants' Motion to Dismiss and that Defendants remain in the pending litigation before this

Court.

Respectfully submitted,

Brain Injury Rights Group
Attorneys for Plaintiffs

By: /s/ Ashleigh C. Rousseau
Ashleigh C. Rousseau, Esq. [5801923]
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
Ashleigh@pabilaw.org

cc:   Nathaniel Kuzma, Esq.
Robert E. Quinn, Esq.
65 Niagara Square, 713 City Hall
Buffalo, New York 14202
Tel.: (716) 816-3102
Attorneys for the Buffalo Defendants
*Via ECF*

18