### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ : | |
| UNITED STATES OF AMERICA AND STATES | : |
| OF THE UNITED STATES, ex. Rel. | : |
| PATRICK DONOHUE | : |
| | :     CIVIL ACTION NO: |
| | :     1:20-cv-5396 (GHW) |
| | : |
| Plaintiff-Relator | : |
| VS. | : |
| | : |
| RICHARD CARRANZA, in his official capacity | : |
| as the Former Chancellor of New York City | :     JUNE 30, 2022 |
| Department of Education, et al | : |
| | : |
| Defendants | : |
| _____ : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STAMFORD BOARD OF EDUCATION AND DR. TAMU LUCERO'S MOTION TO DISMISS

BERCHEM MOSES PC

75 Broad Street
Milford, CT 06460
203-783-1200

*Attorneys for Defendants*
*Stamford Board of Education and Dr. Tamu Lucero*

Ryan P. Driscoll, Esquire.
Partner

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

PRELIMINARY STATEMENT ........................................................................................ 5

FACTUAL BACKGROUND ............................................................................................. 6

LEGAL ARGUMENT ........................................................................................................ 9

POINT ONE ......................................................................................................................... 9

THE FCA DOES NOT APPLY TO STAMFORD..................................................... 9

POINT TWO ...................................................................................................................... 11

THE COMPLAINTS FAILS TO ALLEGE FRAUDULENT CONDCUT, A REVERSE FALSE CLAIM OR A CONSPIRACY .................................................................................. 11

POINT THREE ................................................................................................................... 12

THIS COURT HAS NO PERSONAL JURISDICTION OVER STAMFORD .................. 12

POINT FOUR ..................................................................................................................... 16

THE PLAINTIFF-RELATOR'S CLAIMS AGAINS STAMFORD ARE IMPROPERLY JOINED AND MUST BE DISMISSED OR SEVERED ......................................... 16

POINT FIVE ....................................................................................................................... 17

VENUE IS IMPROPER ................................................................................................. 17

POINT SIX .......................................................................................................................... 20

CLAIMS AGAINST DR. LUCERO IN HER OFFICIAL CAPACITY AS SUPERINTENDENT SHOULD BE DISMISSED AS DUPLICATIVE ............................. 20

POINT SEVEN ................................................................................................................... 21

THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS OR, IN THE ALTERNATIVE, FIND THAT THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE CONNECTICUT STATE LAW ............................................... 21

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 ......................................................................................... 9
*Bank_Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 ................................. 13
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 ............................................................................... 9
*Board of Education v. New Haven*, 237 Conn ......................................................................... 11
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 ....................................................................... 13
*Cf. Biggs v. Meadow*, 66 F.3d 56 ........................................................................................... 20
*Cheshire v. McKenney*, 182 Conn. 253, 257 (1980) ................................................................. 11
*Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ............................................ 21
*Daimler AG v. Bauman*, 571 U.S. 117 .............................................................................. 13, 15
*Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 ........................................................... 16
*Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-09875 (JPO), 2018 WL 941747 ...... 17
*Goldlawr, Inc. v. Heinman*, 369 U.S. 463 ............................................................................... 17
*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 .......................................................... 14
*Int'l Shoe Co. v. Washington*, 326 U.S. 310 ........................................................................... 13
*J.T. v. de Blasio*, 500 F. Supp. 3d 137 ......................................................................... 17, 18, 19
*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 ...................................................................... 12
*Kentucky v. Graham*, 473 U.S. 159 ....................................................................................... 20
*Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50 ........................................... 13
*Love-Lane v. Martin*, 355 F.3d 766 ....................................................................................... 20
*Meserole St. Recycling, Inc. v. CSX Transp., Inc*., No. 06-CV-04652 (CBA), 2007 WL 2891424
.................................................................................................................................... 17
*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 .................................................... 12
*Nassau Cnty. Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151 ........... 17
*Peterson v. Regina*, 935 F. Supp. 2d 628, 638 .................................................................. 16, 17
*Stone #1 v. Annucci*, No. 20-CV-01326 (RA), 2021 WL 4463033 ............................................ 20
*T.Y. v. New York City Dept. of Educ.*, 584 F. 3d 412, 415 (2009) ............................................ 11
*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 .................................................................... 12
*Tower v. Miller Johnson, Inc.*, 67 Conn. App. 71, 78 (2001) ................................................... 22
*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339 ....................................... 19
*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861 ........................... 18
*Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ............................................ 21
*Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens* 529 U.S. 765 (2000) .................. 10
*Waldman v. Palestinian Liberation Organization*, 835 F.3d 317 ....................................... 12, 13

## Statutes

28 U.S.C. § 1391 ............................................................................................................... 18, 19
28 U.S.C. § 1406(a) ............................................................................................................... 17
31 U.S.C. § 3729 .................................................................................................................... 10
31 U.S.C. § 3730 ...................................................................................................................... 5
31 U.S.C. § 3732 .......................................................................................................... 15, 16, 18

31 U.S.C. §3729 ........................................................................................................... 8

C.G.S. § 4-275 ............................................................................................................ 21

C.G.S. §4-274 ................................................................................................... 5, 7, 22

F.R.C.P. Rule 12(b)(2) ................................................................................................ 12

F.R.C.P. Rule 20 ......................................................................................................... 16

F.R.C.P. Rule 21 ......................................................................................................... 16

F.R.C.P. Rule 4(e) ...................................................................................................... 14

N.Y. C.P.L.R. §302(a) ......................................................................................... 14, 15

N.Y.C.P.L.R. §301 ...................................................................................................... 14

## PRELIMINARY STATEMENT

Patrick Donohue, Esq. (the "Plaintiff-Relator") initiated this *qui tam* action on behalf of the United States of America and individual States, along with the District of Columbia, against a number of school districts in the United States and their respective superintendents, including the Stamford Board of Education (the "Board") and its Superintendent, Dr. Tamu Lucero ("Dr. Lucero")( collectively referred to as the "Stamford").

The Plaintiff-Relator's Second Amended Complaint (the "Complaint"), alleges, *inter alia*, violations of the False Claims Act ("FCA"), 31 U.S.C. § 3730 and Connecticut False Claims Act, C.G.S. 4-274, et. seq.   The Complaint contends that in the wake of the COVID pandemic-related school closures, each of the defendants provided "related services" for students with disabilities via telehealth and/or telephone contrary to the Medicaid and Individuals with Disabilities Education Act (the "IDEA")/Title I billing requirements and submitted for reimbursement of the same by misrepresenting that such services were in compliance with the relevant state and federal laws. (*See ECF No. 19 at* ¶¶ 1-3, 19).

This Court should dismiss the claims as to Stamford for the following reasons:*(1)* the Complaint fails to state a claim upon which relief can be granted; (2) Stamford has been improperly joined; (3) the Court lacks personal jurisdiction; and (4) this venue is improper. In the event that the claims under federal law are dismissed, the Court should decline to exercise jurisdiction over the Plaintiff-Relator's state law claims.  However, in the event that such claims are retained by the Court, they should also be dismissed as they fail to state a claim.

**FACTUAL BACKGROUND**

The Plaintiff-Relator initiated this *qui tam* action on or about September 29, 2021 (*ECF No. 19)* against eleven school districts and their respective superintendents, including Stamford, two state departments of education, and the current and former chancellors of the New York City Department of Education.  According to the Complaint, the Board "operates within the jurisdiction of Stamford, Connecticut" and Dr. Lucero, as superintendent, was responsible for the oversight and management of the schools within Stamford during the 2019-2020 school year and subsequent years.  (*Id. at ¶ 39-41*).

The Complaint's core allegation is that the defendants engaged in "fraudulent conduct" by providing "related services for students with disabilities via [remote means], contrary to the Medicaid and IDEA/Title I billing requirements, and submit[ing] for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws." (*Id. at ¶ 1*).  The Plaintiff-Relator maintains that the defendants "fraudulently billed for [the remote sessions] through Medicaid at their regular, full rates" and used IDEA funding for "non-related services" even though "students were unable to meaningfully participate in these remote sessions." (*Id. at ¶ 2, 19-20*).   He claims to have "first-hand knowledge that Defendants…knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each [s]tudent's last-agreed-upon IEP, which required in-person services." (*Id. at ¶ 66-68*).  The Plaintiff-Relator submits that by "obtaining the benefit of virtually unfettered Medicaid reimbursements… the Defendants have

violated the [FCA] as well as the corresponding state false claim statutes", such as Connecticut General Statutes §4-275 (*Id. at ¶ 3*).

The Complaint also alleges that "Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE." *(Id. at ¶ 72).*[1] The Plaintiff-Relator avers that "Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently." (*Id. at ¶ 73, 172, 270*). Finally, the Plaintiff-Relator claims that the defendants "benefitted from their unlawful acts by collecting Medicaid reimbursement payments for services that were not offered in accordance with the IEP as written" and that Stamford "remained complicit in the scheme to defraud." *(Id. at 173-74).*

With respect to the factual background regarding IDEA funding for related services, federal and state agency guidance regarding compliance with IDEA during COVID-19 pandemic and Medicaid funding for related services, Stamford adopts and incorporates as if more fully set forth herein such background as set forth in the motion to dismiss and memorandum of law filed by the New York City Department of Education, et. al., contemporaneously with this motion.

Specific to Stamford, and "in anticipation of the defendants' allegations that the Plaintiff-Relator's claims are without merit", he points to a redacted 2020 IEP of H.P., a student in

---

[1] Notably, there is no cause of action for denial of FAPE against Stamford here and Stamford submits that such a claim cannot, by definition, be brought via a *qui tam* action. Even assuming, *arguendo*, that the Plaintiff-Relator could bring a FAPE claim on behalf of H.P., it must be noted that on or about February 3, 2022, that student's parents and attorney (an attorney employed by Plaintiff-Relator's firm), executed a resolution agreement resolving all claims against Stamford for the 2019-2020 school year.

Stamford Public Schools. *(Id. at ¶ 164 and Exhibit 14)*. The Plaintiff-Relator claims that while

the IEP was "formulated 'during the time of school closure due COVID-19 pandemic", it was

"developed for implementation within a regular school building." *(Id. at ¶164.)*. The Plaintiff-

Relator contends that Stamford "drafted and implemented a hypothetical IEP with unrealistic

terms" and then submitted for Medicaid reimbursement and/or IDEA funding using the terms of

this hypothetical IEP. *(Id. at ¶ 165)*. Although the Plaintiff-Relator concedes that H.P.'s

parents are "not privy to the billing practices and requirements for Medicaid billing", he

contends that his "expertise and experience lead to the allegations contained" within the

Complaint (i.e. claims of Medicaid fraud). *(Id. at 166)*. He alleges that "not only was the

method of delivery of H.P.'s services inappropriate and rendered useless", but that Stamford

billed Medicaid for those services, even though they were "not offered to students with

disabilities as designed and described in their IEPs." (*Id. at 168*). The Complaint alleges that in

"order to properly bill Medicaid for related services offered remotely, Stamford should have

reconvened an IEP meeting with the Student's parent(s) to recommend remote related service"

*(Id. at 169)*. The Plaintiff-Relator contends that Stamford billed for services that were

recommended to be in person as opposed to remote, in violation of Section 411(k)(13) of the

Medicare Catastrophic Coverage Act of 1988.

In addition, the Plaintiff-Relator claims that the defendants, including Stamford, engaged

in "False Certification Fraud" (*Id. at 269-71),* "Implied Certification Fraud" (*Id. at 272-74)* and

"Worthless Services Fraud" although he does separate these claims into separate causes of

action. For his actual causes of action, the Plaintiff-Relator asserts the following:

- <u>First Claim</u>. Violation of 31 U.S.C. §3729(a)(1)(A)), presenting false claims for payment (*Id. at 281);*
- <u>Second Claim</u>. Violation of 31 U.S.C. §3729(a)(1)(B), use of false statements (*Id. at 287)*;

- <u>Third Claim</u>.  Violation of 31 U.S.C. § 3729(a((1)(G) use of false statements;
- <u>Fourth Claim</u>.  Conspiracy to commit a violation of the FCA in violation of 31 U.S.C. §3729(a)(1)(c) (*Id. at ¶¶ 294-97*); and
- <u>Twelfth Claim</u>:   Violation of Connecticut General Statutes Section 4-275 (*Id. at ¶¶194-197*).

Stamford hereby moves to dismiss the First, Second, Third, Fourth and Twelfth Claims pursuant Federal Rules of Civil Procedure 12(b)(2), (3), and (6) for failure to state a claim upon which relief can be granted, improper venue, improper joinder and lack of personal jurisdiction, although not necessarily addressed in that order below.

## LEGAL ARGUMENT

## POINT ONE

## THE FCA DOES NOT APPLY TO STAMFORD

The First, Second and Third Claims of the Complaint allege violations of the FCA.  Each of these claims/counts should be dismissed under F.R.C.P. Rule 12(b)(6) because it is well-settled that the FCA does not subject a State or State agency (i.e. Stamford) to liability in *qui tam* actions.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face".  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Even if the Plaintiff-Realtor's allegation that Stamford improperly billed Medicaid for related services provided remotely or via telehealth is true, the claim fails to state a claim that is plausible on its face, because the FCA does not apply to Stamford.

In *Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*, the United States Supreme Court addressed the question of whether a State (or state agency) was a "person" subject to liability under the FCA.  529 U.S. 765, 779 (2000) (*emphasis* in original, citations omitted).  The Court ultimately held that a private individual may not bring suit in federal court on behalf of the United States against a State (or state agency) under the FCA.  *Id.*

In addressing the "statutory question" of whether a State (or State agency) is subject to *qui tam* liability under the FCA, the Supreme Court began with a review of relevant provisions of the statute.  31 U.S.C. § 3729(a)("liability for certain acts") subjects "any person"  who "knowingly presents, or causes to be present, to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval" to liability.  *Id. at 780.*  The Court noted that its "longstanding interpretive presumption" that the term "person" does not include "the sovereign" applies to the language of Section 3729.  *Id.* (citations and quotations omitted).   While not "a hard and fast rule of exclusion," the presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary."  *Id. at 780-81.*   The Court found that the FCA's historical  context makes clear that various features of the statute, both as originally enacted and as amended, did not provide  affirmative indications that the term "person" included States for purposes of *qui tam* liability, but instead indicated to the contrary. *Id.*  The Court determined that, "the text of the original [FCA] does less than nothing to overcome the presumption that States are *not* covered."  *Id. at 782.*  Similarly, in the language found in more recent iterations of the statute, "none of them suggests a broadening of the term 'person' to include States."  *Id.*  In fact, that Court noted that "several features of the current statutory scheme further support the conclusion that States **are not** subject to *qui tam* liability."

*Id.* (**emphasis** added).  The Court, therefore, held that the FCA does not subject a State (or state agency) to liability in such actions.  *Id. at 787-88.*

The FCA similarly does not subject the Board to qui tam liability since it is the equivalent of the State.  A local board of education in Connecticut acts as an agent of the state when it performs those duties delegated to it by the state.  "The furnishing of an education for the public is a state function and duty."  *Board of Education v. New Haven*, 237 Conn. 169, 181; *Cheshire v. McKenney*, 182 Conn. 253, 257 (1980).

Here, the Complaints focus upon the provisions of services in connection with students' IEPs. *ECF No. 19 at ¶ 72-73, 160-174.*  "The centerpiece of the IDEAs education delivery system is the IEP". *T.Y. v. New York City Dept. of Educ.*, 584 F. 3d 412, 415 (2009).   The IEP sets out the student's objectives for improvements in performance and describes the specially designed instruction and services that will be provided. Id. In other words, it describes the education that will be provided. Because the formulation of the IEPs and provision of services and education to students is the "furnishing of an education", Stamford and Dr. Lucero must be viewed as agents of the state under Connecticut law.  Because the FCA does not apply to the State, which necessarily includes Stamford in this context, there exists no viable claim against it under the FCA.  Therefore, the Complaint fails to state a claim upon which relief can be granted in the First, Second, Third or Fourth Count.

## POINT TWO

### THE COMPLAINTS FAILS TO ALLEGE FRAUDULENT CONDUCT, A REVERSE FALSE CLAIM OR A CONSPIRACY

Stamford adopts the arguments set forth by the New York City Department of Education, Richard Carranza, Meisha Porter, and any other defendants asserting that the Plaintiff-Relator's Complaint and corresponding causes of action must be dismissed for failure

to allege fraudulent conduct. As set forth more fully by other moving defendants, the Plaintiff-Relator's Complaint fails to meet the requirements for particularity set forth by F.R.C.P. Rule 9. Therefore, Stamford submits that the Complaint fails to, *inter alia*, allege any fraudulent conduct, the submission of false claims or any other fraudulent conspiracy.

## POINT THREE

### THIS COURT HAS NO PERSONAL JURISDICTION OVER STAMFORD

In the event the Court determines that the Plaintiff-Relator's Complaint states a claim upon which relief can be granted or, in the alternative, believes it should address the issue of personal jurisdiction first, it is evident from the allegations of the Complaint that there exists no personal jurisdiction over Stamford in the Southern District of New York such that it should be dismissed pursuant to F.R.C.P. Rule 12(b)(2).

The Plaintiff-Relator bears the burden of showing that the Court has personal jurisdiction over Stamford. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010)(citation omitted). The plaintiff cannot rely on "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

Three requirements must be satisfied to establish personal jurisdiction. First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process

effective.  Third, the exercise of personal jurisdiction must comport with constitutional due process principles.  *Waldman v. Palestinian Liberation Organization*,  835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012)).  The Plaintiff-Relator fails as to the third element.

"[T]there are two parts to the due process test for personal jurisdiction as established by *International Shoe*…and its progeny; the minimum contacts inquiry and the reasonableness inquiry." *Waldman*, 835 F.3d at 331 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)).  "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.*  "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *Id.*  (citations omitted).

"*International Shoe* distinguished between two exercises of personal jurisdiction:  general and specific jurisdiction." *Id.*  Specific jurisdiction is available when defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  "A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render [it] essentially at home in the forum State." *Waldman*, 835 F.3d at 331 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014))(internal quotations omitted).

Even when read in a light most favorable to the Plaintiff-Relator, the Complaint fails to establish specific or general jurisdiction as to Stamford. The claims against Stamford focus on the preparation of an IEP in Connecticut (specifically for the student known as H.P.) and the provision of services in connection with that IEP in Connecticut. There is no allegation that such services were provided in New York.

F.R.C.P. Rule 4 also provides that a federal court may exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Fed.R.Civ.P. 4(e)*.   N.Y.C.P.L.R.  §301 states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  In other words, "[a] non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).  In determining whether a defendant has engaged in "a continuous and systematic course of doing business in New York," courts have considered factors such as the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees in the state. *Id.*  None of these factors are alleged in the Complaint.  In fact, to the contrary, the Plaintiff-Relator alleges only that the Board's actions occurred within Connecticut.

There is also no basis for long arm jurisdiction under New York law.  N.Y.C.P.L.R. §302(a) authorizes long-arm jurisdiction over an out-of-state domiciliary who:

1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2.  commits a tortious act within the state . . . ; or
3.  commits a tortious act without the state causing injury to person or property within the state, . . . if he

      i. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    ii. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. *N.Y. C.P.L.R. §302(a)*.

The Plaintiff-Relator's allegations highlight the fact that Stamford operates solely within Connecticut. The Complaint contains no allegations that establish the "constant and pervasive" contacts justifying the exercise of general jurisdiction. *Daimler*, 571 U.S. at 122. Those contacts are insufficient to establish due process support for specific jurisdiction as well.

Moreover, the Plaintiff-Relator cannot establish jurisdiction through the FCA. As is discussed further in Point Four below, defendants accused of similar *but unrelated* conduct may not be sued in the same district. 31 U.S.C. § 3732(a) does not permit the joinder of multiple defendants involved in multiple, distinct, and independent actions in a district where only one or two defendants are found. Joinder is improper where, as here, "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013). Therefore, the FCA provides no basis for jurisdiction over Stamford.

The Complaint lacks any factual allegations, which if proven true, would suggest that Stamford can be held jointly or severally liable for any allegedly false claim made by any other defendant. The Complaint alleges, as to Stamford, actions taken in Connecticut entirely separate and distinct from any other defendant. In that regard, the Plaintiff-Relator's claims based on violations of the FCA do not arise out of the "same transaction, occurrence, or series of transactions or occurrences" that other defendants allegedly participated it. The Complaint simply alleges that each Defendant (Stamford included) submitted its own Medicaid bills for

remote services provided to its students. These are separate alleged offenses occurring in separate and distinct jurisdictions.

## **POINT FOUR**

### **THE PLAINTIFF-RELATOR'S CLAIMS AGAINST STAMFORD ARE IMPROPERLY JOINED AND MUST BE DISMISSED OR SEVERED**

In the event the Court determines that the Plaintiff-Relator has pled a claim upon which relief can be granted or determines that the issues of joinder and venue should be addressed first, Stamford submits, in the alternative, that the claims against them are improperly joined with the claims against all other defendants in this action in violation of F.R.C.P. Rule 20 and, therefore, must be dismissed or severed pursuant to F.R.C.P. Rule 21.

The Plaintiff-Relator asserts claims against approximately twenty-eight separate defendants. While 31 U.S.C. § 3732(a) states that an FCA case may be brought in any judicial district where any one defendant can be found, that rule is constrained by F.R.C.P. Rule 20, governing permissive joinder. *See, ECF No. 86 at p. 6.* Rule 20 permits joinder of multiple defendants in one action only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action. *Fed.R.Civ.P.* 20(a)(2).

Both of these elements are required for proper joinder. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). It is well-settled that joinder is improper where "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013).

Stamford's alleged FCA violations do not arise out of the "same transaction, occurrence, or series of transactions or occurrences" as other defendants. The Plaintiff-Relator alleges that Stamford submitted Medicaid bills for remote services provided to its own student. As noted above, "an allegation that 'the defendants merely committed the same type of violation in the same way' is, by itself, insufficient to justify joinder; the Second Circuit has held that 'the fact that a large number of people use the same method to violate the law does not authorize them to be joined as defendants in a single lawsuit.'" *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 175 (S.D.N.Y. 2020) (citing *Nassau Cnty. Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974)). *See also Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("It is settled that joinder is improper where 'the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way.'" (citation omitted)).

Therefore, the claims against Stamford should not be joined.

## POINT FIVE

### VENUE IS IMPROPER

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-09875 (JPO), 2018 WL 941747, at *1 (S.D.N.Y. Feb. 16, 2018) (internal quotations omitted). In the event a complaint is filed in the wrong district, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" *28 U.S.C. § 1406(a)*. The decision of whether to dismiss or transfer lies within the broad discretion of the district court. *See Meserole St. Recycling, Inc. v. CSX Transp., Inc.*, No. 06-CV-04652 (CBA), 2007 WL 2891424, at *4 (E.D.N.Y. Sept. 28, 2007). "When determining

whether transfer pursuant to Section 1406(a) is appropriate, a court may take into account the

ultimate goal of the 'expeditious and orderly adjudication of cases and controversies on their

merits.'" *Id.* (quoting *Goldlawr, Inc. v. Heinman*, 369 U.S. 463, 466-67 (1962)).

"[T]he general federal venue provisions [are] set out in 28 U.S.C. § 1391." *U.S. ex*

*rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997).

Section 1391 provides, in relevant part, that venue is proper in:

> (1)    a judicial district in which any defendant resides, if all defendants are
>         residents of the State in which the district is located;
> (2)    a judicial district in which a substantial part of the events or omissions
>         giving rise to the claim occurred, or a substantial part of property that is
>         the subject of the action is situated; or
> (3)    if there is no district in which an action may otherwise be brought as
>         provided in this section, any judicial district in which any defendant is
>         subject to the court's personal jurisdiction with respect to such action." *See*
>         28 U.S.C. § 1391(b).

A "substantial part" means that "*significant* events or omissions *material* to the

plaintiff's claim must have occurred in the district in question, even if other material events

occurred elsewhere."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis

in original).  Each of the events giving rise to the Plaintiff-Relator's claims against Stamford

occurred outside of the Southern District of New York.  Stamford is located in the District of

Connecticut and that is where the events giving rise to the claims against them occurred.

Thus, venue does not lie in this District. *See J.T.*, 500 F. Supp. 3d at 173 ("There is no way that

any, let alone a substantial part, of the events leading to the out-of-state plaintiffs' claims of

failure to provide a FAPE, or to maintain pendency took place in the Southern District of New

York."); *see also, ECF No. 86 at p. 9.*

"Specific procedural provisions in substantive federal statutes sometimes have their own.

. . venue provisions." *Thistlethwaite*, 110 F.3d at 864 The FCA, which the Plaintiff- Relator

relies upon here, has its own venue provision, i.e., 31 U.S.C. § 3732(a).  Section 3732(a) states, in relevant part: "any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." *31 U.S.C. § 3732(a)* .  However, as noted above, "an allegation that 'the defendants merely committed the same type of violation in the same way' is, by itself, insufficient to justify joinder." *J.T. v. de Blasio*, 500 F. Supp. 3d 137.

As this Court has already held (*ECF No. 86 at p. 8*), this case is analogous to *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339 (S.D.N.Y. 2014), *aff'd*, No. 14-1095-CV (2d. Cir. May 5, 2015).  "In *Taconic Hills*, the relators sued the NYCDOE and various upstate New York school districts under the FCA for submitting fraudulent claims to Medicaid for case management services provided to disabled children when defendants already had received funding for those services under IDEA." *ECF No. 86 at p. 8 (*citing to *Taconic Hills*, at 341).  The Court in *Taconic Hills* severed the claims against the upstate New York defendants, stating that "there are no allegations suggesting that Defendants can be held jointly or severally liable for any allegedly false claim made by any other Defendant." *Taconic Hills,* 8 F.Supp 3d at 344.  Once it severed such claims, the Court found that venue did not lie in this Court against the upstate New York defendants under the general venue statute, *i.e.*, 28 U.S.C. § 1391.  Like the defendant in *Taconic Hills*, in the event the Court finds that the Plaintiff has stated a claim upon which relief can be granted or that it would like to address venue first, the claims against Stamford must be severed. Once the claims are severed, the Plaintiff cannot establish that venue is proper for Stamford under the general federal venue statute.

In the event the Court does not grant Stamford's Rule 12(b)(6) motion discussed above, it should find that the Plaintiff-Relator cannot satisfy his burden of showing that venue is proper in the Southern District. *ECF No. 86 at p. 9; See Stone #1 v. Annucci*, No. 20-CV-01326 (RA), 2021 WL 4463033, at *13 (S.D.N.Y. Sept. 28, 2021) ("[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else" (citation omitted)). The Court should then transfer this matter to the appropriate district.

### POINT SIX

### CLAIMS AGAINST DR. LUCERO IN HER OFFICIAL CAPACITY AS SUPERINTENDENT SHOULD BE DISMISSED AS DUPLICATIVE

Claims made against the school defendants in their official capacities are essentially claims against the school board. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105 (1985). Because official capacity suits are "to be treated as a suit against the entity," the claims against the individual defendants in their official capacity must also be dismissed. *See id.* at 166 (noting that official capacity suits are "to be treated as a suit against the entity" and "not a suit against the official personally"). There are no specific allegations related to Dr. Lucero outside her official capacity as Superintendent. (*Dkt. 19 at ¶¶ 232, 246, 248, 250-52*) It appears, therefore, that she is listed in the caption for illustrative purposes only and is not properly considered as an individual defendant. *Cf. Biggs v. Meadow*, 66 F.3d 56, 61 (4th Cir. 1995) ("[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity.). Plaintiff-Relator's claims against Dr. Lucero are duplicative of his claims against Stamford. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (**affirming dismissal of official capacity claim**

**against superintendent as duplicative of claims against school board**).   These claims should be dismissed whether the matter is transferred or not.


## POINT SEVEN

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS OR, IN THE ALTERNATIVE, FIND THAT THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE CONNECTICUT STATE LAW

The Twelfth Claim of the Plaintiff-Relator's Complaint alleges that Stamford violated Connecticut's False Claims Act; to wit, C.G.S. § 4-275, et. seq.  *Complaint at ¶ 162*.  In the event the Court dismisses the claims asserted in "Claims" One through Four, Stamford would submit that it need not retain jurisdiction over the state law claims contained in the Twelfth Claim.  When a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject–matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state–law claims. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017).

In the event the Court retains supplemental jurisdiction of this clam, the Connecticut False Claims Act (C.G.S. § 4-274, et. seq.) is also inapplicable to Stamford because it, like the FCA, applies only to "persons" and not the state.

C.G.S. § 4-275 states, in relevant part:

(a) No **person** shall:

      (1) Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval under a state-administered health or human services program;

(2) Knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim under a state-administered health or human services program;

(3) Conspire to commit a violation of this section…*Conn. Gen. Stat. Ann. § 4-275.*

C.G.S. §4-274 provides the "definitions" of the terms used in this section.  Section 4-274 defines the term "person" as "any natural person, corporation, limited liability company, firm, association, organization, partnership, business, trust or other legal entity."  Applying basic rules of statutory interpretation, it is clear that C.G.S. § 4-275 does not apply to Stamford. Notably absent from the definition of "person" is the State or any agent of the State.  Courts "are obligated to interpret the legislative meaning inherent in the statutory enactment.... Where the language used in a statutory enactment is clear and unambiguous, [Courts] assume that the words themselves express the legislature's intent and there is no need to look further for interpretative guidance.  [Courts] are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained ... We will not read into clearly expressed legislation provisions which do not find expression in its words."  *Tower v. Miller Johnson, Inc.*, 67 Conn. App. 71, 78 (2001).

The language of Section 4-274 is clear, the neither the State nor Board are a "person." Therefore, the Connecticut False Claims Act does not apply to Stamford as agents of the State in furnishing education.  There can be no claim against the Board under Connecticut's False Claims Act.

## **CONCLUSION**

The Court should grant this motion to dismiss for one or more of the following reasons:  the Complaint fails to state a claim upon which relief can be granted (on either the

federal law or state law claims); the Complaint fails to properly join Stamford; the Complaint

does not establish personal jurisdiction; and the Complaint is pursued in the wrong venue.


THE DEFENDANTS
STAMFORD BOARD OF EDUCATION AND
TAMU LUCERO


By:    /s/Ryan P. Driscoll
       Ryan P. Driscoll
       Berchem Moses, P.C.
       75 Broad Street
       Milford, CT  06460
       (203) 783-1200
       Federal Bar NY4451076
       rdriscoll@berchemmoses.com

## CERTIFICATION OF SERVICE

I hereby certify that on the date hereon, a copy of the foregoing motion was filed
electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this
filing will be sent by email to all parties by operation of the Court's electronic filing system [or
by mail to anyone unable to accept electronic filing].  Parties may access this filing through the
Court's system.

                        /s/ Ryan P. Driscoll
                        Ryan P. Driscoll