# EXHIBIT B
## TO THE DECLARATION OF JOSEPH V. WILLEY

OFF. SPECIAL EDUC. REHAB. SERVS., U.S. DEP'T EDUC., SUPPLEMENTAL FACT SHEET: ADDRESSING THE RISK OF COVID-19 IN PRESCHOOL, ELEMENTARY AND SECONDARY SCHOOLS WHILE SERVING CHILDREN WITH DISABILITIES (March 21, 2020)



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office for Civil Rights*
*Office of Special Education and Rehabilitative Services*

March 21, 2020

## Supplemental Fact Sheet
## Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities

We recognize that educational institutions are straining to address the challenges of this national emergency. We also know that educators and parents are striving to provide a sense of normality while seeking ways to ensure that all students have access to meaningful educational opportunities even under these difficult circumstances. No one wants to have learning coming to a halt across America due to the COVID-19 outbreak, and the U.S. Department of Education (Department) does not want to stand in the way of good faith efforts to educate students on-line.

The Department stands ready to offer guidance, technical assistance, and information on any available flexibility, within the confines of the law, to ensure that all students, including students with disabilities, continue receiving excellent education during this difficult time. The Department's Office for Civil Rights (OCR) and the Office of Special Education and Rehabilitative Services (OSERS) have previously issued non-regulatory guidance addressing these issues.[*]

At the outset, OCR and OSERS must address a serious misunderstanding that has recently circulated within the educational community. As school districts nationwide take necessary steps to protect the health and safety of their students, many are moving to virtual or online education (distance instruction). Some educators, however, have been reluctant to provide any distance instruction because they believe that federal disability law presents insurmountable barriers to remote education. This is simply not true. We remind schools they should not opt to close or decline to provide distance instruction, at the expense of students, to address matters pertaining to services for students with disabilities. Rather, school systems must make local decisions that take into consideration the health, safety, and well-being of all their students and staff.

**To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA),[†] Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**

School districts must provide a free and appropriate public education (FAPE) consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to these students. In this unique and ever-changing environment, OCR and OSERS recognize that these exceptional circumstances may affect how all educational and related services and supports are provided, and the Department will offer flexibility where possible. However, school districts must remember that the provision of

---

[*] *See* Fact Sheet: Addressing the Risk of COVID-19 in Schools While Protecting the Civil Rights of Students (March 16, 2020); OCR Short Webinar on Online Education and Website Accessibility  Webinar (Length: 00:07:08) (March 16, 2020); Questions and Answers on Providing Services to Children with Disabilities During the COVID-19 Outbreak (March 12, 2020); Fact Sheet: Impact of COVID-19 on Assessments and Accountability under the Elementary and Secondary Education Act (March 12, 2020); and Letter to Education Leaders on Preventing and Addressing potential discrimination associated with COVID-19
[†] References to IDEA in this document include both Part B and Part C.

[OCR-000116]



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office for Civil Rights*
*Office of Special Education and Rehabilitative Services*

FAPE may include, as appropriate, special education and related services provided through distance instruction provided virtually, online, or telephonically.

The Department understands that, during this national emergency, schools may not be able to provide all services in the same manner they are typically provided. While some schools might choose to safely, and in accordance with state law, provide certain IEP services to some students in-person, it may be unfeasible or unsafe for some institutions, during current emergency school closures, to provide hands-on physical therapy, occupational therapy, or tactile sign language educational services. Many disability-related modifications and services may be effectively provided online. These may include, for instance, extensions of time for assignments, videos with accurate captioning or embedded sign language interpreting, accessible reading materials, and many speech or language services through video conferencing.

It is important to emphasize that federal disability law allows for flexibility in determining how to meet the individual needs of students with disabilities. The determination of how FAPE is to be provided may need to be different in this time of unprecedented national emergency. As mentioned above, FAPE may be provided consistent with the need to protect the health and safety of students with disabilities and those individuals providing special education and related services to students. Where, due to the global pandemic and resulting closures of schools, there has been an inevitable delay in providing services – or even making decisions about how to provide services - IEP teams (as noted in the March 12, 2020 guidance) must make an individualized determination whether and to what extent compensatory services may be needed when schools resume normal operations.

Finally, although federal law requires distance instruction to be accessible to students with disabilities, it does not mandate specific methodologies. Where technology itself imposes a barrier to access or where educational materials simply are not available in an accessible format, educators may still meet their legal obligations by providing children with disabilities equally effective alternate access to the curriculum or services provided to other students. For example, if a teacher who has a blind student in her class is working from home and cannot distribute a document accessible to that student, she can distribute to the rest of the class an inaccessible document and, if appropriate for the student, read the document over the phone to the blind student or provide the blind student with an audio recording of a reading of the document aloud.

The Department encourages parents, educators, and administrators to collaborate creatively to continue to meet the needs of students with disabilities. Consider practices such as distance instruction, teletherapy and tele-intervention, meetings held on digital platforms, online options for data tracking, and documentation. In addition, there are low-tech strategies that can provide for an exchange of curriculum-based resources, instructional packets, projects, and written assignments.

The Department understands that, during this declared national emergency, there may be additional questions about meeting the requirements of federal civil rights law; where we can offer flexibility, we will. OSERS has provided the attached list with information on those IDEA timeframes that may be extended.

OSERS' technical assistance centers are ready to address your questions regarding the IDEA and best practices and alternate models for providing special education and related services, including through distance instruction. For questions pertaining to Part C of IDEA, states should contact the Early Childhood Technical Assistance Center



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office for Civil Rights*
*Office of Special Education and Rehabilitative Services*

(ECTA) at ectacenter.org. For Part B of IDEA, states should contact the National Center for Systemic Improvement (NCSI) at ncsi.wested.org.

If you have questions for OCR, want additional information or technical assistance, or believe that a school is violating federal civil rights law, you may reach out through email at OCRWebAccessTA@ed.gov, call your regional office (https://ocrcas.ed.gov/contact-ocr), or visit the website of the Department of Education's OCR at www.ed.gov/ocr. You may contact OCR at (800) 421-3481 (TDD: 800-877-8339), at ocr@ed.gov, or contact OCR's Outreach, Prevention, Education and Non-discrimination (OPEN) Center at OPEN@ed.gov. You may also fill out a complaint form online at www.ed.gov/ocr/complaintintro.html.

Additional information specific to the COVID-19 pandemic may be found online at https://www.ed.gov/coronavirus.



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office for Civil Rights*
*Office of Special Education and Rehabilitative Services*

## IDEA Timelines

As a general principle, during this unprecedented national emergency, public agencies are encouraged to work with parents to reach mutually agreeable extensions of time, as appropriate.

Part B of IDEA

<u>State Complaints</u>

Absent agreement by the parties, a state may be able to extend the 60-day timeline for complaint resolution if exceptional circumstances exist with respect to a particular complaint.  34 C.F.R. § 300.152(b)(1). Although the Department has previously advised that unavailability of staff is not an exceptional circumstance that would warrant an extension of the 60-day complaint resolution timeline, the COVID-19 pandemic could be deemed an exceptional circumstance if a large number of SEA staff are unavailable or absent for an extended period of time.

<u>Due Process Hearings</u>

When a parent files a due process complaint, the LEA must convene a resolution meeting within 15 days of receiving notice of the parent's complaint, unless the parties agree in writing to waive the meeting or to use mediation. 34 C.F.R. § 300.510(a).  While the IDEA specifically mentions circumstances in which the 30-day resolution period can be adjusted in 34 C.F.R. § 300.510(c), it does not prevent the parties from mutually agreeing to extend the timeline because of unavoidable delays caused by the COVID-19 pandemic.

Additionally, although a hearing decision must be issued and mailed to the parties 45 days after the expiration of the 30-day resolution period or an adjusted resolution period, a hearing officer may grant a specific extension of time at the request of either party to the hearing. 34 C.F.R. § 300.515(a) and (c).

<u>Individualized Education Programs (IEPs)</u>

If a child has been found eligible to receive services under the IDEA, the IEP Team must meet and develop an initial IEP within 30 days of a determination that the child needs special education and related services. 34 C.F.R. § 300.323(c)(1).

IEPs also must be reviewed annually. 34 C.F.R. §300.324(b)(1). However, parents and an IEP Team may agree to conduct IEP meetings through alternate means, including videoconferencing or conference telephone calls. 34 C.F.R. §300.328. Again, we encourage school teams and parents to work collaboratively and creatively to meet IEP timeline requirements.

Most importantly, in making changes to a child's IEP after the annual IEP Team meeting, because of the COVID-19 pandemic, the parent of a child with a disability and the public agency may agree to not convene an IEP Team meeting for the purposes of making those changes, and instead develop a written document to amend or modify the child's current IEP. 34 C.F.R. §300.324(a)(4)(i).

<u>Initial Eligibility Determination</u>

An initial evaluation must be conducted within 60 days of receiving parental consent under IDEA, or within the state-established timeline within which the evaluation must be conducted. 34 C.F.R. § 300.301(c). Once the evaluation is



**UNITED STATES DEPARTMENT OF EDUCATION**
*Office for Civil Rights*
*Office of Special Education and Rehabilitative Services*

completed, IDEA does not contain an explicit timeline for making the eligibility determination but does require that the IEP be developed in accordance with 34 C.F.R. §§ 300.320-300.324 (34 C.F.R. § 300.306(c)(2)).

<u>Reevaluations</u>

A reevaluation of each child with a disability must be conducted at least every three years, unless the parents and the public agency agree that a reevaluation is unnecessary 34 C.F.R. § 300.303(b)(2). However, when appropriate, any reevaluation may be conducted through a review of existing evaluation data, and this review may occur without a meeting and without obtaining parental consent, unless it is determined that additional assessments are needed. 34 C.F.R. §300.305(a).

Part C of IDEA

<u>State Complaints</u>

Under 303.433(b)(1)(i), the lead agency's state Complaint procedures permit an extension of the 60 day timeline for a written decision if "exceptional circumstances exist with respect to a particular complaint" or the parent or organization and the agency or early intervention services (EIS) provider agree to extend the time for engaging in mediation.

<u>Due Process Hearings</u>

A state may choose to adopt Part B procedures for Due Process resolution under 34 C.F.R. §§303.440 – 303.449 or Part C procedures under 34 C.F.R. §§303.435 – 303.438. Conditions for extending the applicable timelines are similar under both sets of procedures.

Under 34 C.F.R. §303.447(c), the hearing or review officer may grant specific extensions of the Due Process timeline at the request of either party. Under 34 C.F.R. §303.447(d), each hearing and each review involving oral argument must be conducted at a time and place that is reasonably convenient to the parents and child involved.

Section 303.437 (a) and (c) provides similar language regarding scheduling a hearing at a time and place convenient to the parents and hearing officers granting extensions at the request of either party.

<u>Initial eligibility/Individual Family Service Plan (IFSP)</u>

Under 34 C.F.R. §303.310, the initial evaluation and assessments of child and family, as well as the initial IFSP meeting, must be completed within 45 days of the lead agency receiving the referral. However, under 34 C.F.R. §303.310(a), the 45-day timeline does not apply if the family is unavailable due to "exceptional family circumstances that are documented" in the child's early intervention (EI) records.

The Department has previously provided guidance to states indicating that weather or natural disasters may constitute "exceptional family circumstances." The COVID-19 pandemic could be considered an "exceptional family circumstance."