# EXHIBIT C
## TO THE DECLARATION OF JOSEPH V. WILLEY

OFF. SPECIAL EDUC. PROGRAMS, U.S. DEP'T EDUC., OSEP QA 20-01: IDEA PART B SERVICE PROVISION (Sept. 28, 2020)



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES
OFFICE OF SPECIAL EDUCATION PROGRAMS

OSEP QA 20-01

September 28, 2020

The Office of Special Education Programs (OSEP), within the U.S. Department of Education's (Department) Office of Special Education and Rehabilitative Services, issues this Question and Answer (Q & A) document in response to inquiries concerning implementation of the Individuals with Disabilities Education Act (IDEA) Part B provision of services in the current COVID-19 environment.

Other than statutory and regulatory requirements included in the document, the contents of this guidance do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

To review other Q & A documents that OSEP has provided related to COVID-19, please visit https://sites.ed.gov/idea/topic-areas/#COVID-19. Information specific to the COVID-19 pandemic may be found online at https://www.ed.gov/coronavirus. Additional OSEP K-12 resources, strategies and support materials are available at https://ncsi.wested.org/.

## IDEA PART B SERVICE PROVISION

State educational agencies (SEAs) and local educational agencies (LEAs) are facing new and unexpected challenges in providing meaningful instruction to children, including children with disabilities, for the 2020-2021 school year. OSEP recognizes that the COVID-19 pandemic has impacted various parts of the nation in different ways. OSEP also recognizes that circumstances continue to rapidly change, and ultimately, the health and safety of children, families, and the school community is most important.

Decisions about the 2020-2021 school year, including how and when educational and other services are provided, are being made by State and local officials, with continued academic growth and the safety of the local school community being of paramount significance. As public agencies and officials grapple with challenging decisions, administrators, educators, and parents[1] may need to consider multiple

---

[1] Under 34 C.F.R. § 300.30(a), the term "parent" means: (1) a biological or adoptive parent of a child; (2) a foster parent, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent; (3) a guardian generally authorized

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-2800

www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

options for delivering instruction, including special education and related services to children with disabilities. Those options could include remote/distance instruction, in-person attendance, or a combination of both remote/distance instruction and in-person attendance (hybrid model). However, OSEP reminds SEAs and LEAs **that no matter what primary instructional delivery approach is chosen, SEAs, LEAs, and individualized education program (IEP) Teams remain responsible for ensuring that a free appropriate public education (FAPE) is provided to all children with disabilities.** If State and local decisions require schools to limit or not provide in-person instruction due to health and safety concerns, SEAs, LEAs, and IEP Teams are not relieved of their obligation to provide FAPE to each child with a disability under IDEA.

This document is meant to aid LEAs and parents in identifying steps they can take to ensure that as the 2020-2021 school year continues, children with disabilities are well-positioned with an educational program that meets each child's unique needs. Just as a child's needs may change during the school year, so can the circumstances needed to ensure the health and safety of children and the entire school community. Therefore, school staff and parents are encouraged to work together to find ways to meet the needs of children with disabilities, notwithstanding the COVID-19 challenges.

**Q1.   What steps can an LEA take to ensure each child with a disability has an IEP in effect at the start of the 2020-2021 school year?**

Under 34 C.F.R. § 300.323(a), at the beginning of each school year, each public agency, which includes LEAs, must have an IEP in effect for each child with a disability within its jurisdiction. To ensure that an appropriate IEP is in place for each child, the LEA may need to convene a meeting of the child's IEP Team, which includes the individuals described in Q2, to determine whether any revisions to the IEP are needed. 34 C.F.R. § 300.324(b)(1).

We understand circumstances are always subject to change and recognize that ultimately the health and safety of children, families, and the school community is most important. SEAs and their public agencies must make every effort to continue to provide children with disabilities with the special education and related services appropriate to their needs.

---

to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State); (4) an individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or (5) a surrogate parent who has been appointed in accordance with 34 C.F.R. § 300.519 or Section 639(a)(5) of the IDEA.

As conditions continue to change throughout the country, some of the special education and related services included in a child's IEP may need to be provided in a different manner; however, all children with disabilities must continue to receive FAPE and must have "the chance to meet challenging objectives."[2] Therefore, IEP Teams should identify how the special education and related services included in a child's IEP will be provided and should consider a variety of instructional methods and settings.

For example, IEP Teams can discuss how a child's IEP will be implemented with traditional in-person instruction and how services also could be provided through remote/distance instruction if circumstances require a change to distance learning or a hybrid model. In making these determinations, IEP Teams should consider alternate available instructional methodologies or delivery, such as online instruction, teleconference, direct instruction via telephone or videoconferencing, or consultative services to the parent (if feasible).

**Q2.   Which members of the IEP Team must participate in the review discussed in Q1?**

The IEP Team members referenced in 34 C.F.R. § 300.321(a) are generally required to participate in meetings to develop, review, and revise a child's IEP. This list includes, among other participants, the parents of the child; not less than one regular education teacher of the child (if the child is, or may be, participating in the regular education environment); and not less than one special education teacher of the child, or where appropriate, not less than one special education provider of the child. Under 34 C.F.R. § 300.321(e), it is permissible for certain members to be excused from attending the IEP Team meeting, in whole or in part, if the parent of a child with a disability and the public agency agree, in writing, that the attendance of the member is not necessary because the member's area of the curriculum or related services is not being modified or discussed in the meeting. If the IEP Team meeting involves a modification to or discussion of the member's area of the curriculum or related services, the member may be excused from attending an IEP Team meeting, in whole or in part, if the parent, in writing, and the public agency consent to the excusal; and the member submits, in writing to the parent and the IEP Team, input into the development of the IEP prior to the meeting.

**Q3.   When is an LEA permitted to use the IEP amendment process in 34 C.F.R. § 300.324?**

The IDEA Part B regulations provide in 34 C.F.R. § 300.324(a)(4)(i), that in making changes to a child's IEP after the annual IEP Team meeting for a school year, the parent of a child with a disability and the public agency may agree not to convene an

---

[2] *Endrew F. v Douglas County School District Re-1, 137 S.Ct. 988, 1000* (2017).

3

IEP Team meeting for the purpose of making those changes, and instead, may develop a written document to amend or modify the child's current IEP. It is important to note that an amendment to an IEP cannot take the place of an annual IEP Team meeting. See also Q6.

If changes are made to the child's IEP through a written document, the public agency must ensure that the child's IEP Team is informed of those changes. Upon request, a parent must be provided with a revised copy of the IEP with the changes incorporated. 34 C.F.R. § 300.324(a)(6). In addition, under 34 C.F.R. § 300.503(a), the public agency must provide the parent with prior written notice that meets the requirements of 34 C.F.R. § 300.503(b) a reasonable time before the public agency (1) proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or (2) refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child. This provision applies, even if the IEP is amended without convening an IEP Team meeting, pursuant to 34 C.F.R. § 300.324(a)(4).

**Q4.** **If extended school year (ESY) services were unable to be provided during the summer due to the COVID-19 pandemic, what additional steps can public agencies take to make FAPE available to children with disabilities who require such services?**

ESY services are defined as special education and related services that are: (1) provided to a child with a disability beyond the normal school year of the public agency; (2) provided in accordance with the child's IEP; (3) are at no cost to the parents of the child; and (4) meet the standards of the SEA.

Each public agency must ensure that ESY services are available as necessary to provide FAPE to children with disabilities. 34 C.F.R. § 300.106. It is important to remember that IEP Team determinations regarding ESY services are prospective and not intended to make up for past denials of FAPE.

The specific analysis and standards that an IEP Team may use to determine whether a child requires ESY services in order to receive FAPE are left to States to determine. However, the determination must be based on the individual needs of the child, and not on the category of the child's disability.[3]

---

[3] 34 C.F.R. § 300.106(a)(3)(i). See also, Assistance to States for the Education of Children with Disabilities and the Early Intervention Program for Infants and Toddlers with Disabilities, Final Rule, 64 Fed. Reg. 12406, 12576-12477 (March 12, 1999).

4

A child's entitlement to needed ESY services continues to apply even if schools and other facilities are closed due to COVID-19. The Department recognizes ESY services are typically provided to children with disabilities during the summer months. We understand that some ESY services, particularly those that require direct, in-person contact, may not have been able to be delivered this past summer. In such instances, public agencies should consider providing ESY services to the child during the normal school year, during school breaks or vacations where appropriate to the child's needs and consistent with applicable standards. [4]

## INITIAL EVALUATION

**Q5.   What exceptions are available to an LEA in meeting the timeline requirement for conducting initial evaluations and IEP Team meetings when access to school buildings is limited or current health restrictions prevent face-to-face meetings?**

Under 34 C.F.R. § 300.301(c)(1), the initial evaluation must be conducted within 60 days of receiving parental consent for the evaluation, or if the State has established a timeframe within which the evaluation must be conducted, within that timeframe. The exceptions to the initial evaluation timeframe are set forth in 34 C.F.R. § 300.301(d). Those exceptions permit extension of the timeframe if a parent repeatedly fails or refuses to produce the child for the assessment; or if the child enrolls in a new school in a new public agency after the relevant timeframe has begun. States may specifically adopt a timeframe within which the initial evaluation must be conducted, including adopting the IDEA 60-day timeframe. States that specifically adopt a timeframe within which the initial evaluation must be conducted, including adopting the IDEA 60-day timeframe, also have the flexibility to establish additional exceptions through State regulation or policy.

## INITIAL AND ANNUAL IEP TEAM MEETINGS

**Q6.   What flexibilities are available to an IEP Team in meeting the initial and annual IEP Team meeting requirements when access to schools is limited or local restrictions prevent face-to-face meetings?**

Within 30 days of determining a child needs special education and related services, an IEP must be developed for the child in accordance with

---

[4] See also, *Questions and Answers on Providing Services To Children With Disabilities During The Coronavirus Disease 2019 Outbreak* (March 12, 2020), Q&A A-1, regarding consideration of compensatory services, if needed to make up for any skills that may have been lost, when FAPE cannot be provided.

5

34 C.F.R. §§ 300.320 through 300.324. 34 C.F.R. §§ 300.306(c)(2) and 300.323(c)(1). In addition, under 34 C.F.R. § 300.324(b)(1)(i), each child's IEP must be reviewed periodically, but not less than annually to determine whether the annual goals are being achieved.

The Department recognizes that some States, due to operational constraints because of the COVID-19 pandemic, are currently unable to conduct face-to-face IEP Team meetings. Under 34 C.F.R. § 300.322(a), LEAs must take steps to ensure that one or both parents attend or are afforded the opportunity to participate in an IEP Team meeting by notifying them of the meeting early enough to ensure that they can attend and by scheduling the meeting at a mutually agreed upon time and place. If face-to-face meetings are not feasible or practicable, the Department encourages the use of the flexibility included in 34 C.F.R. § 300.328 which allows LEAs to conduct initial and annual IEP Team meetings through alternate means. Such alternate means could include a telephone or video conference call (if feasible and consistent with privacy standards) if acceptable to the parents and other IEP Team meeting participants.

# REEVALUATION

**Q7.   How can LEAs conduct reevaluations to determine a child's continued eligibility for IDEA Part B when staff cannot conduct in-person meetings or evaluations due to the pandemic?**

Under Part B of IDEA, a reevaluation must occur at least once every three years, unless the parent and the public agency agree that a reevaluation is unnecessary. 34 C.F.R. § 300.303(b)(2). The Department acknowledges that, during the pandemic, social distancing measures and each child's individual disability-related needs may make administering some in-person evaluations impracticable and may place limitations on how evaluations and reevaluations are conducted under IDEA Part B.

LEAs should investigate all appropriate assessment instruments and tools to determine if some can be administered or completed remotely during the pandemic, provided that evaluation of the child is based on personal observation (whether in person or through videoconferencing). LEAs should also work with the developers of their current assessment instruments to determine if the instruments can be administered or completed remotely, without significantly impacting the validity and reliability of the results. However, under 34 C.F.R. § 300.304(c)(1)(iii)-(v), tests and other evaluation materials must be used for the purposes for which the assessments or measures are valid and reliable, and must be administered by trained and knowledgeable personnel in accordance with any instructions provided by the producer of the assessments.

Note that when conducting reevaluations under Part B, the IEP Team and other qualified professionals must conduct a review of existing evaluation data on the child.

A reevaluation based solely on a review of existing evaluation data must be sufficiently comprehensive to determine whether the child continues to have a disability and the educational needs of the child. 34 C.F.R. § 300.305(a). The review of existing evaluation data on the child may occur without a meeting and without obtaining parental consent. 34 C.F.R. §§ 300.300(d)(1) and 300.305(a) and (b).