# EXHIBIT E
## TO THE DECLARATION OF JOSEPH V. WILLEY

ILL. BD. EDUC., FREQUENTLY ASKED QUESTIONS FOR SPECIAL EDUCATION DURING REMOTE LEARNING (Apr. 20, 2020)

**Illinois State Board of Education**
100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

**Darren Reisberg**
*Chair of the Board*

**Dr. Carmen I. Ayala**
*State Superintendent of Education*

# Frequently Asked Questions for
# Special Education During Remote Learning

## Last Updated: April 20, 2020

The purpose of this document is to assist schools in navigating special education issues directly impacted by the COVID-19 pandemic. Successful education practices that align with [Executive Order 2020-15](#) and the [Emergency Amendment to Part 5](#), beginning March 31, 2020, include the implementation of remote learning with students with disabilities as a result of the COVID-19 pandemic.

Whereas "continuity of education" was encouraged after Executive Order 2020-05, the Emergency Amendment to Part 5 rules requires that schools implement "remote learning." The successful implementation of remote learning begins with a positive mindset that effective, ongoing communication and collaboration with families, as well as collaboration with colleagues on innovative approaches, make it possible to provide remote learning to all students, regardless of their disability. The key to success will be the good faith efforts at reasonable application of remote learning under these unique circumstances. Remote learning for special education purposes will include activities that support student progress toward achievement of their annual goals and objectives, all while taking into consideration the health, safety, and well-being of students and staff.

This guidance document cannot and does not provide any additional waiver or flexibility from compliance with either federal law or state law as it is presently interpreted through Gubernatorial Disaster Proclamations and subsequent Executive Orders connected to the COVID-19 outbreak. Although the U.S. Department of Education (ED) has released guidance offering certain flexibility, no ISBE guidance should be interpreted as exceeding federal flexibility. Schools and school districts should review all matters concerning special education and related services obligations with their board, administrators, and counsel.

The questions and answers contained within this document are meant to serve as a guide for schools during suspension of in-person instruction when implementing remote learning with students with disabilities in relation to federal and state regulations. General information on remote learning is available on the ISBE website at [www.isbe.net/Documents/RL-Recommendations-3-27-20.pdf](#), and resources for use with special education students can be found at [www.isbe.net/keeplearning](#).

Districts, special education cooperatives, private special education schools, alternative schools, and nonpublic private parochial schools should reference the [ED Q&A](#), ED Supplemental Fact

Sheet, and Office for Civil Rights (OCR) Fact Sheet to find additional information from a federal perspective on the provision of education and related services for students with disabilities.

**REMOTE LEARNING AND SPECIAL EDUCATION**

1. **Is it discriminatory for schools to operate remote instruction for students with disabilities?**
   No. The ED Sheet from March 21, 2020, corrects any "misunderstanding" in the field connected to providing remote learning, stating "some educators, however, have been reluctant to provide any distance instruction because they believe that federal disability law presents insurmountable barriers to remote education. This is simply not true." ED states that federal law (the Individuals with Disabilities Education Act [IDEA], Section 504 of the Rehabilitation Act [Section 504], and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through remote learning.

**REGULATORY REQUIREMENTS**

2. **What obligations do districts have to provide a free and appropriate public education (FAPE) during remote learning?**
   ISBE's Emergency Amendment to Part 5 considers Remote Learning Days to be attendance days. Schools and school districts are obligated to address the unique needs of students eligible for special education through remote learning. Schools and school districts must continue to afford students with FAPE. School districts must provide a FAPE consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to students, according to ED. The federal guidance emphasizes that FAPE may include, as appropriate, special education and related services provided through distance instruction provided virtually, online, or telephonically. ISBE has compiled a library of resources to support remote learning at www.isbe.net/keeplearning and has provided special considerations and suggestions for students with disabilities in the Remote Learning Recommendations.

3. **What flexibility does federal law allow in determining how to meet the individual needs of students with disabilities?**
   ED's Supplemental Fact Sheet specifies that during this national emergency schools may not be able to provide all services in the same manner they are typically provided, and that it is intending to "offer flexibility where possible." ED emphasizes that the determination of how FAPE is to be provided may need to be different in this time of unprecedented national emergency.

4. **What should schools or school districts do when services are delayed due to the COVID-19 national emergency?**

ED's guidance states, "Where, due to the global emergency and resulting closures of schools, there has been an inevitable delay in providing services – or even making decisions about how to provide services - Individualized Education Program (IEP) teams must make an individualized determination whether and to what extent compensatory services may be needed when schools resume normal operations." Schools and school districts should keep detailed documentation of all educational opportunities provided to students during the statewide mandatory suspension of in-person instruction.

5. **How are IEP and evaluation timelines impacted by the statewide mandatory suspension of in-person instruction?**
On March 16, 2020, OCR released its guidance for protecting the rights of students during periods of school interruption due to the COVID-19 pandemic and provided a Supplemental Fact Sheet on March 21, 2020.  In summary, OCR stated that all Local Education Agencies (LEAs) must ensure that each special education student receives equal access to educational opportunities that are provided to general education students. Despite the guidance from the OCR, there continues to be limited flexibility from complying with federal and state laws.  At this time, all IDEA and Section 504 timelines remain in effect.  Absent further direction from ED, schools should continue to observe all relevant federal and state timelines during the statewide mandatory suspension of in-person instruction. As a general principle, schools are encouraged to work with families to reach mutually agreeable extensions of time, as appropriate.

In calculating timelines, a school day is any day that students are *in attendance* for instructional purposes (34 CFR 300.311). Per Executive Order 2020-05, students were not in attendance for educational purposes during the Act of God Days from March 17-30, 2020. The days from March 17-30, 2020, cannot be considered "school days" for special education purposes. In alignment with Executive Order 2020-15, pursuant to the Emergency Amendment to Part 5, Remote Learning Days, beginning March 31, 2020, as deemed by the State Superintendent, will be implemented in any of grades pre-kindergarten through 12 as days of attendance and shall be deemed pupil attendance days for calculation of the length of a school term under Section 10-19 of the School Code. Further, students are in attendance for instructional purposes on Remote Learning Days. Accordingly, since there is no federal flexibility, those days will contribute to the calculation of timelines. Remote learning planning days, generally, do not constitute days for calculation of timelines because students are not in attendance for instructional purposes on remote learning planning days.

Schools are bound to comply with timeline requirements in federal and state law that apply to calendar or business days. For example, any school district that receives a request for an IEP meeting from a parent or teacher must comply with the requirement to decide whether or not to convene a meeting and provide written notice to a parent within 10 calendar days [23 Il. Admin. Code 226.220(b)] – even during the suspension of in-person instruction. School districts should consult their attorneys and closely review

federal and state laws and regulations connected to special education obligations with timelines connected to business days and calendar days, which continue to apply during Remote Learning Days.

ISBE will work with school districts as much as possible to provide any flexibility regarding potential indicator findings connected to compliance with timelines.

**IEP MEETINGS**

6. **Are LEAs required to conduct IEP meetings during remote learning? Can IEP teams convene via alternate means?**
   There is no federal guidance providing any flexibility on the requirement to convene IEP meetings "not less than annually" (34 CFR 300.324). Unless flexibility is provided, LEAs should continue to make all reasonable efforts to comply with the annual meeting requirement; however, IEP teams will not be required to convene in person during the suspension of in-person instruction. Schools can comply with timeline requirements by availing themselves of the opportunity to convene meetings via alternate means, including telephone or videoconference, which are allowable under IDEA (34 CFR 300.322). To the extent an LEA convenes a meeting via alternate means, the student's parent or guardian must consent. ED guidance provides that school teams and parents are encouraged to work collaboratively and creatively to meet the needs of students. Schools and school district personnel should consult with their boards, administrators, and legal counsel on concerns connected to amending IEPs to address remote learning during the suspension of in-person instruction.

7. **May IEP teams consider teletherapy for remote services?**
   ED guidance expressly recommends that schools and school districts consider practices such as teletherapy and tele-intervention. Services, including related services, should allow the student to make appropriate progress on his or her IEP goals and, to the extent appropriate, the general education curriculum. Districts should consult their board, administrators, and counsel on whether an IEP amendment may be required for the provision of teletherapy or tele-intervention.

8. **How should schools and school districts obtain informed written consent?**
   There is no flexibility from the requirement to obtain informed consent (signatures). Schools should consider alternate means for obtaining any written consent or signatures, including postal mailings, email, or electronically signed documents.

9. **How should districts/schools/IEP teams document attempts to contact families to participate in IEP meetings remotely?**
   There is no flexibility regarding a district's obligation to involve parents in IEP meetings, and districts should follow standard practices for documenting attempts to meet its obligations.

10. **What happens if a parent declines services during the remote learning period? Can a parent agree to specific services during remote learning and not others?**
    There is currently no flexibility concerning a district's responsibility to provide a FAPE aimed at addressing each area of need; therefore, IEP teams should communicate and collaborate creatively with parents as much as possible to deliver a FAPE to students during remote learning. Districts should clearly document all repeated and varied attempts to provide services during remote learning.

11. **If a parent does not want remote learning, should this automatically be considered a "revocation of consent" for services?**
    No. The IDEA has very specific requirements concerning the treatment of an informed revocation of consent (34 CFR 300.300). Although parents may revoke consent for the continued provision of special education and related services at any time, schools should approach any matter concerning revocation of consent with extreme caution and in strict compliance with the requirements under the IDEA for ensuring informed consent and obtaining prior written notice.

12. **How will decisions regarding Extended School Year (ESY) be determined because of the break in instruction? Could special education students be required to attend summer school in lieu of receiving services?**
    Decisions regarding ESY will continue to be determined by the IEP team. Remote Learning Days are considered attendance days and not a break in instruction. Any decisions about ESY attendance should be an IEP team decision. ESY is not a synonym for summer school.

13. **How should documentation be provided to a parent?**
    Schools and school districts should continue to utilize any confidential means available – other than face-to-face delivery – for any required document sharing or exchanges.

14. **What is the IEP team's responsibility to provide supports, including sign language or bilingual interpreters, to the parent to participate in virtual IEP meetings?**
    There is no flexibility of the requirement to ensure meaningful parent participation, including, but not limited to, the provision of an interpreter or captioning services, if necessary.

15. **What does an IEP team do when a parent insists on an in-person meeting during the statewide mandatory suspension of in-person instruction?**
    Executive Order 2020-10 directs that all Illinois residents must remain at home or their place of residence through April 30, 2020. Guidance from OCR advises that parents and IEP teams *may* agree to conduct IEP meetings through alternate means, such as videoconferencing or telephone conference calls. Parents and school teams are expected to work collaboratively and creatively in planning virtual meetings and to meeting IEP

timelines. ISBE strongly suggests that all schools and districts consult with their boards, administrators, and legal counsel to address a parent who insists on in-person meetings.

**EVALUATIONS**

16. **How should Child Find screenings and early childhood evaluations be conducted during the suspension of in-person instruction?**
    There is currently no flexibility for compliance with timely Child Find. However, ISBE expects districts will make appropriate local determinations on a safe way to conduct Child Find and early childhood screenings during the statewide mandatory suspension of in-person instruction. Early childhood evaluation teams may want to consider assessment procedures, such as parent interviews, childcare provider interviews, parent rating scales, and review of early intervention reports, in lieu of direct student contact for evaluations.

17. **How will referrals and evaluations, including bilingual evaluations, be handled during remote learning? What if the team believes an assessment can only be administered in-person is necessary to conduct an appropriate evaluation?**
    There is no flexibility for compliance with federal requirements concerning referrals and evaluations. Schools should handle all referrals and evaluations in a manner that complies with federal requirements. Schools may consider convening evaluations and re-evaluations that do not require face-to-face assessments or observations; however, schools must approach all such instances of remote evaluation and re-evaluation cautiously and consider the legal and best practice risks. Any evaluations that require face-to-face assessments, or in which the remote evaluation or re-evaluation is inappropriate, should be postponed until schools reopen.

18. **Are schools required to continue to progress monitor students for the purposes of data collection for responding to interventions for eligibility for specific learning disability?**
    There is no explicit federal guidance addressing this issue during the COVID-19 outbreak. To the extent possible, schools should continue to progress monitor students in the referral process.

19. **How should a school or district address Multi-Tiered Systems of Support or Response to Intervention services at this time? What if interventions are unable to be implemented?**
    ISBE recommends that schools and districts document all efforts to deliver interventions. School districts should consult their board, administrators, and legal counsel on any inability to implement systems of support or interventions.

20. **What is the expectation for early childhood outcomes progress ratings to entered during the February 1 and July 31 reporting period?**

Early childhood outcome progress ratings should continue to be entered during the reporting time period.

**INITIAL IEPs**

**21. How should initial IEPs be developed?**
There is currently no flexibility concerning a district's responsibility to conduct and develop initial IEPs in timely fashion. IEP teams should proceed with developing Initial IEPs for any evaluation completed prior to the suspension of in-person instruction, where practicable, and in the same manner as if schools were open. Schools and districts must make individualized determinations at this time on whether it is feasible and appropriate to conduct any evaluations that were not completed prior to the suspension of in-person instruction. ISBE recommends that districts consult with their board, administrators, and counsel regarding this issue.

**PROVISION OF SERVICES**

**22. Does the district have to provide the services as they are stated in the IEP?**
ED requires FAPE to be afforded to all students, but also states that schools may not be able to provide all services in the same manner they are typically provided. Further, ED states that certain services may be unfeasible or unsafe at this time. On the other hand, ED provides that "federal disability law allows for flexibility in determining how to meet the individual needs of students with disabilities."

IEP teams must make individualized decisions about how to provide services safely and determine to what extent compensatory services may be needed when school resumes normal operation. ISBE recommends that districts consult with their boards, administrators, and counsel in analyzing this issue.

**23. What if the family doesn't make the student available during scheduled virtual remote learning or related service times?**
ISBE urges districts to account for every student who is enrolled. ISBE recommends that schools and school districts document multiple and varied attempts to contact students, establish remote learning, and provide FAPE to students.

**24. Should accommodations be addressed during remote learning?**
Educators providing remote learning should look at the context of the learning task and determine if the child requires the same accommodations as listed in the IEP or if new accommodations are needed to help the child do the task. Schools should make appropriate modification and accommodations to the student's curriculum to alleviate any unreasonable burden upon the parent.

**25. Should behavior intervention plans be implemented during remote learning?**

Page **7** of **17**

Educators can implement student Behavior Intervention Plans during remote learning through individualized adaptations, as applicable, to the method of learning.

26. **Should goals that address social and emotional learning be addressed if students are not interacting with others?**
There is no flexibility for the federal requirement to ensure students make measurable progress on IEP goals, including social and emotional goals. Although physical distancing is presently required, schools should consider ways to address students' social and emotional goals through appropriate remote and electronic means. ED's guidance states that parents, educators, and administrators should collaborate creatively to continue to meet students' social and emotional needs. ISBE recommends that schools and districts consult with their boards, administrators, and counsel on this matter.

Schools are also encouraged to reference resources available from the Center for Positive Behavior Interventions and Supports at [pbis.org](pbis.org).

27. **What documentation should educators and related service providers maintain during remote instruction?**
Documentation is extremely important during this time. Schools, school districts, and providers should take particular care in creating and maintaining documentation concerning the delivery of FAPE, compliance with timelines, and the methods of parental participation. Schools, school districts, and providers should also take particular care in documenting special education and related services provided, methods and minutes of instruction, content, and accommodations provided.

Providers should also maintain notes that can be used to determine progress on annual goals and objectives. Schools may need to consider methods for progress monitoring, such as data from work products, that may differ from previously used assessments.

**RELATED SERVICES**

28. **Can related service providers use electronic means to provide services during remote learning? Can schools bill Medicaid for these teletherapy services during remote learning?**
Schools may consider using teletherapy or video therapy for remote learning. Related service providers, including, but not limited to, speech-language pathologists, occupational therapists, and physical therapists, should refer to their corresponding licensure acts for guidance on the provision of remote services.

LEAs are now able to temporarily bill for telehealth services, including related services provided by phone or electronically, pursuant to Executive Order 2020-09 and the Illinois Department of Healthcare and Family Services during statewide mandatory suspension of in-person instruction. Pursuant to Section 9 of Executive Order 2020-09, any nonpublic

facing remote communication product must enable all available encryption and privacy modes when using these applications. Public facing video communications that do not have privacy settings should not be utilized.

29. **Can schools that contract with a third-party vendor for related services require the third-party vendor's personnel to provide remote learning?**
A school that has entered into contract with a third-party vendor for provision of related services retains responsibility for review and revision of any contract to account for related service provision during remote learning in coordination with the third-party vendor. The school absorbs responsibility for service provision in the event a third-party vendor is unable to fulfill provision of services or a contract is terminated.

30. **How can occupational therapy, physical therapy, orientation and mobility, and adaptive physical education goals be addressed through remote learning?**
ED's guidance explicitly acknowledges that in-person, hands-on therapies, such as physical therapy, occupational therapy, or tactile sign language education services, may be unfeasible or unsafe at this time; however, there is currently no federal flexibility regarding the requirement to address each student's individualized areas of need in providing a FAPE. Schools and school districts should consult their boards, administrators, and counsel on this issue.

31. **Can telehealth providers provide services to students across state lines (e.g., a Missouri social worker providing minutes through a telehealth platform to students in Illinois)?**
This practice cannot occur unless the provider has appropriate licensure to the requirements of both states. A telehealth provider must be licensed in the state they are located as well as in the state where the student is located at the time of provision of service. In Illinois, a provider must hold a state license and adhere to requirements equivalent to service provision in-person. Section 5 of Executive Order 2020-09 names applicable provider titles so long as they are licensed, registered, certified, or authorized to practice in Illinois.

32. **If a student requires nursing care through their IEP, whose responsibility is it to continue to provide the nursing care during remote learning -- school nurse or home health nurse?**
Nursing support should align with all other IEP support services provided by the school. Districts should involve their nurse(s) in planning their service provision during Remote Learning Days. Consideration should be given to where the students reside, staff assignments, and feasibility of these provisions. ISBE recommends that schools and school districts should consult their boards, administrators, and counsel on this issue.

**MULTILINGUAL STUDENTS WITH DISABILITIES**

33. **Are schools also required to provide bilingual supports to students who are dually identified? Are schools allowed to revise bilingual delivery models during this time?**
    Yes. There is no waiver or change in the federal requirement to address the needs of students who qualify for both special education and bilingual services.

**EARLY CHILDHOOD SPECIAL EDUCATION**

34. **What does remote learning look like for early childhood students receiving special education and related services?**
    As with all other students with disabilities, decisions on appropriate provision of services should consider the child's unique needs, including their age and disability. In the event that technology is used for early childhood students, technology guidelines should be followed for best practice, and the use of technology should be limited. Schools and school districts should consider thinking through a typical day for a preschool child in the home environment as well as the goals you are trying to achieve with the child. The Early Childhood Technical Assistance Center has provided a resource document that provides considerations for embedded instruction. See ectacenter.org.

35. **How are timelines for early intervention to early childhood transition impacted?**
    There is currently no flexibility from the federal and state requirement to ensure that a child transitioning from an early intervention program has either an IEP or continued Individualized Family Service Plan (IFSP) in effect on the child's third birthday (23 Ill. Admin. Code 226.260).  Schools should take all reasonable efforts to comply with the requirement to develop the student's plan and may avail themselves of the opportunity to ensure participation at meetings via alternate means, including telephone or videoconference. A 3-year-old student must have an IEP or continued IFSP in place by their third birthday. During Remote Learning Days, schools should plan for the delivery of IEP services for early childhood students, beginning on their third birthday, per ISBE's guidance on remote learning for special education.

**SPECIAL EDUCATION PERSONNEL**

36. **How can paraprofessionals, including individual aides and classrooms aides, be used to support remote learning?**
    Paraprofessionals, including individual aides and classroom aides, can participate in the provision of services in a remote learning environment. Recommendations include:
    - Participate in scheduled school-based professional development regarding online learning or to other professional development to prepare for working with students upon return to school.
    - Support classroom teachers with preparing assignments, content, and activities.
    - Assist with collecting materials that will be sent to students.
    - Maintain regular communication with teachers and related service provider(s).

- Communicate and check-in with students as determined by classroom teacher and school leadership.
- Under the direction of the teacher or related service provider, support families and students in accessing and participating in remote learning and therapy experiences, including supporting families in implementing behavior supports and structures, as needed.

One online option for professional development for paraprofessionals is through the IRIS Center of Vanderbilt University. See [iris.peabody.vanderbilt.edu](iris.peabody.vanderbilt.edu).

37. **How will services be provided if the primary teacher for instruction falls ill or utilizes the federal emergency leave provisions?**
Each school shall follow its currently established procedure in the event of staff illness as well as review ongoing staffing capacity to determine if substitute instructors should be used or other personnel determinations should be made locally.

## STATE ASSESSMENTS

38. **Should IEPs be amended to reflect that the state of Illinois has received a waiver for state assessments for the 2019-2020 school year?**
Illinois has received an assessment waiver for all students from ED, but it is not expected that IEPs be amended to reflect the fact that students will not be participating on any state assessment.

## TRANSITION SERVICES

39. **How could remote learning be provided for students whose programming requires job coaching, job shadowing, or other employment-related transitions goals?**
Remote learning for students whose programming involves job coaching, job shadowing, or other means to address employment-related transition goals shall incorporate activities that provide for student progression of skill attainment related to outlined objectives linked to identified post-school activities. Alternative activities may be utilized, such as, but not limited to, career exploration, online research, transition-related materials, virtual direct instruction, resources, task boxes, and websites. The methodology for attainment of employment-related skills during the statewide mandatory suspension of in-person school closure and remote learning may change from job coaching or job shadowing opportunities to another accessible format designed to replicate work tasks or products from a job site to a student's location through simulation or other means.

The National Technical Assistance Center on Transition at [transitionta.org](transitionta.org) has at-home instructional resources available for schools to consider.

40. **Will transition assessments still need to be completed prior to IEP meetings held remotely?**
Yes. Age-appropriate assessments related to employment, education or training, and independent living shall be conducted prior to development of appropriate, measurable, postsecondary IEP goals to be in effect when the student turns 14½ and each year following, pursuant to 23 IAC 226.230(c)(1), 105 ICLS 5/14-8.03(a-5)(i), and 34 CFR 300.320(b)(1). Alternate methods for conducting transition assessments prior to IEP meetings during remote learning may be considered, including, but not limited to, online assessments, provision of student and parent/guardian surveys, and student and parent/guardian interviews, to provide information on the student's needs that take into account strengths, preferences, and interests. Assessments and data obtained prior to the statewide mandatory suspension of in-person instruction may be referenced as an additional source.

41. **Do services cease if students turn 22 during the statewide mandatory suspension of in-person instruction?**
Yes. A student remains eligible for services through the day before their 22nd birthday, pursuant to 23 IAC 226.50(c)(1) and 34 CFR 300.101(a). As such, even during remote learning, a student is no longer eligible for receipt of special education services at their 22nd birthday. Schools remain encouraged to coordinate with public agencies and community entities regarding transition for students to adult services during the statewide mandatory suspension of in-person instruction.

42. **Will schools be required to comply with all components of Indicator 13 during the statewide mandatory suspension of in-person instruction?**
Yes. There is no flexibility from compliance with federal reporting, including Indicator reporting. Schools remain required to ensure compliance with all components of the Illinois State Performance Plan Indicator 13 during the statewide mandatory suspension of in-person instruction and remote learning as outlined in 34 CFR 300.320(b), 34 CFR 300.320(1)(I), 34 CFR 300.321(b)(3), and 105 ILCS 5/14-8.03, which are available for reference at www.isbe.net/Documents/37-41-spp-ind-13-checklist.pdf.

43. **Are outside entities required to be invited to IEP meetings for students as a component of transition plans during the statewide mandatory suspension of in-person instruction?**
Yes. If appropriate, a representative of any participating agency that is likely to be responsible for providing or paying for transition services must be evidenced as invited to a student's IEP meeting, pursuant to 34 CFR 300.321(b)(3) and 105 ILCS 5/14-8.03(b). This obligation remains in effect for meetings held through alternate means during the statewide mandatory suspension of in-person instruction and remote learning, pursuant to regulatory requirement.

**PRIVATE SPECIAL EDUCATION SCHOOLS**

44. **Are Illinois residential treatment facilities and residential schools approved under Section 5/14-7.02 allowed to remain open during the statewide mandatory suspension of in-person instruction?**
Illinois residential treatment facilities may stay open so long as a facility continues to maintain appropriate licensure with its licensing entity and remains in compliance with Illinois Department of Public Health and local health department regulations; however, educational components of residential facilities must close, pursuant to Executive Order 2020-05.

45. **Are state-run residential facilities overseen by the Illinois Department of Juvenile Justice, ISBE, or the Illinois Department of Human Services permitted to continue to operate for educational purposes?**
Yes. Executive Order 2020-06 allows that schools operated by the Illinois Department of Juvenile Justice, the Philip J. Rock Center and School operated by the Illinois State Board of Education, and schools operated by the Illinois Department of Human Services (e.g., Illinois Center for Rehabilitation and Education – Roosevelt, Illinois School for the Visually Impaired, and Illinois School for the Deaf) may remain open for educational purposes provided that the schools exercise the necessary precautions to protect the safety and health of the students and staff.

46. **Are out-of-state residential treatment facilities approved under Section 5/14-7.02 allowed to remain open during the statewide mandatory suspension of in-person instruction?**
Yes. The mandate in Executive Order 2020-05 closed all public and private schools for educational purposes only for schools located "in Illinois." Out-of-state residential treatment facilities may continue to provide educational and residential services to students in accordance with that state's authorities and information from the Centers for Disease Control and Prevention.

    Districts that have placed students out of state remain responsible for placement and travel for those students if those out-of-state facilities close. Districts should coordinate and oversee any necessary transportation to ensure safety; the transportation expenses will be reimbursable under current ISBE transportation guidance.

47. **If a student is placed in a private special education school, does the responsibility for the provision of remote learning lie with the private special education school or resident school district?**
Students placed in private special education schools remain the responsibility of their resident district; however, private special education schools should work with the placing district to determine remote learning appropriate for each child, including, but not limited to, online or virtual instruction, instructional phone calls, and other curriculum-based activities. In accordance with the Emergency Amendment to Part 5, private special

Page **13** of 17

education schools may implement an approved e-learning plan or a remote learning plan approved by the school's chief administrator.

ISBE has compiled a library of free online resources and platforms at www.isbe.net/keeplearning, including special education resources for reference. Should a resident district not approve/agree with a private special education school's remote learning plan for a student placed, the district will remain responsible for provision of educational services to the student.

48. **What are the reasonable expectations for private special education schools to provide documentation to resident school districts regarding their implementation of remote learning?**

Private special education schools must continue to provide documentation of student attendance to resident school districts by the 15th of each month for the preceding month and immediately after five consecutive days of absences, pursuant to 23 Illinois Administrative Code 401.230(a). Private special education schools must also continue to provide documentation of student progress, including in relation to goals, reintegration, and transition, in accordance with 34 CFR 300.320 and 23 IAC 401.230(b). Documentation of implementation of remote learning for a student will be provided according to the requirements outlined in a private special education school's remote learning plan.

49. **How should private special education schools reflect the statewide mandatory suspension of in-person instruction and Remote Learning Days on their 2019-20 school calendar?**

As mandated by Gubernatorial Disaster Proclamation 2020-038 and Executive Order 2020-05 and 2020-06, days from March 17, 2020, through March 30, 2020, cannot be considered "school days" for special education purposes. The Illinois State Board of Education will adjust all currently approved 2019-20 school year calendars in the ISBE Web Application Security (IWAS) Special Education Private Facility (SEPF) system listing to reflect an Act of God (AOG) Day label for March 17, 2020 through March 30, 2020 only. In the instance a Spring Break of an approved private special education school under Section 14-7.02 of the Illinois School Code occurred between March 17, 2020 through March 30, 2020, the private special education school will have until June 1, 2020 to submit a calendar amendment for their 2019-20 school year calendar to reflect this Spring Break as Not in Attendance (NIA) days in the IWAS SEPF system listing, which can be accessed by logging into sec2.isbe.net/iwas/asp/login.asp?js=true.

Closure dates by private special education schools prior to March 17, 2020, may be amended to the end of the regular year calendar at the discretion of the school, so long as the days do not conflict with proposed summer school term dates. Remote Learning Days will be entered as full student attendance days for the regular term.

50. **Can private special education schools approved as combination programs with an educational and residential component utilize school personnel in the residential facility during remote learning?**
The concrete details of work that will occur during remote learning must be addressed through mutual agreement between the private special education school, its operating agency, and personnel it employs focusing on remote learning, provision of meals, and other student support measures, as appropriate.

51. **Can private special education schools bill resident school districts for tuition and/or room and board per diem for Remote Learning Days and receive payment? Will resident school districts be reimbursed for these tuition and/or room and board per diem payments?**
Private special education schools approved under Section 14-7.02 of the Illinois School Code may continue to invoice school districts, and school districts shall continue to pay the per diem approved by the Illinois Purchased Care Review Board for the duration of the Gubernatorial Disaster Proclamation 2020-038 and Executive Order 2020-05 and 2020-06, pursuant to 23 Illinois Administrative Code 226.335 Emergency. School districts will be reimbursed for special education room and board expenditures under Part B of the federal Individuals with Disabilities Education Act, as prescribed in Section 14-8.01 of the School Code.

52. **Can resident school districts continue to place special education students into private special education schools during the statewide mandatory suspension of in-person instruction and Remote Learning Days?**
Yes. A resident school district may place a special education student into a private special education school during statewide mandatory suspension of in-person instruction and Remote Learning Days, so long as regulatory requirements for placement by public school districts have been met, pursuant to 23 IAC 401.110(a-g).

53. **How does the statewide mandatory suspension of in-person instruction impact ISBE's Educational Surrogate Parent Program?**
ISBE's Educational Surrogate Parent Program is suspending the in-person meeting requirement for reimbursement until June 30, 2020. Surrogates should make every effort to participate in meetings safely during the COVID-19 pandemic, which may include participation via phone conference, Skype, or other forms of technology. Surrogates should not meet with students they represent, teachers, or facility staff during this time. We recognize how this makes the role of the surrogate much more difficult; however, everyone's health is of the utmost importance. If you have any questions, please email surrogate@isbe.net.

**SPECIAL EDUCATION COOPERATIVES**

54. **Does the responsibility of the provision of remote learning for students in special education cooperatives lie with the special education cooperative or the member district?**
    The provision of remote learning is a local decision between the cooperative and its member districts. If a cooperative provides remote learning, then the remote learning plan shall be posted on the cooperative's website.

**CHARTER SCHOOLS AND STUDENTS WITH DISABILITIES**

55. **Does this guidance document apply to charter schools?**
    Yes. Any guidance that is provided and applies to public schools will apply to both charter schools that are their own LEA and to charter schools with a public school district as their authorizer.

**INDIVIDUAL SERVICE PLANS**

56. **What obligations do LEAs have to provide remote learning to students with Individual Service Plans (ISPs)?**
    All outlined guidance in relation to provision of services for IEPs shall apply to ISPs during remote learning. LEAs shall work in collaboration with nonpublic private/parochial schools to ensure continuation of educational and related services determined meaningful to the student listed on an ISP, in addition to holding required meetings.

**DISPUTE RESOLUTION**

57. **How are due process, complaint investigations, and mediation timelines impacted by COVID-19 closures?**
    ED guidance states that, absent agreement by the parties, a state may be able to extend the 60-day timeline for complaint resolution if exceptional circumstances exist with respect to a particular complaint and that the COVID-19 pandemic could be deemed an exceptional circumstance if a staff are unavailable or absent for an extended period of time.

    There is currently no flexibility for the requirement to comply with federal and state special education timelines connected to due process and mediation timelines.

    All parties to due process hearings and mediations should take direction on timeline compliance from their hearing officer or mediator. Mediators and hearing officers may conduct meetings and hearings entirely via telephone or videoconferencing. The mediator or hearing officer, however, should consult the parties and/or their representatives before deciding to proceed in this manner. Additionally, although a hearing decision must be issued to the parties 45 days after the expiration of the 30-day resolution period or an

adjusted resolution period, a hearing officer may grant a specific extension of time at the request of either party to the hearing.

**58. Can complaints/mediation/due process requests be filed regarding remote learning?**
Nothing in this guidance prevents complaints, mediation requests, or due process hearing requests from being filed during the time of the statewide mandatory suspension of in-person instruction.

**59. Will districts be required to complete and submit corrective action during the statewide mandatory suspension of in-person instruction?**
To the extent that the corrective action can be completed without in-person contact, LEAs will be required to complete and submit corrective action. LEAs should work with the ISBE complaint investigators if additional time is needed because of the statewide mandatory suspension of in-person instruction, and ISBE will consider reasonable requests for extensions, so long as the one-year timeline for closing the complaint is maintained.

## MANIFESTATION DETERMINATIONS AND DISCIPLINE

**60. If a Manifestation Determination Review (MDR) could not be held prior to the mandatory closure, should the IEP team proceed with the MDR?**
Yes. If an MDR is required, the IEP team should attempt to proceed with convening to conduct the MDR. Schools and school districts should consult their board, administrators, and counsel on this issue.

**61. Are days a suspended student with a disability served during the time of the mandatory suspension of in-person instruction still counted?**
Yes. Since Remote Learning Days are attendance days, suspension days would be served. If a student was suspended more than 10 days, remote learning should commence on the 11th day.