**EXHIBIT F**
TO THE DECLARATION OF JOSEPH V. WILLEY

CA. DEP'T EDUC., SPECIAL EDUCATION GUIDANCE FOR COVID-19 (April 9, 2020)

**09-Apr-2020**

The United States is currently experiencing a pandemic emergency due to the threat of novel coronavirus (COVID-19). On March 13, 2020, Governor Newsom signed Executive Order N-26-20 requiring the California Department of Education (CDE) to issue guidance on several topics, including ensuring students with disabilities (SWD) receive a free appropriate public education (FAPE) consistent with their individualized education program (IEP) and meeting other procedural requirements under the Individuals with Disabilities Education Act (IDEA) and California law. Initial guidance on services to students with disabilities was provided on March 20, 2020.

The following guidance provides additional information based on questions received by the CDE in recent weeks. We will continue to update the guidance on this web page as necessary in response to any guidance from the U.S. Department of Education or waivers of any laws or regulations pertaining to special education services.

1. **Must all Individualized Education Programs (IEPs) be amended to reflect the change to distance learning?**

   No, not all IEPs will need to be amended. In response to the Governor's Executive Order, schools are physically closed, and local educational agencies (LEAs) are to provide educational services through alternative options such as distance learning. Under this unique circumstance, in the CDE's view it is not necessary for an LEA to convene an IEP team meeting, or propose an IEP amendment without a team meeting, for every student, solely for the purpose of discussing the need to provide services away from school, because that change must necessarily occur due to the COVID-19 pandemic. Similarly, in the CDE's view, it is not necessary for an LEA to obtain the parent's written consent to provide previously agreed-upon services, away from school. The IEP that was in effect at the time of physical school closure remains in effect, and LEAs should, to the greatest extent possible, continue to provide the services called for in those IEPs in alternative ways.

   According to the United States Department of Education (USDOE) Office of Special Education Program's (OSEP) March 21, 2020 guidance, "[T]hese exceptional circumstances may affect how all educational and related services and supports are provided . . . the provision of [free and appropriate public education (FAPE)] may include, as appropriate, special education and related services provided through distance instruction provided virtually, online, or telephonically . . . schools may not be able to provide all services in the same manner that they are typically provided . . . federal disability law allows for flexibility in determining how to meet the individual needs of students with disabilities. The determination of how FAPE is to be provided may need to be different in this time of unprecedented national emergency." To review OSEP's March 21, 2020 guidance titled *Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities*", visit the USDOE website at https://bit.ly/2VdoJn6.

   However, there may be instances when amending the IEP to reflect the change to distance learning might be necessary and/or appropriate. LEAs may convene an IEP team meeting, or propose an IEP amendment without a team meeting, particularly where it is deemed necessary to address unique circumstances related to alternative service delivery. (*See* 20 USC 1414 (d)(4)(A); 20 USC 1414 (d)(3)(D); 34 C.F.R. § 300.324.) Parents too may request an IEP meeting or propose an IEP amendment, pursuant to Education Code § 56343, subdivision (c). Some LEAs and parents have agreed to amend the IEP by incorporating a distance learning plan outlining the special education and related services being provided to the student during the temporary, emergency situation created by the COVID-19 pandemic.

At this time, LEAs should necessarily be focused on serving each and every student. OSEP's March 21, 2020 guidance clarifies that "ensuring compliance with the Individuals with Disabilities Education Act . . . should not prevent any school from offering educational programs through distance instruction." The CDE recognizes that due to the emergency situation created by the COVID-19 pandemic, it will take time for LEAs to determine their continuum of services during school site closures and provide information to parents and students about the services being offered. As such, communication and collaboration are vital. It is recommended that LEAs maintain regular communication with parents of students with disabilities about their efforts to transition to distance learning, plans to ensure access for all students, and to identify and address any immediate support needs when feasible.

2. **Is an LEA precluded from providing services to students with disabilities in-person or in the home for the purpose of supporting the student in accessing the alternative options for learning being offered?**

   No. In some exceptional situations, LEAs may need to provide certain supports and services to individual students in-person in order to maintain students' mental/physical health and safety for the purpose of supporting the student in accessing the alternative options for learning being offered (e.g. distance learning). With that said, alternative service delivery options should seek to comply with federal, state, and local health official's guidance related to physical distancing, with the goal of keeping students, teachers and service providers safe and healthy as the primary consideration.

   In such cases, service providers may be considered "Essential Critical Infrastructure Workers" under Executive Order N-33-20. To review the list of "Essential Critical Infrastructure Workers", see the California Coronavirus (COVID-19) Response website at https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

   For example, the list of essential workers in the healthcare/public health sector includes:

   - Health care providers and caregivers (e.g. physicians, psychologists, mid-level practitioners, nurses and assistants, physical and occupational therapists and assistants, social workers, speech pathologists, and diagnostic and therapeutic technicians and technologists).
   - Behavioral health workers (including mental and substance use disorder) responsible for coordination, outreach, engagement, and treatment to individuals in need of mental health and/or substance use disorder services.
   - Workers who provide support to vulnerable populations to ensure their health and well-being including family care providers.
   In addition, other community-based government operations and essential functions includes:
     - Workers supporting public and private childcare establishments, pre-K establishments, K-12 schools, colleges, and universities for purposes of distance learning, provision of school meals, or care and supervision of minors to support essential workforce across all sectors.

   Therefore, if an individualized determination is made that a student needs services or supports in-person to maintain their mental/physical health and safety for the purpose of supporting the student in accessing the alternative options for learning being offered (e.g. distance learning), an LEA is not necessarily precluded from providing that service by Governor Newsom's stay at home order.

3. **I'm a parent of a student with a disability and I have questions about my child's IEP. Where can I go for information and support?**

Questions about your student's IEP and educational program in light of school site closures and the COVID-19 pandemic should be discussed with your school or district. Schools across the state are responding to the COVID-19 pandemic in different ways, specific to the school's regional context. The CDE encourages parents to reach out to their school or district office to have a conversation about the impact of the pandemic on their student's education and collaborative ways to support the student during this time.

Parents of students with disabilities may also reach out to California's parent organizations offering support and resources to families of students with disabilities. Information on parent organizations can be accessed on the CDE website at https://www.cde.ca.gov/sp/se/qa/caprntorg.asp.

In addition, the Understood.org website is an example of numerous state and national organizations offering practical advice and strategies for parents and caregivers during this crisis. A link to COVID-19 resources for parents and families developed by Understood can be accessed on the Understood.org website at https://www.understood.org/en/school-learning/coronavirus-latest-updates.

4. **What should an LEA do if it has closed school sites due to COVID-19 and is unable to meet the obligation to have an IEP or an Individual Family Service Plan (IFSP) in effect for a child transitioning from Part C to Part B no later than the child's third birthday?**

   34 C.F.R. §§ 300.101(b) and 300.124(b) require that an IEP or IFSP is developed and is being implemented by the third birthday of a child participating in Part C programs and who will participate in Part B preschool programs. The U.S. Department of Education has not waived or exempted this requirement. Either an IEP or IFSP must be developed and implemented by the child's third birthday. To meet this obligation, teams may conduct meetings virtually via telephone, videoconference, or other means.

5. **If IEP teams meet virtually while school sites are closed due to COVID-19, how should parent consent be obtained? Is verbal consent sufficient?**

   34 C.F.R. § 300.9(b) states that "consent" means in part ". . .the parent understands and agrees in writing. . .". Thus, verbal consent alone is not sufficient. However, the IDEA does not specify how written consent must be obtained. Therefore, LEAs that wish to utilize electronic or digital signatures for consent may do so if they choose. Options for electronic signatures or digital signatures could include but are not limited to use of applications such as HelloSign, DocuSign, Adobe Sign, as well as scanned copies or photographs of signed signature pages. For record keeping purposes, it is recommended that LEAs maintain documentation as proof of consent, including printed or mailed copies of signed documents.
   For more information on general electronic signature requirements for public agencies in California, please refer to Government Code § 16.5, and Title 2 of the California Code of Regulations, §§ 22000 et seq.