# EXHIBIT K
## TO THE DECLARATION OF JOSEPH V. WILLEY

## CTR. MEDICARE & MEDICAID SERVS., STATE MEDICAID & CHIP TELEHEALTH TOOLKIT: POLICY CONSIDERATIONS FOR STATES EXPANDING USE OF TELEHEALTH, COVID-19 VERSION 3



# State Medicaid & CHIP Telehealth Toolkit

## *Policy Considerations for States Expanding Use of Telehealth*

### COVID-19 Version







**Table of Contents**

Intent of Toolkit ................................................................................................................3

A Note on Medicare ..........................................................................................................4

Quick Facts .......................................................................................................................4

State Considerations .........................................................................................................6

Pediatric Considerations ...................................................................................................7

State Checklist ..................................................................................................................9

CMS Contact Information ................................................................................................16

Appendix A: Frequently Asked Questions .......................................................................17

      Benefit Flexibilities ............................................................................................17

      Financing Flexibilities .......................................................................................19

      Workforce Flexibilities ......................................................................................20

      Managed Care Flexibilities ................................................................................21

      Health Information Exchange Flexibilities...........................................................22

      T-MSIS Coding Guidance ..................................................................................22

Appendix B: Resources ...................................................................................................23



**Intent of Toolkit**

The Centers for Medicare & Medicaid Services (CMS) is working hard to make sure we help our beneficiaries and the people who are working on the front lines to care for patients during this pandemic. We have taken numerous steps to respond to the pandemic, and have issued new rules and a sweeping array of waivers of federal requirements to ensure that local hospitals and health systems have the capacity to absorb and effectively manage potential surges of COVID-19 patients.  In addition, CMS has issued guidance on nursing home health and safety standards, essential surgeries and procedures, as well as preservation of personal protective equipment, beds, and ventilators.  We also issued guidance and provided waivers or flexibilities to states and health care providers to ensure that they can focus on delivering the necessary items and services during this pandemic. You can find more information about our ongoing efforts on CMS's Current Emergencies website, which is linked to the CMS.gov home page.[1]

Although telehealth services have been available in many states for decades, the recent public health emergency (PHE) resulting from COVID-19 has accelerated the interest in service delivery through telehealth.  The purpose of this document is to identify for states the policy topics that should be addressed in order to facilitate widespread adoption of telehealth services, especially when they reside outside the immediate authority of a Medicaid or CHIP program.

CMS is committed to ensuring that Medicaid agencies have the necessary tools to prepare for and respond to this emergency on behalf of the nation's 71 million Medicaid and CHIP beneficiaries, including children. To that end, CMS has also created a dedicated website for Medicaid-related COVID-19 information, which includes our Medicaid & CHIP Disaster Response Toolkit and links to other relevant information regarding COVID-19. We are also releasing updated guidance on a rolling basis in the form of frequently asked questions (FAQs) so that we can provide states with the most current and useful information during this evolving situation, including information on the implementation of recent congressional actions. We have also developed standardized Medicaid waiver and state plan amendment checklists to provide states with a comprehensive suite of flexibilities in order to streamline their ability to request and implement the necessary program adjustments in light of the pandemic.  In addition, CMS continues to hold direct technical assistance sessions with states, as well as regular all-state calls, to answer questions and to better understand state needs. Recordings and transcripts of our all state calls are also made available online, and our website will continue to be updated with additional information as it becomes available.

To support state policymakers in their efforts to expand the use of telehealth services in Medicaid programs, this Medicaid Telehealth Toolkit aggregates information and highlights

---

[1] https://www.cms.gov/About-CMS/Agency-Information/Emergency/EPRO/Current-Emergencies/CurrentEmergencies-page



questions that states may ask themselves when establishing new telehealth policy, including telehealth policies for pediatrics. This toolkit will evolve throughout the COVID-19 emergency.

Initially it will offer general considerations for telehealth expansion, but as state Medicaid telehealth coverage and payment policy evolves, this toolkit will include examples of the telehealth changes implemented by states.

This guide is intended to help states identify which aspects of their statutory and regulatory infrastructure may impede the rapid deployment of telehealth capabilities in their Medicaid program.  As such, this guide will describe each of these policy areas and the challenges they present below.  The toolkit concludes with a list of questions state policymakers can use to ensure they have explored and/or addressed potential obstacles.

**A Note on Medicare**

CMS has expanded access to Medicare telehealth services. Clinicians can now provide more services to beneficiaries via telehealth so that clinicians can take care of their patients while mitigating the risk of the spread of the virus.  Under the public health emergency, all beneficiaries across the country can receive Medicare telehealth services. Clinicians can provide telehealth services to new or established patients. Clinicians can also provide virtual check-in services (HCPCS codes G2010, G2012) to both new and established patients. Additionally, a broad range of clinicians can now provide certain services by telephone to their patients.  These services are described by CPT codes 99441-99443 and 98966-98968 for practitioners who can and cannot independently bill for evaluation and management visits, respectively.

**Quick Facts**

CMS encourages states to consider telehealth options as a flexibility in combatting the COVID-19 pandemic and increasing access to care. States are encouraged to facilitate clinically appropriate care within the Medicaid program using telehealth technology to deliver services covered by the state.

    ✓  States have a great deal of flexibility with respect to covering Medicaid and CHIP services provided via telehealth. States have the option to determine whether (or not) to utilize telehealth; what types of services to cover; where in the state it can be utilized; how it is implemented; what types of practitioners or providers may deliver services via telehealth, as long as such practitioners or providers are "recognized" and qualified according to Medicaid federal and state statute and regulation; and reimbursement rates. States have full discretion to select from a variety of HCPCS codes and modifiers in order to identify, track and reimburse for these services.

    ✓  States are not required to submit a state plan amendment (SPA) to pay for services delivered via telehealth if payments for services furnished via telehealth are made in



the same manner as when the service is furnished in a face-to-face setting. States may submit a coverage SPA to describe services delivered via telehealth.  A state would need an approved state plan payment methodology (and thus, might need to submit a SPA) to establish rates or payment methodologies for telehealth services that differ from those applicable for the same services furnished in a face-to-face setting.

✓ States have broad flexibility to adopt telehealth options in CHIP.  The flexibilities discussed in this toolkit generally apply to separate CHIP programs.  States should contact their CHIP Project Officer for assistance.

✓ Services delivered via telehealth seek to improve a patient's health through two-way, real time interactive communication between the patient, and the provider.  Services delivered in this manner can, for example, be used for assessment, diagnosis, intervention, consultation, and supervision across distances.

✓ States may pay a qualified physician or other licensed practitioner at the distant site (the billing provider) and the state's payment methodology may include costs associated with the time and resources spent facilitating care where the beneficiary is located, such as a medical facility or the beneficiary's home. States are strongly encouraged to include costs associated with providing services via telehealth within Medicaid payment methodologies and ensure rates are adequate to facilitate telehealth services.  The billing provider may distribute the payment as appropriate.

✓ Medicaid guidelines require all providers to practice within the scope of their State Practice Act. States should follow their state plan regarding payment to qualified Medicaid providers for telehealth services.

✓ States may also pay for appropriate ancillary costs, such as technical support, transmission charges, and equipment necessary for the delivery of telehealth services. A state would need an approved state plan payment methodology that specifies the ancillary costs and circumstances when those costs are payable.

✓ Ancillary costs associated with the site where the beneficiary is located may be incorporated into the fee-for-service rates or separately reimbursed as an administrative cost by the state when a Medicaid service is delivered. The ancillary costs must be directly related to a covered Medicaid service provided via telehealth and properly allocated to the Medicaid program.

✓ States may wish to consider issues with consistency between fee-for-service and managed care telehealth coverage that may cause confusion for providers.

✓ States may wish to re-evaluate scope of practice laws, including restrictions imposed by state boards of medicine, to ensure maximum utilization of telehealth flexibilities. Consideration may need to be given to revising scope of practice for some professional types, such as optometrists, in order to explicitly allow delivery of care



via telehealth. In other cases, it may be necessary to revisit practice policy to ensure it is not unnecessarily restricting the delivery of care via telehealth.

✓ States are encouraged to reach out to their CMS state lead as soon as possible if they are interested in submitting a state plan amendment.

**State Considerations**



Given the complex and interrelated nature of the state-level regulatory framework governing the delivery of healthcare services—provider scope of practice, privacy regulations, definitions of telehealth, and other areas—a barrier in one area could easily block regulatory alignment in other areas, effectively preventing adoption and use of telehealth capabilities.  At its core, telehealth is a complex mix of four interrelated domains:



1. **The population to whom the service is being delivered:**  Services can be delivered via telehealth across all populations served in Medicaid including, but not limited to children, individuals with disabilities, and older adults.  When assessing populations to be served via telehealth, states should also consider privacy and consent laws and policies.  For example, many routine pediatric conditions can be addressed via telehealth, following similar policies and procedures implemented for the adult population.

2. **The service that is being delivered, including coverage and reimbursement:**  States should review services for the possibility of being delivered via telehealth even if they have not traditionally been delivered in such a manner.

   Medicaid rates need to be available and adequate to facilitate care delivered through telehealth.  State leaders should review existing payment methodologies to ensure there are no restrictions that would prevent service delivery through telehealth.  In addition, state leaders should ensure rates for telehealth services factor additional costs that may be incurred by providers when delivering services through telehealth that would not otherwise be incurred through a face-to-face visit (for example, additional costs to



facilitate a telehealth service that are incurred at a medical facility or a beneficiary's home).

3. **The provider or practitioner delivering the service:**  Not every provider or practitioner can deliver every service via telehealth.  State leaders should review the range of

   providers and practitioners, such as dentists, physical, occupational or speech therapists, obstetricians and gynecologists or direct support professionals authorized to bill Medicaid in their state and determine which services can be legitimately delivered via one of the telehealth modalities.  However, just making a provider eligible to bill a telehealth service in Medicaid may not be enough.  In addition to provider licensure and credentialing in Medicaid, states also must consider whether a provider's professional scope of services enables him or her to bill for a telehealth service, and whether any changes to that scope of services are warranted.

4. **The technology used to deliver the service:**  The dominant form of telehealth is generally thought of as two-way audio/visual communication, or a video chat.  However, telehealth is much broader than that.  Other forms—such as store-and-forward and remote patient monitoring—have existed alongside this two-way modality.  Federal Medicaid law and policy allows states to cover and pay for Medicaid services delivered via audio-only communications.  This flexibility was in place prior to the COVID-19 public health emergency (PHE), has not changed during the COVID-19 PHE, and will continue to be available to states after the end of the COVID-19 PHE.  Additionally, as part of the COVID-19 PHE, HHS has announced enforcement discretion (see website) related to the Health Insurance Portability and Accountability Act (HIPAA) Privacy, Security, and Breach Notification Rules (Rules) for certain health care providers in the provision of telehealth during the PHE.

**Pediatric Considerations**



Many states already have experience with telehealth coverage for pediatric behavioral health services. Adolescent patients may often prefer telehealth for counseling related to substance use disorder services.  However, the flexibility of Medicaid telehealth policy allows for a broader range of services to be delivered via telehealth and states should consider those opportunities.  Services that include family involvement such as family therapy may also be delivered via telehealth.

Privacy laws may have a unique impact on the pediatric population and HIPAA Rules requirements should be considered.  For school-based services and requirements for school records or other related issues in the Family Educational Rights and Privacy Act (FERPA) or the



Individuals with Disabilities Education Act (IDEA), the Department of Education may also need to be consulted.

As with all Medicaid populations, telehealth use and satisfaction is influenced by both pediatric patients' and their caregivers' access to technologies that support telehealth, knowledge of available resources, and willingness to interact with and through the technology, all factors that may be influenced by the potential user's educational, socioeconomic, health, and other personal characteristics. Telehealth satisfaction and uptake is also influenced by provider factors such as training and technology acceptance.

State consent laws, regulations, procedures and policies for pediatric populations need to be considered in the development of telehealth coverage policy.  Age of consent is the age at which children can provide their own consent without the parent or legal guardian and can vary by type of service. Depending on how these requirements are set forth, there may be a need for reconsent, new consent, or the need for parent/guardian involvement at some point during the course of treatment.

States should review their provider licensure and credentialing requirements for pediatrics to evaluate whether they present barriers to telehealth delivery in their states.  This is particularly important for providers who may be out-of-state but providing services to individuals within the state.



**State Checklist**

The following checklist of policy questions is intended to serve as a tool for states to assess telehealth in their state. Consideration should be given to populations, services, providers, payment rates, technology, and other areas as noted below.

| Category | Questions | State Policy Reference (Statute, Regulation, etc.), If Applicable | Next Step |
|----------|-----------|------------------------------------------------------------------|-----------|
| **Populations** | Can a new patient-provider relationship be established via telehealth? | Enter state policy references for populations. | Enter next steps for populations. |
| | Are there limitations on what type of technology can be used to obtain consent? | Enter state policy references for populations. | Enter next steps for populations. |
| | Are there language or other communication needs unique to different populations? | Enter state policy references for populations. | Enter next steps for populations. |
| | Are there limitations on the populations who may receive services delivered via telehealth? | Enter state policy references for populations. | Enter next steps for populations. |

9



| Services | What specific services are eligible for reimbursement via telehealth?<br><br>– Are there some CPT codes that cannot be billed for telehealth?<br><br>– Does ability to bill differ by service provider type, such as behavioral health provider or by telehealth modality? | Enter state policy references for services. | Enter next steps for services. |
|---|---|---|---|
| | Are Medicaid Managed Care plans obligated to cover the same service/provider/telehealth modality as Medicaid FFS? | Enter state policy references for services. | Enter next steps for services. |
| | Is it necessary to address the needs of Federally Qualified Health Centers, especially when dealing with Ambulatory Patient Grouper (APG), Diagnosis Related Grouper (DRG), or other bundled codes? | Enter state policy references for services. | Enter next steps for services. |
| | How are direct support professionals being utilized? Are these practitioners eligible to use telehealth in service delivery? | Enter state policy references for services. | Enter next steps for services. |

10



| | | | |
|---|---|---|---|
| **Services** | Are there any additional documentation requirements associated with delivering services via telehealth? Should there be? Do those additional requirements negatively affect the utilization of telehealth? | Enter state policy references for services. | Enter next steps for services. |
| | How does telehealth service delivery affect Medicaid services addressing Social Determinants of Health? | Enter state policy references for services. | Enter next steps for services. |
| **Providers** | Are there any state definitions or restrictions on which specific providers or practitioners are eligible to bill for telehealth services? Does this differ by the telehealth modality? | Enter state policy references for providers. | Enter next steps for providers. |
| | Does the specific scope of practice for any provider or practitioner type preclude delivery of care via telehealth? What could change to facilitate telehealth adoption? | Enter state policy references for providers. | Enter next steps for providers. |



| Providers | What training is necessary for providers or practitioners to be able to deliver services via telehealth?  Does this training vary based on provider or practitioner and/or technology? How often is re-training available and/or required? | Enter state policy references for providers. | Enter next steps for providers. |
|---|---|---|---|
| | Are there any limitations in your state statutes/regulations on what out of state providers or practitioners can do via telehealth in your state? | Enter state policy references for providers. | Enter next steps for providers. |
| | Are there any limitations in your state statutes/regulations on what providers or practitioners in your state can deliver services via telehealth in other states? | Enter state policy references for providers. | Enter next steps for providers. |
| **Payment Rates** | Are there limitations or restrictions on the ability of providers to receive payment for providing telehealth services? | Enter state policy references for payment rates. | Enter next steps for payment rates. |
| | Are rates for telehealth adequate to ensure that additional costs associated with telehealth care are covered? | Enter state policy references for payment rates. | Enter next steps for payment rates. |



| | | | |
|---|---|---|---|
| **Payment Rates** | Do rates factor in appropriate expenses that may be incurred at the beneficiary's location? For example, medical devices used to measure and transmit automated blood pressure readings. | Enter state policy references for payment rates. | Enter next steps for payment rates. |
| | Are providers aware that they may be paid for services delivered through telehealth? | Enter state policy references for payment rates. | Enter next steps for payment rates. |
| **Technology** | Are there any state-based privacy laws that exceed HIPAA Rules standards? | Enter state policy references for technology. | Enter next steps for technology. |
| | States should consider their own state privacy laws: are there state laws that may impact telehealth such as a functional limitation on a specific distant/originating site? | Enter state policy references for technology. | Enter next steps for technology. |
| | Does the state permit school-based health centers to be originating sites for telehealth visits? | Enter state policy references for technology. | Enter next steps for technology. |
| | Which providers or practitioners can provide care, including therapy via telehealth? | Enter state policy references for technology. | Enter next steps for technology. |



| Managed Care | Are managed care plans required to cover all telehealth services that are available in fee-for-service Medicaid? | Enter state policy references for managed care. | Enter next steps for managed care. |
|---|---|---|---|
| | Are there any cost sharing requirements in Medicaid?  Are they the same/different in Medicaid Managed Care?  Do they apply to telehealth visits, too? | Enter state policy references for managed care. | Enter next steps for managed care. |
| | Do managed care rates and contracts need to be amended to reflect utilization of telehealth? | Enter state policy references for managed care. | Enter next steps for managed care. |
| Additional Telehealth Considerations | Are there any limitations on the use of telehealth by geographic location and/or proximity to provider locations? This could include references to metropolitan statistical areas, Health Provider Shortage Areas, or other geographic limitations on the use of telehealth. | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |
| | Do originating sites include a patient's home? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |

14



| Additional Telehealth Considerations | Do originating sites—especially a licensed facility—require a telepresenter? If so, how is the service billed and by whom? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |
|---|---|---|---|
| | Do distant sites include physician's home or other non-licensed facilities? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |
| | Do eligible distant sites differ by provider type (e.g. primary care provider vs. psychiatrist)? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |
| | Can either an originating or a distant site bill a facility fee? Under what circumstances? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |
| | What accessibility requirements exist for delivering care via telehealth, particularly with regard to language or disability? Are these requirements incumbent on all providers or are there differences based on provider type, licensure, or location? | Enter state policy references for additional considerations. | Enter next steps for additional considerations. |



**CMS Contact Information**
Kirsten Jensen, Director, Division of Benefits and Coverage, Kirsten.Jensen@cms.hhs.gov.

16



## Appendix A: Frequently Asked Questions

### Benefit Flexibilities

1. **What flexibilities are available to provide care via telehealth for individuals who are quarantined or self-isolated to limit risk of exposure?**

   States have broad flexibility to cover telehealth through Medicaid, including the methods of communication (such as telephonic or video technology commonly available on smart phones and other devices) to use. Telehealth is important not just for people who are unable to go to the doctor, but also for when it is not advisable to go in person. No federal approval is needed for state Medicaid programs to reimburse providers for telehealth services in the same manner or at the same rate that states pay for face-to-face services. A SPA would be necessary to accommodate any revisions to payment methodologies to account for telehealth costs.

   With regard to 1915(i) face-to-face assessments, the use of telemedicine or other information technology medium is authorized under federal regulations at 42 C.F.R. § 441.720(a) under certain conditions. With regard to 1915(c) waivers, the state can complete an Appendix K to allow case management to be done via telephone or other information technology medium and, where personal care services only require verbal cueing and/or instruction, the personal care service can be expanded to permit information technology medium as a resource.

2. **Are there any available flexibilities in implementing the requirement for face-to-face encounters under Medicaid home health?  Can telehealth be utilized?**

   Yes.  For initiation of home health services, face-to-face encounters may occur using telehealth as described at 42 C.F.R. §440.70(f)(6). A physician, nurse practitioner or clinical nurse specialist, a certified nurse midwife, a physician assistant, or attending acute or post-acute physician for beneficiaries admitted to home health immediately after an acute or post-acute stay may perform the face-to-face encounter. The allowed non-physician practitioner must communicate the clinical findings of the face-to-face encounter to the ordering physician. Those clinical findings must be incorporated into the beneficiary's written or electronic medical record. Additionally, the ordering physician must document that the face-to-face encounter occurred within the required timeframes prior to the start of home health services and indicate the practitioner who conducted the encounter and the date of the encounter. A state plan amendment would only be necessary to revise existing state plan language that imposes telehealth parameters that would restrict this practice. As is discussed above and at https://www.medicaid.gov/medicaid/benefits/telemedicine/index.html, states are not required to submit separate state plan amendments for coverage or reimbursement of telehealth services if they decide to reimburse for telehealth services in the same manner or at the same rate paid for face-to-face services.  A state plan amendment would be



necessary to accommodate any revisions to payment methodologies to account for telehealth costs.

**3. Can Pre-Admission Screening and Resident Review (PASRR) Level 1 and Level 2 evaluations be conducted remotely as opposed to through a face-to-face visit?**

Yes. The PASRR statutory provisions require all applicants to and residents of Medicaid-certified nursing facilities (NFs) be screened for mental illness and intellectual disability, and, if necessary, be provided specialized services while in the NF.

Federal regulations do not prohibit PASRR Level 1 and Level 2 evaluations from being conducted by telephone or through another electronic medium. Unless the state has a specific requirement that PASRR Level 2 evaluations be conducted in a face-to-face interview, there is no need to amend language in the state plan.

States can also request an 1135 waiver to temporarily suspend pre-admission screening and resident review Level 1 and Level 2 for 30 days.

**4. How do the Medicaid flexibilities around use of telehealth as a service delivery mode interact with Medicare and commercial third party liability (TPL) requirements, which may be less flexible around telehealth? For example, a Medicare or commercial payer may require a face-to-face physician visit to order care or supplies.**

Please note that Medicare has recently increased flexibilities related to telehealth due to the public health emergency, as summarized in the fact sheet available at https://www.cms.gov/newsroom/fact-sheets/medicare-telemedicine-health-care-providerfact-sheet. While Medicare and commercial payers have increased flexibilities for telehealth, there may still be instances where coordination of benefits is necessary.

Medicaid payment allows for state plan flexibilities in the event Medicare or a commercial insurer denies payment. If the third party denied the claim for a substantive reason (e.g., service not covered) and the service is covered under the Medicaid state plan, Medicaid would review for payment accordingly. If at a later time, the state is made aware of a third party's coverage for these specific services, the state, as it currently does, would chase recovery of payment accordingly. Therefore, in the example above, once Medicare or a commercial payer reviews a claim and denies for a substantive reason, such as face-to-face physician visit requirement, Medicaid would review and pay according to the state plan. If telehealth is permitted under the Medicaid state plan, Medicaid would pay accordingly.

**5. Does federal Medicaid law and policy allow states to cover and reimburse for Medicaid services delivered using audio-only telehealth technologies?**



Yes. States have broad flexibility to cover and pay for Medicaid services delivered via telehealth, including to determine which telehealth modalities may be used to deliver Medicaid-covered services. Nothing in federal Medicaid law or policy prevents states from covering and paying for Medicaid services that are delivered via audio-only technologies. This broad flexibility to cover and pay for Medicaid services delivered via telehealth, including via audio-only technologies, was in place prior to the COVID-19 PHE, has not changed during the COVID-19 PHE, and will continue to be available to states after the end of the COVID-19 PHE.

6. **Are SPAs necessary to specify when states will cover and pay for Medicaid services that are delivered using telehealth?**

Generally, a SPA is not necessary to describe when the state will cover or pay for already-covered Medicaid services when they are delivered via telehealth, if there are no changes to the benefit descriptions, limitations, or payment methodologies that are already in the state plan.  However, a SPA would generally be necessary if states want to cover or pay for services delivered via telehealth differently than they do for services delivered face-to-face, such as when states reimburse differently for covered services delivered via telehealth than they do for covered services delivered face-to-face.  States may elect to submit SPAs to more comprehensively document coverage and payment for services delivered via telehealth, but are not required to do so unless the state is covering and paying for services differently if they are provided via telehealth.  Additional information about Medicaid telehealth policy can be found at https://www.medicaid.gov/medicaid/benefits/telemedicine/index.html.

## Financing Flexibilities

7. **Are "telephonic services" provided by federally qualified health centers (FQHCs) or rural health clinics (RHCs) eligible for Federal Financial Participation (FFP) during and immediately following a declared state of emergency?**

Yes, FFP is available for telephonic services. If a state's approved state plan excludes FQHC/RHC services from being provided telephonically, CMS can work with the state to expedite processing of a state plan amendment to lift this restriction.

8. **Do states need to a submit a SPA if they pay the same PPS rate for telephonic services provided by FQHCs or RHCs as they pay for services delivered in-person?**

No state plan amendment is needed if the state plan does not specifically define a visit for the purpose of reimbursing FQHC services as a "face to face encounter" with an eligible provider type. If it does, and states would like to reimburse telephonically delivered services at the PPS rate, they would need to submit a SPA amending the definition of a visit.

19



9.  **Can states pay FQHCs and RHCs an amount less than the PPS rate on a FFS basis with an approved SPA or waiver? Additionally, if a service is provided telephonically, can the state pay the provider an amount lower than Prospective Payment System (PPS) rate for the telephonic service delivered via telehealth?**

    If a service is covered within the scope of the FQHC/RHC benefit, section 1902(bb) of the Act requires a state to pay a provider using the state plan prospective payment system (PPS) rate or an alternative payment methodology (APM) that pays at least the PPS rate. For services that are not covered as part of the FQHC/RHC benefit, a state may pay providers using the state plan fee- for-service payment methodology established for that service. Rates for those services may be lower than the PPS or an APM paid for FQHC/RHC services, provided the rate is consistent with all other applicable requirements, including section 1902(a)(30)(A) of the Act. This policy applies whether a service is delivered face-to-face or telephonically.

10. **Healthcare Common Procedure Coding System (HCPCS) code G0071 is reimbursable to FQHC and RHCs for virtual communication activities, including telephone calls. Do states need to submit a SPA to activate that code?**

    States do not need to submit a state plan amendment to activate HCPCS code G0071 unless the state decides to pay a rate for that code that is different from the face-to-face encounter rate approved in the Medicaid state plan.

### Workforce Flexibilities

11. **What options are available if a state experiences a shortage of health care workers because of COVID-19?**

    To address provider shortages for individuals receiving 1915(c) waiver services, states can use Appendix K to expand provider qualifications (e.g., where a provider must be 21 years old, states could modify the age requirement to 18); add additional providers (including allowance of payment to family members and legally responsible relatives); add services, such as a live-in care giver; and temporarily adjust rates to entice more individuals into the workforce.

    For state plan services, a SPA can increase the types of providers a state authorizes to deliver services. As always, states should be mindful of state-level requirements that might impact provider flexibility in delegation of authority.

    Additionally, states have broad ability to cover telehealth through Medicaid, and no federal approval is needed for state Medicaid programs to reimburse for telehealth services in the same manner or at the same rate paid for face-to-face services, visits, or consultations. A SPA is necessary to accommodate any revisions to payment methodology to account for telehealth costs.



To address state staff shortages, the Appendix K process can also be utilized for case managers under 1915(c) to permit the use of telehealth or telephonic consultations in place of typical face- to-face requirements. Under 1915(i), existing regulatory flexibility at 42 C.F.R. § 441.720(a) permits use of telehealth in place of face-to-face assessments when certain conditions are met.

### Managed Care Flexibilities

**12. How can states implement or update Medicaid or CHIP managed care telehealth policies, including allowing remote monitoring and reimbursement of telehealth services at the in-person clinical services rate?**

The available telehealth flexibilities allow Medicaid beneficiaries to receive a wide range of healthcare services from their providers without having to travel to a health care facility so that they can limit risk of exposure and spread of the virus. In fee-for-service, states are not required to submit separate state plan amendments for coverage or reimbursement of telehealth services if they decide to reimburse for telehealth services in the same manner or at the same rate paid for face-to-face services. Medicaid guidelines require all providers to practice within the scope of their State Practice Act, and states may have laws and regulations that govern the scope of telemedicine coverage. In fee-for-service, a state plan amendment would be necessary to accommodate any revisions to payment methodologies to account for telehealth costs.

If a benefit is covered under the state plan or Medicaid waiver (e.g., section 1915(b) or 1915(c)) or a state demonstration (e.g., section 1115), CMS encourages states to amend managed care contracts (if the services are not already included in the contract) to extend the same telehealth flexibilities authorized under their state plan, waiver, or demonstration to services covered under the managed care contract. Absent coverage under the state plan or otherwise authorized through a Medicaid waiver or demonstration, services furnished under telehealth through managed care could also be provided as:

1. In-lieu of services (42 C.F.R. §438.3(e)(2) and 42 C.F.R. §457.1201(e)). Under these regulations, alternate services or services furnished in an alternative setting that the managed care plan or entity voluntarily agrees to cover in lieu of state plan-covered services must be: (i) authorized by the state as being a medically appropriate and cost effective substitute for the covered service or setting under the state plan; (ii) authorized and identified in the managed care contract; and (iii) not required to be used by the enrollee in lieu of the state plan-covered service. In addition, there are specific rate development rules used when a managed care contract authorizes use of in-lieu of services.

2. Additional services, beyond those in the contract, voluntarily provided by managed care plans (commonly referred to as value-added services). No contract amendment is needed; however, *the cost of value-added services cannot be included when*

21



*determining the capitation rates (per 42 C.F.R. §438.3(e)(1)(i) and 42 C.F.R. §457.1201(e)).*

Regarding Medicaid managed care payment, under 42 C.F.R. §§438.3(c)(1)(ii) and 438.4, final capitation rates must be actuarially sound and based only upon services covered under the state plan or waiver authority and represent a payment amount adequate to allow the managed care organization (MCO), prepaid inpatient health plan (PIHP) or prepaid ambulatory health plan (PAHP) to efficiently deliver covered services to Medicaid-eligible individuals in a manner compliant with contractual requirements. If a state determines a retroactive adjustment to capitation rates under one or more of its managed care contracts is necessary for costs eligible for reimbursement, such as telehealth-related infrastructure costs, retroactive adjustments must be certified by an actuary in a revised rate certification and submitted as a contract amendment in accordance with 42 C.F.R. §438.7(c)(2). The rate certification must describe the rationale for the adjustment, and the data, assumptions and methodologies used to develop the magnitude of the adjustment. For additional information about telemedicine, visit: https://www.medicaid.gov/medicaid/benefits/telemedicine/index.html. For CHIP, rates must be based on public or private payment rates for comparable services for comparable populations, consistent with actuarially sound principles, as described in 42 C.F.R. §457.1203(a). States that update their CHIP capitation payments due to telehealth related costs would not need to submit a rate certification.

## Health Information Exchange Flexibilities

13.  **How can states establish, implement, and enhance telehealth technologies through the process described in 45 C.F.R. § 95.624 (emergency funding requests) as part of the COVID-19 response effort and in support of their Medicaid provider and beneficiary populations?**

     CMS is available to provide technical assistance regarding approaches to rapidly scale telehealth technologies. If states are granted waivers under section 1135 for federal requirements related to provider location or provider enrollment (https://www.cms.gov/files/document/covid19-emergency-declaration-health-careproviders-fact-sheet.pdf), complementary technology investments may be appropriate. CMS advises states to leverage existing infrastructure and technology. States should discuss any patient-facing telehealth proposals with their Medicaid Enterprise Systems (MES) State Officer. Please reach out to your MES State Officer for information on submitting an FFP request under 45 C.F.R. § 95.624.

## T-MSIS Coding Guidance

14.  **How should telehealth-related services be reported in T-MSIS?**



States should ensure that providers are educated on the correct submission of telehealth claims. States should report COVID-19 telehealth services to T-MSIS as they are billed on the claim form, identified through the procedure code and procedure code modifier fields. Please contact your CMS State Systems Officer with further questions. For general information on Medicaid telehealth, see Medicaid for Services Delivered via Telehealth.

**Appendix B: Resources**

| Focus Area | Resources |
|---|---|
| Medicaid COVID | • Policy Options for Paying Medicaid Providers https://www.medicaid.gov/medicaid/benefits/downloads/medicaidtelehealth-services.pdf<br><br>• COVID-19 FAQs (See pp.7, 8,10, 11, 14, 19, 23, 32, and 33) https://www.medicaid.gov/state-resource-center/Downloads/covid19-faqs.pdf |
| Medicaid | • Medicaid Telemedicine Landing Page https://www.medicaid.gov/medicaid/benefits/telemedicine/index.ht ml<br><br>• Disaster Toolkit https://www.medicaid.gov/resources-for-states/disaster-responsetoolkit/index.html<br><br>• Managed Care Adequacy and Access Toolkit (See page 53) https://www.medicaid.gov/medicaid/downloads/adequacy-andaccess-toolkit.pdf |
| Medicare | • Medicare Telemedicine Toolkit https://www.cms.gov/files/document/general-telemedicinetoolkit.pdf<br><br>• Medicare Learning Network definition of telehealth services https://www.cms.gov/Outreach-and-Education/Medicare-LearningNetwork-MLN/MLNProducts/Downloads/TelehealthSrvcsfctsht.pdf |



| Recent Related Federal Regulation and Legislation | • CMS Interim Final Rule containing various telehealth-related coverage flexibilities, released March 31, 2020 (CMS-1744-IFC https://www.govinfo.gov/content/pkg/FR-2020-04-06/pdf/202006990.pdf<br><br>• CARES Act of 2020 ("Stimulus bill") containing several telehealth coverage flexibilities, signed into law March 27, 2020 https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf<br><br>• CMS's expansion of access for Medicare telehealth under the Secretary's 1135 waiver authority, dated March 17, 2020 |
|---|---|

| Focus Area | Resources |
|---|---|
|  | https://www.cms.gov/newsroom/fact-sheets/medicaretelemedicine-health-care-provider-fact-sheet |
| Office for Civil Rights | • Notification of Enforcement Discretion for Telehealth Remote Communications During the COVID-19 https://www.hhs.gov/hipaa/for-professionals/specialtopics/emergency-preparedness/notification-enforcementdiscretion-telehealth/index.html<br><br>• Guidance: FAQs on HIPAA and Telehealth https://www.hhs.gov/sites/default/files/telehealth-faqs-508.pdf (English), https://www.hhs.gov/sites/default/files/telehealth-faqs-508.pdf (Spanish)<br><br>• Bulletin: Civil Rights, HIPAA, and the Coronavirus Disease 2019 (COVID-19), dated March 28, 2020 https://www.hhs.gov/sites/default/files/ocr-bulletin-3-28-20.pdf |
| Office of Inspector General | • COVID Policy Statement re Reducing or Waiving Cost Sharing Obligation - Physicians and Other Practitioners will not be subject to Administrative Sanction https://oig.hhs.gov/fraud/docs/alertsandbulletins/2020/policytelehealth-2020.pdf |
| MACPAC | • MACPAC Chapter on Telehealth in Medicaid https://www.macpac.gov/wp-content/uploads/2018/03/Telehealthin-Medicaid.pdf |



| Technical Assistance for Providers | • Office of the National Coordinator for Information Technology https://healthit.gov<br><br>• National Consortium of Telehealth Resource Centers<br>  – Resources https://www.telehealthresourcecenter.org/resources/<br>  – Toolkit https://www.telehealthresourcecenter.org/resourcedocuments/<br>  – Contacts https://www.telehealthresourcecenter.org/wpcontent/uploads/2019/08/08.23.19-2019-contact-sheet.pdf |
|---|---|
| Guidance on treating substance use disorder via telehealth | • Substance Abuse and Mental Health Services Administration guidance on telehealth for medication assisted treatment https://www.samhsa.gov/sites/default/files/programs_campaigns/medication_assisted/telemedicine-dea-guidance.pdf |
| Focus Area | Resources |
| | • Drug Enforcement Authority guidance on telemedicine https://www.samhsa.gov/sites/default/files/programs_campaigns/medication_assisted/dea-information-telemedicine.pdf |