UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and STATES of THE UNITED STATES, ex rel. PATRICK DONOHUE, <br><br>          Plaintiff-Relator, <br><br> - against - <br><br> RICHARD CARRANZA, in his official capacity as the former Chancellor of New York City Department of Education, et al., <br><br>          Defendants. | Civil Action No. 1:20-cv-5396 (GHW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE SAN DIEGO UNIFIED SCHOOL DISTRICT, DR. LAMONT A. JACKSON, AND CINDY MARTEN, FROM THE SECOND AMENDED COMPLAINT**

ENRIQUE M. VASSALLO
WHITNEY ANTRIM
ORBACH HUFF & HENDERSON, LLP
2877 Historic Decatur Road, Suite 200
San Diego, CA 92106
Attorneys for Defendant/Plaintiff
SAN DIEGO UNIFIED SCHOOL DISTRICT

*Attorneys for Defendants*
*San Diego Unified School District, Dr. Lamont Jackson and Cindy Marten*

i

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ..................................................................................... 2

  A.   The Parties ........................................................................................................ 2

  B.   Plaintiff-Relator's Jurisdiction and Venue Claim ............................................ 3

  C.   Plaintiff-Relator's Substantive Claims ............................................................ 3

  D.   Plaintiff-Relator's Claims against Defendants SDUSD, Jackson and Marten ................. 5

  E.   Plaintiff-Relator's "False Certification Fraud" Claim ...................................... 8

  F.   Plaintiff-Relator's "Implied Certification Fraud" Claim ................................. 8

  G.   Relief Sought by Plaintiff-Relator Against SDUSD Defendants ...................... 9

III.  LEGAL STANDARD OF REVIEW ....................................................................... 9

IV.   ARGUMENT ...................................................................................................... 12

  A.   This Court Lacks Subject Matter Jurisdiction Over SDUSD Defendants Including As A
       Result Of Its Eleventh Amendment Immunity And Under State Law ........................... 12

  B.   This Court Has No Personal Jurisdiction Over SDUSD Defendants .............................. 18

  C.   Venue In New York Is Improper Under The False Claims Act. ...................................... 20

  D.   The SAC Fails To State A Claim On Which Relief Can Be Granted And Transfer To
       Another Venue Should Be Declined ................................................................. 24

V.    CONCLUSION .................................................................................................... 35

## TABLE OF AUTHORITIES

Cases

(*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 865 (2d Cir. 1997) ......................................................................................................................................21

31 U.S.C. §3729.............................................................................................................................29

*Alexander v. Gilmore,* 202 F.Supp.2d 478, 481-482 (E.D. Va. 2002) ..........................................15

*Arena v. Graybar Elec. Co., Inc.,* 669 F.3d 214, 225 (5th Cir. 2012) ...........................................16

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ...........................................................................11, 27

*Bd. of Educ. of Cmty High Sch. Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548 (7th Cir. 1996).................................................................................................34

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982).....................31

*Belanger v. Madera Unified School Dist.,* 963 F.2d 248, 254 (9th Cir. 1992) ..............................12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ..........................................................11

*Black v. Payne,* 591 F.2d 83, 86 (9th Cir. 1979), cert. denied, 444 U.S. 867 (1979)...................17

*Carlisle Area Sch. Dist. v. Scott P.,* 62 F.3d 520, 530 (3d Cir.1995)............................................32

*Carmen v. San Francisco Unified School Dist.,* 982 F.Supp. 1396 (N.D. Cal. 1997) ..................15

*Central Virginia Comm. College v. Katz,* 546 U.S. 356, 360 (2006) ............................................12

*Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 568 (11th Cir. 1994).......................26

*De La Fuente v. I.C.C.,* 451 F.Supp. 867, 872, fn. 4 (N.D. Ill. 1978)............................................10

*Del Toro v. Novus Equities, LLC,* 2021 WL 5567618, at *2 (S.D.N.Y., Nov. 29, 2021, No. 20-CV-01002 (NSR))................................................................................................................................11

*Deskovic v. City of Peekskill,* 673 F.Supp.2d 154, 159 (S.D.N.Y. 2009) ......................................21

*Detroit Coffee Co., LLC v. Soup for You, LLC,* 2018 WL 941747, at *1 (S.D.N.Y., Feb.16, 2018, No. 16-CV-09875 (JPO) .............................................................................................................11

*Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.* 722 F.3d 81, 84-85 (2d Cir. 2013) ...............10

*EDC Technologies, Inc v. Jim Seidel,* 225 F.Supp.3d 1058 (N.D. Cal. 2016)...............................11

*Eisenberg v. D.A. of County of Kings,* 847 F.Supp. 1029 (E.D. N.Y. 1994) .................................15

*Estate of Harshman v. Jackson Hole Mountain Resort Corp.,* 379 F.3d 1161, 1167 (10th Cir. 2004) ......16

*Everett H. ex rel. Havey v. Dry Creek Joint Elem. School Dist.,* 5 F.Supp.3d 1184, 1198 (E.D. Cal. 2014) ......................................................................................................................................15

*Freeman v. Oakland Unified School Dist.,* 179 F.3d 846, 847 (9th Cir. 1999) ............................13

*Frigard v. United States,* 862 F.2d 201, 204 (9th Cir. 1988)...................................................17, 24

*Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir. 1993) .................31

*Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir. 1999) ..............................................10

*Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1327 (9th Cir. 1991) ..................................12

*Gold v. Morrison-Knudsen Co.,* 68 F.3d 1475, 1476 (2d Cir. 1995)............................................26

*Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005) ..................................................11

*Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005) ..................................................23

*Hafer v. Melo,* 502 U.S. 21, 25–26 (1991)...................................................................................14

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) ..................26

*In re Western States Wholesale Natural Gas Antitrust Litig.,* 715 F.3d 716, 741 (9th Cir. 2013) ............10

*J.R. ex rel. S.R. v. Bd. of Educ.,* 345 F.Supp.2d 386, 395 (S.D.N.Y. 2004)..................................31

*J.T. v. de Blasio,* 500 F.Supp.3d 137 (S.D.N.Y. 2020) ...........................................................passim

*Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist.,* 137 S.Ct. 988, 999 (2017)..........................31

*K.D. by & through Dunn v. Downingtown Area Sch. Dist.,* 904 F.3d 248, 254 (3d Cir. 2018)................33

*Kalie v. Bank of Am. Corp.,* 297 F.R.D. 552, 557 (S.D.N.Y. 2013) ...........................................................22

*King v. Russell,* 963 F.2d 1301, 1304 (9th Cir. 1992)................................................................................11

*Knight v. Dist. of Columbia,* 877 F.2d 1025, 1029 (D.C. Cir. 1989) .........................................................34

*Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) .............................................10

*Leveto v. Lapina,* 258 F.3d 156, 161 (3rd Cir. 2001).................................................................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 168 (2d Cir. 2013) ........................18

*Lunceford v. Dist. of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C. Cir. 1984)..............................34

*McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) .............................................................................12

*McKenzie v. Smith,* 771 F.2d 1527, 1533 (D.C. Cir. 1985) .......................................................................34

*Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993).................................................................11

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) ...............................................................................11

*NRDC v. Calif. Dep't of Transportation,* 96 F.3d 420, 421 (9th Cir.1996)................................................14

*Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.,* 484 U.S. 97, 104-105(1987)................................18

*Padilla v. New York State Dept. of Labor,* 2010 WL 3835182 at p. *3  (S.D.N.Y., Sept. 13, 2010, No. 09
   Civ. 5291(CM)(RLE)) .......................................................................................................................17, 24

*Pena v. Gardner,* 976 F.2d 469, 473 (9th Cir.1992)..................................................................................14

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ..............................................12

*Peterson v. Regina,* 935 F.Supp.2d 628, 638 (S.D.N.Y. 2013) ................................................................22

*Planells v. San Francisco Unified Sch. Dist.,* 978 F.2d 715 (9th Cir. 1992) ......................................17, 24

*Polk v. Central Susquehanna Intermediate Unit 16,* 853 F.2d 171, 185 (3d Cir. 1988)..........................33

*Porter v. Jones,* 319 F.3d 483, 491 (9th Cir.2003)...................................................................................14

*Reyes v. N.Y.C. Dep't of Educ.,* 760 F.3d 211, 221 (2d Cir. 2014)..........................................................32

*Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,* 172 F.3d 238, 247 (3d Cir. 1999) ......................................32

*Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996) .................................................................12

*Sonera Holding B.V. v. Cukurova Holding A.S.,* 750 F.3d 221, 224 (2d Cir. 2014) .................................18

*Spilsbury v. Dist. of Columbia,* 307 F.Supp.2d 22, 26-27 (D.D.C. 2004)................................................34

*State of California ex rel. Dockstader v. Hamby* (2008) 162 Cal.App.4th 480, 488-491 .......................16

*Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1123 (9th Cir. 2007)...............................13

*Thompson v. United States,* 312 F.2d 516, 519 (10th Cir. 1962)..............................................................10

*Tilton v. Jefferson Cty. Bd. of Educ.,* 705 F.2d 800, 804 (6th Cir. 1983) .................................................34

*U. S. ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981) ...................................................26

*U.S. ex el. Atkins v. McInteer,* 470 F.3d 1350, 1359 (11th Cir. 2006) ....................................................30

*U.S. ex rel. Adrian v. Regents of University of California* (5th Cir. 2004) 363 F.3d 398, 402 .................15

*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) ..................30

*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,* 8 F.Supp.3d 339 (S.D.N.Y. 2014)................22, 24, 28

*U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa,* 269 F.3d 932, 936 (8th Cir.2001) ..............................15

*U.S. ex rel. Health Outcomes Technologies v. Hallmark Health System, Inc.,* 409 F.Supp.2d 43, 47-48 (D.
   Mass. 2006)...........................................................................................................................................21

*U.S. ex rel. Kester v. Novartis Pharm. Corp.,* 23 F.Supp.3d 242, 268 (S.D.N.Y. 2014) .........................27

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,* 149 F.3d 227, 234 (3d Cir. 1998)
   ...............................................................................................................................................................26

*U.S. ex rel. Russell v. Epic Healthcare Management Group,* 193 F.3d 304, 308 (5th Cir. 1999) .............26

iv

*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 110 F.3d 861, 864 (2d Cir. 1997) ............. 10

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997) ............. 26

*U.S. v. Kitsap Physicians Service,* 314 F.3d 995, 1002-1003 (9th Cir. 2002) ................................................ 30

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,* 785 F.Supp.2d 303, 310 (S.D.N.Y. 2011) ........... 28

*United States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 27 (2d Cir. 2016) ................................................ 35

*United States ex rel. Mikes v. Straus,* 274 F.3d 687, 695 (2d Cir. 2001) .................................................... 27

*United States ex rel. Taylor v. Gabelli,* 345 F.Supp.2d 313, 327 (S.D.N.Y. 2004) .................................... 27

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*, 976 F.Supp. 207, 210 (S.D.N.Y. 1997)
............................................................................................................................................................................ 21

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 787–88 (2000) ...................... 13

*Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003) ............................................. 9

*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1196–1197 ....................................... 15

*Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) ....................................................................... 14

## Statutes

20 U.S.C. §1401 ......................................................................................................................................... 31

20 U.S.C. §1412 ......................................................................................................................................... 31

28 U.S.C. §1367 ........................................................................................................................................... 3

28 U.S.C. §1391 ................................................................................................................................... 10, 23

28 U.S.C. §1331 ........................................................................................................................................... 3

28 U.S.C. §1345 ........................................................................................................................................... 3

28 U.S.C. §3730 ..................................................................................................................................... 3, 13

28 U.S.C. §1406 ............................................................................................................................... 10, 11, 24

31 U.S.C. §3729 ................................................................................................................................... passim

31 U.S.C. §3732 ................................................................................................................................. 3, 20, 21

Cal. Gov. Code § 12650 ............................................................................................................................... 9

## Rules

Federal Rules of Civil Procedure 12 ............................................................................................................ 9

## Regulations

43 C.F.R. § 413.64 ....................................................................................................................................... 4

42 C.F.R. § 413.60 ....................................................................................................................................... 4

I.   **PRELIMINARY STATEMENT**

This is a qui tam action filed by Plaintiff-Relator Patrick Donohue, Esq. ("Donohue") on behalf of the United States of America and individual States, along with the District of Columbia, against the former Chancellor of New York City Richard Carranza ("Carranza"), the current Chancellor of New York City Meisha Porter ("Porter"), the New York City Department of Education ("NYCDOE"), numerous school districts from around the country and the present and former superintendents serving in each of the defendant school districts. The defendants include the San Diego Unified School District ("SDUSD"), Dr. Lamont Jackson ("Jackson"), sued in his official capacity as SDUSD's Superintendent, and Cindy Marten ("Marten"), sued in her official capacity as SDUSD's former Superintendent (collectively "SDUSD Defendants"). SDUSD Defendants hereby moves for dismissal of and to strike the Second Amended Complaint ("SAC") on numerous grounds. The SAC alleges the defendants submitted false claims for Medicaid reimbursement knowing they violated the Individuals with Disabilities Education Act ("IDEA") in the wake of pandemic-related school building closures by depriving their students of a free, appropriate public education ("FAPE").

The Court lacks subject matter jurisdiction over SDUSD Defendants because an action under the False Claims Act ("FCA") may not be maintained against them as such an action is barred by the Eleventh Amendment of the United States Constitution.

The SAC also fails to establish personal jurisdiction over any defendant domiciled outside of New York, including SDUSD Defendants. The absence of personal jurisdiction typically will support a transfer or dismissal without prejudice to the assertion of the claims before a tribunal that has jurisdiction, which in this case would be the Southern District of California. However, this Court should dismiss with prejudice the claims against SDUSD Defendants because the Eleventh

Amendment bars FCA claims against these defendants and because none of the allegations in the SAC states a cognizable claim under the federal FCA or California FCA.

Thus, SDUSD Defendants request the Court dismiss with prejudice the claims against them for lack of subject matter and personal jurisdiction, improper venue, and failure to state a claim as well as strike all claims for treble damages against them.

## II.   STATEMENT OF FACTS

### A.  The Parties

Donohue initiated this *qui tam* action and filed the instant SAC on behalf of the United States of America and the individual States, as well as the District of Columbia, against multiple defendants including SDUSD Defendants. (Doc. No. 19 (hereafter "SAC"), "Preliminary Statement and Nature of this Action.") Donohue alleges he has direct and independent knowledge of "disabled children in NYC and other named School Districts receiv[ing] Medicaid reimbursements, payments, and otherwise for related service sessions that were not provided in a manner and environment that is consistent with the students' physical and medical needs and did not adhere to the relevant Medicaid and IDEA billing requirements."  (SAC, ¶ 19.)

SDUSD operates within the jurisdiction of San Diego, California. (SAC, p. 12, ¶ 53.) [1] Jackson is the current interim Superintendent of SDUSD and is responsible for the oversight and management of SDUSD's schools beginning on or about January 2021, and continuing. (*Id*. at p. 12, p. 12, ¶ 54.) Marten is the former Superintendent of SDUSD, and was responsible for the oversight and management of SDUSD's schools during the 2019-2020, 2020-2021, and part of the 2021-2022 school year until May 11, 2021. (*Id*. at p. 13, ¶ 55.)

---

[1] Due to typographical errors, the SAC contains paragraphs with duplicate numbers involving paragraph nos. 49-81, 194-197 and 202-221. SDUSD Defendants note the page number when referring to any duplicate paragraphs.

### B.  Plaintiff-Relator's Jurisdiction and Venue Claim

Donohue asserts that this Court has subject matter jurisdiction based on their claims "pursuant to 28 U.S.C. §3730 (a) (False Claims Act), 28 U.S.C. §1331 (Federal question), 28 U.S.C. § 1367 (Supplemental jurisdiction), 31 U.S.C. §3732 (False claims jurisdiction), and 28 U.S.C. §1345 (United States as plaintiff)."  (SAC, p. 15, ¶ 68.) Moreover, Donohue asserts that "[t]o the extent, if any, that this case involves questions relating to special education rights, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367."  (*Id*. at p. 15, ¶ 69.)

Donohue asserts that "venue is properly placed within the Southern District of New York because at least one of the Defendants resides or transacts business in the Southern District; specifically, Defendant Richard Carranza, in his official capacity as former Chancellor of the New York City Department of Education, Defendant Meisha Porter, in her official capacity as current Chancellor of the New York City Department of Education; and Defendant New York City Department of Education ('NYC DOE'), maintain business offices in New York County."  (SAC, p. 15, ¶ 70.) Donohue asserts that pursuant to 31 U.S.C. § 3732, "this Court appropriately has jurisdiction over all Defendants, as the named New York Defendants (collectively) operate and conduct business within this Court's jurisdiction." (*Id*. at pp. 15-16, ¶¶ 71-72.)

### C.  Plaintiff-Relator's Substantive Claims

Donohue alleges "Defendants conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws." (SAC, ¶ 1.) He alleges "Defendants fraudulently billed for these [remote] 'sessions' through Medicaid at their regular, full rates" and used IDEA funding for "non-related services" even though "students were unable to meaningfully participate in these

remote sessions." (*Id.* at ¶ 2.) Donohue claims Defendants "violated the federal FCA, 31 U.S.C. §§ 3729-3733, as well as the corresponding state false claim statutes" because they "obtained the benefit of virtually unfettered Medicaid reimbursements for these related service sessions." (*Id.* at ¶ 3.) He claims Defendants "received interim payments based on fixed estimates of their actual costs in accordance with 42 C.F.R. § 413.60(a), (c); § 413.64(a), (f)." (*Id.* at p. 23, ¶ 60.)

Donohue alleges Defendants "submitted cost reports of their actual expenditures in accordance with C.F.R. §413.60(b), §413.64(f) and that a final adjustment is made to settle the difference between the interim payments and a provider's actual purported costs. C.F.R. §413.64(f)(2)" (SAC, p. 23, ¶ 61.) He alleges the "claims were submitted on behalf of Special Education students by the Defendants for related services that were not offered in-person as defined by relevant case law, including related service sessions that were not offered … at all to students with disabilities, as described in their respective IEPs." (*Id.* at p. 23, ¶ 62.) He claims "Defendants do not possess adequate or detailed records to substantiate the Medicaid claims made on behalf of students with disabilities for the 2019-2020 and 2020-2021 school years." (*Id.* at p. 24, ¶ 65.) Donohue claims "Defendants … knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each [s]tudent's last-agreed-upon IEP, which required in-person services." (*Id.* at p. 24, ¶ 66.) He also alleges "some of these sessions were not offered to students with disabilities." (*Ibid.*)

Donohue believes "Defendants obtained … consent from some parents on behalf of students with disabilities in order to obtain reimbursement for said services or alternatively, submitted said claims without consent." (SAC, p. 24, ¶ 67.) He alleges "Defendants did not change the rate at which related services were billed when offered by alternative means (i.e. telehealth,

4

phone, etc.), and were billed at the same rate as in-person services at the full rate, while conferring no meaningful benefit to students with disabilities, as required by law." (*Id.* at pp. 24-25, ¶ 68.)

Donohue further alleges that "Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE." (SAC, p. 25, ¶ 72.) He claims that "Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently." (*Id.* at p. 25, ¶ 73.)

Donohue claims Defendants engaged in a "multi-faceted campaign of fraud against the government" and "collected hundreds of millions of dollars, if not billions of dollars, . . . causing direct injury to students with disabilities that had an IEP in place for the 2019-2020 and 2020-2021 school years, in addition to the general taxpayers." (SAC, p. 26, ¶ 74.) Donohue alleges that "Defendants … submitted additional applications for IDEA funding to the federal government with false assurances that Defendants were offering FAPE to students with disabilities for school years 2019-2020, 2020-2021, and 2021-2022." (*Id.* at p. 26, ¶ 75 and Exhibit No. 1.)

### D.  Plaintiff-Relator's Claims against Defendants SDUSD, Jackson and Marten

Donohue also alleges that Defendants SDUSD, Jackson, and Marten perpetuated a fraud upon the State and federal governments when they:

a.      Knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval;

b.      Knowingly made, used, or caused to be made or used, a false record or statement

material to a false or fraudulent claim;

c.      Knowingly made, used, or caused to be made or used, a false record or statement

material to an obligation to pay or transmit money or property to the Government, or

knowingly concealed or knowingly and improperly avoided or decreased an obligation to

pay or transmit money or property to the Government; and

d.      Conspired to commit the above acts, all in violation of 31 U.S.C. § 3729(a)(1)(A),

(B), (C) & (G). (SAC, pp. 56-57, ¶ 221.)

Donohue further asserts SDUSD Defendants violated "Ch. 6, Article 9, §12650-12656, et

seq. as described herein." (SAC, p. 57, ¶ 202.) He points to the IEP of J.M. as an example of

Defendant's alleged conduct.  (*Id*. at p. 61, ¶ 220.) He alleges that J.M. is a 17-year-old student:

> "[W]ho is autistic, has ADHD, and is classified with an Other Health Impairment.
> **Exhibit 20**. He attended Morse High School, a school in the SDUSD, during the 2020-
> 2021 school year. *Id*. His IEP indicated he was to receive special instruction, nursing
> services, psychological services, and transitional training as part of his related services.
> *Id*. These services were to be provided at the public school campus, either in the regular
> classroom or in a separate classroom, depending on the service. *Id*. However, he was
> not given any of his special accommodations as outlined in his IEP during the COVID-
> 19 school closures." (*Ibid*.; bold and italics in original.)

Donohue further alleges that J.M.'s Parents:

> "[M]et with Defendants via Zoom on November 3, 2020. However, despite voicing
> concerns about the services that J.M. was receiving, Defendants drafted another IEP
> and noted that: 'Service hours are written for return to brick and mortar sites. The case
> manager explains the difference in services via distance learning and directs parent to
> PWN previously sent home by the district re Distance Learning due to Covid-19 school
> closure. **Exhibit 20**, p. 26." (SAC, p. 61, ¶ 221; bold in original.)

He claims "this not only establishes the unilateral transfer of the [J.M.'s] educational

placement from the 'brick and mortar' placement to remote learning, but also clearly evidences

that Defendants drafted an IEP that they <u>had no intention of implementing following the meeting</u>

in order to continue utilizing IDEA funds and making submissions for reimbursement to Medicaid on the [J.M.'s] behalf for the services (as written) in the IEP." (SAC, ¶ 222; emph. in original.) He alleges that, although J.M.'s parent is not privy to the billing practices and requirements for Medicaid billing, Donohue's expertise and experience lead to the allegations herein. (*Id*. at ¶ 223.)

He also alleges that not only was the method of delivery for J.M.'s services inappropriate and rendered useless services to the student, but alleges that SDUSD Defendants for school years 2019-2020 and 2020-2021, billed Medicaid for said services, even though they were not offered to students with disabilities as designed and described in their IEPs. (SAC, ¶ 224.) He alleges that in order to properly bill Medicaid for related services offered remotely, the Local Educational Agency ("LEA") should have reconvened an IEP meeting with J.M.'s parent(s) to recommend remote related services. (*Id*. at ¶ 225.) Donohue claims he has first-hand knowledge that the LEA "(SDUSD)" did not reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures. (*Ibid*.)

Donohue further alleges that "[a]s set forth in Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988, billing for related services must mirror (at maximum) the services recommended in each student's IEP but that the SDUSD Defendants have billed for services that were recommended to be in person as opposed to remote." (SAC, ¶ 226.) Thus, he claims that any billing for "remote sessions" is not only inappropriate, but runs afoul of the Medicaid billing restrictions and is unlawful. (*Ibid*.)

He alleges SDUSD Defendants "failed to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations on the LEA campus and subsequently failing to provide the recommended related services as written, from March 2020 and continuing." (SAC, ¶ 228.)

### E.  Plaintiff-Relator's "False Certification Fraud" Claim

Donohue alleges Defendants "knowingly made, used, or caused to be made and used, and presented, or caused to be presented, false and fraudulent claims for payment or approval in connect with the submission of claim for school-based services for students with disabilities." (SAC, ¶ 281.) According to Donohue, Defendants submitted "false claims" when their representatives made fraudulent representations that the IEPs they created were knowingly not in compliance with [the] IDEA and they could not implement these IEPs, thereby denying the students a FAPE. (*Id.* at ¶¶ 270, 286, 291.) He alleges that Defendants also made fraudulent misrepresentations "when their service providers knowingly misrepresented that they were providing related services" in accordance with the IDEA and Medicaid regulations. (*Ibid.*)

Donohue asserts that these claims were "legally false" and Defendants knew they were in violation of federal regulations at the time they were submitted.  (SAC, ¶ 271.) Donohue alleges "the federal and state government disbursed the money for said fraudulent claims because the Defendants certified that they had complied with the relevant federal regulations."  (*Ibid.*)

Donohue asserts "Defendants individually conspired to commit a violation" of 31 U.S.C. § 3729(a)(1)(A), (B), and (G) and "Defendants have each committed at least one overt act in furtherance of their conspiracy."  (SAC, ¶¶ 296-97.)

### F.  Plaintiff-Relator's "Implied Certification Fraud" Claim

Donohue asserts that even where Defendants' representatives did not sign a form certifying compliance, they violated the FCA as the very act of submitting the claim implies they affirmed that it was in compliance with the regulations. (SAC, ¶ 273.) He alleges "Defendants who did not keep close track of log-ins and attendance data would be liable since school officials implicitly certified that they would keep their data current when they made the claim for public funds."  (*Id.*

at ¶ 274.) He claims Defendants are liable for "Worthless Services Fraud" as "the limited services they may have provided was so subpar as to be completely worthless." (*Id.* at ¶ 276.)

### G. Relief Sought by Plaintiff-Relator Against SDUSD Defendants

The SAC asserts the following causes of action against SDUSD Defendants:

a.      Count One:   Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) ("Presenting False Claims for Payment");

b.      Count Two:  Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) ("Use of False Statements");

c.      Count Three:  Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G) ("Use of False Statements");

d.      Count Four:   Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C) ("Conspiracy to Commit a Violation of the False Claims Act"); and,

e.      Count Seventeen:  Violation of California State Law(s), Cal. Gov. Code § 12650-12656 et seq.

SDUSD Defendants hereby move for dismissal under Federal Rules of Civil Procedure ("FRCP") 12(b) (1), (2), (3) and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted and strike all claims for treble damages against them under FRCP 12(f).

## III.   <u>LEGAL STANDARD OF REVIEW</u>

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." (*Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).) "Federal courts are courts of limited jurisdiction[.] It is to be presumed that a cause lies outside this limited jurisdiction, and the

burden of establishing the contrary rests upon the party asserting jurisdiction." (*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted).)

A motion to dismiss based on Rule 12(b)(2) is appropriate when the Court lacks personal jurisdiction over the defendant. Although defendant is the moving party on the motion to dismiss, plaintiff is the party who invoked the court's jurisdiction. Therefore, plaintiff bears the burden of proof on the necessary jurisdictional facts; e.g., the existence of "minimum contacts" between defendant and the forum state. (*In re Western States Wholesale Natural Gas Antitrust Litig.,* 715 F.3d 716, 741 (9th Cir. 2013); *Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.* 722 F.3d 81, 84-85 (2d Cir. 2013); *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir. 1999).)

A motion to dismiss based on Rule 12(b)(3) may be asserted when the defense of improper venue exists. The defense of improper venue is personal to the party to whom it applies. (*Thompson v. United States*, 312 F.2d 516, 519 (10th Cir. 1962).) "[T]he general federal venue provisions [are] set out in 28 U.S.C. § 1391." (*U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 110 F.3d 861, 864 (2d Cir. 1997). That statute provides, in relevant part, that venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." (28 U.S.C. § 1391(b).)

The Court still has power to transfer the case under 28 USC § 1406(a), however, provided the action is otherwise transferable. (*De La Fuente v. I.C.C.,* 451 F.Supp. 867, 872, fn. 4 (N.D. Ill. 1978).) If the court determines venue is improper, it may either dismiss the action or, if in the

interest of justice, transfer the case to any district in which it could have been originally brought. (28 U.S.C. § 1406(a); *King v. Russell,* 963 F.2d 1301, 1304 (9th Cir. 1992) [dismissal proper]; *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993).) "On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." (*Detroit Coffee Co., LLC v. Soup for You, LLC,* 2018 WL 941747, at *1 (S.D.N.Y., Feb.16, 2018, No. 16-CV-09875 (JPO)) (internal quotations omitted).) "Where no evidentiary hearing has been held, 'the plaintiff need only make a prima facie showing of [venue].'" (*Del Toro v. Novus Equities, LLC,* 2021 WL 5567618, at *2 (S.D.N.Y., Nov. 29, 2021, No. 20-CV-01002 (NSR)) (citing *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005).)

A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of a complaint, i.e., whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. (*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted).) For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Ashcroft*") (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (*"Twombly"*).) In reviewing the motion, the Court "must accept as true all of the allegations contained in a complaint," but it need not accept legal conclusions. (*Ibid.*) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Ibid.* citing *Twombly, supra,* 550 U.S. at p. 555). On a motion to dismiss per Rule 12(b)(6), the Court need not accept as true allegations that contradict matters properly subject to judicial notice. (*EDC Technologies, Inc v. Jim Seidel,* 225 F.Supp.3d 1058 (N.D. Cal. 2016).)

Where the lawsuit is brought against defendants who have statutory or common law immunities (e.g., governmental officers and entities), motions to dismiss are often based on the

allegations contained in the complaint. (*Leveto v. Lapina,* 258 F.3d 156, 161 (3rd Cir. 2001); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).)

IV.   **ARGUMENT**

   **A. This Court Lacks Subject Matter Jurisdiction Over SDUSD Defendants Including As A Result Of Its Eleventh Amendment Immunity And Under State Law**

An FCA action may not be maintained against SDUSD Defendants as such an action is barred by the Eleventh Amendment of the U.S. Constitution and it was not a "person" subject to liability under section 3279 of the FCA. "The Judicial power … shall not … extend to any suit in law or equity … against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (U.S. CONST. amend. XI; see, also, *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1327 (9th Cir. 1991).) This has been interpreted as a grant of sovereign immunity to the states against suit in federal court: "[E]ach State is a sovereign entity in our federal system; and … [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." (*Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996) (second brackets in original; internal quotes omitted).) This immunity applies in suits premised on federal-question jurisdiction as well as on diversity jurisdiction. (*Id*. at 53.)

In the absence of consent, a suit in which a state or one of its agencies or departments is named as the defendant, is barred by the Eleventh Amendment. (*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Central Virginia Comm. College v. Katz*, 546 U.S. 356, 360 (2006) [only "arms of the State"].) In California, school districts such as SDUSD, are "state agencies" entitled to Eleventh Amendment immunity in federal courts. (*Belanger v. Madera Unified School Dist.,* 963 F.2d 248, 254 (9th Cir. 1992); see, also, *Freeman v. Oakland Unified*

*School Dist.,* 179 F.3d 846, 847 (9th Cir. 1999); *Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1123 (9th Cir. 2007), cert. denied, 128 S. Ct. 1728, 170 L. Ed. 2d 515 (U.S. 2008).) Consequently, because of their Eleventh Amendment immunity, school districts in California, are not subject to *qui tam* liability under the FCA.

Under the FCA, "[a]ny person" who, among other things, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval" is liable to the Government for a civil penalty, treble damages, and costs. (31 U.S.C. § 3729(a)(1).)[2] The FCA authorizes a private person, known as a relator, to bring a *qui tam* civil action "for a violation of section 3729 for the person and for the United States Government .... in the name of the Government." (31 U.S.C. § 3730(b)(1).)

In *Stoner v. Santa Clara County Office of Educ.,* the court concluded that the FCA did not provide a cause of action against the county office of education and school district in that case because each entity was a state agency and, thus, not a "person" subject to liability under the FCA. (*Stoner v. Santa Clara County Office of Educ., supra,* 502 F.3d at pp. 1121-1122.) The *Stoner* court based its decision on *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 787–88 (2000), which held that the FCA does not subject a state or state agency to liability in a *qui tam* action brought by a private relator:

> In effect, the Court presumed that in enacting the FCA, Congress intended not to infringe on a state's sovereign immunity and therefore did not make states subject to suit under the FCA. [¶] To effectuate Congress's presumed intent, we must interpret the term "person" under § 3729 in a way that avoids suits against "state instrumentalities" that are effectively arms of the state immune from suit under the

---

[2] SDUSD also moves under FRCP 12(f) to strike all claims for treble damages in the SAC's First through Fourth Claims as California Government Code section 818 does not permit the recovery of punitive damages against a public entity such as SDUSD. Consequently, Donohue is unable to recover treble damages under the FCA against SDUSD. (See, e.g., *H.M. v. County of Kern,* 2022 WL 286614 p. *5 (E.D. Cal., Jan. 31, 2022, No.: 1:20-cv-1339 JLT BAK (BAM); *M.J. ex rel. G.J. v. Clovis Unified School Dist.,* 2007 WL 1033444 p. *13 (E.D. Cal., Apr. 3, 2007, No. 1:05-CV-00927 OWW LJO) (citing *Kizer v. County of San Mateo* (1991) 53 Cal. 3d 139, 145 and *Wells v. One2One Learning Foundation* (2006) 39 Cal. 4th 1164, 1196 [finding a treble damages provision found under California's False Claims Act did not abridge public entity's immunity from punitive damages set forth in Section 818].)

Eleventh Amendment. See also *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (instructing lower courts to refer to the Eleventh Amendment arm-of-the-state analysis in determining whether an entity is an agency of the state and thus not a "person" for purposes of 42 U.S.C. § 1983 (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))). Our conclusion that we must rely on our Eleventh Amendment jurisprudence to determine whether an entity is a "person" within the meaning of § 3729 is further underlined by our post-*Stevens* holding that "states and state agencies enjoy sovereign immunity from liability under the FCA." *Bly–Magee v. California*, 236 F.3d 1014, 1017 (9th Cir.2001); see also *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1145 (9th Cir.2004). Both *Bly–Magee* and *Ali* implicitly recognize that Eleventh Amendment principles guided the Supreme Court's decision in *Stevens*. [¶] We thus look to our Eleventh Amendment case law in determining whether the SCCOE and the ESUHSD are state agencies not subject to FCA liability under *Stevens*. We have held that a California school district and county office of education are arms of the state for purposes of Eleventh Amendment sovereign immunity. *Belanger,* 963 F.2d at 254; *Eaglesmith,* 73 F.3d at 860. Accordingly, we must conclude that neither the SCCOE nor the ESUHSD is a "person" subject to liability under § 3279 of the FCA. *Stevens,* 529 U.S. at 781–87, 120 S.Ct. 1858. By the same reasoning, Stoner's qui tam action against the SCCOE and the ESUHSD is barred by the Eleventh Amendment. *Ali,* 355 F.3d at 1145; *Bly–Magee,* 236 F.3d at 1017. (*Stoner v. Santa Clara County Office of Educ., supra,* 502 F.3d at pp. 1121-1122.)

Accordingly, SDUSD is not a "person" subject to liability under Section 3279 of the FCA and Donohue's *qui tam* action against SDUSD is barred for that reason in addition to being barred by the Eleventh Amendment.

Moreover, state immunity extends to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." (*NRDC v. Calif. Dep't of Transportation,* 96 F.3d 420, 421 (9th Cir.1996); *Porter v. Jones,* 319 F.3d 483, 491 (9th Cir.2003). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and consequently "it is no different from a suit against the State itself." (*Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).)

State official "sued in his official capacity has the same immunity as the State, and is entitled to Eleventh Amendment immunity." (*Pena v. Gardner,* 976 F.2d 469, 473 (9th Cir.1992) (citing *Hafer v. Melo,* 502 U.S. 21, 25–26 (1991); *Everett H. ex rel. Havey v. Dry Creek Joint*

*Elem. School Dist.,* 5 F.Supp.3d 1184, 1198 (E.D. Cal. 2014) [Absent consent to suit, "the Eleventh Amendment 'bars suits in federal court, for both retrospective and prospective relief brought against state officials acting in their official capacities alleging a violation of state law.'"]; *Carmen v. San Francisco Unified School Dist.,* 982 F.Supp. 1396 (N.D. Cal. 1997), aff'd, 237 F.3d 1026 (9th Cir. 2001); *Eisenberg v. D.A. of County of Kings,* 847 F.Supp. 1029 (E.D. N.Y. 1994).)

Here, Jackson and Marten have been sued only in their official capacities. (SAC, ¶¶ 219 (p. 60), 221 (p. 56), 224, 226, 228-230.) Consequently, there is no FCA cause of action against Jackson and Marten in their official capacities. (*U.S. ex rel. Adrian v. Regents of University of California* (5th Cir. 2004) 363 F.3d 398, 402; *Alexander v. Gilmore,* 202 F.Supp.2d 478, 481-482 (E.D. Va. 2002) citing *U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa,* 269 F.3d 932, 936 (8th Cir.2001) [States, state agencies, and individuals acting in their official capacity are not persons for purposes of the FCA.]; *Bly–Magee v. California, supra,* 236 F.3d at p. 1081.)

Moreover, Donohue's Seventeenth Claim against the SDUSD Defendants under the California False Claims Act ("CFCA") fails for similar reasons. Public school districts such as SDUSD are not "persons" subject to suit under the CFCA. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1196–1197 (*Wells.*)[3] Additionally, public officials such as

---

[3] "The CFCA, which is patterned after a similar federal law, was adopted in 1987. … It provides that '[a]ny person' who, among other things, '[k]nowingly presents or causes to be presented to ... the state or ... any political subdivision thereof, a false claim for payment or approval,' or '[k]nowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision,' or '[c]onspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or any political subdivision,' or '[i]s a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery [thereof],' 'shall be liable to the state or to the political subdivision for three times the amount of damages' the state or political subdivision thereby sustained, as well as for the state's or political subdivision's costs of suit, and may also [be] liable for a civil penalty of up to $10,000 for each false claim." (*Wells, supra,* 39 Cal.4th at p. 1187 (citing Cal. Gov. Code, § 12651, subd. (a)(1)-(3), (8)).)

Jackson and Marten are not proper defendants under CFCA for acts taken in their official capacity. (*State of California ex rel. Dockstader v. Hamby* (2008) 162 Cal.App.4th 480, 488-491.) [4]

When a case is dismissed for lack of subject matter jurisdiction, the court has no discretion to retain supplemental jurisdiction over plaintiff's state law claims. (*Scott v. Pasadena Unified School Dist.,* 306 F.3d 646, 664 [because federal claims were dismissed for lack of constitutional standing, court could not retain supplemental jurisdiction over similar state law claims]; *Arena v. Graybar Elec. Co., Inc.,* 669 F.3d 214, 225 (5th Cir. 2012); *Estate of Harshman v. Jackson Hole Mountain Resort Corp.,* 379 F.3d 1161, 1167 (10th Cir. 2004).) Thus, as the Court lacks subject matter jurisdiction over SDUSD Defendants in connection with the First through Fourth Claims

---

[4] Moreover, Donohue's CFCS claim fails for additional reasons. First, the SAC does not involve the misappropriation of state funds and, as such, does not constitute a claim under the CFCA. (*State of California v. Altus* (2005) 36 Cal.4th 1284, 1296-1297; see, also, SAC, ¶ 197 ["California Defendants fraudulently obtained federal funds by and through both the IDEA and Medicaid for unlawful related services purportedly 'rendered' to Los Angeles and San Diego students with disabilities."].) Second, there is no allegation in the SAC that Donohue followed the proper procedures before instituting a *qui tam* action under the CFCA. A *qui tam* plaintiff must file the CFCA complaint in camera, which remains under seal for up to 60 days. During this time, the plaintiff may not serve the complaint on the defendant. (Cal. Gov. Code, § 12652, subd. (c)(2); see, also, *S.F. Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal.App.4th 1212, 1216.) The *qui tam* plaintiff also must immediately notify the Attorney General of the suit and disclose all material evidence and information in the plaintiff's possession. Within the 60–day period the complaint is under seal, the Attorney General may elect to intervene and proceed with the action. If the Attorney General declines to proceed, the *qui tam* plaintiff may conduct the action. (*Id.* at subd. (c)(4)-(8); see, also, *State of California ex rel. Dockstader v. Hamby, supra,* 162 Cal.App.4th at p. 485.) The SAC's proof of service does not reflect any service on the California Attorney General. (SAC, pp. 86-87.) Donohue's failure to comply with the CFCA's requirements forfeited his ability to maintain a *qui tarn* suit. (*U.S. ex rel. Surdovel v. Digirad Imaging Solutions,* 2013 WL 6178987 at *4 (E.D. Pa., Nov. 25, 2013, Civ. A. No. 070458).) Courts routinely dismiss suits alleging a false claim where, as here, the claimant fails to follow the procedural requirements for bringing a claim as a qui tam plaintiff. (*U.S. ex rel. Summers v. LHC Grp., Inc.,* 623 F.3d 287, 296 (6th Cir. 2010) [holding that "violations of the procedural requirements imposed on qui tam plaintiffs under the False Claims Act preclude such plaintiffs from asserting qui tam status"]; *U.S. ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 1000 (2d Cir. 1995) [concluding trial court abused its discretion when it failed to dismiss qui tam plaintiffs claims with prejudice for failure to follow qui tarn procedures]; *Carter v. Subway Store,* 2012 WL 666838, at *4 (E.D. Mich., Feb. 29, 2012, Civ. A. No. 11-15158 ) ["There can be no dispute that Plaintiff failed to comply with the requirement that he first provide the government with a copy of the Complaint and evidence, and then file the Complaint under seal with the Court. Plaintiff has attempted to cure these failures after the fact by providing the government with his materials and filing a motion to seal the Complaint, but this will not satisfy the requirements of the False Claims Act. Accordingly, Plaintiff cannot recover under the statute."].) As the CFCA was modeled after the federal FCA, California courts look to federal courts interpreting the FCA for guidance in interpreting the CFCA. (*Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 146.) This is particularly true where the language of the two acts is similar. (*Fassberg Construction Co. v. Housing Auth. of City of L.A.* (2007) 152 Cal.App.4th 720, 735.) Because the portion of section 12652 at issue here mirrors the requirements under 31 U.S.C. section 3730 (b)(2), it is appropriate to consider federal jurisprudence. (*Ibid.*)

concerning FCA violations, all state claims, including the Seventeenth Claim, must be dismissed as the Court cannot retain supplemental jurisdiction over such claims under these circumstances.

Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court. (*Black v. Payne*, 591 F.2d 83, 86 (9th Cir. 1979), cert. denied, 444 U.S. 867 (1979).) Here, however, as the bar of sovereign immunity is absolute; i.e., no other court has the power to hear the case, nor can the Donohue redraft his claims to avoid the bar against FCA claims against SDUSD Defendants, the Court may dismiss the action with prejudice. (*Frigard v. United States,* 862 F.2d 201, 204 (9th Cir. 1988); *Planells v. San Francisco Unified Sch. Dist*., 978 F.2d 715 (9th Cir. 1992) (unpublished table decision); *Padilla v. New York State Dept. of Labor,* 2010 WL 3835182 at p. *3  (S.D.N.Y., Sept. 13, 2010, No. 09 Civ. 5291(CM)(RLE)) ["Title I claim is dismissed with prejudice for lack of subject-matter jurisdiction because it is barred by the Eleventh Amendment."].)[5]

---

[5] The SAC does not assert a claim under the IDEA. To the extent Donohue claims the Eleventh Amendment immunity is waived by the IDEA, he has failed to exhaust the administrative remedies set forth in 20 U.S.C.A § 1415(l). As this provision makes clear, not only is exhaustion required for IDEA claims, but it is "also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." (*Batchelor v. Rose Tree Media Sch. Dist.,* 759 F.3d 266, 271, 272 (3d Cir. 2014); see, also*, Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 [137 S.Ct. 743, 754] (2017).) Thus, deciding whether exhaustion is necessary "turns on whether the parties could have asserted the claims under the IDEA. Intertwined with this inquiry is whether the claims could have been remedied by the IDEA's administrative process." (*Id*. at 273.) As a result, each of the claims asserted by plaintiffs "require exhaustion ... if they seek relief that is available under the IDEA," no matter whether they arise under the IDEA or some other statute. (*Ibid*. ["This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA." (citing *Jeremy H. by Hunter v. Mt. Lebanon Sch. Dist.,* 95 F.3d 272, 281 (3d Cir.1996)).) As all of these claims are rooted in the educational services SDUSD provided to J.M., Donohue was required to exhaust them via the IDEA administrative process. As Donohue failed to do so, these claims must be dismissed. (*Smith v. Meeks,* 225 F.Supp.3d 696 706-707 (N.D. Ill. 2016) (citing *Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 993 (7th Cir. 1996); *Bot Brown v. Dist. 299—Chicago Pub. Sch.*, 762 F.Supp.2d 1076, 1084–86 (N.D. Ill. 2010); *Loch v. Bd. of Educ. of Edwardsville Cmty. Sch. Dist. No. 7*, 573 F.Supp.2d 1072, 1080–82 (S.D. Ill. 2008); *Renguette v. Bd. of Sch. Trustees ex rel. Brownsburg Cmty. Sch. Corp.*, 540 F.Supp.2d 1036, 1043–45 (S.D. Ind. 2008); *Batchelor v. Rose Tree Media Sch. Dist., supra,* 759 F.3d at pp. 273–74; *J.Q. v. Washington Twp. Sch. Dist.*, 92 F.Supp.3d 241, 246–48, 250–51 (D. N.J. 2015); see, also, *Jennifer Bills V. Virginia Department of Education*, (W.D. Va., June 2, 2022, No. 6:21-cv-51) 2022 WL 1811383, pp. *4-*6.)

**B.  This Court Has No Personal Jurisdiction Over SDUSD Defendants**

Ordinarily, federal courts do not have nationwide personal jurisdiction. With certain exceptions, they have no broader power over persons outside the state in which they sit than do the local state courts. (*Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.,* 484 U.S. 97, 104-105(1987); see, also, Fed. R. Civ. P. 4(k)(1)(A).) In federal question cases, courts first determine whether the defendant is subject to jurisdiction under the law of the forum state; here, New York. (*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).) This requires analysis of New York C.P.L.R. §§ 301 and 302. In analyzing whether a defendant is subject to New York jurisdiction, the *J.T. v. de Blasio*, 500 F.Supp.3d 137 (S.D.N.Y. 2020) court explained:

> New York's general jurisdictional statute simply states that, "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. 301. Courts previously held that C.P.L.R. § 301 "confers jurisdiction where a company has engaged in such a continuous and systematic course of 'doing business' in New York that a finding of its 'presence' in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations and citations omitted). [¶] However, as the United States Supreme Court has recently made clear, an assertion of general jurisdiction requires that a defendant "corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotations and citations omitted). "*Daimler* established that, except in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016)). The old "doing business" test for general jurisdiction was effectively abolished by *Daimler*, making it much harder to sue an out-of-state entity in New York for conduct that has no connection to New York. (*Id*. at 161-162.)

The SAC is devoid of any factual allegations sufficient to establish personal jurisdiction over SDUSD Defendants. The section of the SAC captioned "JURISDICTION AND VENUE" consists of five paragraphs that purport to invoke subject matter jurisdiction over Donohue's claims, but the SAC makes no mention of personal jurisdiction. (SAC, ¶¶ 68-72.) The SAC's

"PARTIES" section states that SDUSD "operates within the jurisdiction of San Diego California." (*Id*. at ¶ 53.) It also states that Jackson serves as SDUSD's interim Superintendent "and is responsible for the oversight and management of the schools within its District beginning on or about January 2021, and continuing." (*Id*. at ¶ 54.) It further states that Marten is SDUSD's former Superintendent of "and was responsible for the oversight and management of the schools within its District during the 2019-2020, 2020-2021, and part of the 2021-2022 school year until her appointment as the United States Deputy Secretary of Education on May 11, 2021." (*Id*. at ¶ 55.)

The alleged facts fall far short of the "constant and pervasive" contacts justifying the exercise of general jurisdiction. (*Daimler, supra*, 571 U.S. at p. 122.) The contacts are insufficient to establish due process support for specific jurisdiction as well.  Donohue's own allegations highlight the fact that moving Defendants operate solely within San Diego, California. This is again demonstrated by the courts recent ruling in *J.T. v. de Blasio*:

> The out-of-state defendants in this case are not subject to general jurisdiction in New York. The Departments of Education, as arms of the several states, are sovereign entities. ***The out-of-state school districts are generally understood to be quasi-municipal corporate entities created under the laws of the states in which they are located***. They are not incorporated, chartered or located in New York. And the contacts Plaintiffs allege that defendants have with New York – the receipt of federal funding by those districts and the (alleged) fact that their pension funds are invested with New York-based entities – are, after *Daimler*, insufficient to render the School Districts "at home" in New York. (*J.T. v. de Blasio, supra,* 500 F.Supp.3d at p. 162 (citations omitted); emphasis added.)

Neither are SDUSD Defendants subject to specific jurisdiction under New York's long arm statute, which governs when New York courts will exercise jurisdiction over non-domiciliaries.

N.Y. C.P.L.R. 302 provides:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ... transacts any business within the state or contracts anywhere to supply goods or services in the state."

Donohue has failed to allege that SDUSD Defendants "transact business" in New York. Even the receipt of federal funding for IDEA, for example, does not render them amenable to suit in this district for their local IDEA violations. Again, *J.T. v. de Blasio* is instructive:

> Plaintiffs claim that federal funding, including Medicare and Medicaid, is administered through the Center of Medicare and Medicaid Services ("CMS") – which, they assert, is "located here in New York." (P.I. Mem. at 9, Dkt. No. 122.) But CMS (an agency of the federal government) is headquartered in Baltimore, Maryland …. [¶] Moreover, the OSEP's [USDOE's Office of Special Education Programs] guidance clearly explains that, under the IDEA's grant provision, federal Medicaid funds for the education of disabled students are provided to states, which then pass the money on to LEAs. See Special Education--Grants to States, U.S. Dep't of Educ. (May 5, 2016), https://www2.ed.gov/programs/osepgts/index.html. Therefore, out-of-state school districts receive their federal IDEA funding from the states in which they are located. Plaintiffs do not and cannot credibly allege that any out of state school district receives Medicaid funding under the IDEA from the State of New York. [¶] Finally, plaintiffs specifically allege that IDEA funds are administered through local agencies. (Dkt. No. 122 at 9.) It should go without saying that a school district located in Omaha, Nebraska or in Cobb County, Georgia is not "locally administered" in the State of New York. (*J.T. v. de Blasio, supra,* 500 F.Supp.3d at p. 162.)

Accordingly, the Court lacks personal jurisdiction over this matter and SDUSD Defendants' Motion to Dismiss should be granted on this basis alone.[6]

## C. Venue In New York Is Improper Under The False Claims Act.

Donohue asserts that venue is proper in this Court based upon 31 U.S.C. § 3732(a). (SAC, ¶¶ 70-72.) Under that statute, where there are multiple defendants, an FCA case may be brought in any judicial district where "any one defendant can be found." (31 U.S.C. § 3732(a).) However,

---

[6] The intent of 20 U.S.C. § 1400 et seq. was not to deny a state its sovereignty whenever a claim loosely based on the IDEA is involved. Indeed, 20 U.S.C. § 1403 has been held to be in violation of Section 5 of the Fourteenth Amendment, except when states volunteer to waive Eleventh Amendment immunity with respect to IDEA claims by accepting federal funding under the confines of the Act. (*Bradley ex rel. Bradley v. Arkansas Department of Education*, 189 F.3d 745, 755-756 (8th Cir. 1999).) Clearly, a state does not waive its sovereign immunity for all causes of action just because it has accepted IDEA funding. (*U.S. v. Montrose Chemical Corp. of California*, 788 F.Supp. 1485, 1494 (C.D. Cal. 1992); *Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161, 171(3rd Cir. 2002); *M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark,* 344 F.3d 335 345-346 (3rd Cir. 2003).) There is no case law to support a claim that the IDEA waiver would allow a federal FCA cause of action to go forward against the state. The FCA is not a federal law protecting the rights of children with disabilities. It is a federal law protecting the federal government from false claims. SDUSD properly retains its sovereign immunity in such an action even though the alleged false claim may involve IDEA grants.

31 U.S.C. § 3732(a) does not permit the joinder in one case of multiple defendants involved in multiple, distinct and independent actions in a district where only one or two defendants are found. Rather, 31 U.S.C. § 3732(a) governs only venue – not jurisdiction. (*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 865 (2d Cir. 1997); *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*, 976 F.Supp. 207, 210 (S.D.N.Y. 1997); see, also, *U.S. ex rel. Health Outcomes Technologies v. Hallmark Health System, Inc.,* 409 F.Supp.2d 43, 47-48 (D. Mass. 2006) ["[I]f venue is proper as to one defendant in a jurisdiction, it is proper for all other defendants in the same proceeding who are involved in the same false claims. ***This does not mean, however, that defendants who are accused of similar, but unrelated, conduct may be sued in the same district***."]; emphasis added.)

Despite the strategy by Donohue to base venue on Section 3732(a), he nevertheless failed to allege a conspiracy, concert of action, communication, contract, joint or several liability between (or any kind of relationship among) the multiple defendants. Section 3732(a) does not operate independently of Federal Rule of Civil Procedure 20(a) which states:

> All persons...may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Both of these elements are required for proper joinder. (*Deskovic v. City of Peekskill*, 673 F.Supp.2d 154, 159 (S.D.N.Y. 2009).) Although Porter and the NYCDOE are defendants and can be found in in the Southern District of New York, Section 3732(a) is constrained by Rule 20 of the Federal Rules of Civil Procedure, which governs permissive joinder. Since SDUSD Defendants were not properly joined in this action with Porter and the NYCDOE, venue for claims against SDUSD Defendants cannot be predicated upon the presence of Porter and the NYCDOE in this District. Rule 21 of the Federal Rules of Civil Procedure provides: "On motion or on its own, the

court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "If a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." (*Kalie v. Bank of Am. Corp.,* 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (citation omitted).)

Here, the SAC is wholly devoid of any factual allegations, which if proven true, would suggest that Defendants can be held jointly or severally liable for any allegedly false claim made by any other Defendant. Further, Donohue's claims based on violations of the FCA and California State law do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." Donohue simply alleges that each SDUSD Defendant submitted its own Medicaid bills for remote services provided to its own students. Joinder is improper where, as here, "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." (*Peterson v. Regina*, 935 F.Supp.2d 628, 638 (S.D.N.Y. 2013).) Here, Donohue has failed to allege that SDUSD Defendants can be held jointly or severally liable for any purportedly false claim made by Porter and the NYCDOE and, thus, SDUSD Defendants were improperly joined as defendants with Porter and the NYCDOE. Therefore, as Donohue is not entitled to joinder, his claims against SDUSD Defendants must be severed.

As this Court noted in ruling on another school district defendant's motion to dismiss in this matter, this case is analogous to *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,* 8 F.Supp.3d 339 (S.D.N.Y. 2014), aff'd, No. 14-109S-CV (2d. Cir. May 5, 2015). In *Taconic Hills*, the relaters sued the NYCDOE and various upstate New York school districts under the FCA for submitting fraudulent claims to Medicaid for case management services provided to disabled children when defendants already had received funding for those services under IDEA. (*Id.* at 341.) The Court severed the claims against the upstate New York defendants, stating "there are no allegations

suggesting that Defendants can be held jointly or severally liable for any allegedly false claim made by any other Defendant." (*Id.* at 344.) Once it severed such claims, the Court found venue did not lie in this Court against the upstate New York defendants under the general venue statute, i.e., 28 U.S.C. § 1391. In the present case, as in *Taconic Hills*, the claims against SDUSD Defendants must be severed. Once those claims are severed, Donohue cannot establish that venue is proper for SDUSD Defendants under the general federal venue statute.

Donohue cannot establish that the Southern District of New York is the proper venue for SDUSD Defendants. According to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." A "substantial part" means that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." (*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original).) Here, any allegedly fraudulent acts committed by SDUSD Defendants occurred in San Diego County, California. Since all events giving rise to Donohue's claims against SDUSD Defendants occurred outside of the Southern District of New York, venue is inappropriate in this District. (*J.T. v. de Blasio*, 500 F.Supp.3d at 173 ["There is no way that any, let alone a substantial part, of the events leading to the out-of-state plaintiffs' claims of failure to provide a FAPE, or to maintain pendency took place in the Southern District of New York."].)

As neither the SAC nor any competent extraneous evidence establishes personal jurisdiction or venue in New York, the SAC should be dismissed against SDUSD Defendants.

**D. The SAC Fails To State A Claim On Which Relief Can Be Granted And Transfer To Another Venue Should Be Declined**

Once this Court severs the claims against each SDUSD Defendant and holds that venue in the Southern District of New York is improper, it must determine whether transferring the claims to the Southern District of California would serve the "interest of justice." (28 U.S.C. § 1406(a); see, also, *United States ex rel. Doe, supra,* 8 F.Supp.3d at p. 345.) Since Donohue fails to state a claim upon which relief may be granted, the Court should not transfer the claims brought against SDUSD Defendants, but rather should dismiss them for failure to state a claim.

In ruling on a Rule 12(b)(6) motion, the Supreme Court provided the following guidance:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (*Ashcroft, supra,* 556 U.S. at p. 678; see, also, *Twombly, supra,* 550 U.S. at p. 563.)

The FCA and State claims against SDUSD Defendants are barred by the Eleventh Amendment immunity. (See, *ante*, Sec. IV. A.) As the bar of sovereign immunity is absolute; i.e., no other court has the power to hear the case, nor can the Donohue redraft his claims to avoid the bar against FCA claims against SDUSD Defendants, the Court may dismiss the action with prejudice. (*Frigard v. U.S., supra,* 862 F.2d at p. 204; *Planells v. SFUSD., supra,* 978 F.2d at p. 715; *Padilla v. New York State Dept. of Labor, supra,* 2010 WL 3835182 at p. *3.)

Furthermore, dismissal is appropriate as guidance published by the relevant federal and state agencies authorized school districts to provide related health services remotely during the pandemic – the very conduct the SAC alleges is unlawful. Indeed, the District Court has already found that the U.S. Department of Education ("USDOE") authorized school districts to provide related services remotely during school closures, did not require IEPs to be updated to reflect such

change in modality, and instructed school districts to, if necessary, conduct assessments and

provide any needed compensatory services upon resuming normal operations. (*J.T. v. de Blasio,*

*supra,* 500 F.Supp.3d at pp. 150-152.) As the Court in *J.T. v. de Blasio* noted:

> To say that USDOE provided flexibility to school districts confronting how to educate
> disabled students during the pandemic is an understatement. In particular, the USDOE
> Fact Sheet straight-forwardly authorized the provision of distance instruction in bolded
> letters: "**To be clear: ensuring compliance with the Individuals with Disabilities**
> **Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and**
> **Title II of the Americans with Disabilities Act should not prevent any school from**
> **offering educational programs through distance instruction.**" (USDOE Fact Sheet
> at 1 (emphasis original).)) USDOE acknowledged that, "these exceptional
> circumstances may affect how all educational and related services and supports are
> provided, and the Department will offer flexibility where possible," and that "school
> districts must remember that the provision of FAPE may include, as appropriate,
> special education and related services *provided through distance instruction provided*
> *virtually, online, or telephonically.*" (*Id.* at 1-2.) (emphasis added) [¶] The Fact Sheet
> acknowledges the constraints of the pandemic, noting that: [¶] it may be unfeasible or
> unsafe for some institutions, during current emergency school closures, to provide
> hands-on physical therapy, occupational therapy, or tactile sign language educational
> services. Many disability-related modifications and services may be effectively
> provided online. These may include, for instance, extensions of time for assignments,
> videos with accurate captioning or embedded sign language interpreting, accessible
> reading materials, and many speech or language services through video conferencing.
> (*Id.* at 2.) [¶] Finally, the USDOE Fact Sheet emphasizes what the IDEA is all about –
> equal *access* to education for students with disabilities vis-à-vis their non-disabled
> peers: [¶] Finally, although federal law requires distance instruction to be accessible to
> students with disabilities, it does not mandate specific methodologies. Where
> technology itself imposes a barrier to access or where educational materials simply are
> not available in an accessible format, educators may still meet their legal obligations
> by providing children with disabilities *equally effective alternate access to the*
> *curriculum or services provided to other students.* (*Id.* at 150 (Emphasis in original).)

State Medicaid programs also issued guidance authorizing Medicaid claiming for remote

related services, without amending IEPs, and at the normal Medicaid rates. In California, the

California Department of Health Care Services ("DHCS"), directed school districts or LEAs "to

provide covered direct medical services . . . via telehealth whenever possible," which were to be

reimbursed "at the same rate as for face-to-face services" and specifying that the student's IEP did not need to "identify that the services will be provided via telehealth." [7]

Additionally, Donohue failed to plead fraud with sufficient particularity. When a plaintiff alleges fraud, those allegations must meet the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Every court that has considered the issue has held that the Rule 9(b) pleading requirements apply in FCA actions. (See, e.g., *U.S. ex rel. Russell v. Epic Healthcare Management Group,* 193 F.3d 304, 308 (5th Cir. 1999); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999); *Gold v. Morrison-Knudsen Co.,* 68 F.3d 1475, 1476 (2d Cir. 1995); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 568 (11th Cir. 1994); *U. S. ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981).)

Generally, pleading fraud with particularity includes "specifying the time, place, and substance of the defendant's alleged conduct." (*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,* 149 F.3d 227, 234 (3d Cir. 1998).) At a minimum, Rule 9(b) requires that "a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." (*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 179 (5th Cir.1997)).)

A pleading that offers only "labels and conclusions" contains "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court

---

[7] The relevant CDE guidance is available at:
https://www.dhcs.ca.gov/formsandpubs/Documents/ACLSS%20PPLs/2020/PPL20-014RTelehealth.pdf
www.cde.ca.gov/ls/he/hn/specialedcovid19guidance.asp

to reasonably infer the defendant is liable for the alleged misconduct. (*Ashcroft, supra,* 556 U.S. at p. 678 (alteration in original) (citations omitted).) Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth. (*Id.* at 678-79.)

To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(A), a plaintiff must allege facts showing that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." (*United States ex rel. Mikes v. Straus,* 274 F.3d 687, 695 (2d Cir. 2001).) To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(B), plaintiff must allege that the defendant "(1) created, used, or caused to be used, a record or statement; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government." (*United States ex rel. Taylor v. Gabelli,* 345 F.Supp.2d 313, 327 (S.D.N.Y. 2004).) To state a claim based on violation of 31 U.S.C. § 3729(a)(1)(G), a plaintiff must allege that the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." Finally, to state a claim based on violation of 31 U.S.C. § 3729(a)(1)(C), plaintiff must allege "(1) an unlawful agreement by the defendant to violate the FCA, and (2) at least one overt act performed in furtherance of that agreement." (*U.S. ex rel. Kester v. Novartis Pharm. Corp.,* 23 F.Supp.3d 242, 268 (S.D.N.Y. 2014).) Thus, for each claim, Donohue must allege SDUSD Defendants made a false claim or statement to the government which they knew was false.

"A claim is 'false or fraudulent' if it 'is aimed at extracting money the government otherwise would not have paid.'" (*United States ex rel. Colucci v. Beth Israel Med. Ctr.,* 785

F.Supp.2d 303, 310 (S.D.N.Y. 2011) (quoting *United States ex rel. Mikes v. Straus, supra,* 274 F.3d at p. 696). Donohue alleges that SDUSD Defendants submitted "legally false" claims. (SAC, ¶ 271) "A claim is 'legally false' if it rests on a false representation of compliance with an applicable federal statute, regulation, or contractual term." (*United States ex rel. Doe, supra,* 8 F.Supp.3d at p. 346 (citing *United States ex rel. Mikes v. Straus, supra,* 274 F.3d at p.696).  The representation can be made under either an express or implied certification. (*Ibid*.) An expressly false claim "falsely certifies compliance with a particular statute, regulation or contractual term," whereas "[a]n implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." (*Ibid*.) Donohue alleges that SDUSD Defendants made an expressly false claim and an implied false certification claim. (SAC, ¶¶ 271, 273.)

In addition to alleging that the defendant made a false claim or statement to the government, a plaintiff must establish that the defendant "acted 'knowingly' in presenting or causing to present a false claim for payment, or making or using a false record, or to avoid an obligation to pay." (*United States ex rel. Doe, supra,* 8 F.Supp.3d at p. 346; see, also, 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B)), & (a)(1)(G).) The FCA defines "knowing" and "knowingly" to "mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." (31 U.S.C. § 3729(b)(1).)

Here, Donohue simply recites the elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A), (B) and (G) without providing any factual allegations, which if proven true, suggest that SDUSD Defendants made a false claim or statement to the government and that they knew it was false. For example, he alleges that the moving Defendants "engaged in fraudulent conduct by

extracting from the State and Federal Governments, hundreds of millions of dollars in payments when they . . . knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and conspired to commit the above acts, all in violation of 31 U.S.C. §3729(a)(1)(A), (B), (C) and (G). (SAC, ¶ 201.) He does nothing more than repeat language used in the statute itself.

The SAC contends SDUSD Defendants violated Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 because they "billed for services that were ***recommended*** to be <u>in person</u> as opposed to remote" but failed to offer those services in person. (SAC, ¶¶ 223-226; underline in original, emphasis added.) Section 411(k)(13) simply amends Section 1903 of the Social Security Act by adding the following subsection:

> (c) Nothing in this title shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a handicapped child because such services are included in the child's individualized education program established pursuant to part B of the Education of the Handicapped Act or furnished to a handicapped infant or toddler because such services are included in the child's individualized family service plan adopted pursuant to part H of such Act.

This provision does not speak to billing procedures to be used for services that were recommended to take place in person as opposed to remotely. Thus, Donohue fails to make any factual allegations suggesting SDUSD Defendants made any false claims by collecting Medicaid reimbursement payments for services that were not offered in person.

For this reason, SDUSD Defendants' motion to dismiss must be granted for failure to plead fraud with particularity. (*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) [Relator's qui tam complaint alleging healthcare providers engaged in improper Medicare billing practices failed to state FCA violations with sufficient particularity; notably, the complaint failed to set forth dates as to the various FCA violations or any particulars as to the incidents of improper billing relator supposedly witnessed first-hand, did not specify the names of any individuals involved in the improper billing, and the complaint often stated that "defendants" engaged in certain practices, without ever specifying the defendants to which it was referring.]; *U.S. v. Kitsap Physicians Service,* 314 F.3d 995, 1002-1003 (9th Cir. 2002) [Relator failed to offer any false claim allegedly submitted to Medicare by two physician groups and three doctors, as required to support *qui tam* action under FCA; relator's generalized, speculative suppositions failed to detail any particular false claim or even to provide sufficiently detailed circumstantial evidence of such claim.]; *U.S. ex el. Atkins v. McInteer,* 470 F.3d 1350, 1359 (11th Cir. 2006) [Qui tam relator failed to plead with sufficient particularity claim that defendants defrauded medicaid program, in violation of FCA; although relator cited particular patients, dates, and corresponding medical records for services he contended were not eligible for government reimbursement, the complaint failed to allege any discrete incident of fraudulent submission of reimbursement claim by any defendant, and it did not state that relator had firsthand knowledge of the submission of any false claims.].)

To the extent Donohue claims SDUSD Defendants made fraudulent claims based on their failure "to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently failing to provide the recommended related services as written," he fails to

provide factual allegations, which if proven true, would suggest that by providing services remotely to any child residing within its boundaries, any school district denied any student in its jurisdiction a FAPE, and in turn, thereby made false claims for Medicaid reimbursement.

The IDEA provides States with federal funds to assist in educating disabled children. In exchange for the funds, the State pledges to provide a handicapped student with a FAPE, which consists of special education and related services. (20 U.S.C. §1412(a)(1).)  Special education is instruction designed to meet the unique needs of a child with a disability, while related services are the support services required to assist a child to benefit from the instruction. (20 U.S.C. §1401.)

While Congress did not define "appropriate public education," the U.S. Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide a meaningful educational benefit to the ***individual child***." (*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982) ("*Rowley*"); emphasis added.)  This requirement is satisfied if the child's IEP sets out an educational program that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." (*Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist.,* 137 S.Ct. 988, 999 (2017) ("*Douglas*").) The "reasonably calculated" qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. (*Rowley, supra,* 458 U.S. at p. 207; *Douglas, supra,* 137 S.Ct. at p. 999.) The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. (*Rowley, supra,* 458 U.S. at p. 208-209; *Douglas, supra,* 137 S.Ct. at p. 999; *J.R. ex rel. S.R. v. Bd. of Educ.,* 345 F.Supp.2d 386, 395 (S.D.N.Y. 2004); *Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir. 1993) ["[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date."].)

An IEP "is judged prospectively[,] … any lack of progress under a particular IEP, assuming arguendo that there was no progress, does not render that IEP inappropriate." (*Carlisle Area Sch. Dist. v. Scott P.,* 62 F.3d 520, 530 (3d Cir.1995). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." (*Douglas, supra,* 137 S.Ct. at p. 1001.)

The student's IEP, a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, lays out the special education and related services that are tailored to the unique needs of that specific student. (*Douglas, supra,* 137 S.Ct. at p. 994.) For instance, the IEP must contain a "statement of the child's present levels of academic achievement and functional performance," and a description of "how the child's disability affects the child's involvement and progress in the general education curriculum," along with "measurable annual goals, including academic and functional goals," and a "description of how the child's progress toward meeting those goals" will be measured. (20 U.S.C. §1414(d)(1)(A)(i)(I)-(III).)  The special education and related services laid out in the IEP must be designed for the child to "advance appropriately toward attaining the annual goals" and, to the extent possible, "be involved in and make progress in the general education curriculum." (*Id*. at §§1414(d)(1)(A)(i)(IV).)

The Act does not require school districts to maximize a student's potential, or provide educational opportunities substantially equal to the opportunities afforded children without disabilities, but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. (*Rowley, supra,* 458 U.S. at pp. 197-201; *Douglas, supra,* 137 S.Ct. at p. 1001.)  The "basic floor" has been interpreted to be an education which offers the student an opportunity for meaningful learning, taking into account the child's potential. (*Reyes v. N.Y.C. Dep't of Educ.,* 760 F.3d 211, 221 (2d Cir. 2014); *Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,* 172 F.3d 238, 247 (3d Cir. 1999); *Polk v. Central Susquehanna*

*Intermediate Unit 16,* 853 F.2d 171, 185 (3d Cir. 1988) [providing that a satisfactory IEP requires "conferring of a "meaningful benefit," and must be gauged in relation to the child's potential].) Videlicet, "the educational program "'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'" (*K.D. by & through Dunn v. Downingtown Area Sch. Dist*., 904 F.3d 248, 254 (3d Cir. 2018).) It must likely produce progress, rather than regression or trivial educational benefit. (*Ibid*.)

The Second Circuit's interpretation of the Supreme Court's decision in *Rowley* was validated by the U.S. Supreme Court in *Douglas*, which acknowledged that "the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." (*Rowley, supra,* 458 U.S. at p. 202.) For that reason, the Supreme Court in *Douglas* refrained from elaborating what appropriate progress will look like from case to case, except to say that it must be more than de minimis. (*Douglas, supra,* 137 S.Ct. at p. 1001.) Instead, it recognized the expertise an exercise of judgment held by school authorities in determining what "appropriate" progress resembles. (*Ibid.*)

Here, there are no allegations set forth in the SAC which, if true, would support a finding that any of the students residing within SDUSD suffered a substantive educational deprivation as a result of remote instruction and services such that they were denied a FAPE. Nowhere does the SAC describe a single IEP benefit that a single child residing within SDUSD did not receive on account of remote instruction and services. The SAC does not assert any facts sufficient to support a finding that any of the students residing within SDUSD failed to receive a FAPE on account of receiving special education services remotely, such that it would render SDUSD's Medicaid reimbursement claims based on the rendering of those remote services fraudulent.

Nor does the SAC allege facts sufficient to support a determination that any of the students residing within SDUSD was denied educational services comparable to those set forth in their IEPs following the closure of school buildings in the wake of the COVID-19 pandemic.  This is what the IDEA requires when the precise program described in the IEP becomes unavailable. (*Knight v. Dist. of Columbia,* 877 F.2d 1025, 1029 (D.C. Cir. 1989); *McKenzie v. Smith,* 771 F.2d 1527, 1533 (D.C. Cir. 1985); see, also, *Lunceford v. Dist. of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C. Cir. 1984) [a parent moving for a stay-put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement."]; *Bd. of Educ. of Cmty High Sch. Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548 (7ᵗʰ Cir. 1996) [although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP."]; *Tilton v. Jefferson Cty. Bd. of Educ.,* 705 F.2d 800, 804 (6th Cir. 1983), cert. denied, 465 U.S. 1006 (1984) [transfer from one school to another school with comparable program is not a change in educational placement]; *Spilsbury v. Dist. of Columbia,* 307 F.Supp.2d 22, 26-27 (D.D.C. 2004) [explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs' and that the term "cannot be read to only indicate which physical school building a child attends"].)

The SAC's conclusory allegations are insufficient to give rise to a plausible inference that SDUSD Defendants knowingly submitted false claims for Medicaid reimbursement and/or IDEA funding to the federal government based on special education services provided remotely.

Finally, as to Donohue's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), his SAC is entirely devoid of any allegations SDUSD Defendants entered into an unlawful agreement. (*United*

*States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 27 (2d Cir. 2016) [affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government"].) As such, his claim fails to satisfy the Rule 9(b)'s particularity standard. His conspiracy claim also fails because Plaintiff has failed to adequately allege underlying violations of the FCA under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

## V.   **CONCLUSION**

The SAC should be dismissed on jurisdictional grounds and should not be transferred to the Southern District of California as SDUSD Defendants are not liable under the FCA due to the Eleventh Amendment and not being a "person", and because application of Rule 12(b)(6) and the particularity standard of Rule 9(b) require dismissal of the SAC for failure to state a cognizable claim. SDUSD Defendants, therefore, request that this Court dismiss with prejudice all claims against them.

DATED:  June 30, 2022                    **ORBACH HUFF & HENDERSON LLP**


By: /s/ *Enrique M Vassallo*
    Enrique M. Vassallo, Esq.
    Attorney for Defendants
    San Diego Unified School District
    Dr. Lamont A. Jackson and
    Cindy Marten