**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES OF AMERICA and STATES OF THE UNITED STATES, ex rel. PATRICK DONOHUE, | CIVIL ACTION NO.: 20-CV-5396 (GHW) |
|           Plaintiffs, | Civil Action |
|    -against- | |
| RICHARD CARRANZA, et al., | |
|           Defendants. | |

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2), (3), AND (6) ON BEHALF OF DEFENDANTS WAKE COUNTY PUBLIC SCHOOL DISTRICT AND CATHY QUIROZ MOORE

WOOD, SMITH, HENNING & BERMAN, LLP
5 Waller Avenue, Suite 200
White Plains, NY 10601
(914) 353-3850

*Attorneys for Defendants*
*Wake County Public School District and Cathy Quiroz Moore*

Christopher J. Seusing, Esq.
Partner

John A. Darminio, Esq.
Senior Counsel

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-v

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      POINT I

      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE
      12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM ON WHICH RELIEF
      CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      POINT II

      THE SOUTHERN DISTRICT OF NEW YORK IS AN IMPROPER VENUE
      AS TO WAKE COUNTY DEFENDANTS THEREFORE THOSE CLAIMS
      SHOULD BE SEVERED AND SUBSEQUENTLY DISMISSED SINCE
      TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA
      DOES NOT SERVE THE INTEREST OF JUSTICE . . . . . . . . . . . . . . . . . 19

      POINT III

      THIS COURT HAS NO PERSONAL JURISDICTION OVER WAKE
      COUNTY DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      POINT IV

      THE COMPLAINT FAILS TO NAME THE WAKE COUNTY BOARD OF
      EDUCATION AND THEREFORE SHOULD BE DISMISSED. . . . . . . . 25

      POINT V

      CLAIMS AGAINST DEFENDANT CATHY QUIROZ MOORE, IN HER
      OFFICIAL CAPACITY AS SUPERINTENDENT, SHOULD BE
      DISMISSED AS DUPLICATIVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................7,8

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,*
458 U.S. 176 (1982) ........................................................ 15, 16, 17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 13

*Biggs v. Meadow,*
66 F.3d 56 (4th Cir. 1995) ............................................................ 26

*Carlisle Area Sch. Dist. v. Scott P.,*
62 F.3d 520 (3d Cir.1995) ............................................................ 16

*Cooper v. Blue Cross and Blue Shield of Florida, Inc.,*
19 F.3d 562, 568 (11th Cir. 1994) ................................................ 7

*Daimler AG v. Bauman,*
571 U.S. 117, 122 (2014) ...................................................... 22, 23

*Dunn v. Downingtown Area Sch. Dist.,*
904 F.3d 248 (3d Cir. 2018) ........................................................ 17

*Endrew F. v. Douglas Cty. Sch. Dist.,*
580 U.S. ___, 137 S. Ct. 988 (2017) ...................................... 16, 17

*Efird v. Riley,*
342 F.Supp.2d 413 (M.D.N.C. 2004) ...........................................25

*Fuhrmann v. E. Hanover Bd. of Educ.,*
993 F.2d 1031 (3d Cir. 1993) ...................................................... 16

*Gold v. Morrison-Knudsen Co.,*
68 F.3d 1475, 1476 (2d Cir. 1995) ............................................... 7

*Gulf Ins. Co. v. Glasbrenner,*
417 F.3d 353 (2d Cir. 2005) ........................................................ 22

*Harrison v. Westinghouse Savannah River Co.,*
176 F.3d 776, 783 (4th Cir. 1999) ............................................... 7

*Hunter v. Wake County Bd. of Ed.*,
2008 WL 2695813 (E.D.N.C. July 8, 2008) ............................................................. 25

*J.R. ex rel. S.R. v. Bd. of Educ.*,
345 F. Supp. 2d 386 (S.D.N.Y. 2004) ...................................................................... 16

*J.T. v. de Blasio*,
500 F.Supp.3d 137 (S.D.N.Y. 2020) ...................................................... 10, 22, 23, 24

*Kentucky v. Graham*,
473 U.S. 159, 165, 105 S.Ct. 3099 (1985) ............................................................... 26

*Knight v. Dist. of Columbia*,
877 F.2d 1025 (D.C. Cir. 1989) ............................................................................... 18

*Love-Lane v. Martin*,
355 F.3d 766 (4th Cir. 2004) ................................................................................... 26

*Lunceford v. Dist. of Columbia Bd. of Educ.*,
745 F.2d 1577 (D.C. Cir. 1984) ............................................................................... 18

*McKenzie v. Smith*,
771 F.2d 1527 (D.C. Cir. 1985) ............................................................................... 18

*Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*,
484 U.S. 97, 104-105(1987) .................................................................................... 22

*Peterson v. Regina*,
935 F. Supp. 2d 628 (S.D.N.Y. 2013) ...................................................................... 21

*Polk v. Central Susquehanna Intermediate Unit 16*,
853 F.2d 171 (3d Cir. 1988) .................................................................................... 17

*Reyes v. N.Y.C. Dep't of Educ.*,
760 F.3d 211 (2d Cir. 2014) .................................................................................... 17

*Ridgewood Bd. of Educ. v. N.E. ex rel. ME.*,
172 F.3d 238 (3d Cir. 1999) .................................................................................... 17

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221, 224 (2d Cir. 2014) ............................................................................ 22

*United States ex el. Atkins v. McInteer*,
470 F.3d 1350, 1359 (11th Cir. 2006) ..................................................................... 14

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*,

342 F.3d 634, 643 (6th Cir. 2003) .............................................................................. 14

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
785 F. Supp. 2d 303 (S.D.N.Y. 2011) ......................................................................... 12

*United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,*
8 F. Supp. 3d 339 (S.D.N.Y. 2014) ...................................................................... 20, 21

*United States ex rel. Gelbman v. City of New York,*
790 Fed.Appx. 244, 247-249 (2d Cir. 2019) ............................................................... 1

*United States ex rel. Kester v. Novartis Pharm. Corp.,*
23 F. Supp. 3d 242 (S.D.N.Y. 2014) ......................................................................... 12

*United States. ex rel. v. Kitsap Physicians Service,*
 314 F.3d 995, 1002-1003 (9th Cir. 2002) ................................................................. 14

*United States ex rel. Ladas v. Exelis, Inc.,*
824 F.3d 16 (2d Cir. 2016) ........................................................................................ 19

*United States ex rel. Mikes v. Straus,*
274 F.3d 687 (2d Cir. 2001) ...................................................................................... 11

*United States ex rel. Russell v. Epic Healthcare Management Group,*
193 F.3d 304, 308 (5th Cir. 1999) ............................................................................... 7

*United States ex rel. Joseph v. Cannon,*
642 F.2d 1373, 1385 (D.C. Cir. 1981) .........................................................................8

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,*
149 F.3d 227, 234 (3d Cir. 1998) ................................................................................8

*United States ex rel. Taylor v. Gabelli,*
345 F. Supp. 2d 313 (S.D.N.Y. 2004) ....................................................................... 11

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer,*
976 F. Supp. 207 (S.D.N.Y. 1997) ........................................................................... 20

*United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,*
110 F.3d 861 (2d Cir. 1997) ...................................................................................... 20

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
125 F.3d 899, 903 (5th Cir. 1997) ...............................................................................8

**Federal Statutes**
20 U.S.C. § 1401 ...................................................................................................... 15

20 U.S.C. § 1412 ................................................................................................ 15
20 U.S.C. § 1414 .......................................................................................... 16, 17
28 U.S.C. § 1331 .................................................................................................. 2
28 U.S.C. § 1345 .................................................................................................. 2
28 U.S.C. § 3730 .................................................................................................. 2
28 U.S.C. § 1367 .................................................................................................. 2
28 U.S.C. § 1391 ................................................................................................ 22
28 U.S.C. § 1406 ................................................................................................ 20
31 U.S.C. § 3732 ........................................................................................... 3, 20
31 U.S.C. § 3729 ............................................... 1, 3, 4, 6, 11, 12, 13, 19
31 U.S.C. § 3729-3733 ........................................................................................ 3
Medicare Catastrophic Coverage Act of 1988 § 411 ......................... 13, 17
Social Security Act, § 1903 .......................................................................... 13

**Federal Regulations**

42 C.F.R. § 413.60 ............................................................................................... 3
42 C.F.R. § 413.64 ............................................................................................... 3

**State Laws**

N.C. Gen. Stat. Sections 1-605 – 617.......................................................... 4, 6
N.C. Gen. Stat. Section 115C-40 ................................................................... 25

**Rules**

Federal Rules of Civil Procedure 4 ........................................................ 7, 9, 22
Federal Rules of Civil Procedure 9 ........................... 1, 7, 8, 12, 19, 27
Federal Rules of Civil Procedure 12 ................................................. 7, 8, 27
N.Y. C.P.L.R. §301 ...................................................................................... 22, 23
N.Y. C.P.L.R. §302 .............................................................................. 22, 24, 25

**Federal Guidance**

Off. Special Educ. Programs, U.S. Dep't Educ., OSEP QA 20-01:
IDEA Part B Service Provision 1-2 (Sept. 28, 2020) ................................. 10

United States Dep't Educ., Questions and Answers on Providing
Services to Children with Disabilities During the Coronavirus Disease
2019 Outbreak (March 2020) ............................................................. 8, 9, 10

## PRELIMINARY STATEMENT

This is a qui tam action filed by Patrick Donohue, Esq. on behalf of the United States of America and individual States, along with the District of Columbia, against many the largest school districts in the United States and their superintendents, including the improperly named "Wake County Public School District" and Superintendent Cathy Quiroz Moore ("Quiroz Moore")(hereinafter collectively referred to as the "Wake County Defendants").

The Second Amended Complaint ("Complaint") alleges that the named defendants submitted false claims for Medicaid reimbursement with knowledge that they had violated the Individuals with Disabilities Education Act (the "IDEA") in the wake of pandemic-related school building closures by depriving their students of a free, appropriate public education ("FAPE").

This Court should dismiss the claims against the Wake County Defendants because none of the allegations in the Complaint state a cognizable claim under the False Claims Act. Specifically, Plaintiff-Relator's allegations fall well short of FRCP Rule 9(b)'s particularity standard, as they resort to simply reciting the elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A),(B) and (G) without providing any factual allegations, which if proven true, could support a finding that the Wake County Defendants knowingly made a false claim or statement to the government. Because it is the submission of a false claim that gives rise to liability under the FCA, Rule 9(b) requires that the details of claims and their submission must be pleaded with particularity and may not "rest on 'speculation and conclusory allegations.'" See *U.S. ex rel. Gelbman v. City of New York,* 790 Fed.Appx. 244, 247-249 (2d Cir. 2019), quoting *U.S. ex rel. Chorches v. Am. Med. Response, Inc.,* 865 F.3d 71, 86 (2d Cir. 2017).

For these reasons, the Wake County Defendants request that the Court dismiss with prejudice the claims against them for failure to state a claim upon which relief may be granted.

## **FACTUAL BACKGROUND**

Plaintiff-Relator Patrick Donohue initiated this *qui tam* action and filed the Complaint the named defendants. (See Dkt. 19, "Preliminary Statement and Nature of this Action"). Plaintiff-Relator alleges that he has direct and independent knowledge of "disabled children in NYC and other named School Districts receiv[ing] Medicaid reimbursements, payments, and otherwise for related service sessions that were not provided in a manner and environment that is consistent with the students' physical and medical needs and did not adhere to the relevant Medicaid and IDEA billing requirements." (Id. at ¶ 19)

Defendant Wake County Board of Education operates within the jurisdiction of Wake County, North Carolina. (Id. at ¶ 57) Defendant Cathy Quiroz Moore serves as the Superintendent of Defendant Wake County Public School District and is responsible for the oversight and management of the schools within the District. (Id. at ¶¶ 58, 59) The Complaint asserts that this Court has subject matter jurisdiction based on their claims "pursuant to 28 U.S.C. §3730(a) (False Claims Act), 28 U.S.C. §1331 (Federal question), 28 U.S.C. § 1367 (Supplemental jurisdiction), 31 U.S.C. §37 (False claims jurisdiction), and 28 U.S.C. §1345 (United States as plaintiff)." (Id. at ¶ 110) Moreover, Plaintiff-Relator asserts that "[t]o the extent, if any, that this case involves questions relating to special education rights, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367." (Id. at ¶ 69) It also asserts that "venue is properly placed within this District because at least one of the named defendants resides or transacts business in the District, specifically, Defendant Richard Carranza ("Chancellor Carranza"), in his official capacity as former Chancellor of the New York City Department of Education, Defendant Meisha Porter, in her official capacity as current Chancellor of the New York City Department of Education; and Defendant New York City Department of Education ("NYC DOE"), maintain business offices in

- 2 -

New York County." (collectively "New York Defendants") (Id. at ¶ 70) Plaintiffs assert that pursuant to 31 U.S.C. §3732, "this Court appropriately has jurisdiction over all named defendants, as the named New York Defendants operate and conduct business within this Court's jurisdiction." (Id. at ¶¶ 71-72)

Plaintiff-Relator alleges that "Defendants conducted related services for students with disabilities via telehealth and/or via phone, contrary to the Medicaid and IDEA/Title I billing requirements, and submitted for reimbursement of same by misrepresenting that such services were in compliance with the relevant State and federal laws." (Id. at ¶ 1) Plaintiff-Relator also alleges that "Defendants fraudulently billed for these [remote] 'sessions' through Medicaid at their regular, full rates" and used IDEA funding for "non-related services" even though "students were unable to meaningfully participate in these remote sessions." (Id. at ¶ 2)

Plaintiff-Relator contends that "Defendants have violated the federal False Claims Act, 31 U.S.C. § 3729-3733 ("FCA") as well as the corresponding state false claim statutes" because they "obtained the benefit of virtually unfettered Medicaid reimbursements for these related service sessions." (Id. at ¶ 3) According to Plaintiff-Relator, Defendants "received interim payments based on fixed estimates of their actual costs in accordance with 42 C.F.R. § 413.60(a), (c); §413.64(a), (f)." (Id. at ¶ 60)

He claims that "Defendants [] knowingly submitted false claims for related services purportedly offered to Special Education students via telehealth, phone, and otherwise, when Defendants were acutely aware that such services were contrary to those set forth in each [s]tudent's last-agreed-upon IEP, which required in-person services." (Id. at ¶ 66) He alleges that "some of these sessions were not offered to students with disabilities." (Id.)

The Complaint further alleges that "Defendants fraudulently created Individualized Education Plans (IEPs) for special education students, knowing they could not implement these IEPs as written, thus knowingly denying students a FAPE." (Id. at ¶ 72) He contends that "Defendants then fraudulently claimed they were providing special education and related services as outlined and described in the students' IEPs and billed and/or were reimbursed or otherwise by the federal government and the States, including the District of Columbia, for services that were not performed, and for services performed at an over-billed rate or for services (medical, educational, related, and otherwise) that were established fraudulently." (Id. at ¶ 73)

Plaintiff-Relator also alleges that Wake County Defendants perpetuated a fraud upon the State and federal governments when they:

> **a.** Knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval;
>
> **b.** Knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;
>
> **c.** Knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and
>
> **d.** Conspired to commit the above acts, all in violation of 31 U.S.C. § 3729(a)(1)(A), (B), (C) & (G). (Id. at ¶ 232)

The Complaint states (though no corresponding cause of action section exists) that Wake County Defendants violated North Carolina General Statutes ("N.C.G.S.") §§ 1-605 through 617, et seq. and that Defendant Wake County Board of Education failed to provide certain services and made a "false submission of reimbursement claims to Medicaid and fraudulent projection of students being [provided] services properly remotely." (Id. at ¶¶ 233, 194)

He points to the IEP of A.C. as an example of the alleged conduct of Wake County and Quiroz Moore. (Id. at ¶ 234) A.C.'s IEP, drafted on October 5, 2020, in the midst of the pandemic, does not denote the setting in which A.C. is to receive his services and only notes that he shall receive services "within the school environment." (Id. at ¶ 236) Plaintiff-Relator alleges that the District "did not reconvene for IEP meetings to recommend remote services for students with disabilities in light of school closures." (Id. at ¶ 247)

He further alleges that Wake County Defendants billed for services that were recommended to be in person as opposed to remote. (Id. at ¶¶ 248-49) He contends that, therefore, any billing for remote services is inappropriate, violates "Medicaid billing restrictions," and is unlawful. (Id.) He contends that Wake County Defendants "failed to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently fail[ed] to provide the recommended related services as written." (Id. at ¶ 250) He alleges that Wake County Defendants "benefitted from their unlawful acts by collecting Medicaid reimbursement payments for services that were not offered in accordance with the IEP as written" and "remained complicit in the scheme to defraud." (Id. at ¶¶ 251-52)

Plaintiff-Relator alleges that named defendants "knowingly made, used, or caused to be made and used, and presented, or caused to be presented, false and fraudulent claims for payment or approval in connect with the submission of claim for school- based services for students with disabilities." (Id. at ¶ 281) According to Plaintiff-Relator, named defendants submitted "false claims" when its representatives made fraudulent representations that the IEPs they created were knowingly not in compliance with [the] IDEA and they could not implement these IEPs, thereby denying the students a FAPE. (Id. at ¶¶ 270, 286, 291) He alleges that named defendants also made

fraudulent misrepresentations "when their service providers knowingly misrepresented that they were providing related services" in accordance with the IDEA and Medicaid regulations. (Id.) Plaintiff-Relator asserts that these claims were "legally false" and named defendants knew they were in violation of federal regulations at the time they were submitted. (Id. at ¶ 271) He believes "the federal and state government disbursed the money for said fraudulent claims because [] Defendants certified that they had complied with the relevant federal regulations." (Id. at ¶ 271)

Plaintiff-Relator asserts "Defendants individually conspired to commit a violation" of 31 § U.S.C. 3729(a)(1)(A), (B), and (G) and "Defendants have each committed at least one overt act in furtherance of their conspiracy." (Id. at ¶¶ 296-97) Plaintiff-Relator asserts that even where named defendants' representatives did not sign a form certifying compliance, named defendants violated the FCA because the very act of submitting the claim implies they affirmed that it was in compliance with the regulations. (Id. at ¶ 273) Plaintiff-Relator alleges "Defendants who did not keep close track of log-ins and attendance data would be liable since school officials implicitly certified that they would keep their data current when they made the claim for public funds." (Id. at ¶ 274) Plaintiff-Relator asserts  named defendants are liable for "Worthless Services Fraud" because "the limited services they may have provided was so subpar as to be completely worthless." (Id. at ¶ 276)

The Second Amended Complaint[1] asserts causes of action against Wake County Defendants for violations of the False Claims Action, specifically 31 U.S.C. § 3729(a)(1)(A), (B),

---

[1] Plaintiff-Relator's Complaint does not assert a specific cause of action for alleged violations of N.C.G.S §§ 1-605 through 617, *et seq.*  Despite other state-specific causes of action listed for respective state laws allegedly violated, no such claim is articulated specific to North Carolina. (see "Fifth Claim" through "Seventeenth Claim," pp. 75 – 84). Nonetheless, Wake County Defendants contend the corollary claims are without merit and should be dismissed in addition to the federal claims alleged in the Complaint. Wake County Defendants reserve the right to move for the appropriate relief should Plaintiff-Relator amend the Second Amended Complaint to assert said cause of action.

(C), and (G). Wake County Defendants hereby move for dismissal under Federal Rules of Civil Procedure 12(b)(2),(3), and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted.

## ARGUMENT

## POINT I

### THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Because Plaintiff-Relator fails to state a claim upon which relief may be granted, the Court should dismiss the Complaint for failure to state a claim. In ruling on a Rule 12(b)(6) motion, the Supreme Court has provided the following guidance: To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

When a plaintiff alleges fraud, those allegations must meet the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Every court that has considered the issue has held that the Rule 9(b) pleading requirements apply in FCA actions. *See, e.g.*, *U.S. ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir. 1995); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19

F.3d 562, 568 (11th Cir. 1994); *U. S. ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981).

Generally, pleading fraud with particularity includes "specifying the time, place, and substance of the defendant's alleged conduct." *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,* 149 F.3d 227, 234 (3d Cir. 1998).) At a minimum, Rule 9(b) requires that "a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 179 (5th Cir.1997).

A pleading that offers only "labels and conclusions" contains "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678 (alteration in original)(citations omitted). Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth. *Id.* at 678-79.

Perhaps most importantly, Plaintiff-Relator ignores clear guidance at both the state and federal levels that authorized school districts to provide related health services remotely during the pandemic – the very conduct alleged to be unlawful in the Complaint. This alone warrants dismissal of the Complaint.

The U.S. Department of Education ("USDOE") offered guidance acknowledging that the IDEA does not "address a situation in which . . . schools are closed for an extended period of time . . . because of exceptional circumstances, such as an outbreak of a particular disease[,]" issued guidance regarding how to comply with the IDEA during the COVID-19 pandemic. U.S. DEP'T

EDUC., QUESTIONS AND ANSWERS ON PROVIDING SERVICES TO CHILDREN WITH DISABILITIES
DURING THE CORONAVIRUS DISEASE 2019 OUTBREAK 2 (March 2020) ("USDOE MARCH 2020
COVID-19 Q&AS").[2] Addressing concerns raised by schools that the provision of remote services
would violate the IDEA, USDOE assured schools that:

> This is simply not true. . . .
>
> **To be clear: ensuring compliance with the [IDEA] . . . should not prevent any
> school from offering educational programs through distance instruction.**
>
> School districts must provide a free and appropriate public education (FAPE)
> consistent with the need to protect the health and safety of students with disabilities
> and those individuals providing education, specialized instruction, and related
> services to these students. In this unique and ever-changing environment, [the
> USDOE] recognize(s) that these exceptional circumstances may affect how all
> educational and related services and supports are provided, and the Department will
> offer flexibility where possible. However, school districts must remember that the
> provision of FAPE may include, as appropriate, special education and related
> services provided through distance instruction provided virtually, online, or
> telephonically.
>
> . . .
>
> It is important to emphasize that federal disability law allows for flexibility in
> determining how to meet the individual needs of students with disabilities. The
> determination of how FAPE is to be provided may need to be different in this time
> of unprecedented national emergency. . . . Where, due to the global pandemic and
> resulting closures of schools, there has been an inevitable delay in providing services
> – or even making decisions about how to provide services – IEP teams . . . must
> make an individualized determination whether and to what extent compensatory
> services may be needed when schools resume normal operations.

OFF. SPECIAL EDUC. REHAB. SERVS., U.S. DEP'T EDUC., SUPPLEMENTAL FACT SHEET: ADDRESSING
THE RISK OF COVID-19 IN PRESCHOOL, ELEMENTARY AND SECONDARY SCHOOLS WHILE SERVING
CHILDREN WITH DISABILITIES 1-2 (March 21, 2020) (emphasis in original).[3] USDOE also advised

---

[2] Available at: sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf.

[3] Available at:
www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/policyguidance/Supple%20Fact%20Sheet%203.21.2
0%20FINAL.pdf.

that "IEP teams may, but are not required to, include distance learning plans in a child's IEP that could be triggered and implemented during a selective closure due to a COVID-19 outbreak." USDOE MARCH 2020 COVID-19 Q&AS at 5.

USDOE continued to authorize the provision of remote instruction for the 2020-2021 school year, as deemed necessary by the relevant State or local officials:

> Decisions about the 2020-2021 school year, including how and when educational and other services are provided, are being made by State and local officials, with continued academic growth and the safety of the local school community being of paramount significance. As public agencies and officials grapple with challenging decisions, administrators, educators, and parents may need to consider multiple options for delivering instruction, including special education and related services to children with disabilities. Those options could include remote/distance instruction, in-person attendance, or a combination of both remote/distance instruction and in-person attendance (hybrid model).

OFF. SPECIAL EDUC. PROGRAMS, U.S. DEP'T EDUC., OSEP QA 20-01: IDEA PART B SERVICE PROVISION 1-2 (Sept. 28, 2020).[4]

Moreover, this District Court has already found that the USDOE authorized school districts to provide related services remotely during school closures, did not require IEPs to be updated to reflect such change in modality, and instructed school districts to, if necessary, conduct assessments and provide any needed compensatory services upon resuming normal operations. *See J.T. v. de Blasio,* 500 F. Supp.3d 137, 150-152 (S.D.N.Y. 2020). Therein, the Court noted the following:

> To say that USDOE provided flexibility to school districts confronting how to educate disabled students during the pandemic is an understatement. In particular, the USDOE Fact Sheet straight-forwardly authorized the provision of distance instruction in bolded letters: "**To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**" USDOE Fact Sheet at 1 (emphasis original).) USDOE acknowledged that, "these exceptional

---

[4] Available at: www2.ed.gov/policy/speced/guid/idea/memosdcltrs/qa-provision-of-services-idea-part-b-09-28-2020.pdf.

circumstances may affect how all educational and related services and supports are provided, and the Department will offer flexibility where possible," and that "school districts must remember that the provision of FAPE may include, as appropriate, special education and related services *provided through distance instruction provided virtually, online, or telephonically.*" *Id.* at 1-2. (emphasis added) [¶] The Fact Sheet acknowledges the constraints of the pandemic, noting that: [¶] it may be infeasible or unsafe for some institutions, during current emergency school closures, to provide hands-on physical therapy, occupational therapy, or tactile sign language educational services. Many disability-related modifications and services may be effectively provided online. These may include, for instance, extensions of time for assignments, videos with accurate captioning or embedded sign language interpreting, accessible reading materials, and many speech or language services through video conferencing. *Id.* at 2. [¶] Finally, the USDOE Fact Sheet emphasizes what the IDEA is all about – equal *access* to education for students with disabilities vis-à-vis their non-disabled peers: [¶] Finally, although federal law requires distance instruction to be accessible to students with disabilities, it does not mandate specific methodologies. Where technology itself imposes a barrier to access or where educational materials simply are not available in an accessible format, educators may still meet their legal obligations by providing children with disabilities *equally effective alternate access to the curriculum or services provided to other students. Id.* at 150 (Emphasis in original).

For a claim predicated on a violation of 31 U.S.C. § 3729(a)(1)(A), a plaintiff must allege facts showing that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001). A claim predicated on a violation of § 3729(a)(1)(B) requires a plaintiff to allege that the defendant "(1) created, used, or caused to be used, a record or statement; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government." *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004). A claim predicated on a violation of § 3729(a)(1)(G) requires a plaintiff to allege that the defendant "(1) made a false statement or created and used a false record, (2) with knowledge of its falsity, (3) for the purpose of decreasing, concealing, or avoiding an obligation to pay the Government." *Id.* Finally, to state a claim based on violation of § 3729(a)(1)(C), a plaintiff must allege "(1) an unlawful agreement by the defendant to violate the FCA, and (2) at least one overt act performed in furtherance of that agreement."

*United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 268 (S.D.N.Y. 2014). Thus, for each claim, Plaintiff-Relator must allege Wake County Defendants made a knowingly false claim or statement to the government.

"A claim is 'false or fraudulent' if it 'is aimed at extracting money the government otherwise would not have paid.'" *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310 (S.D.N.Y. 2011) (quoting *Mikes*, 274 F.3d at 696). Plaintiff-Relator alleges that the Wake County Defendants submitted "legally false" claims. (See Dkt. 19, ¶ 271) "A claim is 'legally false' if it rests on a false representation of compliance with an applicable federal statute, regulation, or contractual term." *United States ex rel. Doe*, 8 F. Supp. 3d at 346 (citing *Mikes*, 274 F.3d at 696). The representation can be made under either an express or implied certification. *Id.* An expressly false claim "falsely certifies compliance with a particular statute, regulation or contractual term," whereas "[a]n implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id.* Plaintiff-Relator alleges Wake County Defendants made an expressly false claim and an implied false certification claim. (See Dkt. 19, ¶¶ 271, 273)

In addition to alleging that a defendant made a false claim or statement to the government, a plaintiff must establish that the defendant "acted 'knowingly' in presenting or causing to present a false claim for payment, or making or using a false record, or to avoid an obligation to pay." *States ex rel. Doe*, 8 F. Supp. 3d at 346. See also, 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B)), & (a)(1)(G). The FCA defines "knowing" and "knowingly" to "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1).

Here, Plaintiff-Relator merely recites the elements required to state a claim under 31 U.S.C. § 3729(a)(1)(A), (B) and (G) without providing any factual allegations, which if proven true, suggest that Wake County Defendants made a false claim or statement to the government and that they knew it was false. For example, he alleges that Wake County Defendants "engaged in fraudulent conduct by extracting from the State and Federal Governments, hundreds of millions of dollars in payments when they . . . knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and conspired to commit the above acts, all in violation of 31 U.S.C. §3729(a)(1)(A), (B), (C) and (G)." (See Dkt. 19, ¶ 232). He does nothing more than repeat language used in the statute itself.

The Complaint contends that the Wake County Defendants violated Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 because they "billed for services that were **recommended** to be in person as opposed to remote" but failed to offer those services in person. (See Dkt. 19, ¶¶ 248-251) (emphasis added) Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 simply amends Section 1903 of the Social Security Act by adding the following subsection: (c) Nothing in this title shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a handicapped child because such services are included in the child's individualized education program established pursuant to part B of the Education of

the Handicapped Act or furnished to a handicapped infant or toddler because such services are included in the child's individualized family service plan adopted pursuant to part H of such Act.

This provision does not speak to billing procedures to be used for services that were recommended to take place in person as opposed to remotely. Thus, Plaintiff-Relator fails to make any factual allegations suggesting the Wake County Defendants made any false claims by collecting Medicaid reimbursement payments for services that were not offered in person. In fact, the IEP Plaintiff-Relator relies on as an example explicitly states the services were to be received "within the school environment." (See Complaint, ¶ 236) Plaintiff-Relator further acknowledges that the IEP makes specific reference to both in-person and remote services.

For this reason, Wake County Defendants' motion to dismiss must be granted for failure to plead fraud with particularity. *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) (Relator's qui tam complaint alleging healthcare providers engaged in improper Medicare billing practices failed to state FCA violations with sufficient particularity; notably, the complaint failed to set forth dates as to the various FCA violations or any particulars as to the incidents of improper billing relator supposedly witnessed first-hand, did not specify the names of any individuals involved in the improper billing, and the complaint often stated that "defendants" engaged in certain practices, without ever specifying the defendants to which it was referring.); *U.S. ex rel. v. Kitsap Physicians Service,* 314 F.3d 995, 1002-1003 (9th Cir. 2002) (Relator failed to offer any false claim allegedly submitted to Medicare by two physician groups and three doctors, as required to support *qui tam* action under FCA; relator's generalized, speculative suppositions failed to detail any particular false claim or even to provide sufficiently detailed circumstantial evidence of such claim.); *U.S. ex el. Atkins v. McInteer,* 470 F.3d 1350, 1359 (11th Cir. 2006) (Qui tam relator failed to plead with sufficient particularity claim that

defendants defrauded medicaid program, in violation of FCA; although relator cited particular patients, dates, and corresponding medical records for services he contended were not eligible for government reimbursement, the complaint failed to allege any discrete incident of fraudulent submission of reimbursement claim by any defendant, and it did not state that relator had firsthand knowledge of the submission of any false claims.).

To the extent Plaintiff-Relator claims that the Wake County Defendants made fraudulent claims based on their failure "to provide the students within its jurisdiction a FAPE by formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations . . . and subsequently failing to provide the recommended related services as written," he fails to provide factual allegations, which if proven true, would suggest that by providing services remotely to any child residing within its boundaries, any school district denied any student in its jurisdiction a FAPE, and in turn, thereby made false claims for Medicaid reimbursement. The IDEA provides States with federal funds to assist in educating children with disabilities. In exchange for the funds, the State pledges to provide a handicapped student with a FAPE, which consists of special education and related services. 20 U.S.C. § 1412(a)(1). Special education is instruction designed to meet the *unique* needs of a child with a disability, while related services are the support services required to assist a child to benefit from the instruction. 20 U.S.C. § 1401.

While Congress did not define "appropriate public education," the U.S. Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide a meaningful educational benefit to the **individual child.**" *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982) (emphasis added). This requirement is satisfied if the child's IEP sets out an educational program that is "reasonably calculated to enable a child to make

progress appropriate in light of the child's circumstances." *See Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist.,* 137 S. Ct. 988, 999 (2017).

The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. *Rowley*, at 207; *Douglas*, at 999. The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. *Rowley*, 458 U.S. at 208-209; *Douglas*, 137 S. Ct. at 999. *See J.R. ex rel. S.R. v. Bd. of Educ.*, 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004); *Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir. 1993) ("[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date.")Because an IEP "is judged prospectively[,] . . . any lack of progress under a particular IEP, assuming *arguendo* that there was no progress, does not render that IEP inappropriate." *Carlisle Area Sch. Dist. v. Scott P.,* 62 F.3d 520, 530 (3d Cir.1995). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Douglas*, 137 S. Ct. at 1001.

The student's IEP, a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, lays out the special education and related services that are **tailored to the unique needs of that specific student.** *Douglas* 137 S. Ct. at 994. For instance, the IEP must contain a "statement of the child's present levels of academic achievement and functional performance," and a description of "how the child's disability affects the child's involvement and progress in the general education curriculum," along with "measurable annual goals, including academic and functional goals," and a "description of how the child's progress toward meeting those goals" will be measured. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III). The special education and related services laid out in the IEP must be designed for the child to "advance appropriately toward

attaining the annual goals" and, to the extent possible, "be involved in and make progress in the general education curriculum." *Id.* at §§1414(d)(1)(A)(i)(IV).

The Act does not require school districts to maximize a student's potential, or provide educational opportunities substantially equal to the opportunities afforded children without disabilities, but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. *Rowley*, 458 U.S. at 197-201; *Douglas*, 137 S. Ct. at 1001. The Third Circuit has interpreted this "basic floor" to be an education which offers the student an opportunity for meaningful learning, taking into account the child's potential. *Reyes v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 221 (2d Cir. 2014); *Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,* 172 F.3d 238, 247 (3d Cir. 1999); *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 185 (3d Cir. 1988) (providing that a satisfactory IEP requires "conferring of a "meaningful benefit," and must be gauged in relation to the child's potential). In other words, "the educational program "'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'" *K.D. by & through Dunn v. Downingtown Area Sch. Dist.,* 904 F.3d 248, 254 (3d Cir. 2018). It must likely produce progress, rather than regression or trivial educational benefit. *Id.*

The Second Circuit's interpretation of the Supreme Court's decision in <u>*Rowley*</u> was validated by the U.S. Supreme Court in <u>*Endrew F*</u>, which acknowledged that "the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." *Rowley*, 458 U.S. at 202. For that reason, the Supreme Court in <u>*Douglas*</u> refrained from elaborating what 'appropriate progress will look like from case to case, except to say that it must be more than de minimis. *Douglas*, 137 S.

Ct. at 1001. Instead, it recognized the expertise and exercise of judgment held by school authorities in determining what "appropriate" progress resembles. *Id.*

In the instant case, there are no allegations set forth in the Complaint which, if true, would support a finding that any of the students residing within the district suffered a substantive educational deprivation as a result of remote instruction and services such that they were denied a FAPE. Nowhere does the Complaint describe a single IEP benefit that a single child residing within the district did not receive on account of remote instruction and services. The Complaint does not assert any facts sufficient to support a finding that any of the students residing within the district failed to receive a FAPE on account of receiving special education services remotely, such that it would render the district's Medicaid reimbursement claims based on the rendering of those remote services fraudulent.

Nor does the Complaint allege facts sufficient to support a determination that any of the students residing within the district were denied educational services comparable to those set forth in their IEPs following the closure of school buildings in the wake of the COVID-19 pandemic. This is what the IDEA requires when the precise program described in the IEP becomes unavailable. *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985). *See also Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)(a parent moving for a stay-put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement.") (*Bd. of Educ. of Cmty High Sch. Dist. No.* 218, 103 F.3d at 548 (although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP."); *Tilton v. Jefferson Cty. Bd. of*

*Educ.*, 705 F.2d 800, 804 (6th Cir. 1983), cert. denied, 465 U.S. 1006 (1984) (transfer from one school to another school with comparable program is not a change in educational placement); *Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004) (explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs' and that the term "cannot be read to only indicate which physical school building a child attends").

The conclusory allegations contained in the Complaint are simply insufficient to give rise to a plausible inference that the Wake County Defendants knowingly submitted false claims for Medicaid reimbursement and/or IDEA funding to the federal government based on special education services provided remotely.

Finally, Plaintiff-Relator's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) is devoid of any allegations that the Wake County Defendants entered into an unlawful agreement. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government"). As such, his claim fails to satisfy the Rule 9(b)'s particularity standard. The conspiracy claim also fails because Plaintiff-Relator has failed to adequately allege underlying violations of the FCA under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

## POINT II

**THE SOUTHERN DISTRICT OF NEW YORK IS AN IMPROPER VENUE AS TO WAKE COUNTY DEFENDANTS THEREFORE THOSE CLAIMS SHOULD BE SEVERED AND SUBSEQUENTLY DISMISSED SINCE TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA DOES NOT SERVE THE INTEREST OF JUSTICE**

While improper venue can be a basis to transfer a case, that is not be the case here because transferring the case would not serve the "interest of justice." *See* 28 U.S.C. § 1406(a). *See also United States ex rel. Doe*, 8 F. Supp. 3d at 345. Once this Court severs the claims against Wake County Defendants and holds that venue in the Southern District of New York is improper, it must determine whether transferring the claims to the Eastern District of North Carolina would serve the "interest of justice." *Id.* It does not. Plaintiff-Relator fails to state a claim upon which relief may be granted, the Court should not transfer the claims brought against Wake County Defendants, but rather should dismiss them for failure to state a claim as discussed in the previous section.

Although the False Claims Act provides that if one defendant can be "found" in a jurisdiction, venue is proper for all other defendants in the same action who are involved in the same false claims, *see* 31 U.S.C. § 3732, this does not mean that defendants accused of similar but unrelated conduct may be sued in the same district. 31 U.S.C. § 3732(a) does not permit the joinder in one case of multiple defendants involved in multiple, distinct and independent actions in a district where only one or two defendants are found. Rather, 31 U.S.C. § 3732(a) governs only venue – not jurisdiction. *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 865 (2d Cir. 1997); *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*, 976 F. Supp. 207, 210 (S.D.N.Y. 1997).

Under Federal Rule of Civil Procedure 20(a)(2), joinder of multiple defendants is proper only if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Relators must satisfy both requirements. See *United States ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 344 (S.D.N.Y. 2014) (concluding that joinder was **improper** where there

were no allegations suggesting that the defendants could be held jointly or severally liable or that the relators' claims based on each defendants' submission of its own Medicaid bills constituted the same transaction, occurrence or series of occurrences) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)).

Here, the Complaint is wholly devoid of any factual allegations, which if proven true, would suggest that Wake County Defendants can be held jointly or severally liable for any allegedly false claim made by any other named defendant. Further, Plaintiff-Relator's claims based on violations of the FCA and North Carolina State law do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." Plaintiff-Relator simply alleges that Wake County Defendants submitted its own Medicaid bills for remote services provided to its own students. Joinder is improper where, as here, "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013). Therefore, Plaintiff-Relator is not entitled to joinder and his claims against Wake County Defendants must be severed.

This case is analogous to *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,* 8 F.Supp.3d 339 (S.D.N.Y. 2014), aff'd, No. 14-109S-CV (2d. Cir. May 5, 2015). In *Taconic Hills*, the relaters sued the NYCDOE and various upstate New York school districts under the FCA for submitting fraudulent claims to Medicaid for case management services provided to disabled children when defendants already had received funding for those services under IDEA. (*Id*. at 341.) The Court severed the claims against the upstate New York defendants, stating "there are no allegations suggesting that Defendants can be held jointly or severally liable for any allegedly false claim made by any other Defendant." (*Id.* at 344.) Once it severed such claims, the Court found venue did not lie in this Court against the upstate New York defendants under the general venue statute,

i.e., 28 U.S.C. § 1391. In the present case, as in *Taconic Hills*, the claims against Wake County Defendants must be severed. Once those claims are severed, Plaintiff-Relator cannot establish that venue is proper for Wake County Defendants under the general federal venue statute.

Additionally, Plaintiff-Relator cannot establish that this District is the proper venue for Wake County Defendants. According to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." A "substantial part" means that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). In the instant case, any of the purported allegations against Wake County Defendants would have occurred in Wake County, North Carolina, therefore venue is inappropriate in the Southern District of New York.

As neither the Complaint nor any competent extraneous evidence established a cause of action or proper venue, the Court should dismiss the Complaint against Wake County Defendants.

### POINT III

### THIS COURT HAS NO PERSONAL JURISDICTION OVER WAKE COUNTY DEFENDANTS

In most instances, federal courts do not have nationwide personal jurisdiction. With certain exceptions, they have no broader power over persons outside the state in which they sit than do the local state courts. *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.,* 484 U.S. 97, 104-105(1987); see, also, Fed. R. Civ. P. 4(k)(1)(A). In federal question cases, courts first determine whether the defendant is subject to jurisdiction under the law of the forum state; here, New York. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). This requires analysis of New York C.P.L.R. §§ 301 and 302. In analyzing whether a defendant is subject to New York jurisdiction, the *J.T. v. de Blasio*, 500 F.Supp.3d 137 (S.D.N.Y. 2020) court explained:

New York's general jurisdictional statute simply states that, "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. 301. Courts previously held that C.P.L.R. § 301 "confers jurisdiction where a company has engaged in such a continuous and systematic course of 'doing business' in New York that a finding of its 'presence' in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations and citations omitted). [¶] However, as the United States Supreme Court has recently made clear, an assertion of general jurisdiction requires that a defendant "corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotations and citations omitted). "*Daimler* established that, except in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016)). The old "doing business" test for general jurisdiction was effectively abolished by *Daimler*, making it much harder to sue an out-of-state entity in New York for conduct that has no connection to New York. *Id*. at 161-162.

The Complaint is devoid of any factual allegations sufficient to establish personal jurisdiction over Wake County Defendants. The section of the Complaint captioned "JURISDICTION AND VENUE" consists of five paragraphs that purport to invoke subject matter jurisdiction over Plaintiff-Relator's claims, but the Complaint makes no mention of personal jurisdiction. (SAC, ¶¶ 68-72.) The Complaint "PARTIES" section states that "Wake County Public School District operates within the jurisdiction of Wake County, North Carolina." *Id*. at ¶ 57. It also states that Cathy Quiroz Moore serves as "Wake County Public School District's" Superintendent "and is responsible for the oversight and management of the schools within its District." *Id*. at ¶ 58.

The alleged facts fall far short of the "constant and pervasive" contacts justifying the exercise of general jurisdiction. *Daimler, supra*, 571 U.S. at p. 122. The contacts are insufficient to establish due process support for specific jurisdiction as well. Plaintiff-Relator's own allegations highlight the fact that Wake County Defendants operate solely within Wake County, North Carolina. This is demonstrated by this Court's recent ruling in *J.T. v. de Blasio*:

The out-of-state defendants in this case are not subject to general jurisdiction in New York. The Departments of Education, as arms of the several states, are sovereign entities. ***The out-of-state school districts are generally understood to be quasi-municipal corporate entities created under the laws of the states in which they are located***. They are not incorporated, chartered or located in New York. And the contacts Plaintiffs allege that defendants have with New York – the receipt of federal funding by those districts and the (alleged) fact that their pension funds are invested with New York-based entities – are, after *Daimler*, insufficient to render the School Districts "at home" in New York. (*J.T. v. de Blasio, supra,* 500 F.Supp.3d at p. 162 (citations omitted); emphasis added.)

Neither are Wake County Defendants subject to specific jurisdiction under New York's long arm statute, which governs when New York courts will exercise jurisdiction over non-domiciliaries. N.Y. C.P.L.R. 302 provides:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ... transacts any business within the state or contracts anywhere to supply goods or services in the state."

Plaintiff-Relator has failed to allege that Wake County Defendants "transact business" in New York. Even the receipt of federal funding for IDEA, for example, does not render them amenable to suit in this district for their local IDEA violations. Again, *J.T. v. de Blasio* is instructive:

Plaintiffs claim that federal funding, including Medicare and Medicaid, is administered through the Center of Medicare and Medicaid Services ("CMS") – which, they assert, is "located here in New York." (P.I. Mem. at 9, Dkt. No. 122.) But CMS (an agency of the federal government) is headquartered in Baltimore, Maryland …. [¶] Moreover, the OSEP's [USDOE's Office of Special Education Programs] guidance clearly explains that, under the IDEA's grant provision, federal Medicaid funds for the education of disabled students are provided to states, which then pass the money on to LEAs. See Special Education--Grants to States, U.S. Dep't of Educ. (May 5, 2016), https://www2.ed.gov/programs/osepgts/index.html. Therefore, out-of-state school districts receive their federal IDEA funding from the states in which they are located. Plaintiffs do not and cannot credibly allege that any out of state school district receives Medicaid funding under the IDEA from the State of New York. [¶] Finally, plaintiffs specifically allege that IDEA funds are administered through local agencies. (Dkt. No. 122 at 9.) It should go without saying that a school district located in Omaha, Nebraska or in Cobb County, Georgia is not "locally administered" in the State of New York. (*J.T. v. de Blasio, supra,* 500 F.Supp.3d at p. 162.)

Accordingly, the Court lacks personal jurisdiction over this matter and Wake County Defendants' motion should be granted on this basis alone.[5]

## POINT IV

### THE COMPLAINT FAILS TO NAME THE WAKE COUNTY BOARD OF EDUCATION AND THEREFORE SHOULD BE DISMISSED

The Complaint purports to name "Wake County Public School District" as a defendant. Under North Carolina law, the Wake County Board of Education is the body corporate and the entity responsible for defending suits against the local school administrative unit. *See* N.C. Gen. Stat. Section 115C-40. The "Wake County Public School District" cannot be a named defendant in this action because, as a matter of law, no such legal entity exists. The Summons and Complaint in this matter name the "Wake County Public School District" and therefore, the Court lacks personal jurisdiction in this matter and the action must be dismissed.

State law dictates whether a governmental agency has the capacity to be sued in federal court." *Efird v. Riley*, 342 F.Supp.2d 413, 419-20 (M.D.N.C. 2004) (citing *Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir. 1981)). Under North Carolina law, a local board of education – not the school district it governs – is the entity with the legal capacity to sue and be sued. N.C. Gen. Stat. § 115C-40. *See also*, *Hunter v. Wake County Bd. of Ed.*, No. 5:08-CV-62-D, 2008 WL 2695813,

---

[5] The intent of 20 U.S.C. § 1400 et seq. was not to deny a state its sovereignty whenever a claim loosely based on the IDEA is involved. Indeed, 20 U.S.C. § 1403 has been held to be in violation of Section 5 of the Fourteenth Amendment, except when states volunteer to waive Eleventh Amendment immunity with respect to IDEA claims by accepting federal funding under the confines of the Act. *Bradley ex rel. Bradley v. Arkansas Department of Education*, 189 F.3d 745, 755-756 (8th Cir. 1999). Clearly, a state does not waive its sovereign immunity for all causes of action just because it has accepted IDEA funding. *U.S. v. Montrose Chemical Corp. of California*, 788 F.Supp. 1485, 1494 (C.D. Cal. 1992); *Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161, 171(3rd Cir. 2002); *M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark,* 344 F.3d 335 345-346 (3rd Cir. 2003). There is no case law to support a claim that the IDEA waiver would allow a federal FCA cause of action to go forward against the state. The FCA is not a federal law protecting the rights of children with disabilities. It is a federal law protecting the federal government from false claims. Wake County Defendants properly retain their sovereign immunity in such an action even though the alleged false claim may involve IDEA grants.

- 25 -

at * 1 (E.D.N.C. July 8, 2008) (**dismissing Wake County Public Schools as a defendant because it "is not a corporate entity subject to suit under North Carolina law."**).

### POINT V

**CLAIMS AGAINST DEFENDANT CATHY QUIROZ MOORE, IN HER OFFICIAL CAPACITY AS SUPERINTENDENT, SHOULD BE DISMISSED AS DUPLICATIVE**

Assuming *arguendo* this Court deems it has personal jurisdiction over "Wake County Public School District," the claims against Cathy Quiroz Moore must be dismissed as duplicative. Claims made against the school defendants in their official capacities are essentially claims against the school board. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105 (1985). Because official capacity suits are "to be treated as a suit against the entity," the claims against the individual defendants in their official capacity must also be dismissed. *Id..* at 166 (noting that official capacity suits are "to be treated as a suit against the entity" and "not a suit against the official personally"). There are no specific allegations related to Quiroz Moore outside her official capacity as Superintendent. (Dkt. 19 at ¶¶ 232, 246, 248, 250-52). It appears, therefore, that she is listed in the caption for illustrative purposes only and is not properly considered as an individual defendant. *Cf. Biggs v. Meadow*, 66 F.3d 56, 61 (4th Cir. 1995) ("[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity.). Plaintiff-Relator's claims against Quiroz Moore are duplicative of his claims against the improperly named "Wake County Public School District" and should be dismissed. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (**affirming dismissal of official capacity claim against superintendent as duplicative of claims against school board**).

## **CONCLUSION**

The Second Amended Complaint should be dismissed on jurisdictional and should not be transferred to the Eastern District of North Carolina since Wake County Defendants are not liable under the False Claims Act due to the Complaint's failure to state a claim pursuant to Rule 12(b)(6) and the Rule 9(b) particularity standard. For these reasons, Wake County Defendants therefore request that this Court dismiss with prejudice all claims against them.


Respectfully submitted,

Christopher J. Seusing
John A. Darminio