UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA and STATES of the UNITED STATES, ex rel. PATRICK DONOHUE,

Plaintiff-Relator,

- against -

RICHARD CARRANZA, in his official capacity as the former Chancellor of New York City Department of Education, *et al.*,

Defendants.

Case No. 1:20-CV-5396 (GHW) (SDA)

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF RELATOR PATRICK DONOHUE BY DEFENDANTS:**

**NEW YORK CITY DEPARTMENT OF EDUCATION AND RICHARD CARRANZA AND MEISHA PORTER, IN THEIR OFFICIAL CAPACITIES AS FORMER CHANCELLORS OF THE NEW YORK CITY DEPARTMENT OF EDUCATION;**

**BOARD OF EDUCATION OF THE CITY OF CHICAGO AND JOSE M. TORRES, PHD, IN HIS OFFICIAL CAPACITY AS FORMER SUPERINTENDENT OF THE BOARD OF EDUCATION OF THE CITY OF CHICAGO; AND**

**LOS ANGELES UNIFIED SCHOOL DISTRICT AND AUSTIN BEUTNER, IN HIS OFFICIAL CAPACITY AS FORMER SUPERINTENDENT OF THE LOS ANGELES UNIFIED SCHOOL DISTRICT**

HON. SYLVIA O. HINDS-RADIX
CORPORATION COUNSEL OF THE
CITY OF NEW YORK
By: Stephen Kitzinger
Assistant Corporation Counsel
100 Church Street
New York, New York 10009

*Attorneys for Defendants*
*New York City Department of Education,*
*and Richard Carranza and Meisha*
*Porter, in their official capacities as*
*former Chancellors of the New York City*
*Department of Education*

KATTEN MUCHIN ROSENMAN LLP
Joseph V. Willey
Alessandra Denis
50 Rockefeller Plaza
New York, New York 10020

*Attorneys for Defendants*
*New York City Department of Education and its*
*former Chancellors in their official capacities,*
*Richard Carranza and Meisha Porter; Board of*
*Education of the City of Chicago and its former*
*Superintendent in his official capacity, Jose M.*
*Torres, PhD; and Los Angeles Unified School*
*District and its former Superintendent in his official*
*capacity, Austin Beutner*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.    THE SAC'S FIRST AND SECOND CAUSES OF ACTION MUST BE
    DISMISSED ........................................................................................................ 2

        A.    Relator Does Not Refute That the SAC Fails to Allege That the
              School Districts Submitted Any False Claims ............................................. 3

        B.    Relator Does Not Dispute That the School Districts' Alleged
              Conduct Was Compliant with Applicable Government Guidance ............. 5

        C.    Relator Does Not Refute That the SAC Fails to Adequately Allege
              Materiality or Scienter .............................................................................. 7

        D.    Relator Does Not Refute That the SAC Fails  to Adequately Allege
              a Worthless Services Claim ...................................................................... 9

    II.    THE SAC'S REMAINING CAUSES OF ACTION AGAINST THE
    SCHOOL DISTRICTS MUST BE DISMISSED ................................................. 10

    III.    IN THE INTEREST OF JUSTICE, THE COURT SHOULD DECLINE
    TO TRANSFER THE CLAIMS AGAINST CHICAGO BOE ........................... 10

CONCLUSION.................................................................................................................. 13

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Arizona v. California*,
    460 U.S. 605 (1983).................................................................................11, 12

*City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*,
    884 F.3d 798 (7th Cir. 2018) ....................................................................10

*Conte v. Kingston NH Operations LLC*,
    20-CV-0647, 2022 WL 356753 (N.D.N.Y. Feb. 7, 2022) ........................4

*Coyne v. Amgen, Inc.*,
    717 F. App'x 26 (2d Cir. Dec. 18, 2017) ...................................................2

*Daniel v. American Bd. Of Emergency Medicine*,
    428 F.3d 408 (2d. Cir. 2005).....................................................................13

*Gary Friedrich Enterprises, LLC. v. Marvel Enterprises, Inc.*,
    08-CV-01533, 2008 WL 4129640 (Sept. 4, 2008) ..................................12

*J.T. v. de Blasio*,
    500 F. Supp.3d 137 (S.D.N.Y. 2020), *aff'd sub nom. K.M. v. Adams,* No. 21-
    4128, 2021 WL 9352579 (2d Cir. Aug. 31, 2022), *petition for re'hrg filed*,
    No. 21-4128 (2d Cir. Sept. 14, 2022) ....................................................6, 7

*Mikes v. Straus*,
    274 F.3d 687 (2d Cir. 2001), *abrogated on other grounds by Universal Health
    Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ...........4

*Phillips v. Seiter*,
    173 F.3d 609 (7th Cir. 1999) ....................................................................13

*U.S. ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Response,
    Inc.*,
    865 F.3d 71 (2d Cir. 2017).................................................................3, 4, 5

*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*,
    8 F. Supp. 3d 339 (S.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Doe v. New
    York State Sch. Districts*, 597 F. App'x 16 (2d Cir. 2015) ....................6, 7, 11, 13

*U.S. ex rel. Donohue v. Carranza*,
    20-CV-5396, 2022 WL 446042 (S.D.N.Y. Feb. 14, 2022)................11, 13

*U.S. ex rel. Donohue v. Carranza, et al.*,
   22-CV-189, 2022 WL 3226191 (E.D. Va. Jul. 1, 2022), *appeal filed*................................8, 13

*U.S. ex rel. Foreman v. AECOM*,
   19 F.4th 85 (2d Cir. 2021) .............................................................................7, 8

*U.S. ex rel. Hussain v. CDM Smith, Inc.*,
   14-CV-9107, 2017 WL 4326523 (S.D.N.Y. Sept. 27, 2017) ...................................3

*U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
   674 F. App'x 92 (2d Cir. 2017) ...........................................................................4, 8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) ................................................................................................7

## Federal Statutes

20 U.S.C. § 1401(9)(B)..............................................................................................7

28 U.S.C. § 1391.......................................................................................................11

31 U.S.C. § 3729(a)(1)(A)..........................................................................................2

31 U.S.C. § 3729(a)(1)(B)..........................................................................................2

31 U.S.C § 3729(a)(1)(C).........................................................................................10

31 U.S.C § 3729(a)(1)(G).........................................................................................10

42 U.S.C. § 1396b(c)...............................................................................................7, 8

## Federal Regulations and Rules

Fed. R. Civ. P. 9(b) ...................................................................................................1

Fed. R. Civ. P. 12(b)(2)..............................................................................................1

Fed. R. Civ. P. 12(b)(3)..............................................................................................1

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

## State Statutes

740 ILCS 175/1 *et seq.*...........................................................................................10

NYC DOE, Chicago BOE and LAUSD respectfully submit this reply memorandum in further support of their motion to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and, with respect to Chicago BOE and LAUSD, Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).[1] We reply here to each of Relator's memoranda in opposition, the first addressing the School Districts' Rules 12(b)(6) and 9(b) arguments, which Relator framed as applying only to NYC DOE, but which effectively applies to each School District, as the grounds for dismissal are identical for all (*see* Rel.'s Mem. Opp. Mot. Dismiss ("Rel. Mem."), ECF No. 178); and the second addressing the School Districts' Rules 12(b)(2) and 12(b)(3) arguments (*see* Rel.'s Add'l Mem. Opp. Mot. Dismiss ("Rel. Add'l Mem."), ECF No. 179).[2]

## PRELIMINARY STATEMENT

In their Moving Mem., the School Districts demonstrated that the conduct Relator's SAC alleged to be fraudulent was actually compliant with the "relevant Medicaid and IDEA billing requirements" (SAC ¶ 19) set forth in the guidance and modified billing requirements issued by the applicable federal and state agencies during the pandemic (the "Government Guidance"). Relator does not deny that the School Districts' alleged conduct was compliant with such Guidance. Instead, Relator seems to have changed his theory of liability by asserting that the School Districts violated the FCA by, in fact, *complying* with such "relevant Medicaid and IDEA billing requirements"; this, he argues, is because the Government Guidance unlawfully abrogated, altered or modified unspecified federal statutes, is contrary to common sense, and was developed for non-disabled students. (*See* Rel. Mem. at 12-13, 18-20.)

---

[1] The abbreviations and defined terms in the School Districts' moving memorandum are used herein.  (*See* Mem. L. Supp. Mot. Dismiss ("Moving Mem."), ECF No. 169.)

[2] Relator has agreed to voluntarily dismiss the SAC in its entirety with respect to LAUSD. (*See* Rel. Mem. at n.1; Rel. Add'l Mem. at n.4.) If such voluntary dismissal is not effectuated, the SAC should be dismissed as against LAUSD for the reasons set forth in the Moving Mem. and herein.

Such baseless arguments underscore the speciousness of the SAC. We have shown in the Moving Mem. and below that when stripped of general and conclusory allegations that the Court may not credit, the SAC is devoid of any facts upon which to state a claim that the School Districts violated sections 3729(a)(1)(A) and (a)(1)(B) of the FCA:

- There are *no* facts alleged from which this Court could reasonably infer that the School Districts submitted any claims—let alone any false claims—to the Government.

- Relator essentially has conceded that the School Districts' allegedly fraudulent conduct was compliant with the Government Guidance, *i.e.*, the applicable Medicaid and IDEA billing requirements.

- The SAC includes *no* factual allegations that the Government did not know, and would have declined to pay claims for services had it known, of the School Districts' allegedly fraudulent conduct; in fact, the Government *was* aware of such conduct, as the government agencies responsible for the applicable payment decisions authorized such conduct.

- The SAC alleges *no* facts concerning the *actual* performance of the services that Relator alleges were worthless or from which the Court could reasonably infer that such services were of *no* medical value.

As to the remaining causes of action, Relator does not contest, and thereby concedes, the School Districts' demonstration that they should be dismissed.

## ARGUMENT

## I.   THE SAC'S FIRST AND SECOND CAUSES OF ACTION MUST BE DISMISSED

The SAC fails to plead any facts—let alone any particularized allegations—from which this Court could reasonably infer that the School Districts: "(1) made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury," as required to state a claim under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). *Coyne v. Amgen, Inc.*, 717 F. App'x 26, 28 (2d Cir. Dec. 18, 2017) (citation and quotation marks omitted).

### A.   Relator Does Not Refute That the SAC Fails to Allege That the School Districts Submitted Any False Claims

Relator does not dispute the School Districts' showing (Moving Mem. at Argument, Sec. I.A) that the SAC fails to identify a single Medicaid or IDEA claim—let alone a false claim—allegedly submitted to the Government by the School Districts. *See* Rel. Mem. at 2. And, despite reciting eight pages of allegations from the SAC (*see* Rel. Mem. at 2-10), Relator fails to identify any factual allegations with the requisite level of particularity from which the Court may "easily infer" that (i) the School Districts manufactured false claims (*i.e.*, either claims for services that were of no medical value or claims that misrepresented the modality in which services were provided); (ii) the School Districts "actually presented [any such false claims] to the government for reimbursement;" or (iii) such claims are peculiarly in the School Districts' possession. *See U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc. ("Chorches")*, 865 F.3d 71, 84 (2d Cir. 2017); *see generally, id*. at 82-86 (discussing FCA pleading standard).

The Second Circuit has made clear that "merely general or conclusory" allegations are insufficient to withstand a motion to dismiss. *Chorches*, 865 F.3d at 84. Relator relies on *U.S. ex rel. Hussain v. CDM Smith, Inc.*, but there, the Court was able to make the reasonable inference that claims were submitted for goods or services not provided, the cause of action at issue therein, based upon detailed factual allegations that defendant ordered its employees, including relator, to bill time to government contract projects according to a budget instead of hours actually worked, which resulted in the defendant claiming reimbursement from the government for hours that had not been worked. 14-CV-9107, 2017 WL 4326523, at *5 (S.D.N.Y. Sept. 27, 2017). Similarly, in *Chorches*, the complaint alleged detailed facts that defendant, relator's employer, ordered "false or misleading information" to be incorporated into medical records so that services that were not

3

medically necessary "could be certified as medically necessary" *specifically for the purpose of billing Medicare or Medicaid*. *Chorches*, 865 F.3d at 83.

Here, in contrast, the only fraudulent scheme in which the School Districts allegedly engaged was to falsify students' IEPs by recommending in-person services when remote services were expected to be provided (*see, e.g.*, SAC ¶ 72 at 25).[3] But such "falsification" would serve no purpose: the School Districts were not required to, or, in the case of NYC DOE, were instructed not to, amend IEPs to recommend remote services during school closures. (*See infra*, Argument, Sec. I.B; Moving Mem. at 25-26.)[4] Thus, there clearly are no facts in the SAC from which the Court could reasonably infer that the School Districts engaged in a fraudulent scheme "aimed at extracting money the government otherwise would not have paid." *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016).

Relator does not identify any facts alleged in the SAC—because there are none—that could support "a strong inference that false claims *were submitted to the government*." *Chorches*, 865 F.3d at 85; *Conte v. Kingston NH Operations LLC*, 20-CV-0647, 2022 WL 356753, at *14 (N.D.N.Y. Feb. 7, 2022) (holding that plaintiff failed to allege presentment of false claims to the government where "Plaintiff merely stated a set of circumstances and asks the Court to connect

[3] Chicago BOE and LAUSD, however, did recommend remote services in the identified students' IEPs. (*See* Moving Mem. at n.14.)

[4] Contrary to Relator's argument, the individualized allegations as to each of the School Districts concern services that were "rendered" or "delivered" to the students identified for such School Districts (*see e.g.*, SAC ¶¶ 88, 183, 212 at 59); there are no allegations that the individual School Districts "submitted claims for related services that . . . were not offered to disabled students at all" (Rel. Mem. at 10). *See, e.g.*, *U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 94-95 (2d Cir. 2017) (affirming the district court's decision "to dismiss [relator's] complaint insofar as it grouped defendants together and failed to plead facts as to each defendant's obligation to repay the government, an essential element of his FCA claims").

the dots by *assuming* that Defendant submitted false claims") (emphasis added). In *Chorches*, "in alleging that supervisors specifically referenced Medicare as the provider to whose requirements the allegedly falsified revisions were intended to conform, the [complaint] supports a strong inference that false claims were submitted to the government." *Chorches*, 865 F.3d at 85. Here, none of the students identified in the SAC are even alleged to be Medicaid eligible; thus, no inference can be made that Medicaid claims for services furnished to such students were submitted to the Government.

Relator also fails to identify any "*facts establishing specific reasons*" why information regarding the submission of the alleged Medicaid or IDEA false claims is peculiarly within the School Districts' knowledge. *Id*. at 82 (emphasis added). In *Chorches*, the complaint set forth facts that the relator, who was not a beneficiary of the services at issue, had no access to the billing records or the claims that were submitted. *Id.* at 82-83. The SAC, in contrast, alleges that Relator had first-hand knowledge of the submission of alleged false claims. (*See e.g.,* SAC ¶ 62.)

### B.   Relator Does Not Dispute That the School Districts' Alleged Conduct Was Compliant with Applicable Government Guidance

Relator does not dispute that the Government Guidance issued by the federal and state agencies responsible for implementing, and making payment decisions under, the IDEA and Medicaid program: (i) clearly authorized the provision of related services remotely during school closures as a result of COVID-19; (ii) did not require lEPs to be updated to reflect the provision of such services remotely; (iii) provided reimbursement for such remote services at the same Medicaid rates applicable to services provided in person; and (iv) emphasized that the IDEA allowed for flexibility in determining how FAPE could be provided, taking into account the extraordinary burdens placed upon schools, staff, providers, students and families during the

pandemic. Nor does Relator dispute that the School Districts' allegedly fraudulent conduct was, in fact, consistent with the Government Guidance. (*See* Moving Mem. at Argument, Sec. I.B.)

In the face of this Government Guidance that fully authorized the School Districts to take the actions the SAC alleges were unlawful, Relator tries a different tack; now, incredibly, Relator argues that the School Districts violated the FCA *because* they complied with such Government Guidance that, according to Relator, inappropriately "abrogate[d], alter[ed] or modif[ied] the provisions of a federal statute" (Rel. Mem. at 12; *see id.*, at 13, 18-20). There is no basis for this frivolous argument. And, even if such *government agencies* did issue "false guidance," as Relator claims, relying upon, and acting in accordance with, such guidance does not constitute fraud. For example, in *U.S. ex rel. Doe v. Taconic Hills Center School District* ("*Taconic Hills*"), the relators argued that defendant school districts violated the FCA by submitting Medicaid claims in accordance with New York State guidance because such guidance allegedly contradicted federal Medicaid regulations. 8 F. Supp.3d 339, 347 (S.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Doe v. New York State Sch. Districts*, 597 F. App'x 16 (2d Cir. 2015). The District Court rejected this argument, holding that "any conflict between federal and state Medicaid regulations is the fault of New York State, which set up these billing procedures. It is not the fault of school districts like the DOE, which acted in accordance with these billing procedures as required by state law." *Id.*

Relator alternatively argues that the Court is prohibited from taking the Government Guidance into account at this stage. (*See* Rel. Mem. at 17.) This is incorrect. The Government Guidance constitutes "matters of public record that were published on an official government website, which means a court can take judicial notice of them" on a motion to dismiss. *J.T. v. de Blasio*, 500 F.Supp.3d 137, 150 (S.D.N.Y. 2020), *aff'd sub nom. K.M. v. Adams,* No. 21-4128, 2021 WL 9352579 (2d Cir. Aug. 31, 2022), *petition for re'hrg filed*, No. 21-4128 (2d Cir. Sept.

14, 2022). It also can be considered on the grounds that such documents are referenced in, and are integral to, the SAC. *See id.* at 150.[5] Relator's legally false claims theory hinges on the fact that the School Districts violated "Medicaid and IDEA billing requirements" (SAC ¶¶ 1, 19); determining whether the SAC adequately states a claim, and whether it satisfies the FCA materiality or scienter requirements, necessarily requires review of the billing requirements with which the School Districts actually must comply rather than those conjured by Relator. *See Taconic Hills*, 8 F. Supp.3d at 347.

### C.   Relator Does Not Refute That the SAC Fails to Adequately Allege Materiality or Scienter

Relator fails to refute the School Districts' demonstration (Moving Mem. at Argument, Sec. I.C) that the SAC failed to adequately allege the rigorous materiality and scienter requirements of the FCA. *See e.g., U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 109 (2d Cir. 2021); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016).

Relator contends that materiality was adequately pled because the SAC (¶¶ 81 at 19, 106) alleges that the School Districts violated an express condition of payment, *i.e.,* Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 (codified at 42 U.S.C. § 1396b(c)) (*see* Rel. Mem. at 14-15), but this Section 411(k)(13)—which prohibits the Government from *denying* Medicaid claims for services "because such services are included in the child's [IEP]"—is not, in fact, an express condition of payment. *See Foreman*, 19 F.4th at 110-111 (holding that relator's allegations of contractual or regulatory violations were not indicative of materiality where there

---

[5] Relator acknowledged in the SAC that (i) to provide FAPE, LEAs must "meet the standards of the State educational agency" (*see* SAC ¶ 74 at 16, n.2; 20 U.S.C. § 1401(9)(B)); and (ii) the School Districts "must follow state guidance as to how claims are to be submitted for [Medicaid] reimbursement[,] . . . maintain proper documentation and follow the reporting requirements to avoid fraud" (SAC ¶ 81 at 19.  The SAC even cites "the clear guidance" from the NYSED and NYS DOH that Relator now contends constitutes "false guidance." (*Id*. ¶¶ 53-54 at 21.)

were "no provisions in the contract or in the federal regulations specifically designating any of the contractual or regulatory requirements that [relator] alleges [defendant] violated as an express condition of payment"). Further, as recognized by the Eastern District of Virginia—in dismissing the SAC as against the Loudoun Defendants—the SAC mischaracterizes Section 411(k)(13):

> [Section 411(k) (13) of the Medicare Catastrophic Coverage Act of 1988] does not . . . speak to Relator's other claims that Defendants were required to bill at reduced rates for remote services or were forbidden from seeking reimbursement at all for services rendered to severely disabled student via remote means. Therefore, Section 411(k) (13) does not provide a plausible basis for the Court to infer that Defendants committed an "objective falsehood" by submitting reimbursement claims to Medicaid for IEP-related services provided via remote means.

*U.S. ex rel. Donohue v. Carranza, et al.*, 22-CV-189, 2022 WL 3226191, *6 (E.D. Va. Jul. 1, 2022), *appeal filed.* (*See also* Moving Mem. at 20.)

Nor was materiality adequately pled because the SAC purportedly alleges that the defendants, generally, "billed Medicaid for services that were not provided at all." Rel. Mem. at 15. As discussed *supra*, at n.4, the SAC does not make any such allegations as to the individual School Districts. *See, e.g., Takemoto*, 674 F. App'x at 94-95 (affirming the district court's decision where the allegations were not specific to each defendant and "suppl[ied] nothing but low-octane fuel for speculation"). Further, "conclusory allegations do not suffice to establish materiality with the required particularity." *Foreman*, 19 F.4th at n.9.[6]

Relator also fails to contest the School Districts' showing that the SAC—which conclusorily alleges that the School Districts *knew* that their conduct made them ineligible for

---

[6] Contrary to Relator's contention (*see* Rel. Mem. at 20), that the USDOE *did not* specify a reduction in its IDEA award letters to Texas—whose application shows that FAPE likely was not provided to all eligible children in Texas—*is* indicative that a failure to provide FAPE to the students identified in the SAC is not material to USDOE's payment determination. (*See* Moving Mem. at 27.) This is especially so because, per the SAC, Texas should not have been eligible for *any* IDEA funds in such case. (*See* SAC ¶ 273 (alleging that "violating [IDEA] regulations would have made the claimant ineligible to receive [IDEA] funding").)

IDEA and Medicaid reimbursement—failed to meet the scienter requirement. (*See* Rel. Mem. at 15-20.) The scienter requirement simply cannot be met given that the fraudulent conduct in which the School Districts allegedly engaged is consistent with the conduct that was authorized by the Government Guidance. (*See supra*, at Argument, Sec. 1.B.)

Unable to dispute that the School Districts' allegedly fraudulent conduct was authorized by and compliant with the Government Guidance, Relator repeats the frivolous argument that the Government Guidance constitutes "false guidance" (*see supra*, at Argument, Sec. 1.B), and makes the further specious argument that the School Districts *should have known not to comply* with the Government Guidance as it (i) is contrary to "common sense" because certain services "cannot physically be provided remotely;" and (ii) was developed for non-disabled students (even though such Guidance clearly concerns services furnished to *students with disabilities)*. (*See* Rel. Mem. at 18.) Relator's disagreement with the Government Guidance does not render unlawful actions taken by the School Districts in accordance with such Guidance. (*See* Moving Mem. at 29-30.)

### D.   Relator Does Not Refute That the SAC Fails to Adequately Allege a Worthless Services Claim

The School Districts demonstrated that the SAC describes only the services that were *recommended* in students' IEPs, and that it lacks any facts concerning the *actual* performance of such services or from which the Court could reasonably infer that: (i) the services had *no* medical value; or (ii) the rigorous scienter and materiality requirements under the FCA have been met. (*See* Moving Mem. at Argument, Section I.D.) Relator fails to rebut this showing, and merely cites to conclusory or irrelevant allegations[7] in the SAC that are devoid of plausible facts from which the

---

[7] Relator cites to an allegation about services furnished at Horan School, which is irrelevant as none of the students identified in the SAC attended such school. (*See* Moving Mem. at 14-15.)

Court could reasonably infer that the School Districts furnished worthless services. (*See* Rel. Mem. at 21-22.)

## II.   THE SAC'S REMAINING CAUSES OF ACTION AGAINST THE SCHOOL DISTRICTS MUST BE DISMISSED

Relator does not contest, and thus concedes, that the third and fourth causes of action (brought under 31 U.S.C. §§ 3729(a)(1)(G) and 3729(a)(1)(C), respectively) against the School Districts should be dismissed. (*See* Moving Mem. at Argument, Secs. II, III.) Relator also does not address the demonstration (Moving Mem. at Argument, Sec. V) that the Illinois False Claims Act (740 ILCS 175/1 *et seq.*) cause of action against Chicago BOE should be dismissed for the same reasons warranting the dismissal of first and second causes of action. *See City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*, 884 F.3d 798, 802 (7th Cir. 2018) ("Illinois courts have relied upon federal cases interpreting the FCA in construing the provisions of the [Illinois False Claims Act].").[8] Finally, Relator has agreed to voluntarily dismiss the non-federal causes of action against NYC DOE and LAUSD. (*See* Rel. Mem. at n.1.) If such voluntary dismissal is not effectuated, they nonetheless should be dismissed for the reasons set forth in the Moving Mem. at Argument, Section V.

## III.   IN THE INTEREST OF JUSTICE, THE COURT SHOULD DECLINE TO TRANSFER THE CLAIMS AGAINST CHICAGO BOE

The School Districts' Moving Mem. (Argument, Sec. VI) demonstrated that because Chicago BOE was not properly joined as a defendant with NYC DOE in this action, venue is not proper in this Court, and that the Court should, in the interest of justice, decline to transfer the case

---

[8] Since filing the motion to dismiss, we have learned that State of Illinois is aware of, and has declined to intervene in, this case.

and instead dismiss it.[9] (*See* Moving Mem. at 34-35 (citing *Taconic Hills*, 8 F. Supp. 3d at 344-45; 28 U.S.C. § 1391).) Relator concedes that venue in this Court is improper. (*See* Rel. Add'l Mem. at 3-4.) Relator, however, does not address Chicago BOE's argument that this case should not be transferred in the interest of justice. Rather, Relator suggests that, given the Court's previous decision to transfer the claims against the Loudoun Defendants to the Eastern District of Virginia, the "law of the case doctrine" requires the Court to therefore automatically transfer the claims against all of the remaining defendants (other than NYC DOE) to those district courts in which venue is proper. (*Id*. at 3-4.) In so doing, Relator makes yet another frivolous argument.

The "law of the case" doctrine simply does not apply here. It might have applied if Chicago BOE were asking this Court to reconsider its decision to transfer the case as against the Loudoun Defendants to the Eastern District of Virginia, but it is not. The Loudoun Decision—which concerns defendants that are entirely independent of Chicago BOE—does not concern the "same issue" as the one applicable here – *i.e.*, whether this Court should decline to transfer this case as against *Chicago BOE*. Nor does the fact that the School Districts' motion to dismiss was filed *after* the issuance of the Loudoun Decision—which concerned the Loudoun Defendants' motion to dismiss—render the School Districts' motion a "subsequent stage[] in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (describing the "law of the case" doctrine as an "amorphous concept" that "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). If this Court were to automatically transfer all such remaining defendants to other district courts without consideration of the merits of their arguments based upon the law of the case doctrine, as Relator requests, it

---

[9] If Relator's voluntary dismissal of the SAC as against LAUSD (*see supra*, n.2) is not effectuated, this Argument, Section III similarly applies to LAUSD.

would constitute a violation of their due process rights to make their own arguments based upon the record as it applies to them and to bring to light applicable laws, government agency guidance, and case law that their co-defendants may have failed to raise.[10]

Even if this Court were to determine that the "law of the case" doctrine applied here, "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Id.* at 618, n. 8; *see also Gary Friedrich Enterprises, LLC. v. Marvel Enterprises, Inc.,* 08-CV-01533, 2008 WL 4129640, at *2 (S.D.N.Y. Sept. 4, 2008) (noting that the law of the case doctrine is "at best, a discretionary doctrine which does not constitute a limitation on the court's power" (citations omitted)). Such is the case here. As demonstrated in the School Districts' Moving Mem. and herein, it is plainly in the interest of justice for this Court to decline to transfer, and to instead dismiss, the case as against Chicago BOE because: (i) dismissal of the SAC clearly is warranted as to NYC DOE, and the SAC's allegations against Chicago BOE are virtually identical to those against NYC DOE, and (ii) the authorities authorizing the provision of related services via telehealth are substantively identical for each School District.

That the interest of justice is best served by this Court's declining to transfer this case to another district court is made even clearer by the recent decision by the Eastern District of Virginia to dismiss the claims against the Loudoun Defendants with prejudice, determining that, *e.g.*,:

> Relator's specific allegations, supposedly showing "first-hand knowledge" of Defendants' fraud, do not state facts that make his claims plausible. . . . [T]hey appear contradictory or, at the very least, vague and ambiguous.

---

[10] Relator's argument that not transferring this case as to the remaining defendants "would prejudice Plaintiff Relator" (Rel. Mem. at 4) is unavailing. Relator has had ample opportunity to respond to the defendants' arguments as to why transfer of this case would not be in the interest of justice. In fact, Rel. Mem. does address the merits of such arguments as they were made by Chicago BOE. (*See* Rel. Add'l Mem. at 5 ("[T]he main arguments that the Relator would make in opposition to the merits have already been addressed in the Opposition to Loudoun County and New York City Defendants [*i.e.*,Rel. Mem.].")); *see also supra,* at 1.)

> The Court is [] unable to draw any reasonable inferences from Relator's . . . allegations that make plausible that Defendants submitted false claims or statements to Medicaid in connection with reimbursement for IEP-related services.
>
> Additionally, the Second Amended Complaint fails to plausibly allege other key elements of an FCA claim such as scienter.

*Donohue*, 2022 WL 3226191, at *6 -*7. This case clearly has no merit and the Court should decline to transfer it; indeed, a decision to transfer this case as against Chicago BOE would be contrary to the very policy considerations of judicial efficiency upon which Relator relies to argue that the Court should do just that. (Rel. Mem. at 3.) As the Second Circuit has instructed:

> [C]ourts will not "waste judicial resources by transferring a case that is clearly doomed." . . . [A] court's limited jurisdiction "to decide whether to transfer or dismiss" a case over which it lacks jurisdiction [] includes "a power of limited review of the merits." If "a peek at the merits[] reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed—the court that does not have jurisdiction—should dismiss the case rather than waste the time of another court."

*Daniel v. American Bd. Of Emergency Medicine*, 428 F.3d 408, 436 (2d. Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (affirming district court's decision that "plaintiffs lack antitrust standing to pursue their claim and conclud[ing] that transfer to another district is not in the interest of justice").

Thus, the dismissal of this case as against Chicago BOE instead of a transfer to another district court would serve "the ultimate goal of the expeditious and orderly adjudication of cases and controversies on their merits." *See Loudoun Decision*, at *3; *see also Taconic Hills*, 8 F. Supp. 3d at 344-45 (declining to transfer in similar circumstances).

## CONCLUSION

For the reasons set forth in the Moving Mem. and herein, the School Districts respectfully request dismissal of the SAC with prejudice, and such other and further relief as the Court deems just and proper.

Dated: New York, New York

September 16, 2022

KATTEN MUCHIN ROSENMAN LLP

By: /s/ Joseph V. Willey

HON. SYLVIA O. HINDS-RADIX
CORPORATION COUNSEL OF THE
CITY OF NEW YORK
By: Stephen Kitzinger
Assistant Corporation Counsel
100 Church Street
New York, New York 10009
(212) 356-2087 (phone)
SKitzing@law.nyc.gov

*Attorneys for Defendants*
*New York City Department of Education,*
*and Richard Carranza and Meisha Porter,*
*in their official capacities as former*
*Chancellors of the New York City*
*Department Education*

Joseph V. Willey
Alessandra Denis

50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800 (phone)
(212) 940-8776 (fax)
joseph.willey@katten.com
alessandra.denis@katten.com

*Attorneys for Defendants*
*New York City Department of Education and its*
*former Chancellors in their official capacities,*
*Richard Carranza and Meisha Porter; Board of*
*Education of the City of Chicago and its former*
*Superintendent in his official capacity, Jose M.*
*Torres, PhD; and Los Angeles Unified School*
*District and its former Superintendent in his official*
*capacity, Austin Beutner*