UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and STATES OF THE UNITED STATES, ex rel. PATRICK DONOHUE,<br><br>                    Plaintiff-Relator,<br><br>         -against-<br><br>RICHARD CARRANZA, et al.,<br><br>                    Defendants. | Case No. 20-cv-05396-GHW-SDA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT BY
DEFENDANTS NIAGARA FALLS CITY SCHOOL DISTRICT AND
MARK LAURRIE, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT**

Shaub, Ahmuty, Citrin & Spratt, LLP
*Attorneys for Defendants*
*Niagara Falls City School District s/h/a*
*Niagara Falls Public School District and*
*Mark Laurrie, in his official capacity*
*as Superintendent*
1983 Marcus Avenue, Suite 260
Lake Success, NY 11042
(516) 488-3300

Of Counsel:
  Jonathan P. Shaub
  Nicholas Tam

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..........................................................................................................................1

    A. Factual Background ..........................................................................................................1

    B. Motions to Dismiss the SAC ............................................................................................2

ARGUMENT ................................................................................................................................2

RELATOR'S SAC SHOULD BE DISMISSED
BECAUSE IT FAILS TO STATE A CAUSE OF ACTION
AND ALLEGE ANY FRAUDULENT CONDUCT BY NIAGARA ............................................2

    A. Applicable Standards ........................................................................................................2

        1. Motion to Dismiss .......................................................................................................2

        2. Fraud ...........................................................................................................................3

    B. Relator's SAC Fails To Allege Any Fraudulent
       Conduct Or Violation Of The False Claims Act .............................................................4

    C. The SAC Should Be Dismissed For Improper Venue .......................................................8

CONCLUSION ..............................................................................................................................9

## TABLE OF AUTHORITIES

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)............................................................................................................3, 8

Cosmas v. Hassett,
    886 F.2d 8 (2d Cir. 1989) .......................................................................................................4

Coyne v. Amgen, Inc.,
    717 F. App'x 26  (2d Cir. 2017) .............................................................................................6

Gulf Ins. Co. v. Glasbrenner,
    417 F.3d 353 (2d Cir. 2005)...................................................................................................8

J.T. v. de Blasio,
    500 F. Supp.3d 137 (S.D.N.Y. 2020).....................................................................................6

Lundy v. Catholic Health Sys. of Long Island,
    711 F.3d 106 (2d Cir. 2013)...................................................................................................3

Ruotolo v. City of N.Y.,
    514 F.3d 184 (2d Cir. 2008)...................................................................................................3

Transhorn, Ltd. v. United Techs. Corp.,
    502 F.3d 47 (2d Cir. 2007).....................................................................................................3

Universal Health Servs., Inc. v. U.S.,
    579 U.S. 176 (2016)...............................................................................................................6

U.S. ex rel. Chorches v. Am. Med. Response, Inc.,
    865 F.3d. 71 (2d Cir. 2017)....................................................................................................4

U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.,
    8 F. Supp.3d 339 (S.D.N.Y. Mar. 24, 2014)..........................................................................9

U.S. ex rel. Donohue v. Carranza,
    585 F. Supp. 3d 383 (S.D.N.Y. Feb. 14, 2022).......................................................................9

U.S. ex rel. Donohue v. Carranza,
    No. 22-CV-00189 (AJT) (IDD), 2022 WL 3226191
    (E.D. Va. July 1, 2022) ..........................................................................................................6

U.S. ex rel. Foreman v. AECOM,
    19 F.4th 85 (2d Cir. 2021) .....................................................................................................7

U.S. ex rel. Ladas v. Exelis, Inc.,
    824 F.3d 16 (2d Cir. 2016) ..........................................................................................7

U.S. ex rel. O'Toole v Cmty. Living Corp.,
    No. 17 Civ. 4007, 2020 WL 2512099
    (S.D.N.Y. May 14, 2020) ...........................................................................................8

### Statutes and Other Authorities

28 U.S.C. § 1391(b)(2) .............................................................................................................8

31 U.S.C. § 3729(a)(1)(A) ....................................................................................................4, 7

31 U.S.C. § 3729(a)(1)(B) ....................................................................................................4, 7

31 U.S.C. § 3729(a)(1)(C) ....................................................................................................4, 7

31 U.S.C. § 3729(a)(1(G) .....................................................................................................4, 7

31 U.S.C. § 3732(a) .................................................................................................................9

False Claims Act ............................................................................................................. *passim*

Fed. R. Civ. P. 8(a)(2) ..............................................................................................................3

Fed. R. Civ. P. 9(b) ......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(3) ............................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 2, 8

Individuals with Disabilities Education Act ................................................................... *passim*

Medicare Catastrophic Coverage Act Section 411(k)(13) .......................................................2

N.Y. Dep't Health, Medicaid In Education
Alert, Issue # 20-02 (Apr. 2, 2020) ..........................................................................................6

Off. Special Educ. Programs, U.S. Dep't Educ., OSEP QA 20-01: IDEA
Part B Service Provision, 1-2 (Sept. 28, 2020) .......................................................................5

Off. Special Educ. Rehab. Servs., U.S. Dep't Educ., Supplemental Fact Sheet:
Addressing the Risk of Covid-19 in Preschool, Elementary and Secondary
Schools While Serving Children with Disabilities, 1-2 (March 21, 2020) ..............................5

U.S. DOE, March 2020 Covid-19 Q&As at 5 ........................................................................5

PRELIMINARY STATEMENT

Defendants Niagara Falls City School District s/h/a Niagara Falls Public School District and Mark Laurrie, in his official capacity as Superintendent (collectively, "Niagara"), submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), 9(b), and 12(b)(3) to dismiss the relator's Second Amended Complaint ("SAC") (Dkt. # 19) for failure to state a claim on which relief can be granted, failure to plead fraud with particularity, and improper venue.

BACKGROUND

A.  Factual Background

This is a *qui tam* action filed by relator against Niagara and numerous other school entities and their Superintendents (Dkt. # 19).  Relator alleges that Niagara and others violated the False Claims Act ("FCA") by filing fraudulent claims for Medicaid reimbursement and knowingly violating the Individuals with Disabilities Education Act ("IDEA") (SAC ¶ 126).  He claims that Niagara provided remote-learning services to students during the height of the COVID-19 pandemic as an accommodation, but failed to amend the students' Individualized Education Plans ("IEPs") to include remote services (SAC ¶ 132).  Relator alleges that Niagara received reimbursement from Medicaid for remote services at "full rates", which ran afoul of Medicaid billing requirements because they purportedly "misrepresent[ed] that such services were in compliance with the relevant State and federal laws" (SAC ¶ 1).  These "fraudulent" claims, relator alleges, violated the FCA (SAC ¶ 3).

Relator relies upon the IEP of T.S., a 17-year-old student in Niagara Falls, to substantiate his allegations against Niagara (SAC ¶ 128, Ex. 11).  He contends that T.S.'s behavioral issues require the attention of multiple adults and tactile input to promote sensory regulation, which

were not addressed in an IEP meeting when Niagara placed T.S. in a remote-learning environment occasioned by the pandemic (SAC ¶ 132). Niagara, relator contends, "rendered useless [remote] services to the student" and "billed Medicaid for said services" in violation of Section 411(k)(13) of the Medicare Catastrophic Coverage Act (SAC ¶¶ 133-34). Relator asserts that Niagara's services violated IDEA regulations requiring that it provide a free appropriate public education ("FAPE") to the student (SAC ¶ 138). These actions were, according to relator, in furtherance of a "scheme to defraud" the government for Medicaid funding (SAC ¶ 140).

B.  Motions to Dismiss the SAC

Other defendants have already moved to dismiss the SAC for failure to state a claim, including the New York City Department of Education, et al. ("DOE") (Dkt. ## 165, 169, 186) and Buffalo Public School District ("Buffalo") (Dkt. ## 149, 150). Niagara acknowledges that extensive briefing has been completed (see Dkt. # 228, Court Order). Accordingly, in the interests of brevity, Niagara expressly incorporates by reference the arguments of DOE, Buffalo, and the other moving defendants, and briefly supplements them where appropriate.

For the reasons that follow, Niagara's motion should be granted.

ARGUMENT

RELATOR'S SAC SHOULD BE DISMISSED
BECAUSE IT FAILS TO STATE A CAUSE OF ACTION
AND ALLEGE ANY FRAUDULENT CONDUCT BY NIAGARA

A.  Applicable Standards

1.  Motion to Dismiss

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the pleading's facial sufficiency using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation" in order to withstand scrutiny. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " Id. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, this rule commands that a complaint contain more than mere legal conclusions. See id. at 679.

A complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)); see also Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " Transhorn, Ltd. v. United Techs. Corp., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 546).

2. Fraud

As relator's allegations are predicated on fraud, they are subject to the heightened pleading standards of Rule 9(b) and "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Lundy v. Catholic Health Sys. of Long Island, 711 F.3d 106, 119 (2d Cir. 2013) (plaintiff failed to plead "particular details regarding the alleged fraudulent mailings. Bare-bones allegations do not satisfy Rule 9(b)").

"To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements

were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); see also U.S. ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d. 71, 86 (2d Cir. 2017).

B.  Relator's SAC Fails To Allege Any Fraudulent
    Conduct Or Violation Of The False Claims Act

The SAC must be dismissed because it fails to allege: (i) that Niagara used false statements and submitted fraudulent claims to the government, including reimbursement for funds under IDEA and/or Medicaid; (ii) a reverse false claim; and/or (iii) a conspiracy to defraud the government (see 31 U.S.C. §§ 3729(a)(1)(A), (B), (C) and (G)). While the SAC contends that Niagara rendered "inappropriate" remote services during the COVID-19 pandemic and submitted false claims without revising students' IEPs, it ignores the guidance issued by administrative bodies permitting remote learning services. Relator thus fails to establish the requisite scienter element of a fraud claim since schools were expressly permitted to provide remote services.

At the outset, relator's SAC fails to allege that Niagara submitted any false claims to the government for reimbursement by "provid[ing] details of actual bills or invoices submitted to the government" or "mak[ing] plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted and that information about the details of the claims submitted are peculiarly within the opposing party's knowledge." Chorches, 865 F.3d at 83. Far from making any such factual allegations, relator merely asserts that his "expertise and experience lead to the allegations herein." (SAC ¶ 133). These illusory statements that form the shaky foundation of the SAC – lacking in particularly as to the details of who and when such "false" claims were submitted – fall well short of the heightened pleading requirements of the FCA under Rule 9(b).

Indeed, while the SAC alleges that Niagara purportedly violated *Medicaid* billing guidelines, it does not even state that Niagara sought *IDEA* funds. Relator's allegations against

-4-

Niagara allege only that billing for "remote sessions is not only inappropriate, but runs afoul of the *Medicaid* billing restrictions" (SAC ¶ 136 [emphasis added]) and that it "benefitted from their unlawful acts by collecting *Medicaid* reimbursement payments for services that were not offered in accordance with the IEPs" (Compare SAC ¶ 139 [emphasis added], with SAC ¶ 120 – "[BPSD's] billing for any "remote sessions" . . . runs afoul of the *Medicaid and IDEA* billing restrictions" [emphasis added]). Therefore, any allegations regarding allegedly fraudulent reimbursement for IDEA funds as to other defendants do not pertain to Niagara.

Nor does Relator plausibly plead that Niagara submitted a *false* or *fraudulent* claim. While the SAC contends that Niagara submitted false claims for "inappropriate" remote services, it ignores the guidance issued by various administrative bodies, including the New York State Medicaid Agency and the United States Department of Education (see generally, Dkt. # 169, DOE Mem. of Law at 21). These agencies expressly authorized distance instruction[1], stated that IEPs "may, but are not required to, include distance learning plans"[2], and allowed "hybrid model[s]" that incorporated a combination of in-person and remote/distance services to balance "continued academic growth" with "the safety of the local school community being of paramount significance."[3] (See DOE Mem. of Law at 4-7).

The New York State Department of Health ("DOH") advised that Preschool/School Supportive Health Services Program services would be reimbursed "under current rates" when delivered by "Two-way audio/video communication"; "Video"; and "Telephonic

---

[1] Off. Special Educ. Rehab. Servs., U.S. Dep't Educ., Supplemental Fact Sheet: Addressing the Risk of Covid-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities, 1-2 (March 21, 2020).

[2] U.S. DOE, March 2020 Covid-19 Q&As at 5.

[3] Off. Special Educ. Programs, U.S. Dep't Educ., OSEP QA 20-01: IDEA Part B Service Provision, 1-2 (Sept. 28, 2020).

communication."[4] The guidance on billing for such remote services specifically stated: "Payment for services delivered via telephonically/telehealth during this emergency will be the same as if the services were delivered face-to-face. Please note that temporary changes to service delivery due to school closures do not require changes to the IEP. . . . This does not preclude the need for the service itself to be in the IEP." Id.[5]

Given that remote services were permitted, the SAC fails to allege any facts to establish the FCA's rigorous materiality and scienter requirements. See Universal Health Servs., Inc. v. United States, 579 U.S. 176 (2016). Relator merely recites the language of the FCA and fails to allege facts to show that the government would not have made payment had they known Niagara provided remote, rather than in-person services without amending the IEPs, or that Niagara submitted claims that violated regulations with the requisite intent. Coyne v. Amgen, Inc., 717 F. App'x 26, 29 (2d Cir. 2017).

Ultimately, relator's FCA allegations are virtually indistinguishable from those raised and rejected in U.S. ex rel. Donohue v. Carranza, No. 22 Civ. 00189 (AJT) (IDD), 2022 WL 3226191 (E.D. Va. July 1, 2022). Like the instant case, relator attached an IEP of a student with multiple disabilities and alleged that the defendants' claims for Medicaid reimbursement based upon inadequate[6] remote learning services were "unlawful." The court found relator's specific allegations (id. at 6):

---

[4] N.Y. DEP'T HEALTH, MEDICAID IN EDUCATION ALERT, ISSUE # 20-02 (Apr. 2, 2020); see also Dkt. # 169, DOE Mem. of Law at 12.

[5] Relator was aware of such guidance based upon the matter J.T. v. de Blasio, 500 F. Supp.3d 137 (S.D.N.Y. 2020), a prior action filed by his law firm.

[6] Nor does the SAC allege that Niagara student T.S. suffered a substantial educational deprivation because of remote learning services to constitute a denial of a FAPE or render Niagara's reimbursement claims fraudulent (see Dkt. # 150, Buffalo Mem. of Law at 18-19). To the extent relator claims the services provided by Niagara were "worthless" (SAC ¶ 275), the SAC contains no allegations that the remote learning did not provide *any* value. At most, one could infer that relator alleges that remote learning was not the equivalent of in-person learning. See SAC ¶ 135 (Niagara

>[F]ail to provide any facts that would suggest the Defendants fraudulently formulated IEPs, such as by purposely including in-person services in IEPs with no intention of providing those services. Relator, moreover, provides no factual allegations that T.A. did not meaningfully participate or receive the IEP services or that T.A.'s IEP was somehow otherwise fraudulent. The Court is accordingly unable to draw any reasonable inferences from Relator's T.A allegations that make plausible that Defendants submitted false claims or statements to Medicaid in connection with reimbursement for IEP-related services.

The court also found that the SAC (Id. at 7):

>[F]ails to plausibly allege other key elements of an FCA claim such as scienter. To state a claim for an FCA violation a plaintiff must establish that there was intent on the part of the defendant to present a false claim . . . [r]elator only alleges that Defendants "knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval" and "knowingly made, used, or caused to be made or use, a false record or statement material to a false or fraudulent claim." [SAC ¶ 192.] Such conclusory allegations and "formulaic recitation of the elements" of an FCA claim are insufficient to satisfy Rule 8's pleading requirements, let alone Rule 9(b)'s heightened pleading standard.

Relator's "reverse false claims" under 31 U.S.C § 3729(a)(1)(G) are based upon the same predicate facts and must be dismissed as merely duplicative of the claims supporting his FCA claims under §§ 3729(a)(1)(A) and (B). See U.S. ex rel. Foreman v. AECOM, 19 F.4th 85, (2d Cir. 2021) ("[h]is reverse false claims are therefore duplicative of his false claims under § 3729(a)(1)(A) and 3729(a)(1)(B)").

Finally, the SAC's conspiracy claim (SAC ¶ 294) pursuant to 31 U.S.C. § 3729(a)(1)(C) is bare-bones and fails to contain any allegations that Niagara entered into an unlawful agreement to defraud the government. See U.S. ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 27 (2d Cir. 2016) (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government"); U.S. ex rel. O'Toole v Cmty. Living Corp., No. 17 Civ. 4007, 2020 WL 2512099, at *11, n.7 (S.D.N.Y. May 14, 2020) (relator must at least allege that the defendants had "an unlawful

---

"should have reconvened an IEP meeting with the Student's parent(s) to recommend remote related services"). Accordingly, the SAC fails to adequately plead a worthless services claim.

agreement . . . to violate the FCA"). Relator simply regurgitates the elements of a conspiracy cause of action, which necessitates dismissal. See Ashcroft, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement).

Accordingly, the SAC fails to meet the pleading standards of Rule 12(b)(6) and Rule 9(b)'s heightened pleading requirements and should be dismissed with prejudice.

C.  The SAC Should Be Dismissed
    For Improper Venue

Relator cannot establish that the Southern District of New York is the proper venue for Niagara. Pursuant to 28 U.S.C. § 1391(b)(2), "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." A "substantial part" means that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). The Second Circuit has cautioned that courts are "required to construe the venue statute strictly." Id.

The SAC alleges that "Niagara Falls Public School District operates within the jurisdiction of Niagara Falls, New York" (SAC ¶ 29), and "Mark Laurrie is the current Superintendent of Niagara Falls Public School District in Niagara Falls, New York" (SAC ¶ 30). In support of his FCA claim, relator relies upon the IEP of "T.S., a 17-year-old student in Niagara Falls, New York" who was assigned to attend a BOCES class at "N. Tonawanda Learning Center, located in Niagara Falls, New York." (SAC ¶ 128). T.S.'s IEP, annexed as Exhibit 11 of the SAC, lists an address of "630 66th Street, Niagara Falls, NY 14304." Therefore, venue is inappropriate because none of relator's allegations suggest any "significant events or omissions" material to the FCA claim occurring in the Southern District of New York.

Nor is venue proper under 31 U.S.C. § 3732(a). As this Court previously recognized, this provision does not apply simply because multiple defendants were accused of similar, but ultimately unrelated conduct. U.S. ex rel. Donohue v. Carranza, 585 F. Supp. 3d 383, 390 (S.D.N.Y. Feb. 14, 2022). In this case, the SAC alleges that each defendant submitted its own bills for remote services to be provided to its own students. In U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist., 8 F. Supp.3d 339, 344 (S.D.N.Y. Mar. 24, 2014), this Court found that relators were not entitled to joinder of defendants residing in Upstate York where they "simply allege that each defendant submitted its own Medicaid bills for services provided to its own students" and held that "venue is improper for Relators' claims against the Upstate Defendants." Id. The same result should follow here and the case law requires dismissal of relator's claims against Niagara.

## CONCLUSION

For the foregoing reasons, Niagara's motion to dismiss the SAC should be granted in its entirety.

Dated:  December 23, 2022
          Lake Success, New York

                                        Respectfully Submitted,

                                        _____
                                        Jonathan P. Shaub