```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:_____        │
│ DATE FILED:_  1/14/2023      │
└─────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**United States of America and the States of the United States, ex rel. Patrick Donohue,**

                                            **Plaintiff,**

                    -against-

**Richard Carranza et al.,**

                                            **Defendants.**

---

**1:20-cv-05396 (GHW) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE.**

Pending before the Court is: (1) a motion by Defendants Buffalo Public School District and Kriner Cash (collectively, the "Buffalo Defendants") to dismiss the claims of Plaintiff-Relator Patrick Donohue ("Plaintiff-Relator") against them in his Second Amended Complaint ("SAC")[1] (Buffalo Not. of Mot., ECF No. 149);[2] (2) a motion by Defendants Stamford Board of Education s/h/a Stamford Public School District and Dr. Tamu Lucero (collectively, the "Stamford Defendants") to dismiss Plaintiff-Relator's claims against them in the SAC (Stamford Not. of Mot., ECF No. 161); (3) a motion by Defendants Somerville Public School District and Mary Skipper (collectively, the "Somerville Defendants") to dismiss Plaintiff-Relator's claims against them in

---

[1] The SAC is filed at ECF No. 19. Because the SAC includes several sets of duplicate paragraph numbers, citations to paragraphs of the SAC herein are followed by the corresponding page number(s) of the SAC on which the referenced paragraph(s) is/are located.

[2] At the time that the Buffalo Defendants filed their motion to dismiss on May 17, 2022, there were outstanding claims against them under New York State and New York City law. (*See* SAC, ECF No. 19, Fifth through Tenth Claims.) However, on November 3, 2022, Plaintiff-Relator voluntarily dismissed those claims. (*See* 11/3/22 Stip. And Order, ECF No. 219.) Thus, only the remaining federal claims against the Buffalo Defendants (*i.e.*, the First through Fourth Claims of the SAC) are addressed herein.

the SAC (Somerville Not. of Mot., ECF No. 163);[3] (4) a motion by Defendants New York City Department of Education, Richard Carranza ("Carranza") and Meisha Porter ("Porter") (collectively, the "NYCDOE Defendants") and Defendant Board of Education of the City of Chicago s/h/a Chicago Public School District and Jose M. Torres (collectively, the "Chicago Defendants")[4] to dismiss Plaintiff-Relator's claims against them in the SAC[5] (NYCDOE and Chicago Not. of Mot., ECF No. 165); (5) a motion by Defendants Wake County Public School District and Cathy Quiroz Moore (collectively, the "Wake County Defendants") to dismiss Plaintiff-Relator's claims against them in the SAC (Wake Cnty. Not. of Mot., ECF No. 200[6]); and (6) a motion by Defendants Niagara Falls City School District s/h/a Niagara Falls Public School District and Mark Laurrie (collectively, the "Niagara Defendants" and, together with the Buffalo Defendants, the Stamford Defendants, the Somerville Defendants, the NYCDOE Defendants, the Chicago Defendants and the Wake County Defendants, the "Moving Defendants") to dismiss Plaintiff-Relator's claims against them in the SAC.[7] (Niagara Not. of Mot., ECF No. 236.)

---

[3] At the time that the Somerville Defendants filed their motion to dismiss on June 30, 2022, there was an outstanding claim against them under Massachusetts law. (*See* SAC, Eleventh Claim, ¶¶ 194-197, at 79-80.) However, on January 13, 2023, Plaintiff-Relator agreed to voluntarily dismiss that claim. (*See* 1/13/23 Stip., ECF No. 243.) Once that Stipulation is ordered by the Court, the only remaining federal claims against the Somerville Defendants will be the federal claims (*i.e.*, the First through Fourth Claims of the SAC).

[4] This motion also was filed on behalf of the Los Angeles Unified School District and Austin Beutner (collectively, the "LA Defendants"); however, Plaintiff-Relator later dismissed all of his claims against the LA Defendants, and they were terminated from this action. (*See* 11/3/22 Stip. And Order, ECF No. 220.)

[5] At the time that the NYCDOE Defendants filed their motion to dismiss on June 30, 2022, there were outstanding claims against them under New York State and New York City law. (*See* SAC, Fifth through Tenth Claims.) However, on November 14, 2022, Plaintiff-Relator voluntarily dismissed those claims. (*See* 11/14/22 Stip. & Order, ECF No. 224 (modifying ECF No. 218).) Thus, only the remaining federal claims against the NYCDOE Defendants (*i.e.*, the First through Fourth Claims of the SAC) are addressed herein.

[6] The motion to dismiss by the Wake County Defendants previously had been filed at ECF No. 167, but due to a filing error, it was refiled at ECF No. 200.

[7] At the time that the Niagara Defendants filed their motion to dismiss on December 23, 2022, there were outstanding claims against them under New York State and New York City law. (*See* SAC, ECF No. 19, Fifth

For the reasons set forth below, I respectfully recommend that the Moving Defendants'

motions be GRANTED and that this action be dismissed against them.

**BACKGROUND**

I.     **SAC Allegations**

Plaintiff-Relator is the parent of S.J.D., who suffered a traumatic brain injury, and Plaintiff-

Relator has become an advocate for traumatic brain injury survivors. *See Donohue v. Lloyd*, No.

18-CV-09712 (JPO), 2020 WL 2834207, at *1 (S.D.N.Y. June 1, 2020). He also is the founder of a

private school, the International Institute for the Brain ("iBrain"). *See Soria v. New York City Dep't*

*of Educ.*, 831 F. App'x 16, 18 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1501 (2021).

In this *qui tam* action, Plaintiff-Relator currently alleges violations of the False Claims Act

("FCA"), 31 U.S.C. § 3729, *et seq.*, and certain corresponding state false claim statutes, against

the NYCDOE Defendants and various school districts and boards of education and their

superintendents across numerous states, including the Buffalo Defendants, the Stamford

Defendants, the Somerville Defendants, the Chicago Defendants, the Wake County Defendants

and the Niagara Defendants.[8] (*See, e.g.*, SAC ¶¶ 279-98, at 72-75; ¶¶ 194-97, at 79-80; ¶¶ 194-

97, at 80; ¶¶ 194-97, at 80-81.) The crux of Plaintiff-Relator's claims is that in school years 2019-

---

through Tenth Claims.) However, on December 27, 2022, Plaintiff-Relator voluntarily dismissed those
claims. (*See* 12/27/22 Stip. & Order, ECF No. 240.) Thus, only the remaining federal claims against the
Niagara Defendants (*i.e.*, the First through Fourth Claims of the SAC) are addressed herein.

[8] In his initial Complaint, Plaintiff-Relator had named as defendants Carranza, in his official capacity as
Chancellor of the NYCDOE; the NYCDOE; the City of New York; the New York State School Districts; and
the Counties of New York State. (*See* Compl., ECF No. 7.) In his First Amended Complaint, Plaintiff added
as defendants hundreds of school districts around the country. (*See* First Amended Complaint, ECF No.
12.) The SAC, which is the operative pleading, names as defendants Carranza and Porter, in their official
capacities as former Chancellors of the NYCDOE; the NYCDOE; and a select group of school districts and
boards of education (and their superintendents) in the State of New York and elsewhere. (*See generally*
SAC.)

2020 (beginning in March 2020) and 2020-2021, in the wake of COVID-19 pandemic-related school building full or partial closures, the Moving Defendants provided remote services (via telehealth and/or telephone) to students with disabilities instead of in-person services, in violation of requirements under the Individuals with Disabilities Education Act ("IDEA") and the Medicaid Act and then submitted claims for reimbursement for such services, thereby violating the FCA. (*See id.* ¶¶ 1-3, at 4.)

For each of the Moving Defendants, the SAC bases its allegations on one or two examples of Individualized Education Programs ("IEPs") developed for students attending a school within their control—for the NYCDOE Defendants, the IEP of J.R. (SAC ¶¶ 81-88, at 27-29; SAC Exs. 3-4, at PDF pp. 378-409);[9] for the Buffalo Defendants, the IEP of G.M. (SAC ¶¶ 114-18, at 35-36; ECF No. 19-1 Ex. 9, at PDF pp. 41-60); for the Stamford Defendants, the IEP of H.P. (SAC ¶¶ 163-68, at 45-46; ECF No. 19-1 Ex. 14, at PDF pp. 208-36); for the Somerville Defendants, the IEP of P.M. (SAC ¶¶ 145-53, at 42-43; ECF No. 19-1 Ex. 12, at PDF pp. 77-95); for the Chicago Defendants, the IEP of B.W. (SAC ¶¶ 178-83, at 48-49; ECF No. 19-1 Ex. 15, at PDF pp. 237-70); for the Wake County Defendants, the IEP of A.C. (SAC ¶¶ 234-43, at 64-66[10]); and for the Niagara Defendants, the IEP of T.S. (SAC ¶¶ 128-31, at 38; ECF No. 19-1 Ex. 11, at PDF pp. 62-76.) While the specific details vary, Plaintiff-Relator alleges that the IEPs for these students demonstrate that the Moving Defendants unilaterally decided to provide remote services instead of in-person services

---

[9] The SAC also contains allegations relating to Plaintiff-Relator's daughter, S.J.D. (SAC ¶¶ 89-95, at 29-30.) However, S.J.D. never attended a NYCDOE school; instead, in school year 2019-2020, S.J.D. attended iBrain. (*See* SAC Ex. 6 at PDF pp. 541-42, 551-53, 560, 568.)

[10] In their SAC, Plaintiffs state that a copy of A.C.'s IEP is annexed to the SAC as Exhibit 21. (*See* SAC ¶ 234-43.) However, there is no Exhibit 21 filed to the ECF docket. The last exhibit to the SAC that is filed on the docket is Exhibit 19. (*See* ECF No. 19-1 Ex. 19, at PDF pp. 355-78.)

as recommended in the IEPs then-in-effect and did not reconvene IEP meetings to update such IEPs; that the Moving Defendants fraudulently developed IEPs during the COVID-19 pandemic to recommend in-person services when the Moving Defendants knew that such services would be furnished remotely, which knowledge was demonstrated in the IEPs themselves in some cases; and/or that certain of the recommended services were essentially of no value to the student when provided remotely. (*See generally* SAC.)

## II.   **Statutory and Regulatory Background**

### A.   **Generally**

The IDEA was enacted "to ensure that all children with disabilities have available to them a free and appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). Federal funding provided by the United States Department of Education ("USDOE") is distributed to States to assist schools in providing a FAPE to students with disabilities. *See* 20 U.S.C. § 1411; 34 C.F.R. § 300.700(a). To receive funding, school districts are required to provide assurances that they have followed certain procedures, including the development of an IEP for each student with disabilities, which is a written plan detailing the programs and services to "be provided to enable the child [t]o advance appropriately toward attaining the annual goals" for academic achievement and functional performance. *See* 34 C.F.R. § 300.320(a)(4)(i).

IEPs are developed and updated on at least an annual basis by the student's IEP team, which includes the student's parent(s) or guardian(s). *See* 34 C.F.R. §§ 300.321, 300.323(c), 300.324(b)(1)(i). The IEP must identify the "anticipated frequency, location, and duration of"

related services—such as speech, physical and occupational therapy—to be provided. *See id*. § 300.320(a)(7); *see also id*. §§ 300.34(a), 300.320(a)(4).

The Medicaid Act, 42 U.S.C. §§ 1396, *et seq*., provides federal funding to States for health services provided to eligible indigent and low-income persons, including students who are eligible for Medicaid and receive IDEA-related services, provided that the State has a plan—which sets forth how a state administers Medicaid—approved by the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 U.S.C. §§ 1396a(a)(10)(A)(ii)(VI), 1396a(b), 1396b(c), 1396-1.

**B.     Federal Agency Guidance During COVID-19 Pandemic**[11]

In March 2020, because of school closures due to the COVID-19 pandemic, the USDOE issued guidance regarding how to comply with the IDEA during the pandemic. *See* U.S. DEP'T EDUC., QUESTIONS AND ANSWERS ON PROVIDING SERVICES TO CHILDREN WITH DISABILITIES DURING THE CORONAVIRUS DISEASE 2019 OUTBREAK 2 (Mar. 2020) ("USDOE March 2020 COVID-19 Q&As"), https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf. Addressing concerns expressed regarding distance instruction, the USDOE stated as follows:

> As school districts nationwide take necessary steps to protect the health and safety of their students, many are moving to virtual or online education (distance instruction). Some educators, however, have been reluctant to provide any distance instruction because they believe that federal disability law presents insurmountable barriers to remote education. <u>This is simply not true.</u> We remind schools they should not opt to close or decline to provide distance instruction, at the expense of students, to address matters pertaining to services for students with disabilities. Rather, school systems must make local decisions that take into consideration the health, safety, and well-being of all their students and staff.

---

[11] The Court can consider, and take judicial notice of, the guidance referred to in the section below because it is a "matter[] of public record that [was] published on an official government web site." *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 149 (S.D.N.Y. 2020), *aff'd in part, appeal dismissed in part sub nom. K.M. v. Adams*, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) (taking judicial notice of USDOE Q&A and Fact Sheet).

> **To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**

Off. Special Educ. Rehab. Servs., U.S. Dep't Educ., Supplemental Fact Sheet: Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities 1 (Mar. 21, 2020) ("USDOE Fact Sheet"), https://www2.ed.gov/about/offices/list/ocr/frontpage/ faq/rr/policyguidance/Supple%20Fact%20Sheet%203.21.20%20FINAL.pdf (emphases in original). The USDOE also advised that "IEP teams may, but are not required to, include distance learning plans in a child's IEP that could be triggered and implemented during a selective closure due to a COVID-19 outbreak." USDOE MARCH 2020 COVID-19 Q&As at 5. According to the USDOE, remote instruction remained an option for the 2020-2021 school year. Off. Special Educ. Programs & Rehab. Servs., U.S. Dep't Educ., Osep Qa 20-01 2 (Sept. 28, 2020), https://sites.ed.gov/idea/files/qa-provision-of-services-idea-part-b-09-28-2020.pdf ("OSEP Q&A") ("[O]ptions [for delivering instruction] could include remote/distance instruction, in-person attendance, or a combination of both remote/distance instruction and in-person attendance (hybrid model).").

In April 2020, in response to the COVID-19 pandemic, CMS issued guidance to ensure that "Medicaid agencies have the necessary tools to prepare for and respond to this emergency on behalf of the nation's 71 million Medicaid and CHIP beneficiaries, including children." Ctrs. Medicare & Medicaid Servs., State Medicaid & Chip Telehealth Toolkit: Policy Considerations for States Expanding Use of Telehealth, COVID-19 Version 3 ("CMS Telehealth Toolkit"), https://www.medicaid.gov/medicaid/benefits/downloads/medicaid-chip-telehealth-toolkit.pdf (last accessed Jan. 13, 2023). CMS stated that "[s]tates have broad flexibility to cover and pay for

Medicaid services delivered via telehealth, including to determine which telehealth modalities may be used to deliver Medicaid-covered services." *Id*. at 19.

## PROCEDURAL HISTORY

On December 27, 2021, Defendants Loudoun County Public School District and Scott Ziegler (collectively, the "Loudoun County Defendants") filed a motion to dismiss Plaintiff-Relator's claims in the SAC against them for lack of personal jurisdiction, improper venue and failure to state a claim. (*See* Loudoun Cnty. Not. of Mot., ECF No. 68.) On February 14, 2022, the Court entered an Opinion and Order (1) finding that venue was improper in this District because the events giving rise to the claims against the Loudoun County Defendants occurred outside this District, (2) severing Plaintiff-Relator's claims against the Loudon County Defendants, and (3) transferring the severed claims to the U.S. District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1406(a). *See United States ex rel. Donohue v. Carranza*, 585 F. Supp. 3d 383, 390-91 (S.D.N.Y. 2022).[12]

On May 17, 2022, the Buffalo Defendants filed their motion to dismiss. (*See* Buffalo Not. of Mot.) On June 27, 2022, Plaintiff-Relator filed a memorandum of law in opposition to the Buffalo Defendants' motion to dismiss. (*See* Pl.'s Buffalo Opp. Mem., ECF No. 158.) On June 30, 2022, the Stamford Defendants, the Somerville Defendants, the Wake County Defendants, the NYCDOE Defendants and the Chicago Defendants filed motions to dismiss. (*See* Stamford Not. of

---

[12] On April 29, 2022, the Loudoun County Defendants filed a motion to dismiss in the transferred Eastern District of Virginia action for failure to state a claim. (*See U.S. ex rel. Donohue v. Carranza et al.*, E.D. Va. No. 22-CV-00189 (AJT) (IDD), ECF No. 101.) On July 1, 2022, Judge Trenga of the Eastern District of Virginia issued an Order granting Loudoun County Defendants' motion to dismiss with prejudice. *See U.S. ex rel. Donohue v. Carranza*, No. 22-CV-00189 (AJT) (IDD), 2022 WL 3226191, at *9 (E.D. Va. July 1, 2022). That Order currently is on appeal to the Fourth Circuit Court of Appeals.

Mot.; Somerville Not. of Mot.; NYCDOE and Chicago Not. of Mot.) On August 12, 2022, Plaintiff filed memoranda in opposition to the motions to dismiss filed by the Stamford Defendants, the Somerville Defendants, the NYCDOE Defendants, the Chicago Defendants and the Wake County Defendants. (*See* Pl.'s NYCDOE Opp., ECF No. 178; Pl.'s Non-NYCDOE Defs.' Opp., ECF No. 179.)[13] On September 16, 2022, the NYCDOE Defendants, the Chicago Defendants, the Stamford Defendants, the Wake County Defendants and the Buffalo Defendants filed replies. (*See* NYCDOE and Chicago Reply, ECF No. 186; Stamford Reply, ECF No. 188; Wake Cnty. Reply, ECF No. 189; Buffalo Reply, ECF No. 190.)

On December 23, 2022, the Niagara Defendants filed their motion to dismiss.[14] (*See* Niagara Not. of Mot.) On January 13, 2023, Plaintiff-Relator filed a letter in opposition. (*See* Pl.'s Niagara Opp., ECF No. 244.)

## **DISCUSSION**

While some of the Moving Defendants raise defenses of lack of personal jurisdiction and improper venue in their motions, a common ground raised by the Moving Defendants is that the SAC fails to state a claim against them. Although the Court ordinarily considers personal

---

[13] Plaintiff-Relator filed his memorandum at ECF No. 179 in opposition to the motions to dismiss filed by the Wake County Defendants, the Chicago Defendants, the Somerville Defendants and the Stamford Defendants. In such memorandum Plaintiff-Relator did not address the merits of the claims against these defendants. However, Plaintiff-Relator stated that "the main arguments that the [Plaintiff-]Relator would make in opposition to the merits" already were addressed in his opposition to the motions made by the Loudoun County Defendants and NYCDOE Defendants. (*See* Pl.'s Non-NYCDOE Defs.' Opp. at 5.)

[14] On November 2, 2022, a Certificate of Default had been entered by the Clerk of Court against the Niagara Defendants. (Cert. Of Default, ECF No. 217.) On November 15, 2022, the Niagara Defendants filed a letter motion seeking to vacate the certificate of default. (Niagara 11/15/22 Ltr. Motion, ECF No. 226.) On November 23, 2022, Plaintiff filed his opposition to the Niagara Defendants' motion. (Pl.'s Resp. to Niagara Ltr. Mot., ECF No. 229.) On December 3, 2022, the Court granted the Niagara Defendants' motion and vacated the Certificate of Default entered against the Niagara Defendants. *See United States v. Carranza*, No. 20-CV-05396 (GHW) (SDA), 2022 WL 17491892, at *4 (S.D.N.Y. Dec. 3, 2022).

jurisdiction and venue prior to deciding whether a pleading adequately states a claim for relief, the Second Circuit has held that "in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [the court] may address first the facial challenge to the underlying cause of action and, if [the court] dismiss[es] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012). Given that motions to dismiss were filed by multiple defendants, all of whom challenge the legal sufficiency of Plaintiff-Relator's claims, that this Court has personal jurisdiction over the NYCDOE Defendants and that venue is proper in this District for those defendants, the Court exercises its discretion to address the portion of the Moving Defendants' motions to dismiss relating to failure to state a claim before addressing personal jurisdiction and venue.[15] *See In re SSA Bonds Antitrust Litig.*, No. 16-CV-03711 (ER), 2018 WL 4118979, at *3-4 n.13 (S.D.N.Y. Aug. 28, 2018) (dismissing complaint for failure to state a claim and declining to address issues of personal jurisdiction and venue where defendants moved to dismiss for lack of personal jurisdiction, subject-matter jurisdiction, improper venue and failure to state a claim).

I. **Legal Standards**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to

---

[15] By contrast, at the time the Court severed Plaintiff-Relator's claims against the Loudoun County Defendants and transferred those severed claims to the Eastern District of Virginia, there was no motion to dismiss pending that was made by a defendant as to which personal jurisdiction existed and venue was proper.

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *See Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

For claims brought under the FCA, the allegations in the complaint must satisfy heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure, which requires a complaint to "specify (1) the fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017). To comply with Rule 9(b), "the complaint must be supported by more than 'conclusory statements' or 'hypotheses,' and it must set forth 'particularized allegations of fact.'" *U.S. ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (quoting *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26-27 (2d Cir. 2016)). While Rule 9(b) permits scienter to be averred generally, the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.* (citations omitted).

## II.   Analysis

### A.   Federal Claims

The First through Fourth Claims in the SAC are brought under the FCA. (*See* SAC ¶¶ 279-98, at 72-75.) The Moving Defendants seek dismissal of these claims.

#### 1.   First And Second Claims: 31 U.S.C. §§ 3729(a)(1)(A) And (B)

Plaintiff-Relator's First Claim alleges a violation of 31 U.S.C. § 3729(a)(1)(A) and his Second Claim alleges a violation of 31 U.S.C. § 3729(a)(1)(B). (SAC ¶¶ 279-88, at 72-74.) To state a claim under either subsection of § 3729(a)(1), a plaintiff must allege that the defendant: (1) created, used or caused to be used, a record or statement to the Government; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government. *See U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004).

"A claim is 'false or fraudulent' if it 'is aimed at extracting money the government otherwise would not have paid.'" *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310 (S.D.N.Y. 2011), *aff'd*, 531 F. App'x 118 (2d Cir. 2013) (citing *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016)). Courts recognize FCA claims as either "factually false" or "legally false." *See id.* at 311. A factually false claim "involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Mikes*, 274 F.3d at 697. A legally false claim, on the other hand, is "predicated upon a false representation of compliance with a federal statute or regulation or a prescribed contractual term." *Id.* at 696.[16]

---

[16] "There are two types of legally false claims: (i) express false certification claims and (ii) implied false certification claims." *U.S. ex rel. Gelbman v. City of New York*, No. 14-CV-00771 (VSB), 2018 WL 4761575, at *5 (S.D.N.Y. Sept. 30, 2018), *aff'd*, 790 F. App'x 244 (2d Cir. 2019). "An express false certification is 'a

a.   **No Factually False Or Legally False Claim**

Plaintiff-Relator alleges that the Moving Defendants fraudulently submitted claims for Medicaid reimbursement without providing services recommended in the students' IEPs and that the Moving Defendants fraudulently submitted claims for IDEA funding without providing students with a FAPE. (*See* SAC ¶¶ 105-08, at 33-34; ¶¶ 119-22, at 36-37; ¶¶ 135-38, at 39-40; ¶¶ 154-57, at 43-44; ¶¶ 169-72, at 46-47; ¶¶ 185-88, at 49-50; ¶¶ 247-50, at 66-67.) The Court addresses the allegations regarding Medicaid reimbursement and IDEA funding in turn.

With respect to Medicaid reimbursement, Plaintiff-Relator asserts that Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1988 (*see* SAC ¶ 79 n.9, at 18) provides "six conditions that must be met for Medicaid to reimburse for IDEA-related services," including that the "services must be listed in the child's [IEP]." (*See id*. ¶ 81, at 19 (emphases omitted).) With respect to each of the Moving Defendants, Plaintiff-Relator asserts that Section 411(k)(13) requires that "billing for related services must mirror (at maximum) the services recommended in each student's IEP." (*Id*. ¶ 106, at 33; ¶ 120, at 36; ¶ 136, at 39; ¶ 155, at 43; ¶ 170, at 46; ¶ 186, at 49-50; ¶ 248, at 67.) Plaintiff-Relator alleges that the Moving Defendants unlawfully billed

---

claim that falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Colucci*, 785 F. Supp. 2d at 311 (quoting *Mikes*, 274 F.3d at 698). An implied false certification does not require an express certification in the submitted claim, rather the submission of the claim itself constitutes the certification of compliance. *See id*. Implied false certification is shown where (1) the claim does not merely request payment, but also makes specific representations about the goods or services provided, and (2) the defendant fails to disclose noncompliance with material statutory, regulatory or contractual requirements, making those representations misleading. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190 (2016). Moreover, the Supreme Court held that the defendant's "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable." *Id.* at 192.

Medicaid for remote services provided to disabled students when those services "were recommended to be in person as opposed to remote." (*See id* (emphasis omitted).)

Plaintiff-Relator's assertions "regarding Section 411(k)(13) requirements are not reflected in the law's text." *See Carranza*, 2022 WL 3226191, at *6. Section 411(k)(13) states:

> Nothing in this title shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a handicapped child because such services are included in the child's individualized education program established pursuant to part B of the Education of the Handicapped Act or furnished to a handicapped infant or toddler because such services are included in the child's individualized family service plan adopted pursuant to part H of such Act.

*Id*. (quoting Medicare Catastrophic Coverage Act of 1988, July 17, 1988, Pub. L. No. 100-360, 102 Stat. 683).

Section 411(k)(13) "does not specify billing requirements" and nowhere provides that the Moving Defendants "were forbidden from seeking reimbursement at all for services rendered to severely disabled student[s] via remote means." *See Carranza*, 2022 WL 3226191, at *6. Thus, "Section 411(k)(13) does not provide a plausible basis for the Court to infer that [the Moving] Defendants committed an 'objective falsehood' by submitting reimbursement claims to Medicaid for IEP-related services provided via remote means." *Id*.

With respect to IDEA funding, Plaintiff-Relator alleges that the Moving Defendants "failed to provide the students with disabilities within its jurisdiction a FAPE by directly or indirectly assisting in formulating IEPs with recommended related services to be offered to students with disabilities at physical site locations on the [local educational agency] campus and subsequently failing to provide the recommended related services as written." (SAC ¶ 108, at 33-34; ¶ 122, at 36-37; ¶ 138, at 40; ¶ 157, at 43-44; ¶ 172, at 47; ¶ 188, at 50; ¶ 250, at 67.) Plaintiff-Relator

attached to the SAC several IEPs relating to each of the Moving Defendants. (*See* SAC Ex. 3, at PDF pp. 378-407; *Id*. Ex. 4, at PDF pp. 408-409; ECF No. 19-1 Ex. 9, at PDF pp. 41-60; *Id*. Ex. 12, at PDF pp. 77-95; *Id*. Ex. 14, at PDF pp. 208-36; *Id*. Ex. 15, at PDF pp. 237-70.) However, Plaintiff-Relator fails to identify a single IDEA claim submitted to the Government by a Moving Defendant, let alone a false IDEA claim that could subject a Moving Defendant to FCA liability. Although Plaintiff-Relator identified instances where the Moving Defendants provided remote services to students with disabilities (*see* SAC ¶¶ 1-3, at 4), he failed to allege any plausible facts suggesting that the students "did not meaningfully participate or receive the IEP services or that [their] IEP[s] [were] somehow otherwise fraudulent." *See Donohue*, 2022 WL 3226191, at *6.

Plaintiff-Relator does not allege that the Moving Defendants requested reimbursements for goods or services that were never provided. Indeed, Plaintiff-Relator concedes that the alleged reimbursement requests were for services actually provided (albeit remote). (*See* SAC ¶¶ 1-3, at 4.) Thus, Plaintiff-Relator has not alleged a plausible factually false claim. *See Mikes*, 274 F.3d at 697.

In addition, Plaintiff-Relator has not plausibly alleged a legally false claim. Nowhere in the SAC or in any of Plaintiff-Relator's opposition papers does he identify any law or regulation that the Moving Defendants violated by billing for the provision of remote services to disabled students. Plaintiff-Relator alleges that "IDEA regulations provide that in order to utilize IDEA funds to provide an appropriate education for students with disabilities, the [local educational agency] utilizing the IDEA funds must first provide a [FAPE] for the Student" (SAC ¶ 107, at 33), but he fails to point to any law or regulation that prohibits remote services as part of providing a FAPE.

To state a legally false claim, Plaintiff-Relator would have to plausibly allege that the Moving Defendants made "a false representation of compliance with a federal statute or regulation or a prescribed contractual term." *See Mikes*, 274 F.3d. at 696. However, the CMS and DOE guidance reflect that the Moving Defendants did not make any misrepresentation regarding compliance, since providing remote services to students with disabilities expressly was permitted. *See* USDOE March 2020 COVID-19 Q&As at 1; OSEP Q&A at 1; CMS Telehealth Toolkit at 19. Because Plaintiff-Relator failed to plausibly allege that the Moving Defendants made any misrepresentation of compliance, he has not stated a legally false claim against the Moving Defendants.[17]

### b.   No Scienter

As an independent ground for dismissal, Plaintiff-Relator also failed to establish that Moving Defendants had the requisite intent under 31 U.S.C. §§ 3729(a)(1)(A) and (B), *i.e.*, that they "knowingly" submitted false or fraudulent claims. *Id*. The FCA defines "knowing" and "knowingly" to "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

Even assuming, *arguendo*, that the Moving Defendants somehow submitted false or fraudulent claims, it is not plausible that the Moving Defendants knew that submitting claims for

---

[17] Plaintiff-Relator's worthless services claim (SAC ¶¶ 275-78, at 72) also is deficient. Plaintiff-Relator has not plausibly alleged that the Moving Defendants knowingly billed for worthless services or recklessly did so with deliberate ignorance, as required to establish a worthless services claim. *See Mikes*, 274 F.3d at 702-03. The SAC only describes the services that were recommended in the respective students' IEPs, not the actual performance of such services. Thus, there are no allegations from which the Court can infer that the services provided had no value, let alone the requisite intent.

remote services was fraudulent, or were reckless, since the Moving Defendants were complying with the guidance published by CMS and the USDOE. As set forth above, CMS and USDOE explicitly permitted the Moving Defendants to submit claims for remote services. *See* USDOE March 2020 COVID-19 Q&As at 1 ("We remind schools they should not opt to close or decline to provide distance instruction, at the expense of students, to address matters pertaining to services for students with disabilities."); OSEP Q&A at 1 (indicating that remote instruction for students with disabilities is acceptable); CMS Telehealth Toolkit at 19 (indicating that states may "determine which telehealth modalities may be used to deliver Medicaid-covered services."). Thus, it is not plausible that the Moving Defendants had the requisite scienter.

### 2.    Third Claim: Reverse FCA Claim

Plaintiff-Relator's Third Claim alleges a violation of 31 U.S.C. § 3729(a)(1)(G). (*See* SAC ¶¶ 289-93, at 74.) To state a claim under 31 U.S.C. § 3729(a)(1)(G), a plaintiff must show "(1) proof that the defendant made a false record or statement (2) at a time that the defendant had a presently-existing obligation to the government—a duty to pay money or property." *See Gelbman*, 2018 WL 4761575, at *6 (citation omitted). "Subsection (a)(1)(G) is referred to as the 'reverse false claims' provision because 'it covers claims of money owed to the government, rather than payments made by the government.'" *See id.* (citations omitted).

The Second Circuit has held that "a reverse false claim cannot turn on the same conduct underlying a traditional false claim." *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022). The Second Circuit explained that "[c]oncluding otherwise would mean that 'any time a defendant violated sub-sections (a)(1)(A) or (B) and

received payment, the defendant would also necessarily violate sub-section (G) if it failed to repay to the Government the fraudulently-obtained payments.'" *Id.* at 120 (citations omitted).

In the present case, "[b]ecause [Plaintiff-Relator's] reverse false claim[] mirror[s] his false claim[] under § 3729(a)(1)(A) and 3729(a)(1)(B), he fails to state [a] plausible claim[]" under 31 U.S.C. § 3729(a)(1)(G). *See Foreman*, 19 F.4th at 120.[18]

### 3.    Fourth Claim: FCA Conspiracy Claim

Plaintiff-Relator's Fourth Claim is brought under 31 U.S.C. §§ 3729(a)(1)(C) and alleges a conspiracy to commit a violation of the FCA. (*See* SAC ¶¶ 294-98, at 74-75.) To state an FCA conspiracy claim, a plaintiff must allege: "(1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) one or more conspirators performed any act to effect the object of the conspiracy." *U.S. v. Spectrum Painting Corp.*, No. 19-CV-02096 (AT), 2020 WL 5026815, at *15 (S.D.N.Y. Aug. 25, 2020) (internal quotation marks and citations omitted).

Plaintiff-Relator fails to allege any facts from which it reasonably can be inferred that any of the Moving Defendants conspired with another person to submit fraudulent claims. Moreover, Plaintiff-Relator's FCA conspiracy claim is "coextensive with the allegations that comprise the preceding FCA claims under [S]ections 3729(a)(1)(A) and 3729(a)(1)(B)," for which Plaintiff-Relator failed to state a claim and, as such, it should be dismissed. *See U.S. ex rel. CKD Project,*

---

[18] In any event, it appears that Plaintiff-Relator waived his Third Claim, since the NYCDOE Defendants and Chicago Defendants (citing *Foreman*, 19 F.4th at 120) urged its dismissal in their memorandum of law (NYCDOE and Chicago Mem., ECF No. 169, at 30), and Plaintiff-Relator in his opposition memorandum failed to address his Third Claim. *See Domingues v. Barton Chevrolet Cadillac*, No. 18-CV-07772 (PMH), 2021 WL 637016, at *3 (S.D.N.Y. Feb. 17, 2021) (considering argument not addressed in opposition brief waived); *Rodriguez v. Carson*, 401 F. Supp. 3d 465, 470 (S.D.N.Y. 2019) (finding party's failure to raise issue in opposition brief waives issue).

*LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 48 (E.D.N.Y. 2021) (dismissing plaintiff-relator's FCA conspiracy claim because it was coextensive with his 31 U.S.C. §§ 3729(a)(1)(A) and (B) claims, which court also dismissed for failure to state a claim). Accordingly, Plaintiff has failed to state a plausible FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C).[19]

### B.   State Law Claims

The only state law claims that remain against the Moving Defendants are the Twelfth Claim under the False Claims Act against the Stamford Defendants (SAC ¶¶ 194-97, at 80) and the Thirteenth Claim under the Illinois False Claims Act against the Chicago Defendants. (*Id*. ¶¶ 194-97, at 80-81).[20] Although two paragraphs of the SAC refer to North Carolina General Statutes (SAC ¶ 11, at 5; ¶ 233, at 64), none of Plaintiff-Relator's seventeen claims is pled against the Wake County Defendants under North Carolina law. (*See* SAC ¶¶ 279-318, at 72-78; ¶¶ 194-197, at 78-79; ¶¶ 194-197, at 79-80; ¶¶ 194-197, at 80; ¶¶ 194-197, at 80-81; ¶¶ 194-197, at 81; ¶¶ 194-197, at 82; ¶¶ 194-198, at 82-84; ¶¶ 194-197, at 84-85.)

Given my recommendation that the Court dismiss all of Plaintiff-Relator's federal claims in the SAC against the Moving Defendants, I recommend that the Court decline to exercise supplemental jurisdiction over the Twelfth and Thirteenth claims (and, if necessary, any claim under North Carolina law), pursuant to 28 U.S.C. § 1367(c)(3). *See United States ex rel. Mohajer*

---

[19] In any event, it appears that Plaintiff-Relator also waived his Fourth Claim, since the NYCDOE Defendants and Chicago Defendants urged its dismissal in their memorandum of law (NYCDOE and Chicago Mem. at 31), and Plaintiff-Relator in its opposition memorandum failed to address his Fourth Claim. *See Domingues*, 2021 WL 637016, at *3; *Rodriguez*, 401 F. Supp. 3d at 470.

[20] At the time of the filing of this Report and Recommendation, the Eleventh Claim under the Massachusetts False Claims Act against the Somerville Defendants (SAC ¶¶ 194-97, at 79-80) remains pending. However, as set forth in footnote 3, *supra*, on January 13, 2023, Plaintiff-Relator agreed to voluntarily dismiss that claim. (*See* 1/13/23 Stip., ECF No. 243.) Once that Stipulation is ordered by the Court, the Eleventh Claim shall be dismissed.

*v. Omnicare, Inc.*, 525 F. Supp. 3d 447, 462 (S.D.N.Y. 2021) ("In a qui tam suit involving both state and federal claims, once the federal claims are dismissed, the court no longer has original jurisdiction pursuant to section 3730(b), and a Court may then decline to exercise supplemental jurisdiction over the state-law claims that were related to the federal claim.") (internal quotation marks and citations omitted).[21]

C.   **Leave To Amend**

In opposition to the Buffalo Defendants' motion to dismiss, "Plaintiff-Relator argues that, should this Court be inclined to hold that the SAC fails to state a cause of action, it should dismiss with leave to amend the complaint." (*See* Pl.'s Buffalo Opp. Mem. at 15.) A district court may deny leave to amend where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Given the Court's reasoning with respect to the Moving Defendants' lack of factually false or legally false claims and lack of scienter, it is readily apparent that Plaintiff-Relator would be able to state a valid claim should the Court grant him leave to amend. Particularly given the clear guidance by CMS and the USDOE that providing remote services to students with disabilities was permissible, Plaintiff-Relator simply will not be able to plausibly allege that the Moving Defendants knowingly submitted false or fraudulent claims. Thus, any further amendment would be futile, and I recommend that leave to amend not be granted.

D.   **Non-Appearing Defendants**

On November 2, 2022, the Clerk of Court entered a certificate of default for the Camden City Public School District ("Camden District"), Katrina McCombs ("McCombs") and the

---

[21] Because I recommend dismissal of the claims in the SAC against the Moving Defendants as set forth above, I decline to address the other arguments raised by the Moving Defendants in support of dismissal.

Massachusetts Department of Education ("Massachusetts DOE") (collectively, the "Defaulted Defendants"). (Certs. of Default, ECF Nos. 215 & 216.) The only remaining defendant who has not appeared is Jeffrey Riley, the Superintendent of the Massachusetts Department of Education ("Riley," and together with the Defaulted Defendants, the "Non-Appearing Defendants").[22]

Even if a defendant has defaulted, "[i]t remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Since the Court is recommending that the Moving Defendants' motion to dismiss Plaintiff-Relator's SAC for failure to state a claim be granted, it appears that Plaintiff-Relator will be unable to establish the Non-Appearing Defendants' liability on the claims asserted against them in the SAC. Thus, I respectfully recommend that the Court order Plaintiff-Relator to show cause why the claims against the Non-Appearing Defendants should not be dismissed.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motions to dismiss filed by the Moving Defendants (ECF Nos. 149, 161, 163, 165, 200 & 236) be GRANTED and that this action be dismissed against them, without leave to amend. I further recommend that Plaintiff-Relator show cause why the claims against the Camden District, McCombs, the Massachusetts DOE and Riley should not be dismissed.

---

[22] On October 19, 2022, the Court ordered Plaintiff-Relator to seek a certificate of default against any non-appearing defendants no later than November 1, 2022. (*See* 10/19/22 Order, ECF No. 199.) Plaintiff-Relator never sought a certificate of default against Riley, despite the Court's Order.

Dated:        January 14, 2023
              New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*            \*            \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).