USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/28/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
UNITED STATES OF AMERICA and the STATES :
OF THE UNITED STATES, *ex rel.* PATRICK :
DONOHUE, : 1:20-cv-5396-GHW
:
                      Plaintiff, : ORDER ADOPTING REPORT &
: RECOMMENDATION
       -against- :
:
RICHARD CARRANZA, in his official capacity as the :
former Chancellor of New York City Department of :
Education, *et al.,* :
:
                      Defendants. :
:
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      After the COVID-19 pandemic struck the United States, many public schools were forced to teach by remote means, rather than in person. Plaintiff-Relator Patrick Donohue claims that remote instruction for disabled public school students violates federal law. Therefore, he asserts, any claims made by Defendants for remote services provided to disabled students violate the federal False Claims Act (the "FCA"). The FCA allows him to recover damages on behalf of the United States, and to claim a portion of any recovery for himself. On January 14, 2023, Judge Stewart D. Aaron issued a Report and Recommendation (the "Report"), recommending that the Court dismiss Plaintiff's claims without leave to amend. Because the Report properly concluded that Plaintiff cannot state a claim for a violation of the FCA because the relevant federal guidance expressly permitted remote education—during a time period when a national health emergency required it—the Court adopts the Report in its entirety.

### I. BACKGROUND

#### a. Procedural History

The Court refers the reader to the Report & Recommendation issued by Judge Aaron on January 14, 2023 (the "Report"). Dkt. No. 245. The Report contains a comprehensive description of the procedural history of the case and the facts alleged in the operative complaint. Nevertheless, the Court will briefly review the procedural history relevant to this motion.

On July 13, 2020—about four months into the COVID-19 pandemic in the United States—Mr. Donohue filed his initial complaint in this case (the "Initial Complaint"). Dkt. No. 7. The gravamen of his complaint was straightforward: Mr. Donohue, a New York City resident, alleged that his daughter was a special education student. His daughter had an Individualized Education Plan (an "IEP"). As the pandemic forced many schools to stop in-person instruction and to educate their students online, Mr. Donohue claimed that the New York Department of Education "fraudulently created an IEP for my daughter they knew they could not implement during the COVID-19 situation. However, they proceeded to finalize and fraudulently present it as a [free and adequate public education (a 'FAPE')." Initial Complaint ¶ 10.

Mr. Donohue alleged that he knew personally of other instances of this in New York City and "more than a dozen additional students I have firsthand knowledge of who [sic] their Local Education Agencies ('LEAs') in New York State failed to provide services outlined in their IEP since March 2020 (including live synchronous services), however, fraudulently projected (to the Government) these students were continuing to be properly serviced remotely." *Id.* ¶ 12. Mr. Donohue named as defendants in that Initial Complaint all of the counties and school districts in New York State. There was no allegation in the Initial Complaint regarding any particular fraudulent conduct in connection with the administration of the relevant funding programs other than the provision of education to disabled children by remote means, rather than in person.

Mr. Donohue filed the Initial Complaint in this Court under seal as permitted under the False Claims Act (the "FCA"). 31 U.S.C. § 3729, *et seq.* As contemplated by the FCA, the United States investigated the claims before deciding whether to intervene in the case. The Government served a notice declining to intervene in the case on March 3, 2021. Dkt. No. 11. The Court referred the case to Judge Aaron for general pretrial management and all dispositive motions on April 8, 2021. Dkt. No. 6.

Plaintiff filed a first amended complaint on April 5, 2021 (the "FAC"). Dkt. No. 12. The gravamen of the allegations in the FAC remained much the same as in the Initial Complaint: Mr. Donohue alleged that the provision of services to disabled students by remote means during the pandemic was not a FAPE, and that the defendants falsely claimed that they were providing educational services consistent with their students' IEPs, notwithstanding the fact that education was happening in part by remote means. Now, in addition to his daughter, he asserted that he was aware of "over 50 students I have firsthand knowledge of who NYC DOE failed to provide the services outlined in their IEP since March 2020 (including live synchronous services), however, fraudulently projected these students were continuing to be properly serviced remotely." FAC ¶¶ 11-12. Moreover, Mr. Donohue alleged he now had "firsthand knowledge of more than 500 additional students" whose LEAs "throughout the United States failed to provide services outlined in their IEP since March 2020 . . . ." *Id.* ¶ 12. On the basis of that knowledge, Mr. Donohue claimed that "these fraudulent practices have occurred throughout the United States' school districts." *Id.* So Mr. Donohue named as defendants in this case in the Southern District of New York every public school district and every county in the United States that he could identify. Of the 52 pages of the first amended complaint, 32 comprise a list of "School Districts in the United

3

States," in miniscule font.[1]  There was no allegation in the FAC regarding any particular fraudulent conduct in connection with the administration of the relevant funding programs other than the provision of education to disabled children by remote means, rather than in person.[2]

Judge Aaron granted Mr. Donohue leave to amend the FAC.  Plaintiff filed his second amended complaint on September 29, 2021 (the "SAC").  Dkt. No. 19.  The SAC is the operative complaint in this case.  In filing the SAC, Mr. Donohue seems to have recognized at least some of the challenges of pursuing an action against all of the counties and school districts in the United States regarding the particular programming offered by them during the pandemic; the list of defendants, while still lengthy and geographically far-flung, was narrowed substantially.  In the SAC, Mr. Donohue identified himself as "Relator Patrick Donohue, JD/MBA," a "civil rights attorney with a focus on special education law . . . ."  SAC ¶ 13.

In the SAC, Mr. Donohue added claims under various state fraud statutes, as well as the FCA.  He also expanded on the factual allegations that are the predicate for the action.  The Report outlines the factual allegations in the SAC in sufficient detail.  *See generally* Report.  The Court refers to the Report for a description of the factual allegations contained in the SAC.  Here, the Court merely highlights that the gravamen of Mr. Donohue's assertion that Defendants committed fraud remained the same:  he asserts that they committed fraud by providing special education services to disabled students during the COVID-19 pandemic by remote means.  He alleges that their practice violates the rules governing funding under the Individuals with Disabilities Education Act (the "IDEA") and the Medicaid Act.

---

[1] The caption of the FAC named as defendants "the SCHOOL DISTRICTS OF THE UNITED STATES (see Appendix A); and COUNTIES OF THE UNITED STATES (See Appendix B)".  Plaintiff did not file Appendix B.  It required a substantial effort by the Court's Clerk's Office to input the names of all of the defendants manually into the Court's electronic filing system.
[2] Given that the claims were asserted against so many widely-dispersed defendants, it is perhaps unsurprising that they focused on what Plaintiff asserted to be a single shared illegal practice.

On December 27, 2021, Defendants Loudoun County Public School District and Scott Ziegler (collectively, the "Loudoun County Defendants") filed a motion to dismiss Plaintiff's claims against them for lack of personal jurisdiction, improper venue, and failure to state a claim. Dkt. No. 68. On January 29, 2022, the Court entered an order giving effect to the consent by Plaintiff and the Loudon County Defendants to have that motion decided by Judge Aaron without the need for a report and recommendation to the Court. Dkt. No. 81. On February 14, 2022, Judge Aaron issued an opinion in response to the motion. Dkt. No. 86. In it, Judge Aaron took up the Loudon Defendants' motion only insofar as it contended that the Southern District of New York was not the proper venue for Plaintiff's claims against them. He found that it was not, and ordered that Plaintiff's claims against them be severed and that the severed claims be transferred to the Eastern District of Virginia. That court later dismissed the severed claims with prejudice on substantially the same grounds recommended in the Report. *United States v. Carranza*, No. 122CV189AJTIDD, 2022 WL 3226191 (E.D. Va. July 1, 2022).

After Judge Aaron resolved the motion filed by the Loudon County Defendants, the Moving Defendants[3] filed the series of motions to dismiss the SAC that are the subject of the Report and

---

[3] The Court adopts the defined term used in the Report. The Moving Defendants consist of the following: Buffalo Public School District and Kriner Cash; Stamford Board of Education s/h/a Stamford Public School District and Dr. Tamu Lucero; Somerville Public School District and Mary Skipper; Defendants New York City Department of Education, Richard Carranza, and Meisha Porter; the Board of Education of the City of Chicago s/h/a Chicago Public School District and Jose M. Torre; Wake County Public School District and Cathy Quiroz Moore; and Niagara Falls City School District s/h/a Niagara Falls Public School District and Mark Laurrie. While only some of these motions raise threshold procedural arguments, all the motions raise a common ground against the complaint: failure to state a claim against Defendants under Federal Rule of Civil Procedure 12(b)(6). Three other Defendants, Camden City Public School District, Massachusetts Department of Education, and Jeffrey Riley, the Superintendent of the Massachusetts Department of Education (collectively, the "Non-Appearing Defendants") have not appeared.

this opinion. *See* Dkt. Nos. 149[4], 161[5], 163[6], 165[7], 200[8], 236[9]. All of the motions raise a common argument: that Plaintiff failed to adequately plead a violation of the FCA. And, unsurprisingly, given that all but the NYCDOE Defendants are not located in this judicial district, nearly all of the motions raised arguments that venue was inappropriate in the Southern District of New York and that this Court lacked jurisdiction over them.

Plaintiff opposed the motions. In his opposition to the Buffalo Defendants' motion to dismiss, Plaintiff recognized that the pleading standard established by Federal Rule of Civil Procedure 9(b) applied to this case. Dkt. No. 158 at 1. Plaintiff argued that the facts alleged in the SAC adequately stated a claim. He also argued specifically against the Buffalo Defendants' argument that venue was inappropriate in the Southern District of New York. *Id.* at 16 ("Plaintiff-Relator contends that the venue is proper in this Court, and this Court should not transfer this case to another court."). In Plaintiff's opposition to the NYCDOE Defendants' motion, he again contended that the SAC had properly pleaded his claims. In opposition, Plaintiff disputed the contention that he had failed to state a claim.

Plaintiff filed a consolidated opposition to the motions to dismiss submitted by the Wake Defendants, the Chicago Defendants, the Somerville Defendants and the Stamford Defendants (the "Consolidated Opposition"). Dkt. No. 179. In the Consolidated Opposition, Mr. Donohue argued

---

[4] The Buffalo Defendants moved to dismiss on the basis of improper venue and for failure to state a claim. Plaintiff opposed the motion, arguing that he had properly stated a claim and that venue was proper. Dkt. No. 158.
[5] The Stamford Defendants raised a number of arguments, including lack of personal jurisdiction, improper venue, as well as failure to state a claim.
[6] The Somerville Defendants argued among other things that Plaintiff had failed to state a claim as to them, and also that the Court lacked personal jurisdiction over them.
[7] The NYCDOE Defendants and the Chicago Defendants argued among other things that the complaint should be dismissed for failure to state a claim. The Chicago Defendants also argued that the claims against them should be dismissed for improper venue.
[8] The Wake County Defendants argued among other things that the complaint should be dismissed for failure to state a claim, and that the Southern District of New York was an improper venue for the case against them, as well as that this Court lacked personal jurisdiction over them.
[9] The Niagara Defendants argued that the action should be dismissed for failure to state a claim, and also because venue was improper in the Southern District of New York.

again that the SAC adequately pleaded a claim, but his briefing focused on the argument that his claims against the out-of-state defendants, like the Loudon County Defendants, should be severed and transferred to the local district courts on the basis of improper venue. *Id.* at 4. He argued that approach would be consistent with the approach taken by the magistrate judge with respect to the Loudon County Defendants, which he described as the law of the case. *Id.* ("this Court should, as it did regarding the Loudon Defendants, decline to address any of the arguments raised by the Wake Co. Defendants, Chicago Defendants, Somerville Defendants, and Stamford Defendants apart from joinder and venue, including failure to state a claim and personal jurisdiction.").

### b. The Report

In the Report, Judge Aaron recommended that the Court grant the Moving Defendants' various motions to dismiss the SAC with prejudice. Judge Aaron first considered whether he should address the arguments presented by some Defendants regarding the Court's lack of jurisdiction over them, and that this Court lacked jurisdiction over them, before reaching their arguments that the SAC failed to state a claim. Report at 9. Judge Aaron recognized that "the Court ordinarily considers personal jurisdiction and venue prior to deciding whether a pleading adequately states a claim for relief . . . ." *Id.* at 10. But following the guidance of the Second Circuit, he concluded that "in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [the court] may address first the facial challenge to the underlying cause of action and, if [the court] dismiss[es] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012).

Judge Aaron then evaluated the merits of the motions to dismiss the complaint for failure to state a claim under the FCA. Report at 11. He considered the claims under the pleading standard

7

established by F.R.C.P. 9(b). Judge Aaron first evaluated Plaintiff's claims under 31 U.S.C. §§ 3729(a)(1)(A) and (B). He concluded that Plaintiff had not adequately pleaded that the Moving Defendants submitted fraudulent claims for reimbursement. The magistrate judge analyzed the statute and concluded—like the Eastern District of Virginia before him—that "Section 411(k)(13) does not provide a plausible basis for the Court to infer that [the Moving] Defendants committed an 'objective falsehood' by submitting reimbursement claims to Medicaid for IEP-related services provided via remote means." *Id.* at 14. He also observed that "Plaintiff-Relator fails to identify a single IDEA claim submitted to the Government by a Moving Defendant, let alone a false IDEA claim that could subject a Moving Defendant to FCA liability." *Id.* at 15. "Plaintiff-Relator failed to plausibly allege that the Moving Defendants made any misrepresentation of compliance, he has not stated a legally false claim against the Moving Defendants." *Id.* at 16.

Judge Aaron also concluded that Plaintiff had not adequately pleaded scienter. *Id.* at 16-17 ("it is not plausible that the Moving Defendants knew that submitting claims for remote services was fraudulent, or were reckless, since the Moving Defendants were complying with the guidance published by CMS and the USDOE. As set forth above, CMS and USDOE explicitly permitted the Moving Defendants to submit claims for remote services.").

Because the Plaintiff had not adequately pleaded a claim for a violation of either 31 U.S.C. §§ 3729(a)(1)(A) or (B), Judge Aaron was able to conclude that the relator's reverse false claim and conspiracy claims under 31 U.S.C. §§ 3729(a)(1)(G) and (C), respectively, were also inadequately pleaded. *Id.* at 17-19. Because all of the federal claims were to be dismissed, Judge Aaron recommended that "the Court decline to exercise supplemental jurisdiction" over Plaintiff's state law claims. *Id.* at 19.

Finally, Judge Aaron concluded that Plaintiff's claims under the FCA should be dismissed with prejudice because any amendment of the complaint would be futile. "Particularly given the

clear guidance by CMS and the USDOE that providing remote services to students with disabilities was permissible, Plaintiff-Relator simply will not be able to plausibly allege that the Moving Defendants knowingly submitted false or fraudulent claims." *Id.* at 20. He recommended that because of the futility of Plaintiff's claims, that the Court order Plaintiff to show cause why the claims against the Non-Appearing Defendants should not also be dismissed. *Id.* at 21.

### c. The Objections

Plaintiff filed timely[10] objections to the Report on January 30, 2023 (the "Objections"). Dkt. No. 247. The Objections are quite brief—only five pages in length. "The Plaintiff-Relator submits following objections as set forth herein. Plaintiff-Relator generally objects to the findings and conclusions of the R & R and relies on the previously-filed oppositional briefs setting forth his position therein." Objections at 3. The objections set forth in Plaintiff's filing are narrow. Plaintiff presents only three specific objections to the Report. First, Plaintiff argues that the Report "fails to consider the transfer of the Loudoun County Public School District and its Superintendent Scott A. Ziegler . . . to the Eastern District of Virginia" and that his claims "against the named Defendants could have been transferred to their respective jurisdictions, as done with the Loudoun Defendants." *Id.* Second, Plaintiff contests that the Report erroneously "found that the Relator did not claim that services were not provided." Plaintiff points to allegations in the SAC which, he asserts, contradict what he describes as a finding in the Report. *Id.* at 3-4.

Plaintiff's third objection targets the Report's conclusion that Plaintiff not be permitted leave to amend the complaint. Plaintiff argues that an amendment to the complaint would not be futile,

---

[10] The Wake County Defendants and the Buffalo Defendants argue that Plaintiff's Objections were filed untimely, and that, therefore, the Court must review the Report for clear error. *See* Dkt. Nos. 252, 258. They are wrong because the Report was filed on a Saturday; and, as a result, the end of the 14-day period following the filing of the Report—January 28, 2023—fell on a Saturday. Rule 6(a)(1)(C) provides that, when calculating a period of time, if the last day of the period is a Saturday, as it was here, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." F.R.C.P. 6(a)(1)(C). Accordingly, because the stated period ended on Saturday, January 28, 2023, Rule 6(a)(1)(C) extended the period to end on Monday, January 30, 2023, the date of filing. Thus, the Objections were filed timely.

"rather, it would give Plaintiff-Relator the ability to set forth a more specific complaint, citing specific instances of fraud against those proper Defendants." *Id.* at 4.  Plaintiff argues that the guidance provided by the USDOE that was the basis of the recommendation that the fraud claims be dismissed "was not intended to be a universal rule.  The USDOE still required school districts to make individualized determinations with respect to special education and related services for disabled services." *Id.*  The Objections state—without proffering specific facts—that, if granted leave to amend, "Plaintiff-Relator would be able to provide sufficient and plausible facts of specific instances of the alleged fraud." *Id.* at 5.[11]

## II.   LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report.  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)).

---

[11] Plaintiff makes his argument regarding leave to amend, assuming that the Rule 8 standard applies to pleading his fraud claims.  Objections at 4 ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  As the Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), the pleading standard Rule 8 announces does not require 'detailed factual allegations' . . . .").  Plaintiff's other submissions, *see, e.g.,* Dkt. No. 158, indicate that he is aware that Rule 9(b) applies to the pleading of his fraud claims, but the Objections' arguments regarding leave to amend are incorrectly predicated on an argument that Rule 8 applies.

"Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); 28 U.S.C. § 636(b)(1)(A).

### III. DISCUSSION

Plaintiff has only objected with specificity to three aspects of the report, as outlined above. Plaintiff's introductory statement that he "generally objects to the findings and conclusions of the R&R and relies on the previously-filed oppositional briefs setting forth his position therein" is conclusory and general. Objections at 3. As a result, the Court reviews nearly all of the Report for clear error. Among the aspects of the Report that are not subject to a specific objection are its central findings—that the guidance by the relevant federal agencies permitted remote learning, and that Plaintiff failed state a claim under the FCA on the basis of the facts pleaded in the SAC. The Court has reviewed those components of the Report that are not the subject of valid objections for clear error and finds none.

The Court reviews the aspects of the Report that are subject to valid objections *de novo* but similarly finds no error. The Court adopts Judge Aaron's conclusion that the Court should reach the merits of the FCA claim here before taking up the defendants' arguments about the Court's want of personal jurisdiction over them and improper venue. As Judge Aaron noted, in "cases such as this one with multiple defendants," a district court may "address first the facial challenge to the underlying cause of action and, if [the court] dismiss[es] the claim in its entirety, decline to address the personal jurisdiction claims made by some defendants." *Chevron Corp. v. Naranjo,* 667 F.3d 232, 247 n.17 (2d Cir. 2012). This case presents a perfect situation for the Court to exercise its discretion in this way. This approach results in substantial economy for the courts and the parties. The case

11

presents a single dispositive issue of federal law that was raised in all of the parties' briefing. Because the Court concludes that Plaintiff's FCA claims lack merit, resolution of that single issue resolves all of the claims in an efficient manner.

Metastasis of this action into multiple actions before many courts, as Plaintiff requests, is exceptionally inefficient. It will require 5 or more federal district courts, and, potentially, multiple courts of appeals to evaluate the same factual allegations and legal issues. The transfer of the Loudon County Defendants' case to the Eastern District of Virginia has already required two district courts to address these issues. The Court's decision to address the substantive merits of the case first, rather than dispersing the case to multiple courts for resolution results in substantial efficiencies for the parties and the courts.

The Second Circuit commented on the value of this approach in *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) as follows:

> [C]ourts will not "waste judicial resources by transferring a case that is clearly doomed." As Judge Posner observed in *Phillips*, a court's limited jurisdiction "to decide whether to transfer or dismiss" a case over which it lacks jurisdiction thus includes "a power of limited review of the merits." If "a peek at the merits," "reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed—the court that does not have jurisdiction—should dismiss the case rather than waste the time of another court" . . . .

*Daniel*, 428 F.3d at 436. Here, the Court has taken more than a peek at the merits; it has evaluated them in depth. And it benefits from the Eastern District of Virginia's evaluation of the same issues. It is appropriate for the Court to dismiss the case on the merits rather than waste the time of multiple other courts.

Plaintiff's arguments that his claims should be heard in multiple courts across the country have little weight given the procedural history of this action. Plaintiff brought his claims for resolution against multiple far-flung defendants in a single court. That a single court is resolving his claims is, ultimately, the outcome of his choice to hail many disparate defendants into a single court

for his convenience and economy.[12]  Plaintiff argued against the motions to dismiss for improper venue and jurisdiction filed by the Buffalo Defendants as well as the Loudon County Defendants. His argument asking the Court to transfer his claims—particularly those against the Buffalo Defendants—ring particularly hollow.

The law of the case doctrine does not require that the Court sever and transfer the claims of the Moving Defendants as Judge Aaron did with the Loudon County Defendants.  Plaintiff argues in the Consolidated Opposition that it does.  The law of the case doctrine stands for the simple proposition that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir. 1964).  But the doctrine is applied at the court's discretion.  As Judge Learned Hand explained, "the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898 (2d Cir. 1924).  Here, for the reasons described above, there is good reason to decide the substance of the motion to dismiss:  that provides ample reason on its own for the Court to exercise its discretion to deviate from the approach taken with respect to the Loudon County Defendants.

Moreover, the factual circumstances here are quite different than those that confronted Judge Aaron at the time that he severed the claims against the Loudon County Defendants.  At that time, there was only one motion to dismiss pending before the Court.  Now, the Court is presented with multiple motions, not just one.  All of the motions raise a common argument regarding the

---

[12] Plaintiff paid a single filing fee to file this case.  Plaintiff requests the mitosis of his single case into many without the need for him to pay filing fees in each of the districts to which the case would be distributed.  Plaintiff's strategy here of starting a case with a single filing in which he questionably joins multiple defendants is at the top of a slippery slope:  it permits a plaintiff to bring suit against multiple defendants without the slight friction that the requirement to pay a filing fee adds to a plaintiff's decision regarding whether or not to join suit.  One of the potential consequences of the lack of such friction was perhaps illustrated by Plaintiff's joinder of every school district and county in the United States in this case for a period of time.

inadequacy of the FCA claims. And the Court has the benefit of the views of the Eastern District of New York regarding the merits of the FCA claim, which supports the conclusion that the Court should resolve the claims on the merits rather than taking up the jurisdiction and venue arguments raised by the defendants.

Plaintiff's second specific objection to the Report does not rehabilitate his FCA claims. Plaintiff argued that the Judge Aaron erred by concluding that "Relator did not claim that services were not provided." Objections at 3. Like the NYCDOE Defendants, the Court understands that the substantive argument behind this objection "appears to be that the Magistrate Judge failed to consider Plaintiff-Relator's arguments that the SAC adequately pled a worthless services claim." Dkt. No. 254 at 2. But the Report did carefully consider and reject those arguments. Report at 16 n. 17. Most importantly, in this context, the Report's conclusion was correct. In assessing a worthless services claim, the Second Circuit "adopted the Ninth Circuit's standard that the requisite intent is the knowing presentation of what is known to be false as opposed to negligence or innocent mistake." Mikes v. Straus, 274 F.3d 687, 702-703 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States,* 579 U.S. 176 (2016). Plaintiff has not adequately pleaded scienter. For that reason alone, in addition to the other points made by Judge Aaron in the Report, Plaintiff's worthless services claim fails.

Third, Plaintiff objects to the Report's recommendation that he be denied further leave to amend. The Court has evaluated that issue *de novo* and reaches the same conclusion as Judge Aaron: it would be futile for Plaintiff to replead. Judge Aaron properly described the standard that the Court should apply in evaluating whether to grant a plaintiff leave to amend. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend may be denied "for good reason, including

14

futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted).

The Court concludes any amendment would be futile here for the reasons articulated by Judge Aaron. The Court highlights, in particular, Judge Aaron's reasoned conclusion regarding the futility of any effort by Plaintiff to adequately allege scienter: "Particularly given the clear guidance by CMS and the USDOE that providing remote services to students with disabilities was permissible, Plaintiff-Relator simply will not be able to plausibly allege that the Moving Defendants knowingly submitted false or fraudulent claims." Report at 20. While Plaintiff asserts that, given the chance, he would amend the complaint to provide "specific instances of fraud," he failed to identify a single example of a fact that might resuscitate his FCA claims, notwithstanding the fact that the case had been pending for nearly three years, and Plaintiff-Relator's knowledge as a civil rights attorney with a focus on special education law. His inability to specify facts that might cure the deficiencies of the complaint, supports the conclusion that leave to amend is not appropriate here.[13]

## IV. CONCLUSION

For the reasons described above, the Court adopts the Report in full and dismisses the claims against the Moving Defendants with prejudice.

The Court orders Plaintiff to show cause no later than March 21, 2023 why his claims under the FCA against the Non-Appearing Defendants should not be dismissed with prejudice, and why the Court should not decline to exercise supplemental jurisdiction with respect to any state law claims brought by him against those defendants.

---

[13] The Court emphasizes that the scope of the claims brought under the FCA here are fairly cabined: at core is the contention that the provision of educational services to disabled students by remote means is by itself a *per se* violation of the relevant federal laws and regulations and, therefore, results in the submission of false or fraudulent claims to the United States. As a result, the Court does not view as pertinent potential amendments to the effect that the services provided by remote means violated federal law or regulation for other reasons.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 149, 161, 163, 165, 200, and 236.

SO ORDERED.

Dated: February 28, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge