```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/27/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America and the States of the United States, ex rel. Patrick Donohue,

                Plaintiff,

-against-

Richard Carranza, et al.,

                Defendants.

1:20-cv-05396 (GHW) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court are motions by Defendants Los Angeles Unified School District and its former Superintendent Austin Buetner, in his official capacity (collectively, the "LA Defendants"), and Defendants New York City Department of Education ("NYCDOE") and its former Chancellors Richard Carranza and Meisha Porter, in their official capacities (collectively, the "NYCDOE Defendants"), pursuant to 31 U.S.C. § 3730(d)(4), for an award of reasonable attorneys' fees and expenses from Plaintiff Relator Patrick Donohue ("Plaintiff-Relator"). (LA Defs.' 6/10/24 Notice of Mot., ECF No. 300;[1] NYCDOE Defs.' 7/26/24 Mot., ECF No. 330.[2])

For the reasons set forth below, the LA Defendants' motion is GRANTED IN PART and DENIED IN PART and the NYCDOE Defendants' motion is DENIED.

---

[1] On consent of Plaintiff-Relator and the LA Defendants, the LA Defendants' motion was referred to the undersigned to conduct all proceedings and enter a final order on the motion. (6/26/24 Consent, ECF No. 312.)

[2] On consent of Plaintiff-Relator and the NYCDOE Defendants, the NYCDOE Defendants' motion was referred to the undersigned to conduct all proceedings and enter a final order on the motion. (8/5/24 Consent, ECF No. 336.)

**BACKGROUND**

The LA Defendants and the NYCDOE Defendants, among many others, were named as defendants in the Second Amended Complaint ("SAC") that was filed by Plaintiff-Relator in this *qui tam* action alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and certain corresponding state false claim statutes. (SAC, ECF No. 19.) The crux of Plaintiff-Relator's claims was that, in school years 2019-2020 (beginning in March 2020) and 2020-2021, in the wake of COVID-19 pandemic-related school building full or partial closures, the defendants provided remote services (via telehealth and/or telephone) to students with disabilities instead of in-person services, in violation of requirements under the Individuals with Disabilities Education Act ("IDEA") and the Medicaid Act, and then submitted claims for reimbursement for such services, thereby violating the FCA. (SAC ¶¶ 1-3.)

On June 30, 2022, the NYCDOE Defendants and the LA Defendants (together with Defendants Board of Education of the City of Chicago and Jose M. Torres, Ph.D., in his official capacity as former Superintendent of the Board of Education of the City of Chicago (the "Chicago Defendants")), represented by the law firm Katten Muchin Rosenman LLP (the "Katten Firm"), filed a motion to dismiss the SAC.[3] (NYCDOE Defs.', Chicago Defs.' & LA Defs.' 6/30/22 Mot., ECF No. 165.) The memorandum of law filed on behalf of the NYCDOE Defendants, the LA Defendants

---

[3] The other defendants that also filed motions to dismiss were Defendants Buffalo Public School District and Kriner Cash (ECF No. 149); Defendants Stamford Board of Education and Dr. Tamu Lucero (ECF No. 161); Defendants Somerville Public School District and Mary Skipper (ECF No. 163); Defendants Wake County Public School District and Cathy Quiroz Moore (ECF No. 200); and Defendants Niagara Falls City School District and Mark Laurrie (ECF No. 236.) All these defendants, together with the NYCDOE Defendants and the Chicago Defendants, are referred to herein as the "Subject Moving Defendants." Because the claims against the LA Defendants were voluntarily dismissed prior to the decision on the motion to dismiss, *see infra*, the LA Defendants are not included as one of the Subject Moving Defendants, as defined herein.

2

and the Chicago Defendants had a separate section devoted exclusively to the LA Defendants citing law from the Ninth Circuit Court of Appeals as to why the FCA claims against the LA Defendants were required to be dismissed:

> The Supreme Court has held that States and state agencies are statutorily not subject to FCA suits brought by relators because "States are not 'persons' for purposes of qui tam liability under § 3729." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 783 (2000). Having determined that California school districts "are arms of the state," the Ninth Circuit has held that, in accordance with *Stevens*, California school districts, like [Los Angeles Unified School District ("LAUSD")], are not "'persons' subject to *qui tam* liability under the FCA." *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007). Therefore, dismissal of the federal [FCA] causes of action as against LAUSD is additionally warranted because it is not subject to this *qui tam* suit.

(NYCDOE Defs.', Chicago Defs.' & LA Defs.' 6/30/22 Mem., ECF No. 169, at 31.)

In early August 2022, while the motion to dismiss filed on behalf of the LA Defendants still was pending, the LA Defendants "threatened [Plaintiff-Relator] with a Rule 11 motion." (LA Defs.' 7/8/24 Reply, ECF No. 315, at 9; *see also* Katten Firm July 2022 – Sept. 2022 Billing Stmt., ECF No. 303-1, at PDF p. 4 (Katten Firm time entries in August 2022 regarding Rule 11 motion).)[4] On August 12, 2022, in his memorandum in opposition to the NYCDOE Defendants' motion to dismiss, Plaintiff-Relator stated that he "ha[d] agreed to voluntarily dismiss [the] LA [Defendants]." (Pl.'s NYCDOE Opp'n, ECF No. 178, at 1 n.1.) On November 1, 2022, Plaintiff-Relator and the LA Defendants stipulated to the dismissal of Plaintiff-Relator's claims against the LA Defendants with prejudice, which stipulation was "so ordered" by Judge Woods on

---

[4] An earlier billing statement from the Katten Firm also reflects that, in the period March to May 2022, a Katten Firm attorney appears to have discussed with counsel for Plaintiff-Relator the LA Defendants' unique defense that under "Ninth Circuit and CA state court case law[,]" "arms of the state (such as [the LA Defendants]) are not subject to qui tam suit under FCA." (Katten Firm Mar. 2022 – May 2022 Billing Stmt., ECF No. 301-1, at PDF pp. 4-5, 7.) The earlier billing statement also reflects that Katten Firm attorneys appear to have been considering a Rule 11 motion as early as April 2022. (*See id*. at PDF p. 6.)

3

November 3, 2022. (11/1/22 Proposed Stip. & Order, ECF No. 208; 11/3/22 Stip. & Order, ECF No. 220.)

On January 14, 2023, the undersigned recommended that the Subject Moving Defendants' motions be granted and that the action be dismissed against the Subject Moving Defendants, without leave to amend. *United States v. Carranza*, No. 20-CV-05396 (GHW) (SDA), 2023 WL 2414166, at *11 (S.D.N.Y. Jan. 14, 2023). On February 28, 2023, the Honorable Gregory H. Woods adopted the undersigned's recommendation in full, and entered an Order dismissing the claims against the Subject Moving Defendants with prejudice. *United States ex rel. Donohue v. Carranza*, 2023 WL 2263119, at *9 (S.D.N.Y. Feb. 28, 2023). On April 26, 2024, the U.S. Court of Appeals for the Second Circuit affirmed the Order. *United States ex rel. Donohue v. Buffalo Pub. Sch. Dist*., No. 23-374, 2024 WL 1827268 (2d Cir. Apr. 26, 2024) (summary order).

On June 10, 2024, the LA Defendants filed their motion that is now before the Court seeking to recover their reasonable attorneys' fees and expenses in defending this action. (LA Defs.' 6/10/24 Not. of Mot.; LA Defs.' 6/10/24 Mem., ECF No. 303.) On July 1, 2024, Plaintiff-Relator filed his memorandum in opposition to this motion. (Pl.'s 7/1/24 Opp'n Mem., ECF No. 314.) On July 8, 2024, the LA Defendants filed their reply. (LA Defs.' 7/8/24 Reply.) On July 29, 2024, after the Court granted leave (7/19/24 Mem. End., ECF No. 322), Plaintiff-Relator filed a sur-reply in connection with the LA Defendants' motion. (Pl.'s 7/29/24 Sur-Reply, ECF No. 334.)

On July 26, 2024, the NYCDOE Defendants filed their motion for an award of attorneys' fees and expenses. (*See* NYCDOE Defs.' 7/26/24 Mot.) On August 20, 2024, Plaintiff-Relator filed his memorandum in opposition to this motion. (Pl.'s 8/20/24 Opp'n Mem., ECF No. 338.) On

4

September 17, 2024, the NYCDOE Defendants filed their reply. (NYCDOE 9/17/24 Reply, ECF No. 339.)[5]

## LEGAL STANDARDS

Under the FCA, at the outset of a *qui tam* action,[6] the Government either must proceed with the action, in which case the action is conducted by the Government, or notify the court that it declines to take over the action, in which case the person bringing the action has the right to conduct the action. 31 U.S.C. § 3730(b)(4). Where the Government declines to proceed with the action, and the *qui tam* action is dismissed, the FCA contains a provision for a prevailing defendant to recover its attorneys' fees and expenses, as follows:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4).

For a litigant to be "prevailing party," as Congress uses that term in fee-shifting statutes like the FCA, a "material alteration of the legal relationship of the parties" must have occurred. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (quoting *Tex. State Teachers Ass'n*

---

[5] The only two sets of Defendants to file motions for attorneys' fees and expenses were the LA Defendants and the NYCDOE Defendants. None of the other Subject Moving Defendants filed such a motion. Notably, the Chicago Defendants (which, like the LA Defendants and the NYCDOE Defendants, were represented by the Katten Firm) did not file a motion for attorneys' fees and expenses.

[6] "In a *qui tam* action, a private plaintiff, known as a relator, brings suit on behalf of the Government to recover a remedy for a harm done to the Government." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97 (2d Cir. 2009) (citations omitted). "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means '[he] who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000) (citation omitted).

*v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)). Such a "change must be marked by 'judicial imprimatur.'" *Id*. (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)). "This includes a party who secures a judgment on the merits, . . . a voluntary dismissal with prejudice . . . or a defense jury verdict." *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 247-48 (E.D.N.Y. 2020) (case arising under Section 1988) (citations omitted); *see also Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 166 (2d Cir. 2014) ("A voluntary dismissal of an action with prejudice works a [material alteration of the legal relationship of the parties], because it constitutes 'an adjudication on the merits for purposes of *res judicata*[.]'" (quoting *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995)).

The Second Circuit has held that "[a]ny one of the[] three conditions [under § 3730(d)(4), *i.e.*, clearly frivolous, clearly vexatious or brought primarily for purposes of harassment] is sufficient for an award of attorneys' fees" in favor of a prevailing defendant. *Mikes v. Straus*, 274 F.3d 687, 704-05 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016). With respect to the standard to be applied, the Second Circuit has referred by analogy to the standard for awarding fees to a defendant under 42 U.S.C. § 1988 ("Section 1988"):[7]

> The [FCA's] legislative history suggests that the standard of § 3730(d)(4) is analogous to that used for claims for attorneys' fees brought under 42 U.S.C. § 1988. . . . It is noteworthy that a plaintiff's subjective bad faith is not an element under § 1988. . . . Accordingly, there could be an award for attorneys' fees upon a finding that the [subject] claims were objectively frivolous, irrespective of

---

[7] Like the Second Circuit, other Circuits also have applied by analogy the standard under Section 1988 to FCA cases. *See*, *e.g.*, *United States ex rel. Miller v. Manpow, LLC*, No. 21-CV-05418 (DSF), 2024 WL 1012850, at *2 (C.D. Cal. Mar. 4, 2024) ("Section 3730(d)(4)'s 'standard tracks [the Ninth Circuit's] formulation as to when fees are appropriate under 42 U.S.C. § 1988 to a prevailing defendant.'" (quoting *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005-06 (9th Cir. 2002)). "As such, § 1988 cases are instructive in deciding whether fees are appropriate under the [FCA]." *Pfingston*, 284 F.3d at 1006.

6

> plaintiff's subjective intent. A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law. . . .

*Id*.

"The Second Circuit has instructed that it should be rare for a prevailing defendant . . . to be awarded attorney's fees [under Section 1988]." *Robinson v. Town of Kent*, No. 11-CV-02875 (ER), 2012 WL 3024766, at *8 (S.D.N.Y. July 24, 2012) (citing *Sista v. CDC Ixisi N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006)); *see also Knopf v. Esposito*, 803 F. App'x 448, 456 (2d Cir. 2020) (citing *Sista*, 445 F.3d at 178) (stating in context of district court award of fees to defendants under Section 1988: "As the decisions of [the Second Circuit] demonstrate, it is very rare that victorious defendants in civil rights cases will recover attorneys' fees."). Thus, Second Circuit case law sets a high bar for recovery of attorneys' fees by a prevailing defendant under Section 1988. For example, in *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220 (2d Cir. 2004), the Second Circuit vacated an award of attorneys' fees to a defendant under Section 1988, noting: "[w]hen we earlier affirmed the district court we agreed that there was not sufficient state action to support a § 1983 claim[;] [w]e did not suggest that plaintiffs' allegation was so bizarre as to be frivolous." *Id*. at 229 (internal citations omitted). Similarly, the Second Circuit has affirmed the denial of attorneys' fees to a prevailing defendant even where plaintiff's claim was "perhaps very thin." *Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006).

The Ninth Circuit, like the Second Circuit, also sets a high bar for a prevailing defendant to recover fees under Section 1988. Thus, after considering the standard for awarding fees to a defendant under Section 1988, the Ninth Circuit held with respect to prevailing defendants recovering fees under the FCA: "The award of fees under the [FCA] is reserved for rare and special

7

circumstances." *Pfingston*, 284 F.3d at 1006-07; *see also Prather v. AT&T Inc.*, No. 09-CV-02457 (CRB), 2014 WL 555133, at *2 (N.D. Cal. Feb. 10, 2014) ("Courts 'must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be airtight.'" (quoting *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995)).

"Whether to make a fee award to a qualifying defendant [under the FCA], and in what amount, is a matter of the district court's discretion." *United States ex rel. Mikes v. Straus*, 98 F. Supp. 2d 517, 529 (S.D.N.Y. 2000), *aff'd sub nom. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001); *see also* 31 U.S.C. § 3730(d)(4) ("the court *may* award to the defendant its reasonable attorneys' fees and expenses" (emphasis supplied)). If a court determines to award attorneys' fees, "[t]he lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded." *Seitzman v. Sun Life Assurance Co. of Can., Inc.*, 311 F.3d 477, 487 (2d Cir. 2002). The "lodestar" is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

## ANALYSIS

The Court considers the LA Defendants' motion and the NYCDOE Defendants' motion in turn.

### I. LA Defendants' Motion

#### A. The LA Defendants Were Prevailing Parties

In order to be entitled to attorneys' fees under the FCA, the LA Defendants must have been prevailing parties. The Court finds that the LA Defendants were prevailing parties because there was a material alteration of the legal relationship between the LA Defendants and the

8

Plaintiff-Relator marked by the imprimatur of Judge Woods. *See CRST*, 578 U.S. at 422; *Carter*, 759 F.3d at 166.

The FCA "unambiguously states that a *qui tam* action 'may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.'" *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 401 (2d Cir. 2019) (quoting § 3730(b)(1)). The FCA is one of the few "substantive statutes that specifically require[s] the district court's consent before cases involving those statutory causes of action may be settled." *Id*. "[T]his provision 'applies only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the [FCA], and not where the court orders dismissal.'" *Chailla v. Navient Dep't of Educ.*, 791 F. App'x 226, 229 (2d Cir. 2019) (quoting *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990)), *cert. denied*, 140 S. Ct. 2527 (2020).

In the present case, Judge Woods "so ordered" the stipulation of dismissal that was signed by counsel for the Plaintiff-Relator and counsel for the LA Defendants. (*See* 11/3/22 Stip. & Order.) This act by Judge Woods signified the Court's consent to the dismissal under the FCA, and provided the requisite judicial imprimatur. *See Carter*, 759 F.3d at 166. The LA Defendants thus were prevailing parties.

### B. Plaintiff-Relator's Claims Against The LA Defendants Were Clearly Frivolous

Under Ninth Circuit precedent, the LA Defendants were "arms of the state," and therefore were not "'persons' subject to *qui tam* liability under the FCA." *Stoner*, 502 F.3d at 1123. Thus, Plaintiff-Relator's FCA claims against them, viewed objectively, had no reasonable chance of success, and Plaintiff-Relator presented no valid argument to modify the existing law. Indeed, in apparent recognition of the futility of his claims against the LA Defendants, Plaintiff-Relator

9

voluntarily dismissed his claims against the LA Defendants.[8] As such, Plaintiff-Relator's claims against the LA Defendants were clearly frivolous. *See Mikes*, 274 F.3d at 704-05.

Since the LA Defendants were prevailing parties and the claims asserted against them were clearly frivolous, the LA Defendants may be awarded reasonable attorneys' fees and expenses. *See* 31 U.S.C. § 3730(d)(4). The Court, in its discretion, finds that the LA Defendants shall be awarded their attorneys' fees, but in an amount significantly less than the amount they request.

### C. Amount Of The LA Defendants' Reasonable Attorneys' Fees

In their motion, the LA Defendants request an award of $116,140.63 in attorneys' fees and costs. (LA Defs.' 6/10/24 Mem. at 8; *see also* Kellogg Decl., ECF No. 302, ¶ 13.) In support of that request, the LA Defendants submit four invoices reflecting the hours and costs billed by the Katten Firm and the respective shares that were owed by the NYCDOE Defendants, the Chicago Defendants and the LA Defendants, *i.e.*, the three groups of defendants that retained the Katten Firm. (Katten Firm Mar. 2022 – May 2022 Billing Stmt.; Katten Firm June 2022 Billing Stmt., ECF No. 301-2; Katten Firm July 2022 – Sept. 2022 Billing Stmt.; Katten Firm Oct. 2022 Billing Stmt., ECF No. 303-2.)

As noted earlier in the Legal Standards section, the FCA authorizes the award of reasonable attorneys' fees and expenses to a prevailing defendant. 31 U.S.C. § 3730(d)(4). "'The fee applicant bears the burden of establishing entitlement to an award and documenting the

---

[8] Plaintiff-Relator's argument that his claims against the LA Defendants were not clearly frivolous because he was given leave to file the SAC (Pl.'s 7/1/24 Opp'n Mem. at 5-6) is baseless. Neither Plaintiff-Relator's Letter Motion seeking leave to file the SAC, nor the Court's Order granting such Letter Motion, makes any mention of whether or not Plaintiff-Relator had viable claims against the LA Defendants. (*See* Pl.'s 7/6/21 Ltr. Mot., ECF No. 14; 7/8/21 Order, ECF No. 15.)

appropriate hours expended and hourly rates.'" *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (alteration omitted).

As further noted in the Legal Standards, *supra*, in determining reasonable attorneys' fees, courts customarily begin by calculating the "lodestar," that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Holick v. Cellular Sales*, 48 F.4th 101, 106 (2d Cir. 2022) (citation omitted). To determine a reasonable hourly rate, a court has "considerable discretion" to bear in mind "all pertinent factors" to a reasonable rate, including those articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019) (citation omitted). Courts are not strictly required to consider each of these factors, but the factors may assist in calculating a reasonable fee. *Id*. at 233. Additionally, "[t]he reasonable hourly rate is a rate a paying client would be willing to pay." *Id*. at 230 (citation omitted). Accordingly, a court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id*. (citation omitted). However, "'courts have acknowledged that a judicial determination of what is 'reasonable' for purposes of a fee award to be paid by the losing party to the prevailing party in a litigation is not the same as the reasonableness of a bill that a law firm might present to its

own paying client." *Daiwa Special Asset Corp. v. Desnick*, No. 00-CV-03856 (SHS), 2002 WL 31767817, at *2 (S.D.N.Y. Dec. 3, 2002) (citations omitted).

"In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (internal quotation marks and citation omitted). With respect to fee awards, the Supreme Court has held:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

The invoices submitted by the LA Defendants reflect that the senior Katten Firm attorneys billed their time at an hourly rate of $800.00. (*See*, *e.g.*, Katten Firm Mar. 2022 – May 2022 Billing Stmt. at PDF p. 9.) The senior most attorney who worked on this case, Joseph Willey, Esq. ("Attorney Willey"), was admitted to the bar in 1984 and had significant experience in FCA cases. (Willey Bio & License, ECF No. 315-7.) "Recent cases brought under the FCA in this district have found to be reasonable hourly rates for law firm partners [having fifteen to over forty years of practice] ranging from $800 to $850." *United States ex rel. Yasti v. Nagan Constr.*, No. 17-CV-07163 (AT), 2021 WL 1063437, at *3 (S.D.N.Y. Mar. 18, 2021) (citing cases). Having considered the relevant factors, the Court finds that an $800.00 hourly rate for Attorney Willey is reasonable.

The Katten associate who worked on this case, Christopher Vazquez, Esq. ("Attorney Vazquez"), was billed at an hourly rate of $600.00. (Katten Firm Oct. 2022 Billing Stmt. at PDF p. 9.) He was admitted to the bar in 2023 and the documents submitted by the LA Defendants

regarding his background do not reflect any prior experience in FCA cases. Having considered the relevant factors, the Court finds that a reasonable hourly rate for Attorney Vazquez is $400.00, not $600.00. *See Nagan Constr.*, 2021 WL 1063437, at *4 (awarding $400 hourly rate for junior associate).

With respect to the reasonable number of hours expended, the Court finds, in its discretion, that a dramatic reduction in the number of hours billed by the Katten Firm for the defense of the LA Defendants is required. As noted by the LA Defendants themselves:

> The Ninth Circuit rulings which precluded Relator's action against [the LA Defendants] were not borne of some obscure legal principle or technicality, nor were they buried in the minutiae detail of dense case law. They are blackletter law regarding the very claims Relator was asserting.
>
> . . .
>
> [V]oluntary dismissal was secured as a result of "exactly three sentences" in the Motion to Dismiss. . . . [The LA Defendants'] authority was so dispositive, it did not take much to prove it.

(LA Defs.' 7/8/24 Reply at 4, 10.)

The Katten Firm's time records reflect that Katten Firm attorneys commenced their work on this action on March 11, 2022. (Katten Firm Mar. 2022 – May 2022 Billing Stmt. at PDF p. 3.) On March 28, 2022, Attorney Willey reviewed the Ninth Circuit's *Stoner* decision (*id.* at PDF p. 4), which is the "blackletter law" to which the LA Defendants referred in the quoted language above. Moreover, as early as April 29, 2022, Attorney Willey conferred with one of his colleagues about the Rule 11 standard and procedure. (*Id.* at PDF p. 6.)

Based upon the blackletter law set forth in *Stoner*, in March or April 2022 (before the motion to dismiss was filed), the Katten Firm could have served upon Plaintiff-Relator a motion under Rule 11 of the Federal Rules of Civil Procedure seeking sanctions against Plaintiff-Relator

13

for asserting claims against the LA Defendants that were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Then, if Plaintiff-Relator failed to withdraw his claims against the LA Defendants within 21 days, the Katten Firm could have filed a Rule 11 motion and the LA Defendants would have been entitled to recover their reasonable expenses, including attorneys' fees, for having had to prepare the motion to dismiss on behalf of the LA Defendants. *See* Fed. R. Civ. P. 11(c)(2). Instead of pursuing this course, the LA Defendants were included with the NYCDOE Defendants and the Chicago Defendants (which did not have the unique defense available to them under Ninth Circuit law) in the motion to dismiss that was filed by the Katten Firm on June 30, 2022. (*See* NYCDOE Defs.', Chicago Defs.' & LA Defs.' 6/30/22 Mot.)

Only later, after the motion to dismiss was filed, did the Katten Firm, on behalf of the LA Defendants, "threaten[]" the Plaintiff-Relator with a Rule 11 motion.[9] (LA Defs.' 7/8/24 Reply at 9.) Thereafter, Plaintiff-Relator did not oppose the LA Defendants' motion to dismiss, but rather, on August 12, 2022, Plaintiff-Relator agreed in writing to voluntarily dismiss his claims against the LA Defendants.[10] (Pl.'s NYCDOE Opp'n at 1 n.1.)

Based upon this course of events, it seems clear that the Katten Firm could have accomplished the dismissal of the LA Defendants much earlier in the case, and certainly before the comprehensive motion to dismiss ever was filed on behalf of all three groups of defendants,

---

[9] The Katten Firm's time records reflect that, during the period July 19, 2022 to August 11, 2022, there was work done on a Rule 11 motion. (Katten Firm July 2022 – Sept. 2022 Billing Stmt. at PDF pp. 3-4.)

[10] The dismissal later was accomplished in November 2022, after Plaintiff-Relator received the consent of the United States and the California Office of the Attorney General. (*See* 11/1/22 Proposed Stip. & Order; 11/3/22 Stip. & Order.)

by serving a Rule 11 motion. *See Fink v. Mohonk Pres. Inc.*, No. 20-CV-03002 (CM), 2020 WL 6110846, at *1-2 (S.D.N.Y. Sept. 14, 2020) ("[T]he whole idea behind . . . Rule [11] is to obviate the need to prepare and file a motion to dismiss. . . . The fact that Defendants' counsel wasted time (and . . . their clients' money) drafting what turned out to be an unnecessary motion to dismiss is their misfortune."), *aff'd*, No. 20-3526-CV, 2021 WL 5829751 (2d Cir. Dec. 9, 2021) (summary order). Alternatively, the Katten Firm could have prepared a bare-bones motion to dismiss on behalf of the LA Defendants relying exclusively on the Ninth Circuit's *Stoner* decision.

The Court finds that the hours billed by the Katten Firm to the LA Defendants in defense of the claims against the LA Defendants were excessive. Based upon the Court's review of the Katten Firm's time records, including those for the period March 11, 2022, when the case was filed, until March 28, 2022, when the Katten Firm became aware of the Ninth Circuit's *Stoner* decision (Katten Firm Mar. 2022 – May 2022 Billing Stmt. at PDF pp. 3-4), and the Court's own sense of how long it would take the Katten Firm to review the SAC, consult with its clients and prepare a Rule 11 motion or a bare-bones motion to dismiss, the Court in its discretion, finds that the number of hours that reasonably should have been expended on this case in defense of the LA Defendants is 45 hours, comprised of 15 hours of partner time and 30 hours of associate time.[11] Accordingly, the Court hereby awards attorneys' fees to the LA Defendants in the amount

---

[11] In the Court's experience, a reasonable paying client would have expected a 2-to-1 junior associate-to-partner hours ratio for the required work on the record presented here.

of $24,000.00 (*i.e.*, $800.00 per hour times 15 hours plus $400.00 per hour times 30 hours).[12] In the Court's view, an award of $24,000.00 in attorneys' fees to the LA Defendants achieves rough justice.

II. **NYCDOE Defendants' Motion**

Turning to the NYCDOE Defendants' motion, the NYCDOE Defendants undoubtedly were prevailing parties in this action since they were successful on their motion to dismiss, and Plaintiff-Relator does not contend otherwise. The question to be decided is whether Plaintiff-Relator's claims against the NYCDOE Defendants were "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). The NYCDOE Defendants argue that the claims against them were both "clearly frivolous" and "clearly vexatious." (NYCDOE Defs.' 7/26/24 Mem., ECF No. 331, at 11-25.) The Court disagrees.

In stark contrast to the circumstances presented by the LA Defendants, *see* Analysis, Sections I.B. & I.C., *supra*, the NYCDOE Defendants do not present any "rare and special circumstances" to justify the award of fees to them. *See Pfingston*, 284 F.3d at 1007. The Court finds that the bases for dismissal of the claims in the SAC that were asserted against the NYCDOE Defendants were not "so staggeringly obvious" to render them clearly frivolous. *See Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 307 (S.D.N.Y. 2013).

---

[12] The only disbursements billed by Katten Firm were $246.42 for a transcript (Katten Firm June 2022 Billing Stmt. at PDF p. 8), $73.77 in FedEx charges (Katten Firm July 2022–Sept. 2022 Billing Stmt. at PDF p. 10) and $121.70 in PACER fees. (*Id.* at PDF p. 10; Katten Firm Oct. 2022 Billing Stmt.at PDF p. 6.) Since none of these disbursements were related to dismissal of the claims against the LA Defendants based upon their unique defense, the Court, in its discretion, declines to award to the LA Defendants' the share they paid for these disbursements.

Plaintiff-Relator is the parent of a special education student and he alleged in the SAC that the NYCDOE Committee on Special Education fraudulently created an Individualized Education Plan ("IEP") for his daughter that the NYCDOE Defendants knew could not be implemented during the COVID-19 pandemic since the IEP included in-person services, which were not offered by the NYCDOE as a result of the COVID-19-related closures. (SAC ¶ 77.) He further alleges that there was no subsequent IEP meeting to amend his daughter's IEP to include remote services. (*Id*.) In addition, Plaintiff-Relator alleges that there were over 100 students for whom the NYCDOE failed to provide the services outlined in their IEPs since March 2020. (*Id*. ¶ 80.) Plaintiff-Relator contended, among other things, that the NYCDOE Defendants presented false claims to the federal government by billing for remote sessions in violation of Medicaid billing and IDEA restrictions.[13] (*Id*. ¶¶ 106, 109.)

The undersigned recommended dismissal of Plaintiff-Relator's FCA claims because he did not allege any factually or legally false claims. *Carranza*, 2023 WL 2414166, at *7-8. Plaintiff-Relator did not allege a factually false claim because he did not allege that the NYCDOE Defendants requested reimbursements for goods or services that were never provided. *Id*. at *8. In addition, Plaintiff-Relator did not allege a legally false claim because nowhere did he identify

---

[13] The IDEA was enacted "to ensure that all children with disabilities have available to them a free and appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). Federal funding provided by the United States Department of Education is distributed to States to assist schools in providing a FAPE to students with disabilities. *See* 20 U.S.C. § 1411; 34 C.F.R. § 300.700(a). To receive funding, school districts are required to provide assurances that they have followed certain procedures, including the development of an IEP for each student with disabilities, which is a written plan detailing the programs and services to "be provided to enable the child [t]o advance appropriately toward attaining the annual goals" for academic achievement and functional performance. *See* 34 C.F.R. § 300.320(a)(4)(i).

any law or regulation that the NYCDOE Defendants violated by billing for the provision of remote services. *Id.*[14] The undersigned's recommendations were adopted by Judge Woods, *Carranza*, 2023 WL 2263119, at *8, and the Second Circuit affirmed. *Buffalo Pub. Sch. Dist.*, 2024 WL 1827268, at *2.

The IEP for Plaintiff-Relator's daughter called for in-person services, as opposed to the remote services that were provided. From Plaintiff-Relator's perspective, his daughter and other special education students who were similarly situated did not receive from the NYCDOE Defendants the FAPE to which they were entitled, yet the NYCDOE Defendants were paid by the federal government for the services provided. Thus, in asserting claims against the NYCDOE Defendants in the SAC, Plaintiff-Relator had a theory of liability, however misguided.

To be sure, Plaintiffs' claims against the NYCDOE Defendants were meritless, as this Court held and the Second Circuit affirmed, and perhaps they were very thin, but that does not make them clearly frivolous. *See Tancredi*, 378 F.3d at 223 (finding that allegation "although indeed meritless, was not frivolous"); *Panetta*, 460 F.3d at 399. Here, as in *Grant v. Abbott House*, No. 14-CV-08703 (NSR), 2016 WL 796864 (S.D.N.Y. Feb. 22, 2016), although Plaintiff-Relator's FCA claims may "come alarmingly close to the line of being completely frivolous," the Court finds that they "[did] not cross it." *Id.* at *8.

The Court also finds that Plaintiff-Relator's claims were not clearly vexatious. "In a legal context, 'vexatious' is used to describe an action 'instituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant.'" *United States v. Bove*, 888 F.3d 606,

---

[14] The undersigned also recommended dismissal of Plaintiff-Relator's other claims against the NYCDOE Defendants. *Carranza*, 2023 WL 2414166, at *9.

608 (2d Cir. 2018) (quoting *Vexatious*, Oxford English Dictionary (2d ed. 1989)). "'[V]exatiously' has been defined as either 'subjective or objective bad faith.'" *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 956 (7th Cir. 2024) (quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)).

Based upon the Court's review of the record in this case, the Court finds no basis to conclude that Plaintiff-Relator acted for the purpose of causing trouble or annoyance to the NYCDOE Defendants and or that Plaintiff-Relator acted in subjective or objective bad faith. *See United States ex rel. Lewis v. Honolulu Cmty. Action Program, Inc.*, No. 16-CV-00062 (JMS) (KJM), 2020 WL 870674, at *3 (D. Haw. Feb. 5, 2020) (denying § 3730(d)(4) motion, noting defendants made no evidentiary showing that relator filed action for improper purpose or primarily to harass), *report and recommendation adopted*, 2020 WL 869968 (D. Haw. Feb. 21, 2020). The existence of the other unsuccessful lawsuits filed by Plaintiff-Relator's disability rights group (*see* NYCDOE Defs.' 7/26/24 Mem. at 20-25) does not, in the Court's view, establish that Plaintiff-Relator acted in a clearly vexatious manner in asserting his claims against the NYCDOE Defendants in this case.

In considering the NYCDOE Defendants' motion, the Court is "mindful that there can be a thin line between zealous advocacy and frivolity." *Takaba v. Comm'r*, 119 T.C. 285, 303, 2002 WL 31818000 (2002). "We must be careful not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id*. Because the Court finds that Plaintiff-Relator's claims against the NYCDOE Defendants were not clearly frivolous or clearly vexatious, and were not brought primarily for purposes of harassment, the NYCDOE Defendants' motion for attorneys' fees and expenses is DENIED.

**CONCLUSION**

For the foregoing reasons, the LA Defendants' motion is GRANTED IN PART and DENIED IN PART, and the LA Defendants hereby are awarded the sum of $24,000.00 in attorneys' fees. The NYCDOE Defendants' motion is DENIED.

The Clerk of Court is respectfully requested to enter judgment in favor of the Los Angeles Unified School District and against Patrick Donohue in the sum of $24,000.00, pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Dated:   September 27, 2024
         New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**